RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>        Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>        Debtor and Debtor in Possession.<br>_____<br><br>☒  Affects both Debtors<br><br>☐  Affects TRX Holdco, LLC only<br><br>☐  Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**DECLARATION OF BRENT LEFFEL IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b); AND (IV) GRANTING RELATED RELIEF**<br><br>DATE:        June 10, 2022<br>TIME:        10:00 a.m.<br>PLACE:      *Via ZoomGov<br>                   Courtroom 5C<br>                   411 West Fourth Street<br>                   Santa Ana, CA 92701 |

1

I, Brent Leffel, hereby declare under penalty of perjury as follows:

1.      I am the Chairman of the Board of Managers of TRX Holdco, LLC ("Hold Co") and the Chairman of the Board of Managers of Fitness Anywhere LLC,  dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases.  I am also the co-manager of Equity 38, LLC which is the manager of Equity 38 Investment Platform I, LLC. Equity 38 Investment Platform I, LLC is the manager of E38-TRX, LLC and E38-TRX Holdco Investments, LLC which collectively own and control Hold Co.

2.      Hold Co holds a preferential and controlling interest in Product Co.  Hold Co also wholly owns TRXperience, LLC ("Experience Co").  Experience Co has not filed a bankruptcy case.  Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

3.      I served as the Co-Chairman of Product Co from approximately December 2018 through October 2020, after which I became the sole Chairman of Product Co.  I have been the Chairman of Hold Co since Hold Co's formation in approximately March 2020.  I also served as Chief Executive Officer from approximately April 2021 through the end of January 2022.

4.      In my capacity as Chairman, I am involved with policy and strategic decisions on behalf of the Debtors.  The Chief Executive Officer of the Debtors reports to me and he implements the directives and policies of the Debtors as established by the Debtors' respective Board of Managers (which I chair).  I have personal knowledge of the facts set forth in this Declaration and if called as a witness, could and would testify competently with respect thereof.

5.      I make this Declaration in support of the Debtors' emergency motion for the entry of an order authorizing the Debtors to use cash collateral and related relief.

6.      The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company.  Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.

2

TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities.  TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations.   TRX also launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand videos and daily live classes.

7.       TRX enjoys a strong origin story (the first version of the Suspension Trainer™ was created in 1997 by Randy Hetrick, the founder of TRX), significant brand recognition and intellectual property protections around its flagship product Suspension Trainer™, which is distributed in over thirty (30) countries through commercial channels (gyms and vertical markets) and consumer markets (including through its direct-to-consumer platform www.TRXtraining.com in the United States and United Kingdom, Amazon, and other retailers).

8.       From 2004 through 2013, Mr. Hetrick launched and commercialized TRX, building a loyal community of trainers and market penetration in gyms.  From 2014 to 2018, the TRX business matured after receiving a growth capital investment.  In late 2018, an investor group led by Equity 38, LLC acquired the business in a highly structured transaction which included a credit facility with Woodforest National Bank (the "Bank") alongside an equity investment and rollover investment from the previous investors, and, in 2019, various operational improvement initiatives were implemented to restructure the business.  By the end of 2019, the business required a capital infusion to reset its credit facility with the Bank and also secure operating capital to execute on a strategy which incorporated the pursuit of digital initiatives to broaden the company's revenue opportunities beyond sales of its flagship product.

9.       In March 2020, Hold Co was formed and additional equity capital was invested by existing and new investors in a further recapitalization of TRX.  A portion of such proceeds were invested in Product Co to repay senior debt and provide working capital financing, and the balance remained at Hold Co to fund growth initiatives such as digital.  After giving effect to the

March 2020 recapitalization, Hold Co held a preferential and controlling interest in Product Co, and also became a guarantor of the credit facility. Hold Co also owns 100% of the interests of Experience Co, an entity that was formed at the time of the recapitalization for purposes of housing TRX's digital platform services that were beginning to be developed and for its educational services and offerings through which TRX has qualified training professionals on suspension training/functional training techniques and programming.  While the different entities were established to allow for a segregation of the equity investment made in the recapitalization and to limit dilution to legacy shareholders, TRX has operated as one identifiable brand in the market, and through intercompany agreements, including a management services agreement between Hold Co and Product Co wherein Hold Co provides the services of executive management that oversee the entire TRX enterprise, it also effectively operates as a consolidated business.

10.     In 2019, the Debtors generated approximately $51 million in revenue.  In 2020, the Debtors formulated a digital strategy with outside consultants while experiencing COVID-driven revenue growth, to approximately $85 million.  In 2021, the Debtors executed and invested in a number of initiatives focused on digital and marketing, hiring executives in key roles while building a significant inventory position, and navigating through a rapidly changing macro environment, and generated approximately $62 million in sales.

11.     Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth.  There have been many reasons for this including competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did not occur in an unpredictable market, and higher than anticipated development costs associated with the Debtors' digital training platform and increased marketing expenses, partially attributable to general increases in paid advertising.  It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth, and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.

12.     Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction.  The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

13.     Timing and macroeconomic considerations both played a role in the Debtors not consummating a pre-petition transaction.  For example, while various parties expressed interest in a transaction with the Debtors, those who signed nondisclosure agreements and engaged in discussions with the Debtors did not ultimately proceed with engaging in a transaction.  The Debtors also explored potential financing arrangements and received various expressions of interest.

14.     The Debtors' current financial situation is precarious in that we estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' good will.  I believe that if there was a shutdown of the Debtors' business with a resulting liquidation, it would be a disastrous result for creditors, including the Bank.

15.     Despite these challenges, I believe that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history.  Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

16.    Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.  I believe that proceeding in this manner will afford the Debtors with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.

17.    The Debtors goal in these bankruptcy cases is to consummate a free and clear asset sale for the most money possible.  The Debtors intend to file in the near future a motion seeking Court approval of proposed bidding and auction procedures.  The Debtors will be filing an application to retain Kroll (or an affiliate) to serve as the Debtors' post-petition financial advisor to assist the Debtors with the Debtors' financial affairs and as the Debtors' investment banker to run the Debtors' free and clear asset sale process.

18.    The only way for the Debtors to continue to operate their business pending the consummation of a free and clear asset sale is for the Debtors to be able to use their cash collateral to pay their post-petition expenses.  The alternative to the Debtors' use of cash collateral would be an immediate shut down of the Debtors' business and termination of all employees, service providers and outsourced business operations, which the Debtors believe would be devastating to the value of the Debtors' assets and would result in an economic disaster for all creditors, including the Bank.

19.    The Debtors are continuing to analyze, in consultation with Kroll, whether obtaining post-petition financing is necessary in order for the Debtors to have an adequate time period to conduct this free and clear asset sale process and to consummate an asset sale transaction.  If the Debtors conclude that obtaining such post-petition financing is necessary, a decision the Debtors expect to make in the coming days, the Debtors will be coming before this Court seeking Court approval of such post-petition financing.

20.    The Debtors' primary assets are comprised of accounts receivable in the approximate gross amount of $5.1 million as of the Petition Date, inventory with a cost basis of

approximately $17.8 million as of the Petition Date, intellectual property and goodwill associated with the Debtors' well-regarded brand, and the Debtors' vast domestic and international customer base.

21.    To support the financial needs of their growth and operations, on or about December 26, 2018, the Debtors (with Product Co as borrower and Hold Co ultimately as one of three guarantors[1]) obtained a senior secured credit facility revolving credit facility from the Bank, secured by substantially all of the Debtors' assets and property.  The credit facility is evidenced by that certain "Credit Agreement Dated as of December 26, 2018" as amended from time to time, in the original principal amount of $20,000,000.  Based on five amendments to the Credit Agreement, the credit facility is currently comprised of a term loan with a principal balance of $10,875,000, a term loan with a principal balance of $1,000,000, and revolving loans up to $8,000,000 with a principal balance of $7,500,000. As of the Petition Date, the total principal balance of the loans made by the Bank to the Debtors is approximately $19,375,000.

22.    On May 16, 2022, the Bank and Product Co entered into that certain "First Forbearance Agreement And Fifth Amendment To Credit Agreement" which set forth various "Events of Default" and agreement by the Bank to forbear from exercising certain of its default-related rights and remedies.

23.    The Debtors have engaged in discussions with the Bank regarding, among other things, the Debtors' cash flow challenges and needs, these bankruptcy cases, and the Debtors' imminent need for additional funding to enable the Debtors to have a sufficient amount of time to run a free and clear asset sale process designed to achieve the highest and best price for the Debtors' assets.  The Debtors are hopeful that they will be able to obtain the Bank's consent regarding the Debtors' use of cash collateral, and have also approached the Bank to determine

---

[1] The other two guarantors are Experience Co (a wholly owned subsidiary of Hold Co) and Fitness Anywhere International, LLC (a wholly owned subsidiary of Product Co).  Hold Co and Experience Co became guarantors in connection with a recapitalization of TRX completed in 2020.

1    whether the Bank is willing to lend additional funds to the Debtors post-petition and, if not,

2    whether the Bank is willing to subordinate to a new lender.

3           24.     The Debtors have no secured creditors other than the Bank.

4           25.     In order for the Debtors to have the opportunity to attempt to consummate a sale

5    of their business/assets, the Debtors must be able to continue to operate their business, and the

6    only way for the Debtors to be able to continue to operate their business is for the Debtor to have

7    use of their cash collateral to pay for their post-petition operating expenses.  Without the use of

8    cash collateral, the Debtors would be forced to immediately shut down and close their business

9    and terminate employees.  Attached as **Exhibits 2, 3 and 4** to the Declaration of James S.

10   Feltman are the Debtors' thirteen (13) week cash flow forecasts and cash collateral budgets

11   setting forth all projected cash receipts and cash disbursements and the projected impacts on

12   accounts receivables and inventory following the Petition Date ("Budgets"), which I have

13   reviewed, participated in the preparation of, and approve.  As set forth therein, the Debtors

14   require immediate authority to use cash collateral to pay, among other things: (1) payroll in order

15   to ensure that there is no interruption or interference in the Debtors' relationship with their

16   employees (provided that any insider compensation will be subject to compliance with insider

17   compensation approval requirements); (2) key contractors, service providers, consultants and

18   vendors, in order to ensure there is no interruption in critical services being provided to the

19   Debtors and product being delivered to the Debtors; (3) logistics costs in order to ensure timely

20   receipt and delivery of products relating to the E-commerce business; and (4) insurance and

21   taxes.

22          26.     The Budgets do not include any additional purchases of inventory but the Debtors

23   are requesting authority pursuant to the cash collateral motion to do so in the ordinary course of

24   business to the extent sufficient funds exist in order for the Debtors to do so, including during the

25   interim period of approval of the cash collateral motion, to the extent the Debtors determine in

26   their business judgment that doing so is necessary to avoid irreparable and immediate harm.

27          27.     The Budgets incorporate all of the projected cash receipts and cash disbursements

28   of the entire business operations of the Debtors and their respective subsidiaries.  As described

above, Hold Co holds a preferential and controlling interest in Product Co and wholly owns Experience Co (which accounts for the Debtors' digital subscription-based training platform). Product Co operates, manages and accounts for the TRX product lines such as the Suspension Trainer™, including internationally by and through Fitness Anywhere International, LLC, Fitness Anywhere Europe Cooperatief U.A. Netherlands, TRX Training Japan Co., LTD. and Fitness Anywhere UK Limited.  Additionally, as described above, the different entities were established to allow for a segregation of the equity investment made in the recapitalization, but TRX has operated as one identifiable brand in the market, and through intercompany agreements, including a management services agreement between Hold Co and Product Co wherein Hold Co provides the services of executive management that oversee the entire TRX enterprise, it also effectively operates as a consolidated business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 8th day of June, 2022, at Newport Beach, California.

_____

BRENT LEFFEL

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF BRENT LEFFEL IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b); AND (IV) GRANTING RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_June 8, 2022_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Michael J Hauser    michael.hauser@usdoj.gov**
- **Marsha A Houston    mhouston@reedsmith.com, hvalencia@reedsmith.com**
- **Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com**
- **Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **_June 8, 2022_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_June 8, 2022_**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

☐ Service information **BY OVERNIGHT MAIL** continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 8, 2022 | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**