RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>       Debtor and Debtor in Possession.<br><br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>       Debtor and Debtor in Possession.<br><br>☒  Affects both Debtors<br><br>☐  Affects TRX Holdco, LLC only<br><br>☐  Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**APPLICATION OF CHAPTER 11 DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY DUANE MORRIS LLP AS SPECIAL INTELLECTUAL PROPERTY COUNSEL PURSUANT TO 11 U.S.C. § 327(e); DECLARATION OF ALAN VILLENUEVE IN SUPPORT THEREOF**<br><br>[No hearing required unless requested – L.B.R. 2014-1(b)] |

1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE**:

TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, collectively, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases, respectfully submits this Application for authority to employ Duane Morris LLP ("DM") as the Debtors' special intellectual property counsel pursuant to 11 U.S.C. § 327(e), with compensation pursuant to 11 U.S.C. § 330, and with such employment to be effective as of the date of the Debtors' bankruptcy filings .

I.

**CASE BACKGROUND**

On June 8, 2022, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company. Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts. TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which DM be utilized effectively across fitness modalities. TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations. TRX also launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand videos and daily live classes.

Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business

1  operations as well as their continued growth. There have been many reasons for this including
2  competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did
3  not occur in an unpredictable market, and higher than anticipated development costs associated
4  with the Debtors' digital training platform and increased marketing expenses, partially attributable
5  to general increases in paid advertising. It became apparent in late 2021 that the Debtors would
6  require additional cash and investment to fund the Debtors' long-term operations and growth and
7  satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.

8        Pre-petition, the Debtors hired Kroll Securities, LLC and Integrity Square LLC to, among
9  other things, identify prospective investors and seek to obtain additional investments in the
10 Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth
11 needs, or engage in a sale transaction. The Debtors' pre-petition efforts to raise capital to pay
12 down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a
13 consummated transaction.

14       The Debtors' current financial situation is precarious in that the Debtors estimate that
15 unless they DM consummate a transaction or obtain additional financing, the Debtors will not have
16 sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively
17 impacting the Debtors' goodwill. The Debtors believe that if there was a shutdown of their
18 business with a resulting liquidation, it would be a disastrous result for creditors, including the
19 Bank.

20       Based on the foregoing, the Debtors determined in the exercise of their business judgment
21 that the best option available to the Debtors would be to conduct an expedited free and clear asset
22 sale in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors'
23 inventory falls below required operational levels and the Debtors run out of sufficient liquidity to
24 sustain operations. The Debtors believe that proceeding in this manner will afford them with the
25 best opportunity to achieve the maximum price possible for their assets for the benefit of their
26 creditors and other parties in interest. The Debtors are optimistic that this free and clear asset sale
27 process will result in a successful sale transaction closing.
28 ///

## II.

## EMPLOYMENT OF SPECIAL INTELLECTUAL PROPERTY COUNSEL

Prior to the Petition Date, starting in June 2018, when Alan Villenueve joined DM, DM began providing legal services to the Debtors related to its intellectual property ("IP"). Prior to June 2018, Mr. Villenueve provided IP legal services to the Debtor at his prior law firm. Given DM's (and in particular Mr. Villenueve's) long history of representing the Debtors as IP counsel, DM has a deep understanding and familiarity with the Debtors, their IP and the issues that arise concerning the Debtors' IP. Thus, the Debtors believe that it would be highly inefficient and prejudicial to their estates to engage new special IP counsel to represent the Debtors as any such new special IP counsel would have no familiarity or background with the Debtors' IP and have a steep and expensive learning curve.

The Debtors therefore seek to employ DM as their special IP counsel pursuant to 11 U.S.C. § 327(e) and with compensation pursuant to 11 U.S.C. § 330, at the expense of the Debtors' bankruptcy estates, and to have the Debtors' employment of DM be deemed effective on the date of the Debtors' bankruptcy filings (June 8, 2022).

The Debtors seek to employ DM as special IP counsel to provide legal services related to the Debtors' IP, including but not limited to general IP advice, patent and trademark prosecution, brand enforcement, IP litigation, management of foreign IP counsel, and maintenance of IP assets.

The Debtors believe that the retention of DM as their special IP counsel is in the best interests of their estates given DM's skill set, cost and historical deep familiarity with the Debtors and their IP.

Section 327(e) provides in pertinent part that a debtor in possession "may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. §§ 327(e) and 1107.

The two primary attorneys at DM that will be handling the Debtors' legal IP issues are

4

Alain Villeneuve and John E. Munro. Mr. Villeneuve practices in the area of intellectual property law, assisting clients across a wide array of industries in corporate, intellectual property and immigration matters. He routinely handles patent and trademark registration, monitoring and defense efforts. Mr. Villeneuve has represented clients before United States and global regulatory and enforcement boards, including the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board (USPTO) and the World Intellectual Property Organization (WIPO). A former nuclear engineer and a licensed U.S. Patent Attorney, Mr. Villeneuve is experienced in drafting patent applications in a number of fields, including mechanical, electrical, wireless and computer software, and has filed for international patent and trademark applications under the PCT and Madrid Systems. More information regarding Mr. Villeneuve's professional experience can be found by visiting the following link: https://www.duanemorris.com/attorneys/alainvilleneuve.html#tab_Biography .

Mr. Munro practices in the area of intellectual property law, guiding clients with the practical mindset of achieving their business goals. Mr. Munro prosecutes patent applications before the United States Patent and Trademark Office and assists clients in the acquisition of U.S. and foreign patent rights in diverse technologies such as software, medical devices, electro-mechanical devices, automotive systems and consumer products. He also assists clients by preparing freedom to operate and patentability opinions as well as assisting clients in the buying, selling and licensing of intellectual property assets. Additionally, Mr. Munro provides counseling in branding and trademark management including the acquisition and enforcement of trademarks in the U.S. and around the world. Mr. Munro further has experience with complex intellectual property litigation involving patent and trademark disputes. More information regarding Mr. Munro's professional experience can be found by visiting the following link: https://www.duanemorris.com/attorneys/johnemunro.html .

DM will bill its time for work performed for the Debtors in accordance with its standard hourly billing rates. Mr. Villeneuve's hourly billing rate is $725. Mr. Munro's hourly billing rate is $720.

As indicated above, the Debtors expect to consummate a sale of their assets in an expedited sale process. The Debtors do not expect that any conflict will arise resulting from DM's representation of both Debtors, and the Debtors believe that hiring separate IP counsel for each of the Debtors would be extremely burdensome, expensive, inefficient, impractical and unnecessary. In the event that any conflict issue(s) arise between the Debtors, DM will notify the Court and address such conflict that would be appropriate under the circumstances, including having one or both Debtors hiring special counsel to address the issue or conflict.

Because the majority of the assets are owned by Product Co and all or essentially all of the business operations of the Debtors are conducted by Product Co, DM proposes to bill all of its time to the Product Co bankruptcy case unless the matter deals only with the Hold Co bankruptcy case in which case DM will bill its time to the Hold Co bankruptcy case.

As set forth in the annexed Declaration of Alain Villeneuve (the "Villeneuve Declaration"), the Debtors and DM believe and assert that DM does not represent or hold any interest adverse to the Debtors or to their estates with respect to the proposed representation.

DM was not paid any pre-bankruptcy retainer in contemplation of DM's post-petition services to be provided to the Debtors as set forth in this Application. DM is seeking Court approval and the payment of a $50,000 post-petition evergreen retainer (the "Retainer") to be applied towards DM's post-petition services to be provided to the Debtors. The Retainer has not and will not be paid unless and until the Debtors' obtain Court approval to pay the Retainer.

Once paid, the Retainer will be maintained in a segregated trust account. DM requests Court authority to make monthly draws against the Retainer for all post-petition fees and expenses incurred during prior month(s), provided that DM shall submit Professional Fee Statement(s) and comply with the requirements of the United States Trustee in respect thereto before drawing on the Retainer. Any and all monthly draws will still later be subject to final approval pursuant to a fee application. As this is an evergreen Retainer, as the Retainer becomes extinguished, the Retainer will be replenished in $50,000 increments. The Debtor submits that the evergreen Retainer requested herein is necessary as DM's services are critical to protecting, preserving and maintaining the Debtors' IP, which is the backbone of the Debtors' businesses.

1  Additionally, DM submits that this relief is necessary and appropriate to assist DM with its cash flow needs as DM is required to pay its operating expenses on a continuous basis.

DM will seek Court authority to be paid from the Debtors' estates for any and all post-petition fees incurred and expenses advanced by DM during its post-petition representation of the Debtors. DM recognizes that the payment of any such post-petition fees and expenses will be subject to further Court order after notice and a hearing.

DM has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

DM will provide monthly billing statements to the Debtors that will set forth the amount of post-petition fees incurred and expenses advanced by DM during the previous month.

DM understands the provisions of 11 U.S.C. §§ 327 and 330 which require, among other things, Court approval of the Debtors' employment of DM as special IP counsel and of all legal fees and reimbursement of expenses that DM will receive from the Debtors and the Debtors' estates.

As of the Petition Dates, DM was owed the total sum of approximately $416,433.00 by the Debtors collectively for unpaid legal fees and expenses, and is therefore a pre-petition general unsecured creditor of the Debtors.

DM is not an equity security holder or an insider of the Debtors.

DM is not and was not an investment banker for any outstanding security of the Debtors. DM has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

As set forth in the Villeneuve Declaration, to the best of DM's knowledge, neither DM nor any member of DM is, nor was, within two years before the Petition Dates, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

As set forth in the Villeneuve Declaration, to the best of DM's knowledge, DM does not hold or represent any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to,

7

1  connection with, or interest in the Debtors or an investment banker for any security of the

2  Debtors, or for any other reason.

3      As further set forth in the Villeneuve Declaration, to the best of DM's knowledge, DM

4  does not hold or represent any interest materially adverse to the Debtors or the Debtors' estates

5  with respect to the matters for which DM is to be employed. While DM holds a pre-petition

6  general unsecured claim against the Debtors and their bankruptcy estates, the Debtors submit

7  that the claim does not create a materially adverse interest or a conflict which would bar the

8  Debtors' employment of DM as special IP counsel in these cases.

9      To the best of DM's knowledge, other than DM's prior representation of the Debtors and

10 DM's pre-petition general unsecured claim against the Debtors, DM has no prior connection

11 with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in

12 these cases, or their respective attorneys or accountants, the United States Trustee or any person

13 employed by the United States Trustee.

14     The Debtors believe that their employment of DM upon the terms and conditions set

15 forth herein is in the best interest of the Debtors' estates.

16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

**WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors' employment of DM as their special IP counsel upon the terms and conditions set forth herein.

Dated: June 16, 2022

TRX HOLDCO, LLC
FITNESS ANYWHERE LLC, dba TRX and TRX TRAINING

_____
Name: Michael Zuercher
Title: General Counsel

                    LEVENE, NEALE, BENDER, YOO
                    & GOLUBCHIK L.L.P.

                    By: */s/ Lindsey L. Smith*
                        Ron Bender
                        Krikor J. Meshefejian
                        Lindsey L. Smith
                        Proposed Counsel for Chapter 11 Debtors
                        and Debtors in Possession

# **DECLARATION OF ALAIN VILLENUEVE**

I, Alain Villenueve, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto. Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms as in the Application to which this Declaration is attached (the "Application").

2. I am a partner of Duane Morris, LLP ("DM").

3. TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, collectively, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases have requested that DM serve as their IP counsel in connection with their chapter 11 bankruptcy cases that the Debtors commenced on June 8, 2022 (the "Petition Date").

4. Prior to the Petition Date, starting in June 2018, when I joined DM, DM began providing legal services to the Debtors related to its intellectual property ("IP"). Prior to June 2018, I provided IP legal services to the Debtor at my prior law firm. Given DM's (and in particular my) long history of representing the Debtors as IP counsel, I believe that DM has a deep understanding and familiarity with the Debtors, their IP and the issues that arise concerning the Debtors' IP.

5. I understand that the Debtors seek to employ DM as their special IP counsel pursuant to 11 U.S.C. § 327(e) and with compensation pursuant to 11 U.S.C. § 330, at the expense of the Debtors' bankruptcy estates, and to have the Debtors' employment of DM be deemed effective on the date of the Debtors' bankruptcy filings (June 8, 2022).

6. The Debtors seek to employ GM as special IP counsel to provide legal services related to the Debtors' IP, including but not limited to general IP advice, patent and trademark prosecution, brand enforcement, IP litigation, management of foreign IP counsel, and maintenance of IP assets.

7. The two primary attorneys at DM that will be handling the Debtors' legal IP issues John E. Munro and me. My professional biography can be found by visiting the following link: https://www.duanemorris.com/attorneys/alainvilleneuve.html#tab_Biography .

8. Mr. Munro's professional biography can be found by visiting the following link: https://www.duanemorris.com/attorneys/johnemunro.html .

9. DM will bill its time for work performed for the Debtors in accordance with its standard hourly billing rates. My hourly billing rate is $725. Mr. Munro's hourly billing rate is $720.

10. I do not expect that any conflict will arise resulting from DM's representation of both Debtors, and I believe that hiring separate IP counsel for each of the Debtors would be extremely burdensome, expensive, inefficient, impractical and unnecessary. In the event that any conflict issue(s) arise between the Debtors, DM will notify the Court and address such conflict that would be appropriate under the circumstances, including having one or both Debtors hiring special counsel to address the issue or conflict.

11. Because the majority of the assets are owned by Product Co and all or essentially all of the business operations of the Debtors are conducted by Product Co, DM proposes to bill all of its time to the Product Co bankruptcy case unless the matter deals only with the Hold Co bankruptcy case in which case DM will bill its time to the Hold Co bankruptcy case.

12. I believe and assert that DM does not represent or hold any interest adverse to the Debtors or to their estates with respect to the proposed representation.

13. DM was not paid any pre-bankruptcy retainer in contemplation of DM's post-petition services to be provided to the Debtors as set forth in this Application. DM is seeking Court approval and the payment of a $50,000 post-petition evergreen retainer (the "Retainer") to be applied towards DM's post-petition services to be provided to the Debtors. The Retainer has not and will not be paid unless and until the Debtors' obtain Court approval to pay the Retainer.

14. Once paid, the Retainer will be maintained in a segregated trust account. DM requests Court authority to make monthly draws against the Retainer for all post-petition fees and expenses incurred during prior month(s), provided that DM shall submit Professional Fee

Statement(s) and comply with the requirements of the United States Trustee in respect thereto before drawing on the Retainer. Any and all monthly draws will still later be subject to final approval pursuant to a fee application. As this is an evergreen Retainer, as the Retainer becomes extinguished, the Retainer will be replenished in $50,000 increments. I submit that this relief is necessary and appropriate to assist DM with its cash flow needs as DM is required to pay its operating expenses on a continuous basis.

15. DM will seek Court authority to be paid from the Debtors' estates for any and all post-petition fees incurred and expenses advanced by DM during its post-petition representation of the Debtors. DM recognizes that the payment of any such post-petition fees and expenses will be subject to further Court order after notice and a hearing.

16. DM has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

17. DM will provide monthly billing statements to the Debtors that will set forth the amount of post-petition fees incurred and expenses advanced by DM during the previous month.

18. I understand the provisions of 11 U.S.C. §§ 327 and 330 which require, among other things, Court approval of the Debtors' employment of DM as special IP counsel and of all legal fees and reimbursement of expenses that DM will receive from the Debtors and the Debtors' estates.

19. As of the Petition Dates, DM was owed the total sum of approximately $416,433.00 by the Debtors collectively for unpaid legal fees and expenses, and is therefore a pre-petition general unsecured creditor of the Debtors.

20. DM is not an equity security holder or an insider of the Debtors.

21. DM is not and was not an investment banker for any outstanding security of the Debtors. DM has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

22. To the best of my knowledge, neither DM nor any member of DM is, nor was, within two years before the Petition Dates, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

23. To the best of my knowledge, DM does not hold or represent any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker for any security of the Debtors, or for any other reason.

24. To the best of my knowledge, DM does not hold or represent any interest materially adverse to the Debtors or the Debtors' estates with respect to the matters for which DM is to be employed. While DM holds a pre-petition general unsecured claim against the Debtors and their bankruptcy estates, I submit that the claim does not create a materially adverse interest or a conflict which would bar the Debtors' employment of DM as special IP counsel in these cases.

25. To the best of my knowledge, other than DM's prior representation of the Debtors and DM's pre-petition general unsecured claim against the Debtors, DM has no prior connection with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in these cases, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 16th day of June, 2022, at 1521 2nd Ave, Seattle, U.S.A.

ALAN VILLENUEVE, Declarant

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION OF CHAPTER 11 DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY DUANE MORRIS LLP AS SPECIAL INTELLECTUAL PROPERTY COUNSEL PURSUANT TO 11 U.S.C. § 327(e); DECLARATION OF ALAN VILLENUEVE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 17, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender**  rb@lnbyb.com
- **Shawn M Christianson**  cmcintire@buchalter.com, schristianson@buchalter.com
- **Michael I. Gottfried**  mgottfried@elkinskalt.com, cavila@elkinskalt.com
- **Jonathan Gottlieb**  jdg@lnbyg.com
- **Michael J Hauser**  michael.hauser@usdoj.gov
- **Marsha A Houston**  mhouston@reedsmith.com, hvalencia@reedsmith.com
- **Krikor J Meshefejian**  kjm@lnbyg.com
- **Christopher O Rivas**  crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Lindsey L Smith**  lls@lnbyg.com, lls@ecf.inforuptcy.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov

**2.** **SERVED BY UNITED STATES MAIL**: On (*date*) **June 17, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 17, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 17, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                              **F 9013-3.1.PROOF.SERVICE**