RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>      Debtor and Debtor in Possession.<br><br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>      Debtor and Debtor in Possession.<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF SEPARATION AND RELEASE OF CLAIMS AGREEMENT WITH JOHN HUTCHINSON; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL A. ZUERCHER IN SUPPORT**<br><br>[Application for an Order Shortening Notice Filed Concurrently Herewith]<br><br>DATE:    TBD<br>TIME:    TBD<br>PLACE:  *Via ZoomGov<br>            Courtroom 5C<br>            411 West Fourth Street<br>            Santa Ana, CA 92701 |

1

**TO JOHN HUTCHINSON:**

TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases, hereby file this motion (the "Motion") for the entry of an order authorizing the Debtors to **reject**, **effective June 8, 2022** (the date the Debtors filed their bankruptcy cases), pursuant to 11 U.S.C. § 365, that certain "Separation And Release Agreement"[1] and any agreement related thereto (collectively, the "Agreement") between the Debtors, on the one hand, and John Hutchinson, on the other hand.

The Debtors request the entry of an order authorizing the rejection of the Agreement (to the extent it is executory) pursuant to 11 U.S.C. § 365(a) because any remaining services required to be provided under the Agreement by Mr. Hutchinson are no longer necessary to the Debtors, and the Agreement provides no benefit to the Debtors' estates going forward. While the Debtors would dispute any contention that the Agreement gives rise to any post-petition, administrative obligation of either of the Debtors' estates, or that the severance payments due thereunder constitute administrative obligations, in order to avoid any doubt and to ensure that the Debtors' estates are not burdened by any administrative obligations as they relate to the Agreement, the Debtors, in their business judgment, have determined to reject the Agreement.

**ADDITIONAL INFORMATION**

This Motion is based on 11 U.S.C § 365, Rule 6006 of the Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules 2081-1 and 9075-1, the Notice of Motion, the Memorandum attached hereto, the Declaration of Michael A. Zuercher annexed to this Motion, the entire record in this case, the arguments of counsel made at the hearing, if any, on this Motion, and any other evidence properly presented to the Court at or prior to any hearing on this Motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

---

[1] The inclusion of a contract in this Motion does not constitute an admission that such contract or lease has not already terminated, or that such contract is or is not executory. The Debtors seeks authority to reject such contracts to the extent such contracts are executory.

2

(1) granting this Motion in its entirety;

(2) authorizing the Debtors to reject the Agreement, with such rejection to be deemed effective as of June 8, 2022; and

(3) granting such further and other relief as the Court deems just and proper.

Dated: June 17, 2022

TRX HOLDCO, LLC
FITNESS ANYWHERE LLC

By: */s/ Ron Bender*
RON BENDER
KRIKOR J. MESHEFEJIAN
LINDSEY L. SMITH
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Background Information.**

1.    The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company. Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.[2] TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities. TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations. TRX also launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand video and daily live classes.

2.    Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth. It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.[3]

---

[2] Hold Co holds a preferential and controlling interest in Product Co. Hold Co also wholly owns TRXperience, LLC ("Experience Co"). Experience Co has not filed a bankruptcy case. Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

[3] Product Co and Woodforest National Bank are parties to a Credit Agreement, dated as of December 26, 2018, as amended, pursuant to which Product Co obtained from the Bank a term loan in the principal amount of $10,875,000, a term loan in the principal amount of $1,000,000,

3.  Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction. The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

4.  The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill. The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors.

5.  Despite these challenges, the Debtors believes that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history. Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

6.  Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale in a chapter 11 bankruptcy proceeding and consummate that asset sale before the

---

and revolving loans in the principal and outstanding amount of $7,500,000, for a total principal balance of $19,375,000, which are secured by substantially all assets of the Debtors, and which are guaranteed by Hold Co, Experience Co and Fitness Anywhere International, LLC.

Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.[4]  The Debtors believe that proceeding in this manner will afford them with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.  The Debtors are optimistic that this free and clear asset sale process will result in a successful sale transaction closing.

C.  **The Separation And Release Agreement.**

7.  On or about July 9, 2021, the Debtors and John Hutchinson (a former executive of the Debtors) entered into that certain "Separation And Release Agreement" in connection with and involving an Employment Agreement between the Debtors and Mr. Hutchinson.  The "Separation And Release Agreement" and any agreements related thereto, such as, for example, the Employment Agreement, are referred to herein as the "Agreement."[5]

8.  The Agreement provides, among other things, for: (a) the separation of Mr. Hutchinson from his executive position with the Debtors effective July 2, 2021; (b) certain transition services and consulting services to be provided by Mr. Hutchinson during certain periods of time post-separation; and (c) cash severance payments to Mr. Hutchinson in a gross amount equal to $350,000, in twelve (12) monthly installments of $29,166.67, and other benefits.  As of the Petition Date, there remained two (2) monthly installments due to Mr. Hutchinson.[6]

9.  Any remaining services required to be provided under the Agreement by Mr. Hutchinson are no longer necessary to the Debtors, and the Agreement provides no benefit to the Debtors' estates going forward.  While the Debtors would dispute any contention that the Agreement gives rise to any post-petition, administrative obligation of either of the Debtors' estates, or that the remaining severance payments or any other obligation due thereunder

---

[4] While the Debtors' Budgets reflect that the Debtors are projected to have sufficient cash during the term of the Budgets to fund the expenses in the Budgets, the Budgets do not include any additional purchases of inventory.

[5] The Debtors have not attached a copy of the Agreement to this Motion in order to maintain some confidentiality with respect to the terms and provisions thereof.

[6] The Debtors retracted a post-petition payment to Mr. Hutchinson which was scheduled to be made on June 17, 2022, as the Debtors believe that all of the remaining payments due under the Agreement constitute pre-petition obligations the Debtors are not authorized to pay.

constitute administrative obligations, in order to avoid any doubt and to ensure that the Debtors' estates are not burdened by any administrative obligations as they relate to the Agreement, the Debtors, in their business judgment, have determined to reject the Agreement.

## II.

## DISCUSSION

**A.    Rejection Of The Agreement (To The Extent It Is Deemed To Be Executory) Is In The Estate's Best Interest.**

Barring certain exceptions not relevant here, 11 U.S.C. §§ 365(a) and 1107(a) authorize a debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor in possession may assume or reject executory contracts and unexpired leases for the benefit of the estate. *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996).

In determining whether to authorize the assumption or rejection of an executory contract "a bankruptcy court need engage in 'only a cursory review of a [debtor-in-possession]'s decision…. Specifically, a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s…decision ....'" *In re Player's Poker Club, Inc.*, 636 B.R. 811, 817 (Bankr. C.D. Cal. 2022); *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (citing *Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir.2000) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984))); *see also In re Chi–Feng Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982) (citing cases).

"[T]he bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Player's Poker Club, Inc.*, 636 B.R. at 817; *In re Pomona Valley Med. Gro., Inc.*, 476 F.3d at 670 (citing *Navellier v. Sletten,* 262 F.3d 923, 946 n. 12 (9th Cir. 2001), *FDIC v. Castetter,* 184 F.3d 1040, 1043 (9th Cir.1999), and *In re Miller*, 2016 WL 1316763, at *6 (Bankr. D. Mont. Apr. 1, 2016) ("This Court focuses on the business

judgment of the Debtor, not on its own business judgment…. The Court should approve the decision…unless it finds that the Debtor's conclusion that acceptance would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim or caprice.")).

In *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310 (Bankr. D. Utah 1981), the bankruptcy court explained why deference is given to the debtor in possession's decision to assume or reject an executory contract or unexpired lease:

> "*[Court approval under section 365(a),] if required, except in extraordinary situations, should be granted as a matter of course.* To begin, this rule places responsibility for administering the estate with the trustee (debtor in possession), not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the Code. Seconds this rule expedites the administration of estates, another goal of the Bankruptcy Reform Act. Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements. Fourth, the rule is supported by pre-Code cases in this Circuit."

*Id.* at 315 (emphasis added).

The Debtors no longer require any of the services under the Agreement and do not wish to subject their bankruptcy estates to any potential administrative expense claims under the Agreement. The Agreement provides no benefit to the Debtors' estates going forward. While the Debtors would dispute any contention that the Agreement gives rise to any post-petition, administrative obligation of either of the Debtors' estate, or that the remaining severance payments or any other obligation due thereunder constitute administrative obligations, in order to avoid any doubt and to ensure that the Debtors' estates are not burdened by any administrative obligations as they relate to the Agreement, the Debtors, in their business judgment, have determined to reject the Agreement.

**B.     The Court Should Deem The Agreement Rejected Effective As Of The Petition Date.**

In deciding whether retroactive rejection is warranted bankruptcy courts consider nonexclusive factors such as: (1) the immediate filing of the motion to reject; (2) the Debtors' prompt action setting the motion for hearing; (3) the Debtors' efforts to mitigate issues; and (4) the counterparties' motivation in opposing retroactive rejection. *See In re New Meatco Provisions, LLC*, 2014 WL 2446314, at *4 (B.A.P. 9th Cir. May 30, 2014). "[C]ourts have held that bankruptcy courts may exercise their equitable powers in granting such a retroactive order when doing so promotes the purposes of Section 365(a). Courts have further held that the retroactive rejection of executory contracts and unexpired leases may be approved 'after balancing the equities' of a case and concluding that such equities weigh in favor of the debtor." *See In re Extraction Oil & Gas*, 622 B.R. 608, 630 (Bankr. D. Del. 2020) (internal citations omitted).

Here, retroactive rejection is warranted for the following reasons: (1) the Debtors filed this Motion as soon as possible after the issues related to the Agreement and future potential obligations thereunder came to the Debtors' attention and a determination was made to proceed with rejecting the Agreement; (2) the Debtors have requested an expedited hearing on the Motion; (3) the Debtors have not utilized any of the services of Mr. Hutchinson post-petition, requested that Mr. Hutchinson perform any services or provide anything of value to the Debtors' estates; (4) the Debtors have informed Mr. Hutchinson that they are not authorized to pay any pre-petition obligations and they intend to reject the Agreement; and (5) the Debtors do not believe Mr. Hutchinson has grounds to oppose, or will oppose, retroactive rejection. Accordingly, retroactive rejection is appropriate.

///
///
///
///
///
///

## III.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

(1) granting this Motion in its entirety;

(2) authorizing the Debtors to reject the Agreement, with such rejection to be deemed effective as of June 8, 2022; and

(3) granting such further and other relief as the Court deems just and proper.

Dated: June 17, 2022	TRX HOLDCO, LLC
	FITNESS ANYWHERE LLC

	By:  */s/ Ron Bender*
	     RON BENDER
	     KRIKOR J. MESHEFEJIAN
	     LINDSEY L. SMITH
	     LEVENE, NEALE, BENDER,
	     YOO & GOLUBCHIK L.L.P.
	     Proposed Attorneys for Chapter 11 Debtors
	     and Debtors in Possession

# DECLARATION OF MICHAEL ZUERCHER

I, Michael Zuercher, Esq., hereby declare under penalty of perjury as follows:

1. I am the General Counsel and Secretary of TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co, the "Debtors"), and I have held this position since approximately January 2019. I am responsible for the day-to-day management and oversight of the legal and human resources operations of the Debtors. My duties include: (i) serving as general counsel on all matters impacting the Debtors, including corporate matters; commercial agreements; labor; intellectual property; management of outside counsel; and other general legal and management matters; and (ii) oversight of human resources functions, including employee relations, recruiting, payroll and compliance. I have personal knowledge of the facts set forth in this Declaration and if called as a witness, could and would testify competently with respect thereof. Capitalized terms not otherwise defined have the same meaning provided to such terms in the Motion above.

2. The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company. Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.[7] TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities. TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations. TRX also launched in 2021 a purpose-built digital subscription-based

---

[7] Hold Co holds a preferential and controlling interest in Product Co. Hold Co also wholly owns TRXperience, LLC ("Experience Co"). Experience Co has not filed a bankruptcy case. Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

platform - the TRX Training Club® - that offers a library of on-demand video and daily live classes.

3. Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth. It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.[8]

4. Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction. The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

5. The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill. The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors.

6. Despite these challenges, the Debtors believes that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize

---

[8] Product Co and Woodforest National Bank are parties to a Credit Agreement, dated as of December 26, 2018, as amended, pursuant to which Product Co obtained from the Bank a term loan in the principal amount of $10,875,000, a term loan in the principal amount of $1,000,000, and revolving loans in the principal and outstanding amount of $7,500,000, for a total principal balance of $19,375,000, which are secured by substantially all assets of the Debtors, and which are guaranteed by Hold Co, Experience Co and Fitness Anywhere International, LLC.

on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history.  Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

7. Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.[9]  The Debtors believe that proceeding in this manner will afford them with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.  The Debtors are optimistic that this free and clear asset sale process will result in a successful sale transaction closing.

8. On or about July 9, 2021, the Debtors and John Hutchinson (a former executive of the Debtors) entered into that certain "Separation And Release Agreement" in connection with and involving an Employment Agreement between the Debtors and Mr. Hutchinson.  The "Separation And Release Agreement" and any agreements related thereto, such as, for example, the Employment Agreement, are referred to herein as the "Agreement."

9. The Agreement provides, among other things, for: (a) the separation of Mr. Hutchinson from his executive position with the Debtors effective July 2, 2021; (b) certain transition services and consulting services to be provided by Mr. Hutchinson during certain periods of time post-separation; and (c) cash severance payments to Mr. Hutchinson in a gross

---

[9] While the Debtors' Budgets reflect that the Debtors are projected to have sufficient cash during the term of the Budgets to fund the expenses in the Budgets, the Budgets do not include any additional purchases of inventory.

13

amount equal to $350,000, in twelve (12) monthly installments of $29,166.67, and other benefits. As of the Petition Date, there remained two (2) monthly installments due to Mr. Hutchinson.

10. The Debtors retracted a post-petition payment to Mr. Hutchinson which was scheduled to be made on June 17, 2022, as the Debtors believe that all of the remaining payments due under the Agreement constitute pre-petition obligations the Debtors are not authorized to pay.

11. Any remaining services required to be provided under the Agreement by Mr. Hutchinson are no longer necessary to the Debtors, and the Agreement provides no benefit to the Debtors' estates going forward. While the Debtors would dispute any contention that the Agreement gives rise to any post-petition, administrative obligation of either of the Debtors' estates, or that the remaining severance payments or any other obligation due thereunder constitute administrative obligations, in order to avoid any doubt and to ensure that the Debtors' estates are not burdened by any administrative obligations as they relate to the Agreement, the Debtors, in their business judgment, have determined to reject the Agreement.

12. The Debtors filed this Motion as soon as possible after the issues related to the Agreement and future potential obligations thereunder came to the Debtors' attention and a determination was made to proceed with rejecting the Agreement.

13. The Debtors have requested an expedited hearing on the Motion.

14. The Debtors have not utilized any of the services of Mr. Hutchinson post-petition, requested that Mr. Hutchinson perform any services or provide anything of value to the Debtors' estates.

///
///
///
///
///
///

15. I have informed Mr. Hutchinson that the Debtors are not authorized to pay any pre-petition obligations and the Debtors' intend to reject the Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 17th day of June, 2022, at Palos Verdes Estates, California.

_____

MICHAEL ZUERCHER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF SEPARATION AND RELEASE OF CLAIMS AGREEMENT WITH JOHN HUTCHINSON; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL A. ZUERCHER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 17, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender**     rb@lnbyb.com
- **Shawn M Christianson**     cmcintire@buchalter.com, schristianson@buchalter.com
- **Michael I. Gottfried**     mgottfried@elkinskalt.com, cavila@elkinskalt.com
- **Jonathan Gottlieb**     jdg@lnbyg.com
- **Michael J Hauser**     michael.hauser@usdoj.gov
- **Marsha A Houston**     mhouston@reedsmith.com, hvalencia@reedsmith.com
- **Krikor J Meshefejian**     kjm@lnbyg.com
- **Ali M Mojdehi**     amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com;amattingly@btlaw.com
- **Christopher O Rivas**     crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Lindsey L Smith**     lls@lnbyg.com, lls@ecf.inforuptcy.com
- **United States Trustee (SA)**     ustpregion16.sa.ecf@usdoj.gov

**2**. **SERVED BY UNITED STATES MAIL**: On (*date*) **June 17, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3**. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 17, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

**SERVED BY OVERNIGHT MAIL,**
John Hutchinson
665 Blair Avenue
Piedmont CA 94611

☐ Service information **BY OVERNIGHT MAIL** continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*     **F 9013-3.1.PROOF.SERVICE**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 17, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**