RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>        Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>        Debtor and Debtor in Possession.<br>_____<br><br>☒  Affects both Debtors<br><br>☐  Affects TRX Holdco, LLC only<br><br>☐  Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**APPLICATION OF CHAPTER 11 DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY KROLL, SECURITIES, LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. § 327(a); DECLARATION OF JOSHUA BENN IN SUPPORT THEREOF**<br><br>[No hearing required unless requested – L.B.R. 2014-1(b)] |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE**:

TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, collectively, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases, respectfully submits this Application to employ Kroll Securities, LLC ("Kroll") as the Debtors' exclusive investment banker, pursuant to 11 U.S.C. § 327 and 328, effective as of June 8, 2022, the date of the filing of the Debtors' bankruptcy cases, upon the terms and conditions set forth in the engagement letter (the "Retention Agreement") between the Debtors and Kroll and as modified herein and described below. A copy of the Retention Agreement is attached as **Exhibit 1** to the Declaration of Joshua Benn annexed hereto (the "Benn Declaration").

## I.

## CASE BACKGROUND

On June 8, 2022, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company.  Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.  TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities.  TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations.  TRX also

launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand videos and daily live classes.

Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth.  There have been many reasons for this including competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did not occur in an unpredictable market, and higher than anticipated development costs associated with the Debtors' digital training platform and increased marketing expenses, partially attributable to general increases in paid advertising.  It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.

Pre-petition, the Debtors hired Kroll and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction.  The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill.  The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors, including the secured creditor.

Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.  The Debtors believe that proceeding in this manner will afford them with the

best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.  The Debtors are optimistic that this free and clear asset sale process will result in a successful sale transaction closing.

## II.

## EMPLOYMENT OF INVESTMENT BANKER

The Debtors require the services of an investment banker to aid the Debtors with the sale transaction of substantially all of their assets. Engaging an investment banker will ensure that the highest price possible is paid for the Debtors' assets.

The Debtors decided to engage Kroll based on, among other things, Kroll's extensive experience in investment banking services to public and private companies for a broad range of transactions including advice on mergers and acquisitions and guidance on strategic decisions. True and correct copies of the professional résumés of Joshua Benn, Brian Cullen and Vijay R. Sampath who will be the professionals at Kroll primarily responsible for working on the Debtors' cases, are collectively attached to the Benn Declaration as Exhibit "2."  Based on Kroll's extensive experience in providing investment banking services in connection with mergers and acquisitions and Kroll's intimate knowledge of the Debtors' business and sale plan based on Kroll's pre-petition relationship with the Debtors, the Debtors believe that Kroll is well qualified to act as the Debtors' exclusive investment banker in conjunction with a sale of the Debtors' assets and that Kroll will allow the Debtors to obtain the highest and best price for their assets, which will benefit all creditors.

A summary of the terms of the Retention Agreement with Kroll, a copy of which is attached as **Exhibit 1** to the Benn Declaration, are as follows:

- Kroll will provide, among others, the following services:

  o Support the Debtors in financial modelling, data analysis, board presentations, materials for investors, etc.

  o Take a lead position in interfacing with key capital structure constituents (board of directors, lender(s), creditors, existing equity holders, legal

advisors, etc.), including attendance at board meetings, as requested (virtually being acceptable), to present/ discuss Restructuring-related matters.

o   Prepare a list(s) of potential purchasers and/or investors and present it to the Debtors for approval.

o   Contact potential purchasers and/or investors who are approved by the Debtors to solicit their interest in the Restructuring and to provide them with the marketing materials under a confidential disclosure agreement which has been approved by the Debtors.

o   Exert efforts to procure a potential purchaser or investor at the earliest, reasonably practical date who is ready, willing and able to consummate a Restructuring on terms satisfactory to the Debtors.

o   Participate in due diligence visits, meetings and consultations between the Debtors and seriously interested purchasers or investors and coordinate distribution of marketing materials to such parties.

o   Organize and execute a negotiating process with the objective of obtaining the best transaction valuation and terms.

o   Assist the Debtors with evaluating offers and indications of interest.

o   Assist the Debtors in negotiating agreements and definitive contracts.

o   Attend auctions and, to the extent required, provide affidavits in support, in any U.S. Bankruptcy Court with respect to any matters in connection with or arising out of the Retention Agreement.

•   Kroll will identify buyers for the Debtors' assets and seek to consummate a sale of the Debtors' assets by, among other things:

•   In the event of a sale, Kroll's fee (the "Transaction Fee") shall equal to $700,000 plus (a) 6.0% of the consideration greater than $25,000,000 but less than or equal to $40,000,000, and (b) 12% of the consideration greater than $40,000,000.

- Notwithstanding what is set for in paragraph 3 of the Retention Agreement regarding the payment of the timing of the Transaction Fee, the Transaction Fee shall only be paid after the closing of the sale of the Debtors' assets AND bankruptcy court approval of the Transaction Fee and the payment thereof

- The Debtors shall reimburse Kroll, from time to time upon request, for its reasonable out-of pocket and incidental expenses as documented for travel, meals, lodging, and other miscellaneous expenses incurred during the term, and in furtherance of its engagement hereunder. The Debtors further agree to reimburse Kroll for certain allocated expenses (including but not limited to printing and production costs, industry research, telephone conferencing lines, courier, messenger, and delivery charges). The amount of such allocated expenses shall not exceed $10,000 without the Debtors' prior written approval.

- Notwithstanding what is set forth in paragraph 19 of the Retention Agreement, Kroll and the Debtors agree that this Bankruptcy Court shall have the sole and exclusive jurisdiction to deal with any dispute related to the Retention Agreement.

The fee and expense structure described above was negotiated at arms' length, and the Debtors believe that it constitutes fair and reasonable terms and conditions for the retention by the Debtors of Kroll as its investment banker in accordance with sections 327(a) and 328(a) of the Bankruptcy Code.  The Debtors believe that the fees and expenses sought are comparable to compensation generally charged by other firms of similar stature to Kroll for comparable engagements, both in and out of bankruptcy.  The Debtor also has been advised by Kroll that the fees sought are consistent with Kroll's normal and customary billing practices for a case of this size and complexity, which require the level and scope of services outlined. The fee structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of Kroll and its professionals, that such commitment may foreclose other opportunities for Kroll, and that the actual time and commitment required of Kroll and its

professionals to perform the services hereunder may vary substantially from week to week or month to month.

In April of 2022 Kroll was paid by the Debtors $25,000 in connection with services performed prior to the Petition Date related to a past marketing campaign. Except for the foregoing,  Kroll has not been paid any money by the Debtors. Kroll does not have a claim on account of prepetition services. Kroll has not received any lien or other interest in property of the Debtors or of a third party to secure payment of Kroll's fees or expenses.

Kroll has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

Kroll understands the provisions of 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Debtors' employment of Kroll as exclusive investment banker and of all fees and reimbursement of expenses that Kroll will receive from the Debtors and the Debtors' estates.

Kroll will seek Court approval for the payment of any fees pursuant to 11 U.S.C. § 328.

Kroll understands the provisions of 11 U.S.C. §§ 327(a) and 328, which require, among other things, Court approval of the Debtors' employment of Kroll as investment banker and of the payment of all fees and expenses that Kroll will receive from the Debtors and the Debtors' estates.

Kroll is not an equity security holder or an insider of the Debtors.

The Debtors have engaged Kroll, LLC, an entity related to Kroll, as their financial advisor in connection with their chapter 11 bankruptcy cases. The Debtors have filed a separate employment application to employ Kroll, LLC as their financial advisors.

As set forth above, prior to the Petition Date, the Debtors previously employed Kroll as their investment banker.

In prior years, Mr. Benn has worked with Brent Leffel, Chairman of the Debtors, on mergers and acquisitions and reorganizations of other entities unrelated to the Debtors. To the best of its knowledge, except as set forth herein, Kroll does not have any previous connection with any insider of the Debtors or any insider of an insider of the Debtors.

As set forth in the annexed Benn Declaration, to the best of Kroll's knowledge, Kroll does not hold or represent any interest materially adverse to the Debtors or their estates, and Kroll is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Also, to the best of Kroll's knowledge, except as set forth herein, Kroll has no prior connection with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in the Debtors' cases, or any of their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

Except as set forth herein, neither Kroll nor any member of Kroll is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

The Debtors believe that their employment of Kroll upon the terms and conditions set forth above is in the best interest of the Debtors' estates.

**WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors' employment of Kroll as their investment banker upon the terms and conditions set forth herein.

Dated: June 17, 2022

TRX HOLDCO, LLC
FITNESS ANYWHERE LLC, dba TRX and TRX TRAINING

_____
Name: Michael Zuercher
Title: General Counsel


                                    LEVENE, NEALE, BENDER, YOO
                                    & GOLUBCHIK L.L.P.

                                    By: _/s/ Lindsey L. Smith_____
                                          Ron Bender
                                          Krikor J. Meshefejian
                                          Lindsey L. Smith
                                          Proposed Counsel for Chapter 11 Debtors
                                          and Debtors in Possession

## DECLARATION OF JOSHUA BENN

I, Joshua Benn, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto. Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms as in the Application to which this Declaration is attached (the "Application").

2.      I am a managing director at Kroll Securities, LLC ("Kroll"). I am the head of Kroll's Americas Investment Banking business and lead the firm's global consumer investment banking practice.

3.      TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, collectively, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases have requested that Kroll serve as the Debtors' exclusive investment banker and be employed pursuant to 11 U.S.C. § 327 and 328, effective as of June 8, 2022, the date of the filing of the Debtors' bankruptcy cases, upon the terms and conditions set forth in the engagement letter (the "Retention Agreement") between the Debtors and Kroll and as modified herein in the Application. A copy of the Retention Agreement is attached hereto as **Exhibit 1**.

4.      The Debtors require the services of an investment banker to aid the Debtors with the sale transaction of substantially all of their assets. I believe that engaging an investment banker will ensure that the highest price possible is paid for the Debtors' assets.

5.      Kroll has extensive experience in investment banking services to public and private companies for a broad range of transactions including advice on mergers and acquisitions and guidance on strategic decisions. True and correct copies my professional résumé and the professional résumés of Brian Cullen and Vijay R. Sampath, who will be the professionals at Kroll primarily responsible for working on the Debtors' cases, are collectively attached hereto as Exhibit "2."

6.     Based on Kroll's extensive experience in providing investment banking services in connection with mergers and acquisitions and Kroll's intimate knowledge of the Debtors' business and sale plan based on Kroll's pre-petition relationship with the Debtors, I believe that Kroll is well qualified to act as the Debtors' exclusive investment banker in conjunction with a sale of the Debtors' assets and that Kroll will allow the Debtors to obtain the highest and best price for their assets, which will benefit all creditors.

7.     Notwithstanding what is set for in paragraph 3 of the Retention Agreement regarding the payment of the timing of the Transaction Fee, the Transaction Fee shall only be paid after the closing of the sale of the Debtors' assets AND bankruptcy court approval of the Transaction Fee and the payment thereof

8.     Notwithstanding what is set forth in paragraph 19 of the Retention Agreement, Kroll agrees that this Bankruptcy Court shall have the sole and exclusive jurisdiction to deal with any dispute related to the Retention Agreement.

9.     The fee and expense structure described in the Application was negotiated at arms' length, I believe that it constitutes fair and reasonable terms and conditions for the retention by the Debtors of Kroll as its investment banker in accordance with sections 327(a) and 328(a) of the Bankruptcy Code.  I believe that the fees and expenses sought are comparable to compensation generally charged by other firms of similar stature to Kroll for comparable engagements, both in and out of bankruptcy.  The fees sought are consistent with Kroll's normal and customary billing practices for a case of this size and complexity, which require the level and scope of services outlined. The fee structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of Kroll and its professionals, that such commitment may foreclose other opportunities for Kroll, and that the actual time and commitment required of Kroll and its professionals to perform the services hereunder may vary substantially from week to week or month to month.

10.    In April of 2022 Kroll was paid by the Debtors $25,000 in connection with services performed prior to the Petition Date related to a past marketing campaign. Except for the foregoing, Kroll has not been paid any money by the Debtors.

11.    Kroll does not have a claim on account of prepetition services. Kroll has not received any lien or other interest in property of the Debtors or of a third party to secure payment of Kroll's fees or expenses.

12.    Kroll has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

13.    I understand the provisions of 11 U.S.C. §§ 327 and 328, which require, among other things, Court approval of the Debtors' employment of Kroll as exclusive investment banker and of all fees and reimbursement of expenses that Kroll will receive from the Debtors and the Debtors' estates.

14.    Kroll will seek Court approval for the payment of any fees pursuant to 11 U.S.C. § 328.

15.    I understand the provisions of 11 U.S.C. §§ 327(a) and 328, which require, among other things, Court approval of the Debtors' employment of Kroll as investment banker and of the payment of all fees and expenses that Kroll will receive from the Debtors and the Debtors' estates.

16.    Kroll is not an equity security holder or an insider of the Debtors.

17.    I understand that the Debtors have engaged Kroll, LLC, an entity related to Kroll, as their financial advisor in connection with their chapter 11 bankruptcy cases.

18.    In prior years, I have worked with Brent Leffel, Chairman of the Debtors, on mergers and acquisitions and reorganizations of other entities unrelated to the Debtors. To the best of my knowledge, except as set forth herein, Kroll does not have any previous connection with any insider of the Debtors or any insider of an insider of the Debtors.

19.    Kroll and its related entities are large and diverse global financial services firms that provides a wide variety of services across a number of fields. In connection with its proposed retention by the Debtors, Kroll obtained from the Debtors and/or their counsel the names of

individuals and entities that may be parties-in-interest in these chapter 11 cases (the "Potential Parties in Interest"). Kroll then compared the names of the Potential Parties in Interest with the names of entities that have entered into engagement agreements with Kroll and its related entities in the last three years. This inquiry did reveal that some of the Potential Parties in Interest (or their apparent affiliates or entities that Kroll believes to be affiliates, as the case may be) did enter into engagement agreements within the last three years with other Kroll entities, but not with Kroll Securities, LLC, which is the corporate finance business unit within the Kroll family and the entity that the Debtors are seeking to employ.

20.    Due to the size of Kroll and the breadth of Kroll's client base, it is possible that Kroll may now or in the future be retained by one or more of the Potential Parties in Interest in unrelated matters without my knowledge. To the extent that Kroll discovers or enters into any new, material relationship with Potential Parties in Interest, it will supplement this Declaration.

21.    To the best of my knowledge, Kroll does not hold or represent any interest materially adverse to the Debtors or their estates, and Kroll is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code. Also, to the best of my knowledge, except as set forth herein, Kroll has no prior connection with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in the Debtors' cases, or any of their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

22.    Except as set forth herein, neither Kroll nor any member of Kroll is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 17 day of June, 2022, at New York, New York.

JOSHUA BENN, Declarant

# EXHIBIT "1"

## [RENTENTION AGREEMENT]



June 6, 2022

Mr. Brent Leffel
Chairman
TRX Holdco, LLC and Fitness Anywhere LLC
450 Newport Center Drive, Suite 590
Newport Beach, CA 92660

Dear Brent:

We are pleased to confirm our mutual understanding ("Agreement") regarding the retention of Kroll Securities, LLC ("Kroll") by TRX Holdco, LLC and, for the avoidance of doubt, any and all of its affiliates and subsidiaries, including Fitness Anywhere LLC (herein referred to as "TRX" or the "Company") to act as its financial advisor in connection with a possible Restructuring (as defined in Section 4(a) below). The Company, by executing this letter, acknowledges and agrees to be responsible for the payment and other obligations to Kroll, and agrees to be bound by the acknowledgements made by it in this Agreement.

1.      In connection with the Restructuring, Kroll will provide the Company with the following services:

      a.      Support the Company in financial modelling, data analysis, board presentations, materials for investors, etc..

      b.      Take a lead position in interfacing with key capital structure constituents (board of directors, lender(s), creditors, existing equityholders, legal advisors, etc.), including attendance at board meetings, as requested (virtually being acceptable), to present / discuss Restructuring-related matters.

      c.      Prepare a list(s) of potential purchasers and/or investors and present it to the Company for approval.

      d.      Contact potential purchasers and/or investors who are approved by the Company to solicit their interest in the Restructuring and to provide them with the marketing materials under a confidential disclosure agreement which has been approved by the Company.

      e.      Exert efforts to procure a potential purchaser or investor at the earliest, reasonably practical date who is ready, willing and able to consummate a Restructuring on terms satisfactory to the Company.

      f.      Participate in due diligence visits, meetings and consultations between the Company and seriously interested purchasers or investors and coordinate distribution of marketing materials to such parties.

      g.      Organize and execute a negotiating process with the objective of obtaining the best transaction valuation and terms.

      h.      Assist the Company with evaluating offers and indications of interest.

      i.      Assist the Company in negotiating agreements and definitive contracts.

kroll.com

Kroll Securities, LLC
55 East 52nd Street
17th Floor
New York, NY 06830

T:  (212) 450-2840

Member: FINRA/SIPC

j.  Attend auctions and, to the extent required, provide affidavits in support, in any U.S. Bankruptcy Court with respect to any matters in connection with or arising out of this Agreement.

Additionally, Kroll will be separately compensated for any testimony (in excess of 50 hours) in any court with respect to any matters in connection with or arising out of this Agreement at its standard hourly rates, in addition to any fees due hereunder. In performing its services pursuant to this Agreement, Kroll is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring or other transaction; and Kroll will not act or be deemed to have acted or assumed the duties of acting, in any managerial or fiduciary capacity whatsoever for the Company. Kroll makes no representations or warranties concerning the Company's ability to improve its operations, maintain or secure sufficient liquidity to operate its business or successfully complete a Restructuring or other transaction. The Company agrees that Kroll shall not have any obligation or responsibility to provide any valuation opinions, fairness opinions, or any opinions with respect to solvency in connection with any Restructuring but may provide advice with respect to the foregoing to the Company in connection with the performance of the financial advisory duties described above. The Company confirms that it will rely on its own counsel, accountants, and similar expert advisors for legal, accounting, tax and other similar advice.

2.  The Company warrants and represents that, to the best of its knowledge, all information provided or otherwise made available to Kroll by or on behalf of the Company will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made. The Company further warrants and represents that any projections provided by it to Kroll will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Company acknowledges and agrees that in rendering its services hereunder Kroll will be using and relying on the information provided by and on behalf of the Company without independent verification thereof by Kroll and without independent appraisal by Kroll of any Company assets. Kroll assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company or any other information regarding the Company provided or otherwise made available to Kroll.

3.  If a Restructuring occurs (i) during the term of Kroll's engagement hereunder or (ii) at any time during the nine (9) month period following the effective date of termination of Kroll's engagement hereunder, the Company agrees to pay Kroll a non-refundable transaction fee ("Restructuring Transaction Fee") equal to $700,000 plus (a) 6.0% of the Consideration greater than $25,000,000 but less than or equal to $40,000,000, and (b) 12.0% of the Consideration greater than $40,000,000. For the avoidance of doubt, the Restructuring Transaction Fee shall be paid to Kroll at the earliest date that the Restructuring is approved by the U.S. Bankruptcy Court.

4.  For purposes of this Agreement:

a.  "Restructuring" shall mean any transaction or series of transactions that constitute a sale, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") or Article 9 of the Uniform Commercial code and/or any applicable state law, recapitalization or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations), including accrued and or accreted interest thereon, which are outstanding as of the date of this Agreement, including, without limitation, interest bearing trade debt which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization under the

2

Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the Company's equity and/or debt securities (such modification or amendment shall include, without limitation, any forbearance for at least six months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Restructuring "); provided, however, that continued forbearance by the Company's lenders shall not, without more, constitute a Restructuring.

b.   "Consideration" shall mean the aggregate value of all cash, securities and other property paid in connection with the Restructuring, including all indebtedness of the Company repaid or assumed, directly or indirectly, (by operation of law or otherwise) in connection with the Restructuring.  In the event that the Consideration received in a Restructuring is paid in whole or in part in the form of securities or other property, then, for purposes of calculating Kroll's fees hereunder, the value of such securities or other property shall be the fair market value thereof on the day immediately preceding the consummation of the Restructuring; provided, however, that if such securities consist of securities with an existing public trading market, the value thereof shall be determined by the average of the last sales prices of such securities on the 30 trading days immediately preceding the consummation of the Restructuring.  Any amounts payable to the Company, any shareholder of the Company or any affiliate of the Company in connection with a noncompetition, employment, consulting, licensing, supply or other agreement shall be deemed Consideration except in the case of employment or consulting agreement to the extent such amounts represent the fair value of services to be rendered.  If all or a portion of the Consideration payable in connection with the Restructuring includes contingent future payments (excluding any amount(s) placed in escrow), then the portion of the Restructuring Transaction Fee attributable to such Consideration will be paid to Kroll at the time the Company receives such Consideration.  If the Consideration to be paid is computed in a foreign currency, the value of such foreign currency, for purposes of calculating Kroll's fees hereunder, shall be converted into U.S. Dollars at the prevailing exchange rate on the date on which the Restructuring is consummated.

5.   In the event the Company commences a case under Chapter 11 of the Bankruptcy Code ("Chapter 11"), this Agreement is subject to the entry of an order of the court having jurisdiction over such Chapter 11 case approving the retention of Kroll pursuant to the terms hereof. The Company shall use commercially reasonable efforts to seek within ten (10) days of such case commencement court authorization of the retention of Kroll, nunc pro tunc to the date of this Agreement or (to the extent this Agreement pre-dates the Chapter 11 case commencement date), the commencement date of the Company's reorganization case, on the terms and provisions in this Agreement pursuant to section 328(a) of the Bankruptcy Code. The Company shall supply Kroll with a draft of the retention application and proposed order prior to the filing of that application and proposed order to enable Kroll and its counsel to review and comment thereon. The form of order approving the Agreement and authorizing the retention of Kroll shall be acceptable to Kroll in its sole discretion. If the order authorizing the employment of Kroll is not obtained or is later reversed or set aside for any reason, Kroll may terminate this Agreement, and the Company shall reimburse Kroll for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code. The parties acknowledge that a substantial professional commitment of time and effort will be required by Kroll and its professionals hereunder, and that such commitment may foreclose other opportunities for Kroll. Moreover, the actual time and commitment required by the engagement may vary substantially from week to week or month to month, creating 'peak load' issues for Kroll. Given the numerous issues which may arise in this engagement, Kroll's commitment to

3

the variable level of time and efforts necessary to address these issues, and the market prices for Kroll's engagements of this nature, the parties agree that the fee arrangement hereunder, pursuant to section 328(a) of the Bankruptcy Code, fairly compensates Kroll and provides certainty for the Company. Kroll acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Kroll's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders. In the event that the Company becomes a debtor under the Bankruptcy Code and Kroll's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Kroll hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to Kroll in immediately available funds by wire transfer.

6.    Notwithstanding the foregoing, as part of any Chapter 11 petition filing, Kroll acknowledges that the Company's restructuring counsel may assist in preparing Kroll's retention agreement and related documents. However, to the extent that Kroll requires additional legal support in connection with such retention or with regard to Kroll's negotiations with the U.S. Trustee or other Bankruptcy constituents, Kroll shall have the right to retain outside legal counsel at the Company's sole expense. The terms of this paragraph are solely for the benefit of Kroll, and may be waived, in whole or in part, only by Kroll.

7.    The Company shall reimburse Kroll, from time to time upon request, for its reasonable out-of-pocket and incidental expenses as documented for travel, meals, lodging, and other miscellaneous expenses incurred during the term, and in furtherance of its engagement hereunder. The Company further agrees to reimburse Kroll for certain allocated expenses (including but not limited to printing and production costs, industry research, telephone conferencing lines, courier, messenger, and delivery charges). The amount of such allocated expenses shall not exceed $10,000 without the Company's prior written approval. All expenses referred to in this paragraph 7 shall be paid by the Company promptly upon presentation of an invoice therefor by Kroll. For the avoidance of doubt, Kroll shall have no obligation to maintain or submit any time records.

8.    Since Kroll will be acting on behalf of the Company in connection with its engagement hereunder, the Company has agreed to indemnify Kroll, certain related entities and their controlling persons, representatives and agents as set forth in the indemnification agreement attached hereto as Schedule A, the terms of which are hereby incorporated by reference herein and made a part hereof.

9.    Except as contemplated by the terms hereof or as otherwise may be necessary for Kroll to carry out its obligations hereunder, and except as required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, Kroll shall keep confidential all material non-public information provided to it by the Company until the earlier to occur of (i) the date two years from the date of this agreement or (ii) the date such information shall have been made publicly available by the Company or by others without breach of a confidentiality agreement, and shall not disclose such information to third parties other than to such of its employees and advisors as Kroll determines have a need to know without the consent of the Company. Any advice rendered by Kroll pursuant to this Agreement may not be disclosed publicly without our prior written consent.

10.    Except as may be required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, any advice to be provided by Kroll pursuant to its engagement hereunder shall not be disclosed publicly or made available to third parties by the Company.

11.    The Company agrees that Kroll has the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, but only upon the consummation of a Restructuring hereunder.

12.    The term of Kroll's engagement hereunder shall be twelve (12) months from the date this Agreement is signed by the Company. Any party hereto may terminate this Agreement at any

time upon thirty (30) days' prior written notice, without liability or continuing obligation except as set forth in the remainder of this paragraph. Neither the termination nor completion of this engagement shall affect (i) any compensation earned by Kroll up to the date of termination or completion (ii) any compensation to be earned by Kroll after termination pursuant to paragraph 4 hereof (iii) the reimbursement of expenses incurred by Kroll up to date of termination or completion or (iv) the provisions of paragraphs 4 through 13 hereof, inclusive, which provisions shall survive any termination of this Agreement (including by operation of the first sentence of this paragraph). Without limiting the foregoing, Kroll shall have the right, in its sole discretion, to terminate this Agreement if the outcome of its due diligence investigation is not satisfactory to Kroll for any reason.

13.   The Company agrees that a representative of Kroll shall be kept reasonably informed of all negotiations related to the proposed Restructuring.

14.   Kroll will be the processor and the Company will be the controller of any personal data that the Company may provide to Kroll in connection with the Services. Kroll will process such personal data solely to the extent required to perform the Services or as otherwise required by law or regulation. The Company represents that it is in compliance with any applicable data privacy regulations in connection with its provision of such personal data.

15.   Kroll in its sole discretion, if required to comply with relevant securities laws, may subcontract or delegate its duties and obligations hereunder to a regulated affiliate of Kroll. The Restructuring Transaction Fee (if any) may be required to be paid, in whole or in part, to such regulated affiliate as required by applicable regulatory requirements and at the direction of Kroll. In addition, the Company shall cooperate with Kroll in connection with, and shall make available to Kroll, such documents and other information as Kroll shall reasonably request to satisfy certain anti-money laundering and know-your-customer due diligence requirements.

16.   The Company has all requisite corporate power and authority to enter into this Agreement and the transactions contemplated hereby (including, without limitation, the Restructuring). This Agreement has been duly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms. The Company agrees that it will not enter into a Restructuring unless such agreement expressly provides for the unconditional assumption of the Company's obligations to Kroll under this Agreement.

17.   The Company recognizes that Kroll has been retained only by the Company and that the Company's engagement of Kroll is not deemed to be on behalf of and is not intended to and does not confer rights upon any security holders of the Company or any officers, agents, employees or representatives of either the Company or any of the Company's affiliates. No one other than the Company is authorized to rely upon the engagement of Kroll hereunder or any statements, advice, opinions or conduct of Kroll.

18.   This Agreement shall inure to the sole and exclusive benefit of Kroll and the Company and their respective successors and the indemnified parties hereunder and their respective successors and representatives. The obligations and liabilities under this Agreement shall be binding upon Kroll and the Company. If the form of the Restructuring is a sale of substantially all of the assets of the Company, the Company shall insure that the obligations of the Company hereunder shall be assumed by such purchaser.

19.   This Agreement will be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to the choice of law provisions thereof. Except for the Company's seeking the protection of Chapter 11, each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to private and confidential arbitration by a single arbitrator selected in accordance with the rules of the American Arbitration Association. The arbitration proceedings shall be governed by the Commercial Rules of Arbitration of the American

5

Arbitration Association and shall take place in the Borough of Manhattan, New York City, New York. The arbitrator shall have the power to order discovery and the authority to award any remedy or relief that a court of the State of New York could order or grant, including, without limitation, specific performance. The decision of the arbitrator shall be final and binding on each of the parties and judgment thereon may be entered in any court having jurisdiction. This arbitration procedure is intended to be the exclusive method of resolving any claim arising out of or related to this Agreement, including any claim as to the validity of this Agreement. Each party agrees to the personal and subject matter jurisdiction of the arbitrator for the resolution of any such claim, including any issue relating to this arbitration position. In the event of any arbitration arising out of or in connection with this Agreement, the prevailing party shall be entitled to an award of actual attorneys' fees and costs incurred in connection with the arbitration. If the Company becomes a debtor under Chapter 11 while an arbitration is pending, any claims otherwise subject to arbitration hereunder may be heard and determined before the Bankruptcy Court.

20. This Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by both parties.

21. This Agreement does not constitute a commitment or undertaking on the part of Kroll to provide any financing and does not ensure the successful completion of the Restructuring. The Company acknowledges and agrees that (i) Kroll is being retained solely to assist the Company in its efforts to effect a Restructuring and (ii) Kroll is not and shall not be construed as a fiduciary of the Company and shall have no duties or liabilities to the equity holders or creditors of the Company or any other person by virtue of this Agreement and the retention of Kroll hereunder, all of which are hereby expressly waived.

22. This Agreement constitutes the entire Agreement between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof, including, for the avoidance of doubt, that certain engagement letter between TRX Holdco, LLC and Kroll dated March 21, 2022, which shall be of no further force or effect.

*[Rest of page intentionally left blank. Signature page follows.]*

If the foregoing correctly sets forth our understanding, please sign and return to us an executed copy of this letter, whereupon this letter shall constitute a binding agreement as of the date first above written.

Sincerely,

KROLL SECURITIES, LLC

By: _Joshua K. Benn_                    Date: _Managing Director_

Name:  Joshua K. Benn                   Title:  Managing Director

AGREED TO AND ACCEPTED BY:

TRX HOLDCO, LLC

By: _____             Date: _6/6/2022_____

Name: Brent Leffel                      Title: Chairman

FITNESS ANYWHERE LLC

By: _____             Date: _6/6/2022_____

Name: Brent Leffel                      Title: Chairman

Attachment: Schedule A

7

# SCHEDULE A

## INDEMNIFICATION PROVISIONS

A.    Indemnification. To the fullest extent lawful, the Company will promptly, upon demand, indemnify and hold harmless Kroll Securities, LLC and their affiliates (collectively, "Kroll"), and each director, officer, employee, agent, member and controlling person of Kroll (any or all of the foregoing hereinafter referred to as an "Indemnified Person"), from and against all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel and accountants), costs (including, without limitation, expenses, fees and disbursement and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and liabilities (joint or several), (collectively, "Losses"), resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or dispute, including securityholder actions (whether or not Kroll or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to Kroll or any other person by the Company or used by the Company in connection with the transaction contemplated by the engagement letter or any omission or alleged omission by the Company to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of Kroll's engagement, role, activities or the performance or non-performance of professional services on the Company's behalf. The Company will not be responsible, however, for any Losses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted primarily and directly from the bad faith, willful misconduct or gross negligence of any Indemnified Person seeking indemnification hereunder; but pending any such judicial determination, the indemnification and reimbursement obligations of the Company hereunder shall continue to apply. The Company also agrees that neither Kroll nor any Indemnified Person shall have any liability to the Company, its owners, parents, creditors or securityholders for or in connection with its engagement, except such liability for Losses incurred by the Company which are judicially determined to have resulted primarily and directly from Kroll's or an Indemnified Person's bad faith, willful misconduct or gross negligence. For purposes of the foregoing, "judicially determined" shall mean determined by a court of competent jurisdiction in a final non-appealable judgment on the merits.

B.    Proceedings. Kroll will notify the Company if it learns that any investigation, lawsuit, administrative proceeding or self-regulatory organization proceeding has been instituted based, directly or indirectly, on the transactions which were the subject of Kroll's engagement under the Agreement, although failure to do so will not relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit substantial rights and defenses. Should any lawsuit, administrative proceeding or self-regulatory organization proceeding (collectively, a "Proceeding") be formally instituted against Kroll or any Indemnified Person based, directly or indirectly, on Kroll's engagement under the Agreement, the Company will be entitled to participate therein and, to the extent that it may wish, to assume the defense of the Proceeding, with counsel reasonably satisfactory to Kroll, so long as the Company continues to pay all costs and expenses of the defense and preparation for such Proceeding. Even if the Company assumes the defense of a Proceeding, each Indemnified Person will have the right to participate in such Proceeding and to retain its own counsel at such Indemnified Person's own expense. Furthermore, each Indemnified Person shall have the right to employ its own counsel in any Proceeding and to require the Company to pay all reasonable fees and expenses of such counsel as they are incurred if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Person) (2) the Company shall not have assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Person in a timely manner or (3) the Company shall

have authorized the employment of such counsel in connection with the defense of the Proceeding.

C.    Contribution.  If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason (other than as a result of the gross negligence or willful misconduct of any such Indemnified Person) or insufficient to hold such Indemnified Person harmless, then the Company and Kroll will contribute to the Losses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, in connection with Kroll's engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, but also the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by Kroll will not exceed the amount of fees actually received by Kroll pursuant to Kroll's engagement.  No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.  It is hereby agreed that the relative benefit to the Company on the one hand and Kroll on the other, with respect to Kroll's engagement, shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received by the Company or its equityholders, as the case may be pursuant to the transaction, whether or not consummated, for which Kroll is engaged to render financial advisory services bears to (2) the fee paid or proposed to be paid to Kroll in connection with such engagement (excluding reimbursable expenses).

D.    Settlement of Claims.  The Company will not, without the prior written consent of Kroll which consent will not be unreasonably withheld, conditioned or delayed, settle or compromise or consent to the entry of any judgment in any pending or threatened Claim or Proceeding in respect of which indemnification could be sought hereunder (whether or not Kroll or any Indemnified Person is an actual party to such Claim or Proceeding) unless such settlement, compromise or consent includes provisions holding harmless and unconditionally releasing Kroll and each other Indemnified Person hereunder from all liability related to or arising out of such Claim or Proceeding, including claims for contribution.  The Company shall not be liable for any settlement of any Claim effected by Kroll without its written consent (which consent shall not be unreasonably withheld, conditioned or delayed).

E.    Miscellaneous.  The obligations of Kroll are solely corporate obligations.  No director, officer, employee, agent, shareholder or controlling person of Kroll shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement.  The Company's indemnity, reimbursement and contribution obligations provided for herein are solely corporate obligations and shall:  (1) be in addition to any liability that the Company otherwise may have to Kroll and any rights that Kroll or any Indemnified Person may have at common law or otherwise; (2) survive the completion or termination of professional services rendered by Kroll under the Agreement; (3) apply to any activities prior to this date and any amendment, modification or future addition to Kroll's engagement; and (4) inure to the benefit of the heirs, personal representatives, successors, and assigns of Kroll and each other Indemnified Person.

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

The Company hereby consents to personal jurisdiction and service and venue in any court in which any Claim and Proceeding which is subject to the terms provided for herein is brought against Kroll or any other Indemnified Person. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF KROLL'S ENGAGEMENT, ANY TRANSACTION OR CONDUCT IN CONNECTION THEREWITH OR THIS AGREEMENT.

# EXHIBIT "2"

**[PROFESSIONAL BIOGRAPHIES]**

# Joshua Benn



**Managing Director
Head of Americas
Investment Banking**

Kroll Securities, LLC

New York

+1 212 450 2840

Joshua.Benn@kroll.com

Josh serves as the head of Kroll's Americas Investment Banking business and leads the firm's global consumer investment banking practice. In addition, he serves on the firm's corporate finance leadership committee and engagement acceptance committee. Josh leverages more than 25 years of investment banking experience.

Prior to joining the firm, Josh served as a founding partner of Stone Ridge Partners LLC, a consumer sector focused M&A advisory boutique and was a senior member of the M&A and consumer sector coverage group at Thomas Weisel Partners and Furman Selz, LLC. In addition, Josh served as director of corporate development for KSL Recreation, a leading hospitality management and development platform backed by KKR.

Josh has managed merger, acquisition, divestiture, recapitalization, restructuring and distressed M&A transactions for a variety of public and privately-owned clients. Some of his notable clients include: Chargriller, Twin Peaks, Legal Seafood, Primanti Brothers, House of Cheatham, Bowl America, Fazoli's, Eureka Restaurants, Weiman Products, Hampshire Pet Products, Rock Bottom Restaurants, Noodles & Company, Tourneau, Marlin Firearms, Traeger Wood Pellet Grills, Osprey Packs, Dover Saddlery, Standard Furniture, HMI, Inc., and Eastern Mountain Sports.

Josh received a B.A. in political science and French from Dartmouth College. He serves on several private company boards of directors and is a FINRA Series 7, 24, and 63 registered representative.



**KROLL**
CORPORATE FINANCE

1

# Brian Cullen



**Managing Director, Global Restructuring Advisory**

Kroll Securities, LLC

Los Angeles

+1 424 249 1645

brian.cullen@kroll.com

Brian Cullen is a managing director in the Global Restructuring Advisory group and head of the Domestic Restructuring Group. He has over 15 years of experience in financial restructurings and distressed situations. Brian is based in the Santa Monica office.

Brian has been involved in a variety of restructurings and recapitalizations, including in and out-of-court debtor and creditor-side restructurings, mergers and acquisitions, valuation opinions and capital raising activities. Recent and past engagements include Allied Holdings, American Safety Razor, Collins & Aikman, Controladora Comercial Mexicana (CCM), Cerplex Group, Evergreen Solar, Key Plastics, Legacy Estates, Loral Space & Communications, Maui Land & Pineapple, Mercury Interactive, Primus Telecommunications, ProtoStar, RCN Corporation, Targus Group, Trump Casino Holdings, Tricom S.A., Vitro, S.A.B. de C.V., Westwood One and Wolverine Tube.

Prior to Duff & Phelps, Brian was a senior member with Duff & Phelps Capital Partners where he led domestic and cross-border restructurings and recapitalizations for a variety of clients including companies, equity sponsors and creditor groups.  Prior to Duff & Phelps, Brian worked in a principal capacity for a special situation investment fund and before this, in the investment banking department at Credit Suisse First Boston.  Brian began his career in the high-yield group at BankAmerica Securities.

Brian received his B.A. in economics from the University of California at Los Angeles. Brian currently serves as a board member of Allied Holdings, Inc, the largest company in North America specializing in the delivery of new and used vehicles. Brian holds the Financial Industry Regulatory Authority (FINRA) Series 7 and 63 licenses and is a FINRA registered representative.

# VIJAY R. SAMPATH

9 Cannon Hill Lane • Phoenixville, PA 19460 • (267) 218–0960 • vsampath82@gmail.com

**OVERVIEW**  Investment Banking professional with over 15 years of direct M&A, private capital markets and restructuring experience, totaling over $1 billion in transaction value

**EXPERIENCE**  **KROLL SECURITIES, LLC** (FKA DUFF & PHELPS)                    **New York, NY**

*MANAGING DIRECTOR, CONSUMER INVESTMENT BANKING, SEP. 2015 – PRESENT*

- Transaction execution in the Consumer industry as well as financial sponsor coverage
- Selected transaction experience includes:
  - *Sale of Primanti Bros. (L Catterton) to Garnett Station Partners (Jan. 2022)*
  - *Sale of Char-Griller to The Middleby Corporation (NASDAQ:MIDD) (Dec. 2021)*
  - *Sale of Bowl America to Bowlero Corporation (NYSE:BOWL) (Aug. 2021)*
  - *Equity Recapitalization of PPX Hospitality Group by Bain Capital Credit (Jul. 2021)*
  - *Sale of Au Bon Pain (JAB / Panera) to Ampex Brands (Jun. 2021)*
  - *Equity Recapitalization of Tijuana Flats (AUA Equity) by Existing Investors  (Mar. 2021)*
  - *Sale of Legal Sea Foods to PPX Hospitality Group (Danu Partners) (Dec. 2020)*
  - *Restructruing of US Fitness (Onelife Fitness, Sport&Health, Crunch Fitness) with Kayne Anderson Capital Advisors, Invesco and Pinebridge Investments (Sep. 2020)*
  - *Sale of Johnny Rockets (Sun Capital Partners) to FAT Brands (Sep. 2020)*
  - *Sale of DRH (largest Buffalo Wild Wings franchisee) to ICV Partners (Feb. 2020)*
  - *Sale of Hampshire Pet Products (L Catterton) to Red Collar Pet Foods (Arbor Investments) (Feb. 2019)*
  - *Sale of The Oneida Group's Commercial Foodservice Division to Crown Brands (Centre Lane Partners) (Jan. 2019)*
  - *Equity Recapitalization of Turning Point Restaurants by NewSpring Capital (Jan. 2019)*
  - *Sale of Rosa Mexicano (Goode Partners) to TriSpan (Mar. 2018)*
  - *Sale of The Ruby Slipper Café to Bregal Partners (Jan. 2018)*
  - *Sale of Standard Furniture (Magnolia Home) to Aterian Investment Partners (Aug. 2017)*
  - *Ainsworth Pet Nutrition's (L Catterton) Acquisition of Triple-T Foods (Jun. 2018)*
  - *Sale of UNO Pizzeria & Grill (Twin Haven Capital) to Newport Global Advisors (May 2017)*
  - *Sale of Gordmans Stores (Sun Capital Partners) to Stage Stores International (Apr. 2017)*
  - *Sale of Luxury Brand Holdings (Freeman Spogli & Co.) to D.R. Capital (Jul. 2016)*
  - *Debt Recapitalization of Dickey's BBQ Pit's by Wells Fargo (May 2016)*

**SCOTT-MACON SECURITIES, LLC**                    **New York, NY**

*VICE PRESIDENT, INVESTMENT BANKING, MAY 2007 – SEPTEMBER 2015*

- Transaction execution across the Industrials and Transportation / Logistics sectors
- Selected transaction experience includes:
  - *Sale of Envincio to Central Garden & Pet Company (NasdaqGS:CENT) (Apr. 2014)*
  - *Sale of United Technologies'(NYSE:UTX) Industrial Explosion Protection business to Sentinel Capital Partners (Jul. 2013)*

- *Sale of United Technologies' (Carrier Corp.) Refrigerated Container Services business to ConGlobal Industries (Dec. 2012)*
- *Sale of United Technologies' (Carrier Corp.) North American Bus A/C Business to Mobile Climate Control (Ratos AB) (Apr. 2011)*
- *Sale of United Technologies' (Carrier Corp.) Bus A/C Business in Europe, India and Mexico to J Eberspacher GmbH & Co. KG (Mar. 2010)*

**EDUCATION**    **THE UNIVERSITY OF MICHIGAN** (Grad. 2005)                    **Ann Arbor, MI**
- College of Literature, Science & Arts – B.S. (Economics / Computer Science)

**SKILLS / OTHER**
- FINRA Series 7, 63 and 79 licensed

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION OF CHAPTER 11 DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY KROLL, SECURITIES, LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. § 327(a); DECLARATION OF JOSHUA BENN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **June 17, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyb.com
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com
- Jonathan Gottlieb    jdg@lnbyg.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Marsha A Houston    mhouston@reedsmith.com, hvalencia@reedsmith.com
- Krikor J Meshefejian    kjm@lnbyg.com
- Ali M Mojdehi    amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com;amattingly@btlaw.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On (date) **June 17, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **June 17, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 17, 2022 | Damon Woo | /s/ Damon Woo |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.