RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>     Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>     Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**DEBTORS' MOTION FOR ENTRY OF ORDER (I) ESTABLISHING BIDDING PROCEDURES FOR FREE AND CLEAR SALE OF ASSETS; (II) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING FORMS OF NOTICE; (IV) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (V) SCHEDULING AN AUCTION; (VI) SCHEDULING A SALE HEARING; AND (VII) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br>**[SUPPORTIVE DECLARATION FILED CONCURRENTLY HEREWITH]**<br><br>**Date:**  **June 30, 2022**<br>**Time:**  **10:00 a.m.**<br>**Place:**  **\*Via ZoomGov**<br>       Courtroom 5C<br>       411 West Fourth Street<br>       Santa Ana, CA 92701 |

1
2

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 8

I. STATEMENT OF FACTS .............................................................................................. 8

    A.    Brief Description Of The Debtors And Their Business. ........................ 8

    B.    Events Leading To Bankruptcies And The Debtors' Chapter 11 Goals. .............. 10

    C.    The Debtors' Primary Assets and Secured Loans ................................. 12

II. PROPOSED BIDDING AND SALE PROCEDURES ............................................. 13

    Due Diligence Access / Participation Requirements ...................................... 13

    Bid Deadline for Proposed Stalking Horse Bidders ...................................... 14

    Bid Requirements ........................................................................................... 14

    Qualified Bidders and Bids ........................................................................... 17

    No Other Use of Credit Bids ......................................................................... 18

    Notice of Qualified Bids ................................................................................ 18

    Auction ........................................................................................................... 18

    No Collusion; Good Faith Bona Fide Offer .................................................. 19

    Opening Bid at the Auction ........................................................................... 19

    Conducting the Auction ................................................................................. 19

    Selection of the Winning Bid and Winning Back-Up Bid ............................. 21

    Return of Deposits Following the Completion of the Auction ...................... 22

    Sale Hearing ................................................................................................... 22

III. PROPOSED SALE NOTICE AND CURE NOTICE ............................................. 23

    A.    *Proposed Sale Notice.* .......................................................................... 23

    B.    *Proposed Cure Notice.* ......................................................................... 23

IV. DISCUSSION ................................................................................................................ 26

    A.    The Proposed Bidding Procedures Should Be Approved By The Court. ............. 26

    B.    The Court Should Also Approve The Assumption And Assignment
    Procedures Of the Designated Contracts. ............................................................. 29

V. CONCLUSION ............................................................................................................. 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

<u>In re AEG Acquisition Corp.</u>,
   127 B.R. 34 (Bankr. C.D. Cal. 1991), <u>aff'd</u> 161 B.R. 50 (9th Cir. B.A.P. 1993)....................30

*In re Atlanta Packaging Products, Inc.*,
   99 B.R. 124 (Bankr. N.D. Ga. 1988) ...........................................27

<u>In re Bowman</u>,
   194 B.R. 227 (Bankr. D. Ariz. 1995)...........................................30

<u>In re Central Fla. Metal Fabrication, Inc.</u>,
   190 B.R. 119 (Bankr. N.D. Fla. 1995)...........................................29

<u>In re Continental Country Club, Inc.</u>,
   114 B.R. 763 (Bankr. M.D. Fla. 1990) ...........................................29

*In re Crowthers McCall Pattern, Inc.*,
   114 B.R. 877 (Bankr. S.D.N.Y. 1990)...........................................28

<u>In re Embers 86th Street. Inc.</u>,
   184 B.R. 892 (Bankr. S.D.N.Y. 1995)...........................................30

<u>In re Gucci</u>,
   193 B.R. 411 (S.D.N.Y. 1996)...........................................29

<u>In re Klein Sleep Products, Inc.</u>,
   78 F.3d 18 (2d. Cir. 1996) ...........................................29

<u>In re Prime Motors Inns</u>,
   124 B.R. 378 (Bankr. S.D. Fla. 1991) ...........................................29

**Federal Statutes**

11 U.S.C. §§ 105(a), 361 and 363....................................................2

11 U.S.C. § 365(b)(1) ...........................................29, 30

11 U.S.C. § 503...........................................17

11 U.S.C. § 105(a) ...........................................26

11 U.S.C. § 363(b)(1) ...........................................26

11 U.S.C. § 365 ...........................................23, 25

11 U.S.C. § 365(f)(1) ...........................................30

11 U.S.C. § 365(f)(2) ............................................................................................29, 30

**Other Authorities**

Bankruptcy Rule 6004 ...........................................................................................26

Bankruptcy Rules 2002, 6004 and 6006 ...............................................................26

Fed. R. Bankr. Proc. 6004(f) .................................................................................26

Federal Rules of Bankruptcy Procedure Rule 2002...............................................23

Federal Rules of Bankruptcy Procedure Rules 2002 and 6004 .............................26

Local Bankruptcy Rule 6004-1 ..............................................................................26

Local Bankruptcy Rule 6004-1(b) ...........................................................................3

Local Bankruptcy Rule 6004-1(b)(1)......................................................................27

Local Bankruptcy Rule 6004-1(b)(2)......................................................................27

Local Bankruptcy Rules 6004-1(b) and 9013-1 .......................................................2

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE DEBTORS' SECURED CREDITOR AND TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THESE CASES:**

Pursuant to Local Bankruptcy Rules 6004-1(b) and 9013-1, and 11 U.S.C. §§ 105(a), 361 and 363, TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC,  dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases[1], hereby file this motion (the "Motion") seeking the entry of an order in substantially the form appended as **Exhibit "1"** to the Declaration of Joshua Benn (the "Benn Declaration") filed herewith (the "Bidding Procedures Order") that, among other things:

(i)     Approves the Debtors' proposed bidding procedures ("Bidding Procedures") substantially in the form in **Exhibit "2"** to the Benn Declaration for the sale of substantially all of the Debtors' assets related to the operation of the Debtors' business (the "Purchased Assets"), free and clear of all liens, claims, encumbrances and other interests;

(ii)    Establishes and approves procedures relating to the Debtors' assumption and assignment of executory contracts and unexpired leases and which approves the form of notice to be provided to all counterparties to executory contracts and unexpired leases attached as **Exhibit "3"** to the Benn Declaration;

(iii)   Approves the Debtors' proposed form of notice to be sent to all creditors, equity holders, proposed buyers and other parties in interest in the form attached as **Exhibit "4"** to the Benn Declaration;

(iv)    Approves the Debtors' proposed form of asset purchase agreement (the "Template APA") without exhibits in the form attached as **Exhibit** "5" to the Benn Declaration;

---

[1] The Court previously entered an order approving the joint administration of these chapter 11

(v)    Schedules an auction ("<u>Auction</u>");

(vi)    Schedules a hearing for the Court to consider approval of the sale of the Purchased Assets to the winning bidder and winning back-up bidder at the Auction ("<u>Sale Hearing</u>"); and

(vii)    Grants related relief.

The documents that are attached as **Exhibits 1 - 5** to the Benn Declaration are substantially complete, but subject to continuing discussions, revisions and amendments, and, thus, may not yet be final. If any changes are made to any such documents, the Debtors will file the updated versions with the Court prior to the hearing date on this Motion. The complete bases of the Motion are set forth in the Memorandum of Points and Authorities annexed hereto and the supporting declaration. The Debtors have scheduled a hearing on this Motion pursuant to Local Bankruptcy Rule 6004-1(b) given the Debtors' financial situation and desire to consummate a sale of the Purchased Assets as soon as possible but at the same time establishing bidding procedures that have been carefully thought out and vetted with the Debtors' investment banker designed to achieve the highest and best price possible for the Purchased Assets under the circumstances of these chapter 11 bankruptcy cases.

As set forth in the Debtors' various first-day motions, the Debtors made a determination shortly prior to their bankruptcy filings that proceeding with a free and clear asset sale process was in the best interests of their estate. While it appears that there is a substantial amount of interest in the buying community to acquire the Debtors' business and by many to serve as a stalking horse bid, since the Debtors only commenced their free and clear asset sale process shortly prior to their bankruptcy filings, the Debtors do not yet have a stalking horse bid lined up. The Debtors therefore believe that proceeding at this point to the Auction without a stalking

bankruptcy cases.

horse bid in hand is the best option for these bankruptcy estates, with the Debtors retaining the right to seek an alternative order from the Court if facts and circumstances dictate otherwise.

After extensive consultation with the Debtors' well regarded and experienced investment banker in Kroll Securities, LLC ("Kroll"), and after taking into account the Debtors' financial situation, including the possibility that the Debtors will be provided with post-petition financing from the Debtors' pre-petition secured lender, Woodforest National Bank (the "Bank"), the Debtors believe that the following is the optimal timetable in order to achieve the highest and best price for the Purchased Assets:

**July 27, 2022 at 5 p.m. (prevailing Pacific time) – Initial Bid Deadline**

Deadline by when initial bids need to be submitted by parties who wish to participate in the Auction.   In order to participate in the Auction, all prospective bidders must do all of the following:

1.  Submit a redlined version of the template asset purchase agreement (the "Template APA") indicating all changes that are requested to be made to the Template APA, with the Template APA to include their proposed initial bid;

2.  Submit all documents to enable Kroll to determine whether the proposed bidder is financially qualified to participate in the Auction; and

3.  Submit a deposit equal to 10% of the proposed initial bid, which 10% deposit would be deemed non-refundable if the bidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court.  Bidders will have the right to withdraw their bid at any time up until Noon (prevailing Pacific time) on August 2, 2022, in which case they will receive a return of their 10% deposit and no longer be eligible to participate in the Auction.

**August 3, 2022 commencing at 10 a.m. (prevailing Pacific time)** - Auction to be held at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., which are located at 2818 La Cienega Avenue, Los Angeles, CA, or via zoom with all Qualified Bidders to be provided with particulars in advance of the Auction.

**Sale Hearing** - hearing for the Court to consider approval of the Debtors' proposed sale of the Purchased Assets to the winning bidder at the Auction – (to be set by Court at the hearing on this Motion – the Debtors are seeking to have this hearing be the first date possible after the August 3, 2022 Auction).

**August 12, 2022** - Outside date by when the winning bidder at the Auction is required to close its purchase of the Purchased Assets unless the winning bidder and the Debtors jointly agree to extend the outside closing date.

These proposed Bidding Procedures are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets. This is being done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.[2] Kroll has already established an extensive data room and, to date, approximately 45 prospective bidders have signed NDA's who are actively engaged in the data room in connection with the current asset sale process, and Kroll is receiving new and additional inquiries virtually daily – meaning that this is a very active asset sale process. Kroll is also in discussions with numerous prospective buyers regarding the possibility of serving as a stalking horse bidder. Even if the Debtors reach an agreement with a financially qualified buyer to serve as the stalking horse

---

[2] The Debtors reserve the right to accept a stalking horse bid presented to the Debtors before July 27, 2022 and/or to seek a further order of the Bankruptcy Court to modify any of the terms of these Bidding Procedures.

bidder which will then be presented to the Court for approval, the Debtors will still insist upon an overbid process to make sure that all prospective bidders have the opportunity to overbid the stalking horse bid at an open Auction process to insure that the highest and best price is ultimately paid for the Purchased Assets.

The Debtors (after extensive consultation with Kroll) are confident that the proposed Bidding Procedures make the most sense under the circumstances of these cases to result in the highest and best price being paid for the Purchased Assets.

For all of the reasons set forth herein and in the accompanying Memorandum of Points and Authorities and concurrently filed Declaration, the Debtors believes that the proposed Bidding Procedures and all of the relief sought herein are in the best interests of the Debtors' estates as they have been designed to achieve the highest and best price for the Purchased Assets.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Benn Declaration and all Exhibits attached thereto, the entire record of the Debtors' bankruptcy cases, the statements, arguments, and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court.

**WHEREFORE**, the Debtors respectfully requests that this Court do all of the following:

(1)     grant this Motion in its entirety;

(2)     enter the Bidding Procedures Order in substantially the form appended as **Exhibit "1"** to the Benn Declaration;

(3)     Approve the Bidding Procedures substantially in the form described in **Exhibit "2"** attached to the Benn Declaration for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests;

(4)     Establish and approve procedures relating to the Debtors' assumption and assignment of executory contracts and unexpired leases and which approves the form of notice to be provided to all counterparties to executory contracts and unexpired leases attached as **Exhibit "3"** to the Benn Declaration;

(5)    Approve the Debtors' proposed form of notice to be sent to all creditors, equity holders, proposed buyers and other parties in interest in the form attached as **Exhibit "4"** to the Benn Declaration;

(6)    Approve the Template APA (without exhibits) in the form attached as **Exhibit "5"** to the Benn Declaration;

(7)    Schedule the Auction for August 3, 2022 as requested in the Motion;

(8)    Schedule the Sale Hearing for the Court to consider approval of the Debtors' sale of the Purchased Assets to the winning bidder and winning back-up bidder at the Auction; and

(9)    Grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 23, 2022             TRX HOLDCO, LLC
                              FITNESS ANYWHERE LLC

                              By:   */s/ Ron Bender*
                                  RON BENDER
                                  KRIKOR J. MESHEFEJIAN
                                  LINDSEY L. SMITH
                                  LEVENE, NEALE, BENDER,
                                  YOO & GOLUBCHIK L.L.P.
                                  Proposed Attorneys for Chapter 11 Debtors
                                  and Debtors in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS[3]

**A.** **Brief Description Of The Debtors And Their Business.**

1.      The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company.  Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.[4] TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities.  TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations.   TRX also launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand video and daily live classes.

2.      TRX enjoys a strong origin story (the first version of the Suspension Trainer™ was created in 1997 by Randy Hetrick, the founder of TRX), significant brand recognition and intellectual property protections around its flagship product Suspension Trainer™, which is distributed in over thirty (30) countries through commercial channels (gyms and vertical markets) and consumer markets (including through its direct-to-consumer platform www.TRXtraining.com in the United States and United Kingdom, Amazon, and other retailers).

---

[3] The Debtors incorporate herein by this reference the *Declaration of Brent Leffel In Support Of Debtors' Cash Collateral Motion* (Doc 8) filed on June 8, 2022, in support of the facts set forth herein.

[4] Hold Co holds a preferential and controlling interest in Product Co.  Hold Co also wholly owns TRXperience, LLC ("Experience Co").  Experience Co has not filed a bankruptcy case.  Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

3.      From 2004 through 2013, Mr. Hetrick launched and commercialized TRX, building a loyal community of trainers and market penetration in gyms.  From 2014 to 2018, the TRX business matured after receiving a growth capital investment.  In late 2018, an investor group led by Equity 38, LLC acquired the business in a highly structured transaction which included a credit facility with Woodforest National Bank (the "Bank") alongside an equity investment and rollover investment from the previous investors, and, in 2019, various operational improvement initiatives were implemented to restructure the business.  By the end of 2019, the business required a capital infusion to reset its credit facility with the Bank and also secure operating capital to execute on a strategy which incorporated the pursuit of digital initiatives to broaden the company's revenue opportunities beyond sales of its flagship product.

4.      In March 2020, Hold Co was formed and additional equity capital was invested by existing and new investors in a further recapitalization of TRX.  A portion of such proceeds were invested in Product Co to repay senior debt and provide working capital financing, and the balance remained at Hold Co to fund growth initiatives such as digital.  After giving effect to the March 2020 recapitalization, Hold Co held a preferential and controlling interest in Product Co, and also became a guarantor of the credit facility. Hold Co also owns 100% of the interests of Experience Co, an entity that was formed at the time of the recapitalization for purposes of housing TRX's digital platform services that were beginning to be developed and for its educational services and offerings through which TRX has qualified training professionals on suspension training/functional training techniques and programming.  While the different entities were established to allow for a segregation of the equity investment made in the recapitalization and to limit dilution to legacy shareholders, TRX has operated as one identifiable brand in the market, and through intercompany agreements, including a management services agreement between Hold Co and Product Co wherein Hold Co provides the services of executive management that oversee the entire TRX enterprise, it also effectively operates as a consolidated business.

5.      In 2019, the Debtors generated approximately $51 million in revenue.  In 2020, the Debtors formulated a digital strategy with outside consultants while experiencing COVID-

driven revenue growth, to approximately $85 million.  In 2021, the Debtors executed and invested in a number of initiatives focused on digital and marketing, hiring executives in key roles while building a significant inventory position and navigating through a rapidly changing macro environment, and generated approximately $62 million in sales.

**B.    Events Leading To Bankruptcies And The Debtors' Chapter 11 Goals.**

6.    Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth.  There have been many reasons for this including competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did not occur in an unpredictable market, and higher than anticipated development costs associated with the Debtors' digital training platform and increased marketing expenses, partially attributable to general increases in paid advertising.  It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.[5]

7.    Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction.  The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

8.    The Debtors believe that timing and macroeconomic considerations both played a role in the Debtors not consummating a pre-petition transaction.  For example, while various

---

[5] Product Co and the Bank are parties to a Credit Agreement, dated as of December 26, 2018, as amended, pursuant to which Product Co obtained from the Bank a term loan in the principal amount of $10,875,000, a term loan in the principal amount of $1,000,000, and revolving loans in the principal and outstanding amount of $7,500,000, for a total principal balance of $19,375,000, which are secured by substantially all assets of the Debtors, and which are guaranteed by Hold Co, Experience Co and Fitness Anywhere International, LLC.

parties expressed interest in a transaction with the Debtors, those who signed nondisclosure agreements and engaged in discussions with the Debtors did not ultimately proceed with engaging in a transaction. The Debtors also explored potential financing arrangements and received various expressions of interest.[6]

9.    The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill. The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors, including the Bank.[7]

10.    Despite these challenges, the Debtors believes that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history. Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

11.    Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale process in a chapter 11 bankruptcy proceeding and consummate that asset sale

---

[6] It is possible that the Debtors will require debtor in possession financing if the Debtors' cash on hand and cash generated post-petition are not sufficient to meet all of the Debtors' operational needs during this chapter 11 case. Additionally, in order for the Debtors to purchase any significant inventory going forward, the Debtors will require additional funding.

[7] The Debtors are in discussions with the Bank regarding the Bank providing the Debtors with post-petition financing, which, if consummated, will be presented to the Court by way of a separate motion.

before the Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.[8]   The Debtors believe that proceeding in this manner will afford them with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.  The Debtors are optimistic that this free and clear asset sale process will result in a successful sale transaction closing.  Given the high level of interest that has already been expressed by the buying community, the Debtors are hopeful that the sale will result in a purchase price sufficient to pay the Bank in full and provide for a distribution to the rest of the Debtors' creditors.

12.    The Debtors' goal in these bankruptcy cases is to consummate a free and clear asset sale for the most money possible.  The Debtors' proposed Bidding Procedures are designed to achieve this result.

**C.    The Debtors' Primary Assets and Secured Loans.**

13.    The Debtors' primary assets are comprised of accounts receivable in the approximate gross amount of $5.1 million as of the Petition Date, inventory with a cost basis of approximately $17.8 million as of the Petition Date, intellectual property and goodwill associated with the Debtors' well-regarded brand, and the Debtors' vast domestic and international customer base.

14.    To support the financial needs of their growth and operations, on or about December 26, 2018, the Debtors (with Product Co as borrower and Hold Co ultimately as one of three guarantors[9]) obtained a senior secured credit facility revolving credit facility from the Bank, secured by substantially all of the Debtors' assets and property.  The credit facility is evidenced by that certain "Credit Agreement Dated as of December 26, 2018" as amended from

---

[8] While the Debtors' Budgets reflect that the Debtors are projected to have sufficient cash during the term of the Budgets to fund the expenses in the Budgets, the Budgets do not include substantial additional purchases of inventory.

[9] The other two guarantors are Experience Co (a wholly owned subsidiary of Hold Co) and Fitness Anywhere International, LLC (a wholly owned subsidiary of Product Co).  Hold Co and Experience Co became guarantors in connection with a recapitalization of TRX completed in

time to time, in the original principal amount of $20,000,000.  Based on five amendments to the

Credit Agreement, the credit facility is currently comprised of a term loan with a principal

balance of $10,875,000, a term loan with a principal balance of $1,000,000, and revolving loans

up to $8,000,000 with a principal balance of $7,500,000. As of the Petition Date, the total

principal balance of the loans made by the Bank to the Debtors is approximately $19,375,000.

   15.  The Debtors also have a substantial amount of pre-petition unsecured debt.

**II.**

**PROPOSED BIDDING AND SALE PROCEDURES**

   The Debtors' proposed Bidding Procedures which the Debtors are requesting the Court to

approve are attached as **Exhibit "2"** to the concurrently filed declaration of Joshua Benn.  Below is

a summary of the key provisions of the Bidding Procedures:

**Due Diligence Access / Participation Requirements**

   In order to participate in the Auction process as a bidder, a person or entity interested in

purchasing the Purchased Assets (a "Potential Bidder") must deliver or have previously delivered

to Kroll all of the following documents (the "Participation Requirements"): (1) an executed non-

disclosure agreement with the form to be obtained from Kroll; (2) a statement demonstrating a

bona fide interest in purchasing the Purchased Assets; and (3) one of the following: (i) written

evidence of readily available funds equal to the Potential Bidder's initial bid and any increase the

Potential Bidder desires to have authority to bid to, with Kroll to keep all such information

completely confidential, (ii) a firm commitment for financing sufficient for the Potential Bidder

to timely consummate its purchase of the Purchased Assets, or (iii) other sufficient information,

which may include current audited financial statements and the latest unaudited financial

statements of the Potential Bidder and/or its equity holders, or such other form of financial

2020.

13

disclosure and credit-quality support or enhancement that will allow Kroll to make a reasonable determination as to the Potential Bidder's financial and other capabilities to timely consummate its purchase of the Purchased Assets. Any Potential Bidder who has satisfied the foregoing Participation Requirements will be afforded, subject to the other provisions of these Bidding Procedures, due diligence access and additional information through access to an online data room, as well as, upon reasonable advance notice, on-site visits and direct communication with management as the Potential Bidder desires and Kroll determines to be appropriate under the circumstances and subject to the availability of such management.

### Bid Deadline for Proposed Stalking Horse Bidders

The deadline for a Potential Bidder to submit its initial bid for the Purchased Assets ("Initial Bid") is **July 27, 2022 at 5:00 p.m. (prevailing Pacific time)** (the "Initial Bid Deadline").  An Initial Bid received after the Initial Bid Deadline shall not be considered.

### Bid Requirements

To be eligible to participate in the Auction, each Initial Bid and each Potential Bidder submitting an Initial Bid (each, a "Bidder") must be determined by the Debtors and Kroll to have satisfied all of the conditions listed below (collectively, the "Bid Requirements"):

1.    ***Terms***.  An Initial Bid must be accompanied by a clean and redlined version of the APA, with the redlined version of the APA to show all of the Potential Bidder's requested changes to the Template APA.

2.    ***No Contingencies***.  An Initial Bid must include a statement that there are no conditions precedent to the Bidder's authority to enter into or consummate a definitive agreement, other than entry by the Bankruptcy Court of an order approving the sale of the Purchased Assets to the Bidder.

3.      ***Bid Requirements***.  An Initial Bid must set forth a cash purchase price for the Purchased Assets.  Without limiting the generality of the foregoing, an Initial Bid (i) may not contain representation or warranties, covenants, or termination rights materially more onerous in the aggregate than are set forth in the Template APA, as determined by the Debtors and Kroll, (ii) may not be conditioned upon obtaining financing, any internal, regulatory, or other third party approvals, or on the outcome or review of due diligence, (iii) may not provide for a closing date that will be later than August 12, 2022, unless both the Debtors and the winning bidder jointly agree to extend the Sale closing date at their sole and absolute discretion, and (iv) may not be conditioned upon the Bankruptcy Court order approving the sale becoming a "final order."

4.      ***Irrevocable***.  An Initial Bid must state that unless the Bidder withdraws its Initial Bid by Noon (prevailing Pacific time) on August 2, 2022, an Initial Bid must state that such offer is binding and irrevocable until the conclusion of the Sale Hearing and such Initial Bid must continue to remain binding and irrevocable through the Sale Closing if the Initial Bid or any higher bid submitted at the Auction is accepted by the Debtors at the Auction as the Winning Bid (defined below) or the Winning Back-Up Bid (defined below) and approved by the Bankruptcy Court at the Sale Hearing.

5.      ***Identity of Bidder***.  An Initial Bid must fully disclose the identity of each entity or person that will be bidding for or purchasing the Purchased Assets, including all material equity holders (i.e., parties that own at least 10% of the equity of the Bidder) in the case of a Bidder that is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Initial Bid, and the complete terms of any such participation, including any agreements, arrangements or understanding concerning collaborative or joint bid or any other combination concerning the proposed Initial Bid.  An Initial Bid must also fully disclose any connection with or participation by any "insider" of the Debtors or any

relative or any affiliate of any "insider" of the Debtors. An Initial Bid must also fully disclose any connection with or participation by any current creditor or equity holder of the Debtors.

6.      ***Contact Information***.   An Initial Bid must include the names and contact information (including phone numbers and email addresses) of all authorized representatives of the Bidder who will be available to answer questions regarding the Initial Bid, including advisors and related parties.

7. ***Deposit***. An Initial Bid must include a good-faith deposit in immediately available funds equal to ten percent (10%) of the amount of the Initial Bid (the "Deposit"). If a Bidder elects to increase the amount of its Initial Bid at the Auction, the Bidder will not be required to increase the amount of its Deposit. If a Bid is determined to be the Winning Bid at the Auction and the Bidder who submitted such Bid fails to timely close the Sale for any reason other than the Bankruptcy Court not approving the Bid at the Sale Hearing, the Deposit shall become non-refundable and be forfeited to the Debtor. The same shall apply to any Winning Back-Up Bid in the event the Winning Bidder fails to timely close the Sale, the Winning Back-Up Bidder is notified in writing that it is now the Winning Bidder, and the Winning Back-Up Bidder fails to close its purchase within ten (10) days of having been notified that it is now the Winning Bidder, unless the Winning Bidder and the Debtors jointly agree to extend the sale closing date. All Deposits of all Qualified Bidders shall be held in a segregated trust account maintained by LNBYG and shall be returned (other than with respect to the Winning Bidder and the Winning Back-Up Bidder) promptly after the conclusion of the Auction. All Bidders shall have the right to withdraw their Initial Bid at any time up until Noon (prevailing Pacific time) on August 2, 2022, in which case the Bidder will receive a return of their Deposit and be prohibited from participating in the Auction.

8.      ***Financing Sources***.  An Initial Bid must contain written evidence of available funds or a firm irrevocable commitment for financing sufficient to consummate the proposed Sale with appropriate contact information for such financing sources, with Kroll to determine whether such evidence of financing satisfies these Bidding Requirements and enables the Bidder to participate in the Auction, with such determination to be in Kroll's sole and absolute discretion.

9.      ***Designation of Assigned Contracts and Leases.***  Subject to the ability of the Debtors to obtain an order of the Bankruptcy Court approving of the Debtors' assumption and assignment of any executory contract or unexpired lease to the Winning Bidder, an Initial Bid must identify all of the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors, with the Winning Bidder having the right to amend such list at any time prior to the commencement of the Sale Hearing.

10.     ***Designation of Assumed Liabilities***.  An Initial Bid must identify all liabilities that the Bidder proposes to assume.

11.     ***Termination Fees.***  An Initial Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and by submitting the Initial Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its Initial Bid or its participation in the Auction.

## **Qualified Bidders and Bids**

Potential Bidders who have satisfied the Participation Requirements and Bid Requirements will be deemed "Qualified Bidders," and Bids that meet all of the Bid Requirements described above will be deemed "Qualified Bids," in each case, only if the Debtors

and Kroll conclude in the exercise of their business judgment, that such Bid would be consummated if selected as the Winning Bid; provided, however, that, for avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtors or Kroll to their satisfaction, the Debtors and Kroll shall have right, in their sole and absolute discretion, to disqualify any Qualified Bidder and Qualified Bid, and such Bidder shall not be entitled to attend or otherwise participate in the Auction.

### No Other Use of Credit Bids

Other than the Bank, there are no known liens against the Purchased Assets. Accordingly, other than the Bank should it wish to be a Bidder, no other party in interest or creditor may offer any type of credit bidding in connection with any Bid or the Sale.

### Notice of Qualified Bids

By 2:00 p.m. (prevailing Pacific time) on August 2, 2022, Kroll shall identify to all Qualified Bidders: (a) each and every Initial Bid that Kroll considers to be a Qualified Bid and (b) if more than one Qualified Bid has been timely received, the Qualified Bid that will constitute the Opening Bid at the Auction and the bidding order in which the Auction will be conducted.

### Auction

If no Qualified Bids are received then the Auction will be deemed automatically cancelled unless the Debtors and Kroll determine otherwise, in their sole and absolute discretion. If only one Qualified Bid is received, there will be no Auction and the Qualified Bidder will be deemed the Winning Bidder.  If more than one Qualified Bid is received, the Auction will proceed as scheduled with the Auction to commence at 10:00 a.m. (prevailing Pacific time) on August 3, 2022 at the law offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La

Cienega Avenue, Los Angeles, California [with zoom participation permitted].

### *Participation in and Attendance at Auction*

Only Kroll, the Debtors, and Qualified Bidders along with their representatives, counsel, and advisors, and any Official Committee of Unsecured Creditors and its counsel may attend the Auction (such Auction to be in person or via Zoom, Webex or similar virtual means, as applicable), and only Qualified Bidders shall be permitted to submit any Bids at the Auction.

### No Collusion; Good Faith Bona Fide Offer

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; (ii) its Bid is a good-faith *bona fide* offer; (iii) it intends to consummate the proposed transaction if selected as the Winning Bidder; and (iv) it acknowledges that, if chosen, it will serve as the Winning Back-Up Bidder.

### Opening Bid at the Auction

The Qualified Bid determined by Kroll and the Debtors to constitute the highest and best Initial Bid will serve as the opening bid (the "Opening Bid") at the Auction. Kroll will notify all Qualified Bidders in advance of the Auction which Initial Bid has been accepted as the Opening Bid at the Auction and the order in which the bidding at the Auction will proceed.

### Conducting the Auction

Kroll and LNBYG will direct and preside over the Auction. At the start of the Auction, and after each Qualified Bidder acknowledges on the record that it has not engaged in any collusion with respect to the bidding, that its Bid is a good faith bona fide offer, and that it intends to consummate the proposed transaction if selected as the Winning Bidder or the Winning Back-Up Bidder, Kroll and LNBYG will identify, confirm and describe the Opening

Bid.

The bidding will then ensue in the bidding order provided by Kroll to all Qualified Bidders in advance of the Auction. All bidding after the Opening Bid shall continue in bidding increments of at least $100,000 or figures that are wholly divisible by $100,000. All bids will be made and received in one room (or otherwise in the presence via Zoom, Webex or similar virtual means of all parties), on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all Qualified Bidders before the Auction and the material terms of each Qualified Bid submitted prior to the Auction, and all successive bids made at the Auction, will be fully disclosed to all Qualified Bidders. All Qualified Bidders will be permitted to bid at the Auction based on what Kroll and LNBYG determines to be an appropriate amount of time to respond to each prior submitted bid.

Prior to the Auction, Kroll will randomly assign to each Qualified Bidder a bidder number, except that the Bidder whose bid was accepted as the Opening Bid will be assigned bidder number 1. Once the Opening Bid has been described by Kroll and LNBYG, the bidding will then pass to Bidder number 2. Bidder number 2 will have the option of submitting an overbid to the Opening Bid of at least $100,000 or dropping out of the Auction. Once a Bidder drops out of the Auction, the Bidder will no longer be permitted to participate in the Auction. After Bidder number 2 either submits a qualifying overbid or drops out of the Auction, the bidding will then pass to Bidder number 3. This process will continue until only two Qualified Bidders are left, in which case the Qualified Bidder who submits the highest Qualified Bid will be deemed the Winning Bidder at the Auction, and the Qualified Bidder who submits the second highest Qualified Bid will be deemed the Winning Back-Up Bidder at the Auction.

Except as expressly provided in the Bidding Procedures Order or the provisions of the Bidding Procedures, the Debtors and Kroll shall have the right to conduct the Auction in the manner they reasonably determine, in the exercise of their business judgment, to be in the best interests of the Debtors' bankruptcy estates.  The Debtors and Kroll shall also have the right to deviate from these Bidding Procedures without the need for any further order of the Bankruptcy Court if they reasonably determine, in the exercise of their business judgment, that doing so would be in the best interests of the Debtors' bankruptcy estates and is not inconsistent with any of the provisions of the Bankruptcy Code or any previously entered order of the Bankruptcy Court including the Bidding Procedures Order.

Kroll and LNBYG, in consultation with the Debtors, may (1) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer and (2) reject at any time any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (iii) contrary to the best interests of the Debtors or their bankruptcy estates; _provided_ that, the highest, best, and otherwise financially superior offer shall be the Qualified Bid at the Auction reasonably expected to result in the highest amount of money being paid to the Debtors for their purchase of the Purchased Assets.

### Selection of the Winning Bid and Winning Back-Up Bid

The Auction shall continue until there is one Qualified Bid that Kroll and LNBYG, in consultation with the Debtors, determines, subject to Bankruptcy Court approval, to be the highest and best bid (the "Winning Bid"), and another Qualified Bid to be the second highest and best bid (the "Winning Back-Up Bid"), at which point the Auction will be deemed concluded. The Debtors will not consider any Bids submitted after the conclusion of the Auction.

Subject to the Bankruptcy Court approving the Winning Bid and entering an order

approving of the Debtors' free and clear sale of the Purchased Assets to the Winning Bidder in accordance with the APA submitted by the Winning Bidder (the "Sale Order"), the Winning Bidder shall be requiring to close the Sale by August 12, 2022 (unless the Debtors and the Winning Bidder jointly agree to an extension of this outside Sale closing date which will be in their sole and absolute discretion), or the Winning Bidder will be deemed to have forfeited its Deposit to the Debtors.  Promptly following the closing of the Sale to the Winning Bidder, LNBYG shall return the Deposit of the Winning Back-Up Bidder to the Winning Back-Up Bidder.

If the Winning Bidder fails to close the Sale by August 12, 2022, unless the Debtors and the Winning Bidder mutually agree in their sole and absolute discretion to extend the closing date, Kroll shall so notify the Winning Back-Up Bidder.  The Winning Back-Up Bidder will then have ten (10) days following the date of having been notified by Kroll to close the Sale.  If the Winning Back-Up Bidder fails to close the Sale within this time period, unless the Debtors and the Winning Back-Up Bidder mutually agree in their sole and absolute discretion to extend the closing date, the Winning Back-Up Bidder will be deemed to have forfeited its Deposit to the Debtors.

### Return of Deposits Following the Completion of the Auction

Promptly following the completion of the Auction, LNBYG will return the Deposits of all Bidders except for the Deposits of the Winning Bidder and the Winning Back-Up Bidder.

### Sale Hearing

The hearing for the Bankruptcy Court to approve the outcome of the Auction and the Debtors' sale of the Purchased Assets to the Winning Bidder and to the Winning Back-Up Bidder if the Winning Bidder fails to close (the "Sale Hearing") shall be held on

_____, 2022, at __:__ a.m./p.m., or at such other date and time set by the Bankruptcy Court.

## III.

## PROPOSED SALE NOTICE AND CURE NOTICE

Attached as **Exhibit "4"** to the Benn Declaration is the Debtors' proposed form of notice to prospective buyers and other parties in interest ("Proposed Sale Notice"), and attached as **Exhibit "3"** to the Benn Declaration is the Debtors' proposed form of notice to non-Debtor counterparties under executory contracts and unexpired leases regarding the possible assumption and assignment thereof ("Proposed Cure Notice").

### A.    *Proposed Sale Notice.*

The Debtors will serve the Proposed Sale Notice upon all known creditors and equity holders and upon all prospective buyers (with the list to be provided to the Debtors' counsel by Kroll) following Court approval of the Bidding Procedures.  Kroll will also place a copy of the Bidding Procedures Order and all of its exhibits, including the Proposed Sale Notice, into the data room that Kroll established and is managing and will continuously deliver copies of all such documents to all future prospective buyers as their identities become known.

The Debtors submit that the notice, and service thereof, will satisfy the requirements of Rule 2002 of the Federal Rules of Bankruptcy Procedure, and that such notice will constitute proper, timely, adequate and sufficient notice of the Sale, the Bidding Procedures including any Bid Deadline, the Auction, the Sale Hearing, and the deadline to object to any Sale. Accordingly, the Debtors request that the Proposed Sale Notice, substantially in the form attached as **Exhibit "__"** to the _____ Declaration be approved by the Court.

### B.    *Proposed Cure Notice.*

Similarly, the Debtors will serve the Proposed Cure Notice (substantially in the form attached to the proposed order granting the Motion) on each counterparty to an executory contract or unexpired lease, which notice shall: (i) state the cure amounts, if any, that the Debtors believe are necessary to assume such contracts or leases pursuant to Bankruptcy Code section

365 (the "Cure Amount"); (ii) notify the non-Debtor counterparty that such party's contract or lease may be assumed and assigned to the Winning Bidder; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors; and (iv) state the deadline by which the non-Debtor counterparty shall file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).

In connection with the scheduling of the Sale Hearing, the Debtors request that the Court also establish a deadline by which any objection to the Cure Amount or the assumption and assignment of the applicable contract(s) and/or lease(s) (the "Cure Objection Deadline") must be filed with the Court. As provided for in the Proposed Cure Notice, the Debtors request that any such objection must also state (i) the basis for such objection and (ii) with specificity what Cure Amount(s) the non-Debtor counterparty to the relevant executory contract(s) or unexpired lease(s) believes is required (in all cases with appropriate documentation in support thereof).

The proposed assumption and assignment procedure, which includes the Proposed Cure Notice, also provides for the following terms which the Debtors believe are appropriate and reasonable under the circumstances of these cases:

(1)    Any objection solely to the Cure Amount(s) may not prevent or delay the Debtors' assumption and assignment of assumed and assigned contract(s) or lease(s). If a party objects solely to Cure Amount(s), the Debtors may, with the consent of the Winning Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties. So long as the Cure Amount is held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtors can, without further delay, assume and assign such contract(s) or lease(s) to the Winning Bidder. Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

(2)    If no objection to the Cure Amount(s) is timely received, the Cure Amount(s) set forth in the Proposed Cure Notice shall be controlling notwithstanding anything to the contrary

in any assigned contract(s) or lease(s) or other document(s) as of the date of the Proposed Cure Notice.

(3)    Within one day following the conclusion of the Auction, the Winning Bidder will be required to provide to the Debtors a list of those executory contracts and unexpired leases that the Winning Bidders elects to have assumed and assigned (the "Designated Contracts") to the Winning Bidder at Closing pursuant to Bankruptcy Code Section 365, subject to the Winning Bidder's right to add or delete executory contracts or unexpired leases.  The Debtors will thereafter notify the counter-parties to the Designated Contracts of the Winning Bidder's preliminary determination in this regard.

(4)    To the extent that any non-Debtor counterparty wishes to object to the adequate assurance of future performance by the Winning Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-Debtor counterparty shall file a written objection with the Court at least one day prior to the Sale Hearing.

(5)    To the extent that any non-Debtor counterparty does not timely file and serve an objection as set forth above, such counterparty will be: (i) deemed to have consented to the Cure Amount(s), if any, set forth in the Cure Notice; (ii) barred, estopped and enjoined from asserting any additional Cure Amount(s) or pecuniary loss under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Winning Bidder, and (iv) barred from objecting to adequate assurance of future performance by the Winning Bidder.

(6)    The inclusion of a contract on a Cure Notice shall not constitute or be deemed a determination or admission by the Debtors, the Winning Bidder or any other party in interest that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that such contract or lease will be assumed in connection with the Sale of the Purchased Assets.  The Debtors reserve all of its rights, claims and causes of action with respect to the contracts or leases listed on the Cure Notice.

The Debtors submit that the Proposed Cure Notice is reasonably calculated to provide

sufficient effective notice to all non-Debtor counterparties to assumed and assigned contracts or leases and any other affected parties of the Debtors' intent to assume and assign some or all of such contracts or leases and to afford the non-Debtor counterparty to each such contract or lease the opportunity to exercise any rights affected by the Motion pursuant to Bankruptcy Rules 2002, 6004 and 6006, and should be approved.

**IV.**

**DISCUSSION**

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he Court may issue any order, process or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**A.**    **The Proposed Bidding Procedures Should Be Approved By The Court.**

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") govern the scope of the notice to be provided in the event a debtor elects to sell property of the estate under Section 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course of a debtor's business, Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the debtor provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. Proc. 6004(f). With that said, Local Bankruptcy Rule 6004-1 provides, in pertinent part, as follows:

> **(b) Motion for Order Establishing Procedures for the Sale of Estate Property.**
> . . .
>    (2) Contents of Notice [of a Sale Procedure Motion]. The notice must describe the proposed bidding procedures and include a copy of the proposed purchase agreement. If the purchase agreement is not available, the moving party must describe the terms of the sale proposed, when a copy of the actual agreement will be filed with the court, and from whom it may be obtained.

The notice must describe the marketing efforts undertaken and the anticipated marketing plan, or explain why no marketing is required. …

(3) <u>Service of the Notice and Motion.</u> The moving party must serve the motion and notice of the motion and hearing by personal delivery, messenger, telephone, fax, or email to the parties to whom notice of the motion is required to be given by the FRBP or by these rules, any other party that is likely to be adversely affected by the granting of the motion, and the United States trustee. The notice of hearing must state that any response in opposition to the motion must be filed and served at least 1 day prior to the hearing, unless otherwise ordered by the court.
. . .

Local Bank. R. 6004-1(b).

The Debtors respectfully submit that all of the information required under Local Bankruptcy Rule 6004-1(b)(2) to be provided in a notice of a bidding procedures motion has been included in the Notice of Motion filed and served concurrently herewith.

Further, Local Bankruptcy Rule 6004-1(b)(1) provides for the consideration and approval of a bidding procedures motion on not less than seven (7) days' notice.  The Debtors are requesting the Court to approve the Bidding Procedures at the cash collateral hearing already scheduled to be held on June 30, 2022 at 10 a.m., which would comply with the 7-day notice requirement of the Local Bankruptcy Rules.

Neither the Bankruptcy Code nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be employed by a debtor in conducting a public or private sale. Nonetheless, as one Court has stated, "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).  Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize bidding, not restrict it.'"  *Id.*

A corollary to these principles is that the court should not "cherry-pick" among contractual provisions, objecting to select individual portions, if the agreement as a whole is supported by an articulated business judgment. At least one bankruptcy court has expressly applied this corollary to a transaction including breakup and overbid provisions in the sale of the debtor's business. In *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr. S.D.N.Y. 1990), the court approved a transaction including provisions relating to a breakup fee and a requirement that overbids be at least $500,000. In responding to objections to other provisions of the agreement, the court held that:

> The Court is not to second guess the inclusion of some provisions as long as the Agreement as a whole is within reasonable business judgment, and the subject provisions do not distort the balance Congress struck in Chapter 11. *Cf. In re Ames Dep't Stores, Inc., Eastern Retailers Service Corp., et al.*, 115 B.R. 34, 37-38 (Bankr. S.D.N.Y. 1990) (some contractual provisions may be justified by the need to attract a prospective investor.).

114 B.R. at 886.

The Debtors believe that the proposed Bidding Procedures provide a structure for the sale of the Purchased Assets that is designed to insure that the highest and best price is paid for the Purchased Assets and that the sale closing occurs at the earliest reasonable possible date under the circumstances of these bankruptcy cases.

As a whole, the Debtors believe that the Bidding Procedures will (i) foster competitive bidding among any serious potential purchasers; (ii) sufficient time is being provided to insure that any and all interested parties are able to participate in the Auction process if they desire to do so; (iii) eliminate from consideration potential purchasers who do not have the financial ability to consummate their purchase in a timely manner or at a price point that makes no sense for these estates; and (iv) ensure that the highest possible purchase price is obtained for the Purchased Assets. The Debtors will only bring a stalking horse bid before the Court for approval if the Debtors, in consultation with Kroll, conclude that doing so will benefit these estates and further the goal of achieving the highest and best price for the Purchased Assets.

The Debtors therefore submit that the proposed Bidding Procedures are in the best interests of their bankruptcy estates, are necessary and appropriate to maximize the recovery for their bankruptcy estates, and should be approved by the Court as a sound exercise of the Debtors' business judgment.  Importantly, the Debtors are <u>not</u> seeking at this time to have the Court approve the actual sale of the Purchased Assets.  That request will be set forth in a separate sale motion to be filed by the Debtors and considered by the Court at the Sale Hearing.  The Debtors are at this time only seeking Court approval of the Bidding Procedures and related matters so that the entire market place can be advised as soon as possible exactly what they need to do in order to participate in this asset sale process.

**B.**    **The Court Should Also Approve The Assumption And Assignment Procedures Of the Designated Contracts.**

Barring exceptions not herein relevant, sections 365(a) and 1107(a) authorizes a debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor."  A debtor in possession may assume or reject executory contracts for the benefit of the estate. <u>In re Klein Sleep Products, Inc.</u>, 78 F.3d 18, 25 (2d. Cir. 1996); <u>In re Central Fla. Metal Fabrication, Inc.</u>, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); <u>In re Gucci</u>, 193 B.R. 411, 415 (S.D.N.Y. 1996).   In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it.   <u>In re Continental Country Club, Inc.</u>, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); <u>see also</u> <u>In re Gucci</u>, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice.  <u>In re Prime Motors Inns</u>, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), <u>citing</u> <u>Lubrizol Enterprises v. Richmond Metal Finishers</u>, 756 F.2d 1043, 1047 (4th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1057 (1986).

Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory contracts and unexpired leases, provided the debtor first assumes such executory contracts and unexpired leases in accordance with section 365(b)(1), and provides adequate assurance of future performance by the assignee.  Pursuant to section 365(b)(1), assumption of executory contracts

and unexpired leases requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease.  11 U.S.C. § 365(b)(1); see also In re Bowman, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995); In re AEG Acquisition Corp., 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), aff'd 161 B.R. 50 (9th Cir. B.A.P. 1993).  Pursuant to section 365(f)(1) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease pursuant to section 365(f)(2) of the Bankruptcy Code notwithstanding any provision in such executory contract or unexpired lease that prohibits, restricts or conditions the assignment of such executory contract or unexpired lease.

The assumption and assignment of executory contracts furthers the goals of Chapter 11 of promoting reorganization by balancing the debtor's interest in maximizing the value of its estate against the contracting party's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred.  In re Embers 86th Street. Inc., 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

As part of this Motion, the Debtors are seeking approval of the procedures by which the Debtors will assume and assign to the Winning Bidder all of the Debtors' executory contracts and unexpired leases that the Winning Bidder desires.  As indicated above, the Debtors propose to serve the Proposed Cure Notice (substantially in the form attached as Exhibit "3" to the  Benn Declaration) on each counterparty to an executory contract or unexpired lease, which notice shall: (i) state the Cure Amount; (ii) notify the non-Debtor counterparty that such party's contract or lease may be assumed and assigned to the Winning Bidder; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors; and (iv) state the deadline by which the non-Debtor counterparty shall file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).

Since the identity of the Winning Bidder is not known at this time (and will not be known until the conclusion of the Auction), the Debtors have no way of knowing which executory contracts and unexpired leases, if any, the Winning Bidder will to have assigned to it.

Accordingly, the Debtors propose to serve the Proposed Cure Notice on <u>every</u> counterparty to all executory contracts or unexpired leases; thus, every counterparty to an executory contract or unexpired lease that could be subject to an assumption and assignment will have a meaningful opportunity to object, including to the Cure Amount. Thus, these parties will not be prejudiced by the proposed procedures for assumption and assignment of their executory contract or unexpired lease.

The Debtors submit that this procedure and the proposed notices are fair and reasonable under the circumstances of these cases.

## V.

## **CONCLUSION**

Based upon all of the foregoing, the Debtors respectfully request that this Court do the following:

(1)   Grant this Motion in its entirety;

(2)   Enter the Bidding Procedures Order in substantially the form appended as **Exhibit "1"** to the Benn Declaration;

(3)   Approve the Bidding Procedures substantially in the form described in **Exhibit "2"** attached to the Benn Declaration for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests;

(4)   Establish and approve procedures relating to the Debtors' assumption and assignment of executory contracts and unexpired leases and which approves the form of notice to be provided to all counterparties to executory contracts and unexpired leases attached as **Exhibit "3"** to the Benn Declaration;

(5)   Approve the Debtors' proposed form of notice to be sent to all creditors, equity holders, proposed buyers and other parties in interest in the form attached as **Exhibit "4"** to the Benn Declaration;

(6)   Approve the Template APA (without exhibits) in the form attached as **Exhibit "5"** to the Benn Declaration;

(7)    Schedule the Auction for August 23, 2022 as requested in the Motion;

(8)    Schedule the Sale Hearing for the Court to consider approval of the Debtors' sale of the Purchased Assets to the winning bidder and winning back-up bidder at the Auction; and

(9)    Grant such other and further relief as the Court deems just and proper under the circumstances.

Dated:  June 23, 2022                  TRX HOLDCO, LLC
FITNESS ANYWHERE LLC

By:_____*/s/ Ron Bender*_____
RON BENDER
KRIKOR J. MESHEFEJIAN
LINDSEY L. SMITH
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' MOTION FOR ENTRY OF ORDER (I)
ESTABLISHING BIDDING PROCEDURES FOR FREE AND CLEAR SALE OF ASSETS; (II) ESTABLISHING
PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (III) APPROVING FORMS OF NOTICE; (IV) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (V)
SCHEDULING AN AUCTION; (VI) SCHEDULING A SALE HEARING; AND (VII) GRANTING RELATED RELIEF;
MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form
and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
___**June 23, 2022**___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com**
- **Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com**
- **Jonathan Gottlieb    jdg@lnbyg.com**
- **Michael J Hauser    michael.hauser@usdoj.gov**
- **Marsha A Houston    mhouston@reedsmith.com, hvalencia@reedsmith.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **Ali M Mojdehi    amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com;amattingly@btlaw.com**
- **Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com**
- **Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) ___**June 23, 2022**___, I served the following persons and/or entities at the
last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___**June 23, 2022**___, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

☒ Service information **BY OVERNIGHT MAIL** continued on attached page

☒ Service information **BY EMAIL** continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

In re Fitness Anywhere LLC and TRX
File No. 9745
RSN UST, 20 Largest and Secured
EMAIL LIST

Core Health & Fitness, LLC
Sy Mares
smares@corehandf.com

Office of the U.S. Trustee
Michael J Hauser
Michael.hauser@usdoj.gov

Flexport Inc
alyssa@flexport.com

Dirbos Inc.
jon@dirbos.com
(949) 466-1897

Duane Morris LLP
Michael J. Silverman
mjsilverman@duanemorris.com

NetSuite Inc
Carmina.espinola@oracle.com

ISUPPORT WORLDWIDE LLC
Courtney Bissett
cbissett@isupportworldwide.com

Syzygy Digital Marketing, Inc
finance@syzygy.us
Geanina Scuipici
Geanina.Scuipici@syzygy.co.uk

Sprint FWD, LLC
Bryan Arp
bryanarp@gmail.com

Counsel for Creative Artists Agency
Michael I. Gottfried, Esq.
mgottfied@elkinskalt.com

McCollister's Transportation Group, Inc
sschukraft@mccollisters.com

UDR-Eight 80
rholly@udr.com

Morrison & Foerster LLP
Murray A. Indick
mindick@mofo.com

Woodforest National Bank
mhouston@reedsmith.com
crivas@reedsmith.com

SprintFWD, LLC
Bryan Arp
bryanarp@gmail.com

Comma,8 LLC
Bryan Arp
bryanarp@gmail.com

Counsel for Core Health & Fitness, LLC
Ali M.M. Mojdehi **RSN**
amojdehi@btlaw.com
arego@btlaw.com

Email block:

smares@corehandf.com; Michael.hauser@usdoj.gov; alyssa@flexport.com; jon@dirbos.com; mjsilverman@duanemorris.com; Carmina.espinola@oracle.com; cbissett@isupportworldwide.com; finance@syzygy.us; bryanarp@gmail.com; mgottfied@elkinskalt.com; sschukraft@mccollisters.com; rholly@udr.com; mindick@mofo.com; mhouston@reedsmith.com; crivas@reedsmith.com; bryanarp@gmail.com; amojdehi@btlaw.com; arego@btlaw.com

In re TRX Holdco, LLC
File No. 9745
RSN UST, 20 Largest, Secured
SERVICE BY OVERNIGHT MAIL

Michael J Hauser
United States Trustee
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593

Baker Tilly US, LLP
10 Terrace Court PO Box 7398
Madison, WI 53707-7398

Cole Schotz P.C.
25 Main Street P.O. Box 800
Hackensack, NJ 07602

Creative Artists Agency
Attn: Jeffrey Freedman
2000 Avenue of the Stars
Los Angeles, CA 90067

JMBM LLP
1900 Avenue of the Stars
Los Angeles, CA 90067

Morrison & Morrison
222 Souther Riverside Plaza
Chicago, IL 60606

Sterling Legal Solutions, Inc.
Attn: Stephanie Sterling
26895 Aliso Creek Rd., B-129
Aliso Viejo, CA 92656

UDR-Eight 80
1590 Adams Avenue
PO Box 2350
Costa Mesa, CA 92628

UDR-Eight 80
Agent for Service of Process
330 N. Brand Blvd., Suite 700
Glendale, CA 91203

Sterling Legal Solutions, Inc.
Agent for Service of Process
720 14th Street
Sacramento, CA 95814

SprintFWD, LLC
Attn: Bryan Arp
703 Pier Avenue, Suite B #632
Hermosa Beach CA 90254-0000

Comma,8 LLC
Attn: Bryan Arp
703 Pier Avenue, Suite B #632
Hermosa Beach CA 90254-0000

In re Fitness Anywhere LLC
File No. 9744
RSN UST, 20 Largest and Secured

SERVICE BY OVERNIGHT MAIL

<u>Counsel for Woodforest National Bank</u>
ReedSmith
Marsha Houston/Christopher Rivas
355 South Grand Avenue, Suite
2900 Los Angeles, CA, 90071

Michael J Hauser
United States Trustee
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593

<u>Committee</u>
Exemplar Design, LLC
Attention: Matt Nelson
4680 Parkway Drive, Suite 300
Mason, OH 45040

<u>Committee</u>
Core Health & Fitness, LLC
Attention:  Sy Mares
4400 NE 77th Avenue, Suite 250
Vancouver, WA 98662

<u>Committee</u>
United Parcel Service, Inc.
Attention: Farah C. Spainhour
55 Glenlake Parkway
Atlanta, GA 30328

Morrison & Foerster LLP
Attn: Murray A. Indick
425 Market Street
San Francisco CA 94105-0000

Core Health & Fitness, LLC
4400 Northeast 77th Avenue
Suite 300
Manufacturer Land America
Vancouver, WA 98662

Stephen Gould Corporation
35 South Jefferson Road
Whippany, NJ 07981

Flexport Inc
P.O. Box 207244
Dallas, TX 75320-7244

UPS Plan 0386NE
55 Glenlake Parkway NE
Atlanta, GA 30328

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196

Buy Box Experts
3020 N Cullen Ct. Pleasant
Grove, UT 84062

MAN Staffing, LLC
550 East Del Amo Boulevard
Carson, CA 90746

Syzygy Digital Marketing, Inc
41 Flatbush Avenue
Brooklyn, NY 11217

Lahlouh Inc
Attn: H. John Lahlouh
1649 Adrian Road
Burlingame, CA 94010

US Customs and Border Protection
PO BOX 979126
St. Louis, MO 63197-9000

McCollister's Transportation Group, Inc
8 Terri Lane
Burlington, NJ 08016

NetSuite Inc
500 Oracle Parkway
Redwood City, CA 94065

Google
P.O. Box 39000
San Francisco, CA 94139

AMEX Corp Card
P.O. Box 0001
Los Angeles, CA 90096

The Trade Desk
42 N Chestnut St.
Ventura, CA 93001

Dirbos Inc.
27758 Santa Margarita Pkwy
Suite 366
Mission Viejo, CA 92691

Redwood Supply Chain Solutions
1765 North Elston Avenue Suite 216
Chicago, IL 60642

USA Global Logistics LLC
255 Madsen Drive
Bloomingdale, IL 60108

ISUPPORT WORLDWIDE LLC
1019 West James St
Kent, WA 98032

Core Health & Fitness, LLC
Agent for Service of Process
330 N. Brand Blvd, Ste 700
Glendale, CA 91203

Stephen Gould Corporation
Agent for Service of Process
2710 Gateway Oaks Drive
Ste 150N
Sacramento, CA 95833

Flexport Inc.
Agent for Service of Process
5716 Corsa Ave.
Ste 110
Westlake Village, CA 91362

United Parcel Service, Inc.
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

McCollister's Transportation
Systems, Inc.
Agent for Service of Process
2710 gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Netsuite Inc.
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Google
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Man Staffing LLC
Attn: Miguel A Navarro
550 E Del Amo Blvd.
Suite C
Carson, CA 90746

Trade Desk
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Dirbos
Agent for Service of Process
101 N. Brand Blvd. 11th Floor
Glendale, CA 91203

Redwood Logistics LLC
C/O COGENCY GLOBAL INC.
1325 J STREET STE 1550
SACRAMENTO, CA 95814

Counsel for Creative Artists Agency
Michael I. Gottfried, Esq. **RSN**
Elkins Kalt Weintraub Reuben
Gartside LLP 10345 W. Olympic Blvd.
Los Angeles, CA 90064

Counsel for Core Health & Fitness, LLC
Ali M.M. Mojdehi **RSN**
Barnes & Thornburg LLP
655 West Broadway, Suite 1300
San Diego, CA 92101

Sprint FWD, LLC
Attn: Bryan Arp
703 Pier Avenue
Suite B #632
Hermosa Beach CA 90254-0000