RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br><br>☒  Affects both Debtors<br><br>☐  Affects TRX Holdco, LLC only<br><br>☐  Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**DECLARATION OF JOSHUA K. BENN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDER (I) ESTABLISHING BIDDING PROCEDURES FOR FREE AND CLEAR SALE OF ASSETS; (II) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING FORMS OF NOTICE; (IV) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (V) SCHEDULING AN AUCTION; (VI) SCHEDULING A SALE HEARING; AND (VII) GRANTING RELATED RELIEF**<br><br>**Date:　June 30, 2022**<br>**Time:　10:00 a.m.**<br>**Place:　*Via ZoomGov***<br>　　　　Courtroom 5C<br>　　　　411 West Fourth Street<br>　　　　Santa Ana, CA 92701 |

1

I, Joshua K. Benn, hereby declare under penalty of perjury as follows:

1.    I am a Managing Director and head of the New York Corporate Finance practice of Kroll, LLC ("Kroll"), head of Kroll's Americas M&A and distressed and special situations advisory practice. I also lead Kroll's global Consumer Corporate Finance practice. I have more than twenty five (25) years of investment banking experience. Attached here as **Exhibit 6** is a true and correct copy of my professional resume.

2.    Kroll Securities, LLC – an affiliate of Kroll - was retained prepetition by TRX Holdco, LLC and Fitness Anywhere, LLC (together, the "Debtors") to, among other things, identify prospective investors and seek to obtain additional investment in the Debtors' business, or engage in a transaction such as a merger and/or acquisition, in order to further capitalize the Debtors and meet the Debtors' operational and growth needs. My team, led by senior professionals, was directly involved with these efforts, and provided the following services:

a.    Preparation of: (i) marketing materials; and (ii) list of investors and purchasers;

b.    Board presentations and other internal reporting reports;

c.    Contacting prospective purchasers and investors to solicit interest in a transaction;

d.    Processing all process materials including non-disclosure agreements;

e.    Exerting commercial and reasonable efforts to procure a potential purchaser or investor at the earliest, reasonably practical date who is ready, willing and able to consummate a transaction on satisfactory terms;

f.    Participating in diligence and meetings between the Debtors and seriously interested parties;

g.    Organizing and executing a negotiating process with the objective of obtaining the best transaction valuation and terms;

h.    Assisting the company with evaluating offers; and

i.    Being available to assist the company in negotiating agreements and definitive contracts;

3.    I understand the Debtors goal in these bankruptcy cases is to consummate a free and clear asset sale for the most money possible.

4.    I understand that the Debtors made a determination shortly prior to their bankruptcy filings that proceeding with a free and clear asset sale process was in the best interests of their estate.  While it appears that there is a substantial amount of interest in the buying community to acquire the Debtors' business and by many to serve as a stalking horse bid, since the Debtors only commenced their free and clear asset sale process shortly prior to their bankruptcy filings, the Debtors do not yet have a stalking horse bid lined up.  We therefore believe that proceeding at this point to the Auction without a stalking horse bid in hand is the best option for these bankruptcy estates, with the Debtors retaining the right to seek an alternative order from the Court if facts and circumstances dictate otherwise

5.    The Debtors engaged in extensive consultations with Kroll, and after taking into account the Debtors' financial situation, including the possibility that the Debtors will be provided with post-petition financing from the Debtors' pre-petition secured lender, Woodforest National Bank (the "Bank"), I  believe that the procedures ("Bidding Procedures") and timetable proposed in the accompanying motion ("Bid Procedures Motion") for Court approval of the Bidding Procedures is optimal in order to achieve the highest and best price for the Purchased Assets.  Capitalized terms in this Declaration have the same meaning given to such terms in the Bid Procedures Motion, unless otherwise indicated.

6.    The proposed Bidding Procedures are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets.  This is being done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.  Kroll has already established an extensive data room and, to date, approximately 45 prospective bidders have signed NDA's who are actively engaged in the data room in connection with the current asset sale process, and Kroll is receiving new and additional inquiries virtually daily – meaning that this is a very active asset sale process.  Kroll is also in discussions with numerous prospective buyers regarding the possibility of serving as a stalking horse bidder.  Even if the

Debtors reach an agreement with a financially qualified buyer to serve as the stalking horse bidder which will then be presented to the Court for approval, the Debtors will still insist upon an overbid process to make sure that all prospective bidders have the opportunity to overbid the stalking horse bid at an open Auction process to insure that the highest and best price is ultimately paid for the Purchased Assets.

7.    Attached as **Exhibit 1** to this Declaration is a proposed Bidding Procedures Order;

8.    Attached as **Exhibit 2** to this Declaration are the Bidding Procedures proposed by the Debtors for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests.

9.    Attached as **Exhibit 3** to this Declaration is the Debtors' proposed form of notice of assumption and assignment of contracts and leases, cure amounts and related information to be provided to all counterparties to executory contracts and unexpired leases.

10.    Attached as **Exhibit 4** to this Declaration is the Debtors' proposed form of notice of sale to be sent to all creditors, equity holders, proposed buyers and other parties in interest.

11.    Attached as **Exhibit 5** to this Declaration is the Debtors' Template APA.

12.    The proposed Bidding Procedures provide a structure for the sale of the Purchased Assets that is designed to insure that the highest and best price is paid for the Purchased Assets and that the sale closing occurs at the earliest reasonable possible date under the circumstances of these bankruptcy cases.

///
///
///
///
///
///
///
///

13.     As a whole, in my experience and based on my knowledge of these cases, the Bidding Procedures will (i) foster competitive bidding among any serious potential purchasers; (ii) sufficient time is being provided to insure that any and all interested parties are able to participate in the Auction process if they desire to do so; (iii) eliminate from consideration potential purchasers who do not have the financial ability to consummate their purchase in a timely manner or at a price point that makes no sense for these estates; and (iv) ensure that the highest possible purchase price is obtained for the Purchased Assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 23rd day of June, 2022, at New York, New York.

_____
JOSHUA K. BENN

# EXHIBIT "1"

1  RON BENDER (SBN 143364)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LINDSEY L. SMITH (SBN 265401)
3  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
4  Los Angeles, California 90034
   Telephone: (310) 229-1234; Facsimile: (310) 229-1244
5  Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

6
7  Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

8              UNITED STATES BANKRUPTCY COURT
                 CENTRAL DISTRICT OF CALIFORNIA
9                     SANTA ANA DIVISION

10 In re:                                  Lead Case No.: 8:22-bk-10948-SC

11 TRX HOLDCO, LLC, a Delaware limited     Jointly administered with:
   liability company,                      8:22-bk-10949-SC
12
           Debtor and Debtor in Possession.  Chapter 11 Cases
13 _____
                                          **ORDER (I) ESTABLISHING BIDDING**
14 In re:                                 **PROCEDURES FOR FREE AND CLEAR**
                                          **SALE OF ASSETS; (II) ESTABLISHING**
15 FITNESS ANYWHERE LLC, a Delaware       **PROCEDURES RELATING TO ASSUMPTION**
   limited liability company, dba TRX and TRX  **AND ASSIGNMENT OF EXECUTORY**
16 Training,                              **CONTRACTS AND UNEXPIRED LEASES;**
                                          **(III) APPROVING FORMS OF NOTICE; (IV)**
17         Debtor and Debtor in Possession.  **APPROVING FORM OF ASSET PURCHASE**
   _____    **AGREEMENT; (V) SCHEDULING AN**
18                                         **AUCTION; (VI) SCHEDULING A SALE**
                                          **HEARING; AND (VII) GRANTING RELATED**
19 ☒  Affects both Debtors                **RELIEF**

20 ☐  Affects TRX Holdco, LLC only        **Date:**  June 30, 2022
                                          **Time:**  10:00 a.m.
21 ☐  Affects Fitness Anywhere, LLC only  **Place:  *Via ZoomGov**
22                                                   Courtroom 5C
                                                     411 West Fourth Street
23                                                   Santa Ana, CA 92701
24
25
26
27
28

                             1

A hearing was held at the above-referenced date and time for the Court to consider approval of the motion (the "Motion") filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases[1], seeking the entry of an order that, among other things:

(i)     Approves the Debtors' proposed bidding procedures ("Bidding Procedures") substantially in the form in **Exhibit "2"** attached to the Declaration of Joshua Benn filed by the Debtors as Docket No. ___ (the "Benn Declaration") for the sale of substantially all of the Debtors' assets related to the operation of the Debtors' business (the "Purchased Assets"), free and clear of all liens, claims, encumbrances and other interests;

(ii)    Establishes and approves procedures relating to the Debtors' assumption and assignment of executory contracts and unexpired leases and which approves the form of notice to be provided to all counterparties to executory contracts and unexpired leases attached as **Exhibit "3"** to the Benn Declaration;

(iii)   Approves the Debtors' proposed form of notice to be sent to all creditors, equity holders, proposed buyers and other parties in interest in the form attached as **Exhibit "4"** to the Benn Declaration;

(iv)    Approves the Debtors' proposed form of asset purchase agreement (the "Template APA") without exhibits in the form attached as **Exhibit** "5" to the Benn Declaration;

(v)     Schedules an auction ("Auction");

(vi)    Schedules a hearing for the Court to consider approval of the sale of the Purchased Assets to the winning bidder and winning back-up bidder at the Auction ("Sale Hearing"); and

(vii)   Grants related relief.

---

[1] The Court previously entered an order approving the joint administration of these chapter 11 bankruptcy cases.

Appearances were made at the hearing on the Motion as set forth on the record of the Court.

The Court, having considered the Motion and all of the pleadings filed by the Debtors in support of the Motion, the statements, arguments and representations of counsel for the Debtors made at the hearing on the Motion, any responses or objections filed to the Motion and any replies filed by the Debtors, the statements, arguments and representations of all other parties who appeared at the hearing on the Motion, and good cause appearing,

HEREBY ORDERS AS FOLLOWS:

1.      The Bidding Procedures are approved.

2.      July 27, 2022 at 5 p.m. (prevailing Pacific time) is the deadline (the "Initial Bid Deadline") by when initial bids need to be submitted by parties who wish to participate in the Auction.  In order to participate in the Auction, all prospective bidders must do all of the following:

(i)      Submit a redlined version of the template asset purchase agreement (the "Template APA") indicating all changes that are requested to be made to the Template APA, with the Template APA to include their proposed initial bid;

(ii)     Submit all documents to enable Kroll to determine whether the proposed bidder is financially qualified to participate in the Auction; and

(iii)    Submit a deposit equal to 10% of the proposed initial bid, which 10% deposit would be deemed non-refundable if the bidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court.  Bidders will have the right to withdraw their bid at any time up until Noon (prevailing Pacific time) on August 2, 2022, in which case they will receive a return of their 10% deposit and no longer be eligible to participate in the Auction.

3.      The procedures proposed by the Debtors in the Motion relating to the Debtors' assumption and assignment of executory contracts and unexpired leases are approved, and the Debtors' proposed form of notice to be provided to all counterparties to executory contracts and unexpired leases attached as **Exhibit "3"** to the Benn Declaration is approved.

4.      The Debtors' proposed form of notice to be sent to all creditors, equity holders, proposed buyers and other parties in interest in the form attached as **Exhibit "4"** to the Benn Declaration is approved.

5.      The Debtors' proposed form of Template APA attached as **Exhibit** "5" to the Benn Declaration (without exhibits) is approved.

6.      The Auction shall be held on August 3, 2022 at 10 a.m. (prevailing Pacific time), at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., located at 2818 La Cienega Avenue, Los Angeles, CA, with Qualified Bidders having the option to participate in person or via zoom, and the Auction procedures proposed by the Debtors in the Motion are approved.

7.      The hearing for the Court to consider approval of the Debtors' proposed sale of the Purchased Assets to the Winning Bidder at the Auction (and to approve the Winning Back-Up Bidder) will be held on August __, 2022, at __:__ __.m.  (the "Sale Hearing").  The Debtors shall file their proposed asset sale motion and related pleadings (collectively, the "Sale Motion") with the Court by no later than twenty-one days prior to the Sale Hearing.  Any objections to the Sale Motion must be filed with the Court by no later than fourteen days prior to the Sale Hearing. Any reply pleadings to any objections filed to the Sale Motion must be filed with the Court by no later than seven days prior to the Sale Hearing.

EXHIBIT "2"

### BIDDING PROCEDURES - TRX HOLDCO, LLC AND

### FITNESS ANYWHERE LLC, dba TRX and TRX TRAINING

These bidding procedures (the "Bidding Procedures") relate to the proposed free and clear sale by TRX Holdco, LLC and Fitness Anywhere LLC, dba TRX and TRX Training (collectively, the "Debtors") of substantially all of their assets (excluding cash and bankruptcy avoidance actions).  A schedule of the assets being sold is attached hereto as Exhibit "1" (the "Assets").

At a hearing held on June 30, 2022 before the United States Bankruptcy Court for the Central District of California, Sana Ana Division (the "Bankruptcy Court") under Lead Case No.: 8:22-bk-10948-SC being jointly administered with Case No.: 8:22-bk-10949-SC, the Bankruptcy Court approved these Bidding Procedures, which are intended to ensure that the highest and best possible price is paid for the Assets by a purchaser who has the financial ability to close on the sale of the Assets (the "Sale").  A copy of the Bankruptcy Court order approving these Bidding Procedures is attached hereto as Exhibit "2".

These Bidding Procedures assume that there will be an open auction for the sale of the Assets with no stalking horse bidder.[1]

### Free and Clear Sale of the Assets.

An auction (the "Auction") will take place on August 3, 2022, at the law offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), which is serving as bankruptcy counsel to the Debtors, at which the sale of the Assets will occur.  All qualified bidders and their representatives will be authorized to appear at the Auction in person or by video zoom.  The zoom

---

[1] The Debtors reserve the right to seek a further order of the Bankruptcy Court to alter these Bidding Procedures, including to include a stalking horse bidder, if the Debtors determine that doing so is in the best interests of their bankruptcy estates.

information for the Auction will be provided in advance to all Qualified Bidders who wish to participate in the Auction by zoom.

The sale of the Assets will be free and clear of all liens, claims and interests pursuant to Section 363(b) and (f) of the Bankruptcy Code, with any liens that exist against the Assets to attach to the proceeds of the sale with the same validity and priority as such liens have in and to the Assets.  Without limiting the generality of the foregoing, the sale of the Assets will be free and clear of the only known lien held against the Assets which is in favor of Woodforest National Bank (the "Bank").

**Bidding Process**

The Debtors have retained Kroll Securities, LLC ("Kroll") to serve as the Debtors' financial advisor and investment banker.  Kroll and LNBYG will jointly conduct the Auction.

**Key Dates for Interested Bidders**

These Bidding Procedures provide interested parties with a detailed explanation of what they need to do to participate in the Auction.

The key dates for the Auction and related free and clear asset sale process are as follows:

| | |
|---|---|
| July 27, 2022 at 5 p.m. (prevailing Pacific time) | Initial Bid Deadline – Due Date for initial bids to be submitted by all parties who wish to participate in the Auction.  In order to participate in the Auction, all prospective bidders must do all of the following:<br>1. Submit a redlined version of the template asset purchase agreement (the "Template APA") indicating all changes that are requested to be made to the Template APA, with the Template APA to include their proposed initial bid;<br>2. Submit all documents to enable Kroll to determine whether the proposed bidder is financially qualified to participate in the Auction; and |

2

| | |
|---|---|
| | 3. Submit a deposit equal to 10% of the proposed initial bid, which 10% deposit would be deemed non-refundable if the bidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Assets to the bidder is approved by the Bankruptcy Court. Bidders will have the right to withdraw their bid at any time up until Noon (prevailing Pacific time) on August 2, 2022, in which case they will receive a return of their 10% deposit and no longer be eligible to participate in the Auction. |
| August 3, 2022 at 10 a.m. (prevailing Pacific time) | Auction to be held at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., which are located at 2818 La Cienega Avenue, Los Angeles, CA, or via zoom with all Qualified Bidders to be provided with particulars in advance of the Auction. |
| _____, 2022 at __:__ a.m./p.m. | Sale Hearing to be conducted before the Bankruptcy Court for the Bankruptcy Court to approve the Debtors' sale of the Assets to the winning bidder at the Auction (the "Sale Hearing") |
| August 12, 2022 | Outside date by when the winning bidder at the Auction is required to close its purchase of the Assets unless the winning bidder and the Debtors jointly agree to extend the outside closing date |

**Due Diligence Access / Auction Participation Requirements**

In order to participate in the Auction process as a bidder, a person or entity interested in purchasing the Assets (a "Potential Bidder") must deliver or have previously delivered to Kroll all of the following documents (the "Participation Requirements"): (1) an executed non-disclosure agreement with the form to be obtained from Kroll; (2) a statement demonstrating a bona fide interest in purchasing the Assets; and (3) one of the following: (i) written evidence of readily

available funds equal to the Potential Bidder's initial bid and any increase the Potential Bidder desires to have authority to bid to, with Kroll to keep all such information completely confidential, (ii) a firm commitment for financing sufficient for the Potential Bidder to timely consummate its purchase of the Assets, or (iii) other sufficient information, which may include current audited financial statements and the latest unaudited financial statements of the Potential Bidder and/or its equity holders, or such other form of financial disclosure and credit-quality support or enhancement that will allow Kroll to make a reasonable determination as to the Potential Bidder's financial and other capabilities to timely consummate its purchase of the Assets. Any Potential Bidder who has satisfied the foregoing Participation Requirements will be afforded, subject to the other provisions of these Bidding Procedures, due diligence access and additional information through access to an online data room, as well as, upon reasonable advance notice, on-site visits and direct communication with management as the Potential Bidder desires and Kroll determines to be appropriate under the circumstances and subject to the availability of such management.

### Due Diligence Limitations

The Debtors and Kroll shall not be obligated to furnish any due diligence information to any Potential Bidder after the Bid Deadline. In their discretion, the Debtors and Kroll may, but shall not be obligated to, furnish additional information after the Bid Deadline to Qualified Bidders.  The Debtors and Kroll reserve the right to withhold any due diligence materials from any Potential Bidder that the Debtors and Kroll determine are business-sensitive or otherwise not appropriate for disclosure to any Potential Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors.

4

Neither the Debtors nor Kroll nor any of their representatives or advisors shall be obligated to furnish information of any kind whatsoever to any person or entity who is not determined to have satisfied the Participation Requirements.

All due diligence requests must be directed to Kroll, Attn: Joshua Benn (Joshua.benn@kroll.com); Vijay Sampath (Vijay.sampath@kroll.com); Russell Norowitz (russell.norowitz@kroll.com); and Greg Klein (Greg.Klen@kroll.com).

### Due Diligence from Potential Bidders

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or Kroll or their advisors regarding such Potential Bidder, including, without limitation, the Potential Bidder's financial ability to close the Sale. The Failure by a Potential Bidder to comply with any such requests may be a basis for the Debtors and Kroll to determine that such Potential Bidder is not or cannot be a Qualified Bidder.

### Initial Bid Deadline for All Bidders

The deadline for all bidders to submit their initial bid for the Assets ("Initial Bid") is **July 27, 2022 at 5:00 p.m. (prevailing Pacific time)** (the "Bid Deadline"). An Initial Bid may be transmitted electronically and must be received on or before the Bid Deadline by Kroll, LNBYG and the Official Committee of Unsecured Creditors (the "Committee") and its counsel (collectively, the "Receiving Parties"). An Initial Bid received after the Bid Deadline shall not be considered unless the Debtors and Kroll, for good cause, consent.

### Bid Requirements

To be eligible to participate in the Auction, each Initial Bid and each Potential Bidder submitting an Initial Bid (each, a "Bidder") must be determined by the Debtors and Kroll to have satisfied all of the conditions listed below (collectively, the "Bid Requirements"):

1.    **Terms**.  An Initial Bid must be accompanied by a clean and redlined version of the APA, with the redlined version of the APA to show all of the Potential Bidder's requested changes to the Template APA.  The form template APA in Word format ("Template APA") can be obtained by any Potential Bidder from either Kroll or LNBYG, and a copy will be available in the online data room being maintained by Kroll.  The APA must include binding, executed transaction documents and be signed by an authorized representative of the Bidder.

2.    **No Contingencies**.  An Initial Bid must include a statement that there are no conditions precedent to the Bidder's authority to enter into or consummate a definitive agreement, other than entry by the Bankruptcy Court of an order approving the sale of the Assets to the Bidder.

3.    **Bid Requirements**.  An Initial Bid must set forth a cash purchase price for the Assets.  Without limiting the generality of the foregoing, an Initial Bid (i) may not contain representation or warranties, covenants, or termination rights materially more onerous in the aggregate than are set forth in the Template APA, as determined by the Debtors and Kroll, (ii) may not be conditioned upon obtaining financing, any internal, regulatory, or other third party approvals, or on the outcome or review of due diligence, (iii) may not provide for a closing date that will be later than August 12, 2022, unless both the Debtors and the winning bidder jointly agree to extend the Sale closing date at their sole and absolute discretion, and (iv) may not be conditioned upon the Bankruptcy Court order approving the sale becoming a "final order."

4.    **Irrevocable**.  An Initial Bid must state that unless the Bidder withdraws its Initial Bid by Noon (prevailing Pacific time) on August 2, 2022, the offer made by the Bidder in

6

its Initial Bid is binding and irrevocable until the conclusion of the Sale Hearing and such Initial Bid must continue to remain binding and irrevocable through the Sale Closing if the Initial Bid or any higher bid submitted by the Bidder at the Auction is accepted by the Debtors at the Auction as the Winning Bid (defined below) or the Winning Back-Up Bid (defined below) and approved by the Bankruptcy Court at the Sale Hearing.

5.      *Identity of Bidder*.  An Initial Bid must fully disclose the identity of each entity or person that will be bidding for or purchasing the Assets, including all material equity holders (i.e., parties that own at least 10% of the equity of the Bidder) in the case of a Bidder that is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Initial Bid, and the complete terms of any such participation, including any agreements, arrangements or understanding concerning collaborative or joint bid or any other combination concerning the proposed Initial Bid.  An Initial Bid must also fully disclose any connection with or participation by any "insider" of the Debtors or any relative or any affiliate of any "insider" of the Debtors. An Initial Bid must also fully disclose any connection with or participation by any current creditor or equity holder of the Debtors.

6.      *Contact Information*.  An Initial Bid must include the names and contact information (including phone numbers and email addresses) of all authorized representatives of the Bidder who will be available to answer questions regarding the Initial Bid, including advisors and related parties.

7.      *Deposit*.  An Initial Bid must include a good-faith deposit in immediately available funds equal to ten percent (10%) of the amount of the Initial Bid (the "<u>Deposit</u>").  If a Bidder elects to increase the amount of its Initial Bid at the Auction, the Bidder will <u>not</u> be

required to increase the amount of its Deposit.  If a bid submitted at the Auction ("Bid"), including any Initial Bid, is determined to be the Winning Bid at the Auction and the Bidder who submitted such Winning Bid fails to timely close the Sale for any reason other than the Bankruptcy Court not approving the Winning Bid at the Sale Hearing, the Deposit shall become non-refundable and be forfeited to the Debtors.  The same shall apply to any Winning Back-Up Bid in the event the Winning Bidder fails to timely close the Sale, the Winning Back-Up Bidder is notified in writing that it is now the Winning Bidder, and the Winning Back-Up Bidder fails to close its purchase within ten (10) days of having been notified that it is now the Winning Bidder, unless the Winning Bidder and the Debtors jointly agree to extend the sale closing date.  All Deposits of all Qualified Bidders shall be held in a segregated trust account maintained by LNBYG and shall be returned (other than with respect to the Winning Bidder and the Winning Back-Up Bidder) promptly after the conclusion of the Auction.  All Bidders shall have the right to withdraw their Initial Bid at any time up until Noon (prevailing Pacific time) on August 2, 2022, in which case the Bidder will receive a return of their Deposit and be prohibited from participating in the Auction.

8.    ***Financing Sources***.  An Initial Bid must contain written evidence of available funds or a firm irrevocable commitment for financing sufficient to consummate the proposed Sale with appropriate contact information for such financing sources, with Kroll to determine whether such evidence of financing satisfies these Bidding Requirements and enables the Bidder to participate in the Auction, with such determination to be in Kroll's sole and absolute discretion.

9.      ***Designation of Assigned Contracts and Leases.***   Subject to the ability of the Debtors to obtain an order of the Bankruptcy Court approving of the Debtors' assumption and assignment of any executory contract or unexpired lease to the Winning Bidder, an Initial Bid must identify all of the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors, with the Winning Bidder having the right to amend such list at any time prior to the commencement of the Sale Hearing.

10.     ***Designation of Assumed Liabilities.***   An Initial Bid must identify all liabilities that the Bidder proposes to assume.

11.     ***Termination Fees.***   An Initial Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and by submitting the Initial Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its Initial Bid or its participation in the Auction.

12.     ***Identities of the Receiving Parties***:  All Initial Bids must be delivered by email to each of the following parties (collectively, the "Receiving Parties"):

(a)     Kroll, Attn: Joshua Benn    (Joshua.benn@kroll.com);   Vijay   Sampath (Vijay.sampath@kroll.com);  Russell  Norowitz (russell.norowitz@kroll.com);  and  Greg  Klein (Greg.Klen@kroll.com); LNBYG - Attention: Ron Bender (RB@LNBYG.com) and Krikor J. Meshefejian (KJM@LNBYG.com) and _____.

### Qualified Bidders and Qualified Bids

Potential Bidders who have satisfied the Participation Requirements and Bid Requirements will be deemed "Qualified Bidders," and Initial Bids that meet all of the Bid Requirements

9

described above will be deemed "Qualified Bids," in each case, only if the Debtors and Kroll conclude in the exercise of their business judgment, that such Initial Bid would be consummated if selected as the Winning Bid; provided, however, that, for avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtors or Kroll to their satisfaction, the Debtors and Kroll shall have right, in their sole and absolute discretion, to disqualify any Qualified Bidder and Qualified Bid, and such Bidder shall not be entitled to attend or otherwise participate in the Auction.

### No Other Use of Credit Bids

Other than the Bank, there are no known liens against the Assets.  Accordingly, other than the Bank should it wish to be a Bidder, no other party in interest or creditor may offer any type of credit bidding in connection with any Bid or the Sale.

### Notice of Qualified Bids

By 2:00 p.m. (prevailing Pacific time) on August 2, 2022, Kroll shall identify to all Qualified Bidders: (a) each and every Initial Bid that Kroll considers to be a Qualified Bid and (b) if more than one Qualified Bid has been timely received, the Qualified Bid that will constitute the Opening Bid at the Auction and the bidding order in which the Auction will be conducted.

### Auction

If no Qualified Bids are received then the Auction will be deemed automatically cancelled unless the Debtors and Kroll determine otherwise, in their sole and absolute discretion.  If only one Qualified Bid is received, there will be no Auction and the Qualified Bidder will be deemed the Winning Bidder.  If more than one Qualified Bid is received, the Auction will proceed as scheduled with the Auction to commence at 10:00 a.m. (prevailing Pacific time) on August 3, 2022

at the law offices of Levene, Neale, Bender, Yoo & Brill L.L.P., 2818 La Cienega Avenue, Los

Angeles, California [with zoom participation permitted].

### *Participation in and Attendance at Auction*

Only Kroll, the Debtors, and Qualified Bidders along with their representatives, counsel,

and advisors, and the Official Committee of Unsecured Creditors and its counsel may attend the

Auction (such Auction to be in person or via Zoom, Webex or similar virtual means, as applicable),

and only Qualified Bidders shall be permitted to submit any Bids at the Auction.

### No Collusion; Good Faith Bona Fide Offer

Each Qualified Bidder participating in the Auction will be required to confirm on the record

at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; (ii) its Initial

Bid and any higher bid submitted at the Auction is a good-faith *bona fide* offer; (iii) it intends to

consummate the proposed transaction if selected as the Winning Bidder; and (iv) it acknowledges

that, if chosen, it will serve as the Winning Back-Up Bidder.

### Opening Bid at the Auction

The Qualified Bid determined by Kroll and the Debtors to constitute the highest and best

Initial Bid will serve as the opening bid (the "Opening Bid") at the Auction.  Kroll will notify all

Qualified Bidders in advance of the Auction which Initial Bid has been accepted as the Opening

Bid at the Auction and the order in which the bidding at the Auction will proceed.

### Conducting the Auction

Kroll and LNBYG will direct and preside over the Auction.  At the start of the Auction,

and after each Qualified Bidder acknowledges on the record that it has not engaged in any collusion

with respect to the bidding, that its Initial Bid is a good faith bona fide offer, and that it intends to

consummate the proposed transaction if selected as the Winning Bidder or the Winning Back-Up

11

Bidder, Kroll and LNBYG will identify, confirm and describe the Opening Bid. The bidding will then ensue in the bidding order provided by Kroll to all Qualified Bidders in advance of the Auction. All bidding after the Opening Bid shall continue in bidding increments of at least $100,000 or figures that are wholly divisible by $100,000. All bids will be made and received in one room (or otherwise in the presence via Zoom, Webex or similar virtual means of all parties), on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the identity of each Qualified Bidder will be fully disclosed to all Qualified Bidders before the Auction and the material terms of each Qualified Bid submitted prior to the Auction, and all successive bids made at the Auction, will be fully disclosed to all Qualified Bidders. All Qualified Bidders will be permitted to bid at the Auction based on what Kroll and LNBYG determine to be an appropriate amount of time to respond to each prior submitted Bid.

Prior to the Auction, Kroll will randomly assign to each Qualified Bidder a bidder number, except that the Qualified Bidder whose Initial Bid was accepted as the Opening Bid will be assigned bidder number 1. Once the Opening Bid has been described by Kroll and LNBYG, the bidding will then pass to Bidder number 2. Bidder number 2 will have the option of submitting an overbid to the Opening Bid of at least $100,000 or dropping out of the Auction. Once a Bidder drops out of the Auction, the Bidder will no longer be permitted to participate in the Auction. After Bidder number 2 either submits a qualifying overbid or drops out of the Auction, the bidding will then pass to Bidder number 3. This process will continue until only two Qualified Bidders are left, in which case the Qualified Bidder who submits the highest Qualified Bid will be deemed the Winning Bidder at the Auction, and the Qualified Bidder who submits the second highest Qualified Bid will be deemed the Winning Back-Up Bidder at the Auction.

12

Except as expressly provided in the Bidding Procedures Order or the provisions of these Bidding Procedures, the Debtors and Kroll shall have the right to conduct the Auction in the manner they reasonably determine, in the exercise of their business judgment, to be in the best interests of the Debtors' bankruptcy estates.  The Debtors and Kroll shall also have the right to deviate from these Bidding Procedures without the need for any further order of the Bankruptcy Court if they reasonably determine, in the exercise of their business judgment, that doing so would be in the best interests of the Debtors' bankruptcy estates and is not inconsistent with any of the provisions of the Bankruptcy Code or any previously entered order of the Bankruptcy Court including the Bidding Procedures Order.

Kroll and LNBYG, in consultation with the Debtors, may (1) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer and (2) reject at any time any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (iii) contrary to the best interests of the Debtors or their bankruptcy estates; provided that, the highest, best, and otherwise financially superior offer shall be the Qualified Bid at the Auction reasonably expected to result in the highest amount of money being paid to the Debtors for their purchase of the Assets.

### Selection of the Winning Bid and Winning Back-Up Bid

The Auction shall continue until there is one Qualified Bid that Kroll and LNBYG, in consultation with the Debtors, determine, subject to Bankruptcy Court approval at the Sale Hearing, to be the highest and best bid (the "Winning Bid"), and another Qualified Bid to be the second highest and best bid (the "Winning Back-Up Bid"), at which point the Auction will be deemed concluded.  The Debtors will not consider any Bids submitted after the conclusion of the Auction.

13

Subject to the Bankruptcy Court approving the Winning Bid at the Sale Hearing and entering an order approving of the Debtors' free and clear sale of the Assets to the Winning Bidder in accordance with the APA submitted by the Winning Bidder (the "<u>Sale Order</u>"), the Winning Bidder shall be requiring to close the Sale by August 12, 2022 (unless the Debtors and the Winning Bidder jointly agree to an extension of this outside Sale closing date which will be in their sole and absolute discretion), or the Winning Bidder will be deemed to have forfeited its Deposit to the Debtors.  Promptly following the closing of the Sale to the Winning Bidder, LNBYG shall return the Deposit of the Winning Back-Up Bidder to the Winning Back-Up Bidder.

If the Winning Bidder fails to close the Sale by August 12, 2022, unless the Debtors and the Winning Bidder mutually agree in their sole and absolute discretion to extend the closing date, Kroll shall so notify the Winning Back-Up Bidder.  The Winning Back-Up Bidder will then have ten (10) days following the date of having been notified by Kroll to close the Sale.  If the Winning Back-Up Bidder fails to close the Sale within this time period, unless the Debtors and the Winning Back-Up Bidder mutually agree in their sole and absolute discretion to extend the closing date, the Winning Back-Up Bidder will be deemed to have forfeited its Deposit to the Debtors.

### **Return of Deposits Following the Completion of the Auction**

Promptly following the completion of the Auction, LNBYG will return the Deposits of all Bidders except for the Deposits of the Winning Bidder and the Winning Back-Up Bidder.

### **Sale Hearing**

The hearing for the Bankruptcy Court to approve the outcome of the Auction and the Debtors' sale of the Assets to the Winning Bidder and to the Winning Back-Up Bidder if the Winning Bidder fails to close timely (the "<u>Sale Hearing</u>") shall be held on August ___, 2022, at __:__ a.m./p.m., or at such other date and time set by the Bankruptcy Court.

14

**Conduct of Sale Hearing**

Because of the COVID-19 pandemic, the Bankruptcy Court will conduct the Sale Hearing using ZoomGov audio and video technology. Participants and members of the public may participate in and/or observe the Sale Hearing using ZoomGov, free of charge. Individuals may connect by ZoomGov audio and video using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet). The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet. Individuals connecting in this manner will be prompted for the Meeting ID and Password. Individuals may also connect to the Sale Hearing by telephone only. Individuals connecting to the Sale Hearing by telephone will also be prompted for the Meeting ID and Password. Neither a Zoom nor a ZoomGov account is necessary to participate in or observe the Sale Hearing, and no pre-registration is required. The Zoom information will be provided to parties in interest prior to the Sale Hearing. More information on appearing before the Bankruptcy Court by ZoomGov is available in the "Notice of Video and Telephonic Appearance Procedures for Judge Clarkson Cases" on the Bankruptcy Court's website at _____ under the "Telephonic Instructions" section.

**Audio Recording**

The audio portion of the Sale Hearing will be recorded electronically by the Bankruptcy Court and constitute its official record. All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.

# EXHIBIT "3"

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>        Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>        Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**NOTICE OF: (1) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (2) ESTABLISHMENT OF CURE AMOUNTS IN CONNECTION THEREWITH; (3) PROCEDURES AND DEADLINES REGARDING OPPOSITIONS TO ASSUMPTION AND ASSIGNMENT, AND CURE AMOUNTS; AND (4) HEARING THEREON**<br><br>Date:<br>Time:<br>Place:  *Via ZoomGov<br>        Courtroom 5C<br>        411 West Fourth Street<br>        Santa Ana, CA 92701 |

1

**TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS:**

**PLEASE TAKE NOTICE** that a hearing will be held on _____ __, 2022, commencing at __:__ _.m., at the above-referenced Courtroom (the "Sale Hearing"), via ZoomGov, for the Court to consider approval of the motion ("Motion") filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases, seeking an order of the Court: (1) approving the Debtors' sale of substantially all of their assets to the winning bidder ("Winning Bidder") selected at an auction to be held on August 3, 2022 (the "Auction"); (2) approving the assumption and assignment to the Winning Bidder of those executory contracts and unexpired leases that the Winning Bidder wishes to assume; (3) approving the Debtors' rejection of those executory contracts and unexpired leases which are not assumed and assigned and which the Debtors desire to reject; and (4) granting related relief. The hearing on the Motion will be held virtually via ZoomGov. Information to access and attend the virtual hearing via ZoomGov can be obtained on the Bankruptcy Court's website by viewing the tentative ruling calendar of the Honorable Scott C. Clarkson for _____ __, 2022.

**PLEASE TAKE FURTHER NOTICE** that a schedule of all of the Debtors' known executory contracts and unexpired leases (the "Contracts and Leases Schedule"), along with the Debtors' belief as to all outstanding cure amounts owing by the Debtors to the other parties to those executory contracts and unexpired leases (the "Cure Amount"), is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that an executory contract and/or unexpired lease to which you are a counterparty may be assumed and assigned to the Winning Bidder. Any executory contract and/or unexpired lease which is not assumed and assigned may be rejected by the Debtors.

By way of the Motion, the Debtors are seeking the Court's authority to assume and assign to the Winning Bidder all of the Debtors' executory contracts and unexpired leases that the Winning Bidder wants to have assigned to it and to fix the required Cure Amounts that would need to be paid to the other parties to the executory contracts and unexpired leases to enable compliance with the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule unless the other parties to the executory contracts and unexpired leases file a timely objection to the Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule. By way of the Motion, the Debtors are also seeking a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.

Since the identity of the Winning Bidder is not known at this time (and will not be known until the conclusion of the Auction), the Debtors have no way of knowing which executory contracts and unexpired leases, if any, the Winning Bidder will to have assigned to it.

2

Accordingly, this Notice has been served on <u>every</u> counterparty to all executory contracts or unexpired leases; thus, every counterparty to an executory contract or unexpired lease that could be subject to an assumption and assignment should read this Notice and **Exhibit 1** to this Notice and consider the relief being requested by the Debtors, and to the extent they oppose the relief being requested by the Debtors, comply with the procedures and deadlines set forth below.

**PLEASE TAKE FURTHER NOTICE that if you are a party to an executory contract or unexpired lease with the Debtors and you: (A) oppose the Motion; (B) oppose the assumption or assignment of any executory contract or unexpired lease; or (C) contend that (i) the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule and/or (ii) you have suffered any actual pecuniary loss resulting from any default by the Debtors and you contend that additional payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code, <u>you must file a written opposition to the Motion with the Court by no later than _____, 2022</u> setting forth your (A) opposition to the assumption and assignment of your contract and/or lease; (B) contention as to the required Cure Amount and/or (C) contention of the extent to which you have suffered actual pecuniary loss resulting from any default by the Debtors that you contend must be satisfied beyond the proposed Cure Amounts to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code. Any such written opposition must state the basis for such objection, and state with specificity what Cure Amount(s) you believe is required (in all cases with appropriate documentation in support thereof).**

**PLEASE TAKE FURTHER NOTICE** that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtors.

**PLEASE TAKE FURTHER NOTICE <u>of the following conditions, procedures and deadlines established by the Court</u>**:

(1)    Any objection solely to the Cure Amount(s) may not prevent or delay the Debtors' assumption and assignment of assumed and assigned contract(s) or lease(s). If a party objects solely to Cure Amount(s), the Debtors may, with the consent of the Winning Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties. So long as the Cure Amount is held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtors will, without further delay, assume and assign such contract(s) or lease(s) to the Winning Bidder. Under such circumstances, the objecting non-Debtor counterparty's recourse will be limited to the funds held in reserve.

(2)    If no objection to the Cure Amount(s) is timely received, the Cure Amount(s) set forth in **Exhibit 1** to this Notice shall be controlling notwithstanding anything to the contrary in any assigned contract(s) or lease(s) or other document(s) as of the date of this Notice.

(3)    Within one day following the conclusion of the Auction, the Winning Bidder will be required to provide to the Debtors a list of those executory contracts and unexpired leases that the Winning Bidders elects to have assumed and assigned (the "<u>Designated Contracts</u>") to the Winning Bidder at closing of the sale pursuant to Bankruptcy Code Section 365, subject to the

Winning Bidder's right to add or delete executory contracts or unexpired leases. The Debtors will thereafter notify the counter-parties to the Designated Contracts of the Winning Bidder's preliminary determination in this regard.

(4)     **To the extent that any non-Debtor counterparty wishes to object to the adequate assurance of future performance by the Winning Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-Debtor counterparty shall file a written objection with the Court at least one day prior to the Sale Hearing**.

(5)     **To the extent that any non-Debtor counterparty does not timely file and serve an objection as set forth above, such counterparty will be: (i) deemed to have consented to the Cure Amount(s), if any, set forth in Exhibit 1 to this Notice; (ii) barred, estopped and enjoined from asserting any additional Cure Amount(s) or pecuniary loss under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Winning Bidder, and (iv) barred from objecting to adequate assurance of future performance by the Winning Bidder**.

(6)     The inclusion of a contract or lease in **Exhibit 1** to this Notice shall not constitute or be deemed a determination or admission by the Debtors, the Winning Bidder or any other party in interest that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that such contract or lease will be assumed. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts or leases listed in **Exhibit 1** to this Notice and any other contracts or leases to which the Debtors are a party.

**PLEASE TAKE FURTHER NOTICE** that the failure of a party in interest to file and serve a timely objection to the Motion may be deemed by the Court to constitute such party's consent to all of the relief requested by the Debtors in the Motion.

Dated: July __, 2022                    TRX HOLDCO, LLC
                                        FITNESS ANYWHERE LLC

                                        By:_____
                                            RON BENDER
                                            KRIKOR J. MESHEFEJIAN
                                            LINDSEY L. SMITH
                                            LEVENE, NEALE, BENDER,
                                            YOO & GOLUBCHIK L.L.P.
                                            Proposed Attorneys for Chapter 11 Debtors
                                            and Debtors in Possession

4

EXHIBIT "4"

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**NOTICE OF HEARING ON DEBTORS' MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMRBANCES AND INTERESTS; (2) APPROVING OF DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND DETERMINING CURE AMOUNTS AND APPROVING DEBTORS' REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH ARE NOT ASSUMED AND ASSIGNED; (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF**<br><br>**Date:** _____<br>**Time:** _____<br>**Place:** *Via ZoomGov<br>      Courtroom 5C<br>      411 West Fourth Street<br>      Santa Ana, CA 92701 |

1

**PLEASE TAKE NOTICE** that a hearing will be held on _____ __, 2022, commencing at __:__ _.m., at the above-referenced Courtroom, via ZoomGov, for the Court to consider approval of the motion ("Motion") filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases[1], seeking the entry of an order of the Court: (1) approving the Debtors' sale of substantially all of their assets related to the operation of the Debtors' business (the "Purchased Assets") to the winning bidder ("Winning Bidder") or winning back-up bidder ("Winning Back-Up Bidder") selected at an auction to be held on August 3, 2022 (the "Auction"), free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f) ; (2) approving the Debtors' assumption and assignment of certain executory contracts and unexpired leases and determining cure amounts and approving the Debtors' rejection of those executory contracts and unexpired leases which are not assumed and assigned which the Debtors determine to reject; (3) waiving the 14-day stay periods set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and (4) granting related relief. The hearing on the Motion will be held virtually via ZoomGov. Information to access and attend the virtual hearing via ZoomGov can be obtained on the Bankruptcy Court's website by viewing the tentative ruling calendar of the Honorable Scott C. Clarkson for _____ __, 2022.

**PLEASE TAKE FURTHER NOTICE** that on _____, 2022, the Bankruptcy Court entered an order [Doc___] approving the bidding procedures ("Bidding Procedures") described in **Exhibit 1** to this Notice. **Creditors, equity interest holders, prospective bidders and parties in interest should carefully read the attached Bidding Procedures, which set forth detailed instructions, requirements and deadlines pertaining to bid qualifications, the Auction and the sale of the Purchased Assets**.

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion or to the sale of the Purchased Assets as contemplated by the Motion or the Debtors' assumption and assignment of contracts and leases to the Winning Bidder or the Winning Back-Up Bidder must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; (c) be filed with the clerk of the Court and served on the Debtors' proposed bankruptcy counsel – Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Ron Bender (RB@LNBYG.com); Krikor J. Meshefejian (KJM@LNBYG.COM); and Lindsey L. Smith (LLS@LNBYG.COM), and the U.S. Trustee **on or before _____, 2022**.

**PLEASE TAKE FURTHER NOTICE** that the failure of a party in interest to file and serve a timely objection to the Motion may be deemed by the Court to constitute such party's consent to all of the relief requested by the Debtors in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice, the Memorandum of Points and Authorities attached to the Motion, the concurrently filed ____ Declaration and the other supportive declarations and all Exhibits attached thereto, the entire record of the Debtors' bankruptcy cases, the statements, arguments, and representations of

---

[1] The Court previously entered an order approving the joint administration of these chapter 11 bankruptcy cases.

counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court.

### **Additional Information**

The Debtors made a determination shortly prior to their bankruptcy filings that proceeding with a free and clear asset sale process was in the best interests of their estate. After extensive consultation with the Debtors' well regarded and experienced investment banker in Kroll Securities, LLC ("Kroll"), and after taking into account the Debtors' financial situation, including the Debtors' expected post-petition loan to be provided by the Debtors' pre-petition secured lender, Woodforest National Bank (the "Bank"), the Debtors prepared, submitted to the Court, and obtained Court approval of the Bidding Procedures, which the Debtors believe provide the optimal procedures and timetable in order to achieve the highest and best price for the Purchased Assets. The Bidding Procedures document attached as **Exhibit 1** to this Notice explains to prospective bidders how a prospective bidder becomes qualified to participate in the Auction and how the Auction would proceed in the event that there is one or more qualified bidders. In addition, Kroll has established an extensive data room for prospective bidders to obtain diligence information, and the Debtors' senior management has made themselves available to meet with prospective bidders subject to the terms and conditions of the Bidding Procedures. To assist in the overbid process, the Debtors' counsel prepared an asset purchase agreement template for prospective bidders to use if they want, and has delivered that template to Kroll to distribute to prospective bidders.

The Debtors are providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.[2] Kroll has already established an extensive data room and, to date, approximately 45 prospective bidders have signed NDA's who are actively engaged in the data room in connection with the current asset sale process, and Kroll is receiving new and additional inquiries virtually daily – meaning that this is a very active asset sale process. Kroll is also in discussions with numerous prospective buyers regarding the possibility of serving as a stalking horse bidder. Even if the Debtors reach an agreement with a financially qualified buyer to serve as the stalking horse bidder which will then be presented to the Court for approval, the Debtors will still insist upon an overbid process to make sure that all prospective bidders have the opportunity to overbid the stalking horse bid at an open Auction process to insure that the highest and best price is ultimately paid for the Purchased Assets.

For all of these reasons and the others set forth in the Motion, the Memorandum of Points and Authorities attached to the Motion, and the concurrently filed declaration(s), the Debtors request that the Court grant the Motion without delay to allow the Debtors to consummate their sale of the Purchased Assets to the Winning Bidder or the Winning Back-Up Bidder at the hearing on _____, __, 2022, and immediately thereafter enter the Debtors' proposed sale order.

**WHEREFORE**, the Debtors respectfully request that the Bankruptcy Court:

---

[2] The Debtors reserve the right to accept a stalking horse bid presented to the Debtors before July 27, 2022 and/or to seek a further order of the Bankruptcy Court to modify any of the terms of the Debtors' Bidding Procedures.

1.      Find that notice of the Motion was proper, timely, adequate, appropriate and sufficient and that no other or further notice of the Motion, the hearing on the Motion, or the sale of the Purchased Assets is or shall be required;

2.      Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Debtors' sale of the Purchased Assets;

3.      Approve the sale of the Purchased Assets to the Winning Bidder and the Winning Back-Up Bidder at the Auction free and clear of all liens, claims, encumbrances and other interests;

4.      Find that the Winning Bidder and Winning Back-Up Bidder at the Auction are good faith buyers entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code;

5.      Enter a sale order in a form that is mutually agreed to between the Debtors and the Winning Bidder and Wining Back-up Bidder;

6.      Authorize the Debtors to enter into an APA in a form that is consistent with the terms of the sale order;

7.      Waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

8.      Grant such other and further relief as the Court deems just and proper.

Dated: _____ __, 2022           TRX HOLDCO, LLC
                                    FITNESS ANYWHERE LLC


                                    By:_____
                                        RON BENDER
                                        KRIKOR J. MESHEFEJIAN
                                        LINDSEY L. SMITH
                                        LEVENE, NEALE, BENDER,
                                        YOO & GOLUBCHIK L.L.P.
                                        Proposed Attorneys for Chapter 11 Debtors
                                        and Debtors in Possession

# EXHIBIT "5"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made as of _____, 2022, by and between _____, Inc., a _____ corporation ("Buyer"), and TRX Holdco, LLC ("Holdco") and Fitness Anywhere LLC, dba TRX and TRX Training ("Fitness Anywhere"), Delaware corporations (collectively, "Sellers").   Certain other capitalized terms used in this Agreement are defined in Exhibit A attached hereto.  Buyer and Sellers are collectively defined herein as the "Parties" and singularly as a "Party".

## R E C I T A L S:

WHEREAS, Sellers are a functional fitness company (the "Business"); and

WHEREAS, on June 8, 2022 (the "Petition Date"), Sellers filed voluntary petitions (the "Bankruptcy Cases") under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court"), and were assigned Lead Case No.: 8:22-bk-10948-SC (for Holdco) being jointly administered with Case No.: 8:22-bk-10949-SC (for Fitness Anywhere).

WHEREAS, Buyer desires to purchase and Seller desires to sell to Buyer the Purchased Assets, as defined below, subject to the terms and conditions of this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

## ARTICLE I

## ASSETS BEING PURCHASED; ASSUMPTION OF LIABILITIES

**1.1    Purchased Assets.**  Subject to the terms and conditions of this Agreement, Buyer hereby agrees to purchase from Sellers, and Sellers hereby agree to sell, convey, transfer and assign to Buyer, on the Closing Date (as hereinafter defined), all of Sellers' right, title and interest in and to all of the assets of Sellers used in connection with the Business and which are identified below (the "Purchased Assets"), free and clear of all Encumbrances pursuant to Section 363 of the Bankruptcy Code.  The Purchased Assets consist of the following:

(a)    All of Sellers' supplies, computers, printers, equipment, furniture, fixtures and other similar assets or tangible personal property owned by Sellers which are identified in the fixed asset schedule attached hereto as Schedule 1.1(a) (collectively, the "Fixed Assets");

(b)    All of Sellers' rights, title, interest and benefits under the agreements, contracts, licenses, instruments, commitments and understandings that are listed in Schedule 1.1(b) attached hereto ("Assigned Contracts";

(c)    All advance payments, claims for refunds and deposits, and other prepaid items relating to the Purchased Assets or the Assumed Obligations, existing as of the Closing Date;

(d)    All of Sellers' accounts related to the Business, all of which are identified on Schedule 1.1(d) attached hereto and all schedules, records and other documentation related to such accounts or notes receivable;

(e)    All of Sellers' books and records directly related to, or used in connection with, the conduct of the Business or pertaining to the Purchased Assets, regardless of the medium on which such information is stored or maintained including, without limitation, all customer and employment records, vendor information and contracts, business plans and strategies, financial and operational data and reports, and marketing information and materials;

(f)    To the extent transferable, all of Sellers' licenses, permits or other authorizations of governmental or regulatory entities that are required under any laws, rules and regulations applicable to or affecting the Business, which are set forth on Schedule 1.1(f);

(g)    To the extent assignable, all of Sellers' leased real property, including any leasehold improvements thereon, all of which are identified in the real property schedule attached hereto as Schedule 1.1(g);

(h)    All of Sellers' inventory, a detailed list of which is set forth on Schedule 1.1(h);

(i)    All of Sellers' Intellectual Property Rights and all goodwill associated with such Intellectual Property Rights, including, without limitation, (i) the right to use, copy, modify, exploit, license, assign, convey and pledge the Intellectual Property Rights, (ii) the right to exclude others from using the Intellectual Property Rights, (iii) the right to sue others and collect damages for past, present and future infringement of the Intellectual Property Rights, (iv) the right to create derivatives of the Intellectual Property and retain full ownership thereof, and (v) the right to file and prosecute applications for registration, now pending or hereinafter initiated, to protect any rights in the Intellectual Property Rights, a detailed list of which is set forth on Schedule 1.1(i);

(j)    All insurance benefits, including rights and proceeds, arising from or relating to the Purchased Assets or the Assumed Obligations (as defined herein) prior to the Closing Date except for those set forth on Schedule 1.1(j) which shall be part of the Excluded Assets;

(k)    All of Sellers' claims and lawsuit rights (pending or not) against third parties relating to the Purchased Assets, whether choate or inchoate, known or unknown, contingent or non-contingent except for those set forth on Schedule 1.1(k) which shall be part of the Excluded Assets;

(l)    Customer lists and contact information, which customers are listed on Schedule 1.1(l); and

(m)    All goodwill associated with the Business and the Purchased Assets.

**1.2    Excluded Assets.**  Purchaser shall not acquire, and Sellers shall retain, all of the following assets, properties and rights owned by Sellers (collectively, the "Excluded Assets").

(a)    All contracts and leases of Sellers that are not Assigned Contracts;

(b)    All notes receivable and any other debt instruments providing for money owing to Sellers;

(c)    All cash and cash equivalents of Sellers and all other items set forth on Schedule 1.2(c) which shall also be part of the Excluded Assets;

(d)    The corporate seals, minute books, stock books, tax returns and other similar records relating to Sellers' corporate organizations, and all employee related or employee benefit related files or records other than personnel files of employees hired by Buyer;

(e)    Except as to the Purchased Assets, all insurance recovery rights of Sellers and all tax refunds owing to Sellers, including, but not limited to, those set forth on Schedule 1.2(e) which shall also be part of the Excluded Assets;

(f)    All rights to all claims, causes of action, choses in action, rights of recovery and rights of set-off (whether choate or inchoate, known or unknown, contingent or non-contingent) in favor of Sellers that are not included with Section 1.1(k) above, and all avoidance causes of action existing under any of sections 544-553, inclusive, of the Bankruptcy Code; and

(g)    All other assets identified in Schedule 1.2.

**1.3    Assumed Obligations.**  Buyer hereby agrees to assume and to pay when due all of the following outstanding obligations of Sellers: [Buyer to complete].  Buyer also agrees to assume all executory obligations arising after the Closing Date under the Assigned Contracts and those obligations specifically identified on Schedule 1.3 (collectively, the "Assumed Obligations").  The Assumed Obligations shall include all obligations and liabilities arising out of any default of Sellers under any Assumed Obligation, regardless of when such liability or obligation is asserted.

**1.4    Liabilities Not Being Assumed.**  Except for the Assumed Obligations, Sellers agree that Buyer shall not be obligated to assume or perform and is not assuming or performing any liabilities or obligations of Sellers, whether known or unknown, fixed or contingent, certain or uncertain, and regardless of when such liabilities or obligations may arise or may have arisen or when they are or were asserted.

# ARTICLE II

## PURCHASE PRICE AND BANKRUPTCY MATTERS

**2.1    Purchase Price.**  As consideration for the sale to Buyer of the Purchased Assets and the assumption of the Assumed Obligations, Buyer shall pay to Sellers a cash payment of _____ Dollars ($_____) by wire transfer of immediately available funds to an account designated by Sellers (the "Purchase Price").  The Purchase Price shall be paid as follows: (i) a $_____ deposit (the "Deposit"), which Deposit shall be deposited with counsel for Sellers by 5:00 p.m. PST on July 27, 2022 into a segregated trust account (the "Escrow Account"), and (ii) the $_____balance shall be wire transferred to counsel for Sellers no later than August 12, 2022 (the "Outside Closing Date"), provided that the Bankruptcy Court has entered an order approving the sale of the Purchased Assets to Buyer (the "Sale Order").  If Buyer is determined by Sellers to be the winning bidder at the Auction and, subject to the entry of the Sale Order by the Bankruptcy Court, Buyer fails to consummate its purchase by the Outside Closing Date (unless

Buyer and Sellers jointly agree to extend the Outside Closing Date), Buyer shall be deemed to have permanently forfeited the Deposit with Sellers as liquidated damages.

**2.2    Allocation of Purchase Price.**  The Purchase Price shall be allocated among the Purchased Assets and the Assumed Obligations, in the manner set forth in Exhibit B attached hereto (the "Purchase Price Allocation").  In the event that Exhibit B is not completed prior to Closing, the Parties agree to complete the Purchase Price Allocation within thirty (30) days after the Closing. Each of the Parties, when reporting the transactions consummated hereunder in their respective tax returns, shall allocate the Purchase Price paid or received, as the case may be, in a manner that is consistent with the Purchase Price Allocation set forth in Exhibit B hereto.  Additionally, each of the Parties will comply with, and furnish the information required by Section 1060 of the Internal Revenue Code of 1986, as amended (the "Code"), and any regulations thereunder.

**2.3    Third Party Consents.**  Notwithstanding anything to the contrary in this Agreement, this Agreement shall not constitute an agreement to assign or transfer any governmental approval, instrument, contract, lease, permit or other agreement or arrangement, including the Assigned Contracts, or any claim, right or benefit arising thereunder or resulting therefrom if an assignment or transfer or an attempt to make such an assignment or transfer without the consent of a third party would constitute a breach or violation thereof or affect adversely the rights of Buyer or Sellers, thereunder unless such assignment is approved by the Bankruptcy Court; and any transfer or assignment to Buyer by Sellers, as applicable, of any interest under any such instrument, contract, lease, permit or other agreement or arrangement that requires the consent of a third party shall be made subject to such consent being obtained from the contracting party or approval being obtained from the Bankruptcy Court.  In the event that any such consent or approval is not obtained on or prior to the Closing Date, Sellers shall continue to use all commercially reasonable efforts (without paying any additional consideration to the other party to such instrument, contract, lease, permit or other agreement or arrangement regarding such asset or in connection with obtaining any approval or consent) to obtain any such approval or consent after the Closing Date as promptly as possible, and Sellers will cooperate with Buyer in any lawful and reasonable arrangement to provide that Buyer shall receive the interest of Sellers in the benefits under any such instrument, contract, lease, or permit or other agreement or arrangement.  However, it shall be the sole responsibility of Buyer to satisfy the Bankruptcy Code requirements to enable Sellers to assume and assign to Buyer any of the Assigned Contracts, including that it shall be Buyer's sole responsibility to pay any required cure amounts to the counter-party to any such Assigned Contracts and to demonstrate  Buyer's adequate assurance of future performance, as required, with respect to all of the Assigned Contracts.

**2.4    Bankruptcy Matters.**

(a)  **Payment of Cure Costs Under Assigned Contracts.**  As promptly as practicable following the execution of this Agreement, Buyer and Sellers shall use commercially reasonable efforts to cooperate and determine an estimate of the amounts required to cure all defaults under each Assigned Contract so as to permit the assumption and assignment of each such Assigned Contract pursuant to Section 365 of the Bankruptcy Code (as ultimately determined by the Bankruptcy Court, the "Cure Costs").  In connection with the assignment and assumption of the Assigned Contracts, Buyer shall pay all Cure Costs on or before the Closing.

# ARTICLE III

# REPRESENTATIONS AND WARRANTIES OF SELLERS

Subject to the disclosures and exceptions set forth in the disclosure schedules attached hereto (the "Sellers' Disclosure Schedules"), Sellers hereby make the representations and warranties set forth hereinafter in this Section 3 to Buyer:

**3.1    Authority and Binding Effect**.  Subject to the approval of the Bankruptcy Court, Sellers have the full corporate power and authority to execute and deliver this Agreement and the Bill of Sale (as hereinafter defined).  This Agreement, the Bill of Sale and the consummation by Sellers of their obligations contained herein and therein have been duly authorized by all necessary corporate actions of Sellers and such agreements have been duly executed and delivered by Sellers.  Subject to the approval of the Bankruptcy Court, this Agreement is a valid and binding agreement of Sellers, enforceable against Sellers in accordance with its terms, and, upon execution and delivery, the Bill of Sale will be a valid and binding agreement of Sellers and shall be enforceable against Sellers in accordance with its terms.

**3.2    Organization and Standing.**    Sellers are corporations duly organized, validly existing and in good standing under the laws of the State of Delaware.  Sellers have the requisite corporate power and authority to conduct the Business as it is now conducted and to own or lease the Purchased Assets, and to use such Purchased Assets in the conduct of the Business.

**3.3    Condition and Title to Purchased Assets.**

(a)    **Purchased Assets**.  Buyer acknowledges and agrees that it is purchasing, and shall take possession of, the Purchased Assets in their "AS IS, WHERE IS" and "WITH ALL FAULTS" condition and that it has previously been given the opportunity to conduct, and has conducted, such investigations and inspections of the Purchased Assets as it has deemed necessary or appropriate for the purposes of this Agreement.

(b)    **No Warranties Regarding Purchased Assets**.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLERS MAKE NO REPRESENTATIONS, STATEMENTS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER CONCERNING THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES REGARDING THE CONDITION, QUANTITY OR QUALITY OF ANY OR ALL OF THE PURCHASED ASSETS OR CONCERNING THE PAST, PRESENT OR FUTURE PROFITABILITY OR VIABILITY OF THE BUSINESS, AND ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED HEREBY BY SELLERS.

(c)    **Title to and Adequacy of Purchased Assets**.  Except as disclosed on Schedule 3.3 hereto, Sellers have, and on the Closing Date will convey and transfer to Buyer, good, complete and marketable title to all of the Purchased Assets, free and clear of all Encumbrances of any nature whatsoever.  Except as set forth on Schedule 3.3, all of the Purchased Assets (excluding customers) are in the exclusive possession and control of Sellers, and Sellers have the unencumbered right to use, and to sell to Buyer in accordance with the terms and provisions of this Agreement, all of the Purchased Assets without interference from and free of the rights and claims of others.

**3.4    Insurance.**  Sellers have delivered to Buyer true and correct copies of all policies of fire, general liability, worker's compensation, errors and omissions, malpractice and other forms of insurance maintained by or on behalf of Sellers in connection with the Business as protection for the Purchased Assets.  All of such policies are now in full force and effect.  Sellers have not received any notice of cancellation or material amendment of any such policies.  No coverage thereunder is being disputed; and all material claims thereunder have been filed in a timely fashion.

**3.5    No Broker**.  Other than Kroll Securities, LLC ("Kroll"), whom Sellers have retained as their exclusive investment banker, Sellers have not retained or used the services of any agent, finder or broker in connection with the transactions contemplated by this Agreement.  Sellers shall be solely responsible for the payment of Kroll's investment banking fee.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby makes the representations and warranties set forth in this Section 4 to Sellers:

**4.1    Authority and Binding Effect**.  Buyer has the full corporate power and authority to execute and deliver this Agreement and the Bill of Sale (as hereinafter defined).  This Agreement and the Bill of Sale and the consummation by Buyer of its obligations contained herein and therein have been duly authorized by all necessary corporate actions of Buyer and such agreements have been duly executed and delivered by Buyer.  This Agreement is a valid and binding agreement of Buyer, enforceable against Buyer in accordance with its terms, and, upon execution and delivery, this Agreement and the Bill of Sale will be valid and binding agreements of Buyer and shall be enforceable against it in accordance with their terms.  It is not necessary for Buyer to take any action or to obtain any approval, consent or release by or from any third person, governmental or other, to enable Buyer to enter into or perform its obligations under this Agreement and the Bill of Sale.

**4.2    Organization and Standing.**  Buyer is a corporation duly organized and validly existing under and is in good standing under the laws of the State of _____.  Buyer has all requisite corporate power to own and operate its properties and assets, and to carry on its business as presently conducted.  Buyer is duly qualified to do business and is in good standing in each jurisdiction in which the character of the business conducted by it or the location of the properties owned or leased by it make such qualification necessary.

**4.3    Compliance with Other Instruments.**    The execution and delivery of this Agreement, the Bill of Sale and all other agreements to be entered into in connection herewith and the consummation of the transactions contemplated hereby and thereby will not conflict with or result in any violation of any law, rule, regulation, judgment, order, decree or ordinance applicable to Buyer or its properties or assets, or conflict with or result in any breach or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a material benefit, under (i) any provision of the Certificate of Incorporation or bylaws of Buyer; or (ii) any material agreement, contract, note, mortgage, indenture, lease, instrument, permit, concession, franchise or license or any writ, order or decree to which Buyer is a party or by which Buyer or any of its property is bound.

**4.4    Governmental Consent, etc.**  No consent, approval, order or authorization of, or registration, declaration or filing with, any governmental entity is required by or with respect to Buyer in connection with the execution and delivery of this Agreement or the consummation by Buyer of the transactions contemplated hereby.

**4.5    No Broker.**  Buyer has not retained or used the services of an agent, finder or broker in connection with the transactions contemplated by this Agreement.  Buyer shall pay, and shall indemnify, hold harmless and defend Sellers from and against, all commissions, finder's and other fees and expenses charged or asserted by any agent, finder or broker, by reason of any such retention or use of the services of any such agent, finder or broker by Buyer.

**4.6    Investigation.**  Buyer acknowledges and affirms that it has completed its own independent investigation, analysis and evaluation of the Purchased Assets, that it has made all such reviews and inspections of the Purchased Assets as it deems necessary and appropriate, and that in making its decision to enter into this Agreement, it has relied on its own investigation, analysis, and evaluation with respect to all matters without reliance upon any express or implied representations or warranties other than those expressly set forth in this Agreement, as to which it has relied.

**4.7    Funding.**  Buyer has all funding available to it to enable it to consummate its purchase of the Purchased Assets and to pay all of the other obligations of Buyer under this Agreement.  Buyer's entry into this Agreement and ability to perform under this Agreement is therefore not subject to any financing contingency.

**4.8    Representations and Warranties of Buyer.**  The representations and warranties of Buyer contained herein do not contain any statement of a material fact that was untrue when made or omits any information necessary to make any such statement contained therein, in light of the circumstances under which such statement was made, not misleading.  The copies of all documents furnished by Buyer to Sellers pursuant to the terms of this Agreement are complete and accurate copies of the original documents.

**ARTICLE V**

**CONDUCT OF BUSINESS PENDING THE CLOSING**

Between the date hereof and the Closing, and except as otherwise consented to by Buyer in writing, Sellers covenant as follows:

**5.1    Access.**  From and after the date of execution of this Agreement by Sellers or following the completion of the Auction at which Buyer is determined by Sellers to be the winning bidder, whichever occurs first, Sellers shall give to Buyer and its representatives access during normal business hours to the premises, employees, agents and consultants of Sellers, and such copies of Sellers' books and records, contracts and leases and other documentation, so as to enable Buyer to inspect and evaluate all aspects of the Business and operations, assets, operating results, financial condition, capitalization, ownership, and legal affairs relating to the Business pending the Closing. Buyer agrees to conduct its review, and to cause its representatives to conduct their review, in a manner designed to minimize any disruption of Sellers' business.  Buyer will hold any confidential information obtained pursuant to this Section 5.1 in accordance with the confidentiality provisions of any non-disclosure agreement ("NDA") entered into between the Buyer and Sellers.

**5.2     Conduct of the Business.**  From and after the date of execution of this Agreement by Sellers or following the completion of the Auction at which Buyer is determined by Sellers to be the winning bidder, whichever occurs first, Sellers shall operate and conduct the Business diligently and only in the ordinary course, consistent with past practices and not make any material change in their methods of accounting, management, marketing or operations, except as otherwise approved by the Bankruptcy Court or as otherwise set forth in any cash collateral or debtor-in-possession financing orders approved by the Bankruptcy Court.  In furtherance thereof, unless Buyer's prior consent to do otherwise is obtained (which consent shall not be unreasonably withheld or delayed), Sellers shall:

(a)     **Organization.**  Use their reasonable good faith efforts to preserve intact their organizations and use their reasonable efforts to retain their employees involved in the Business and the services of their vendors, suppliers, agents and consultants, commensurate with the requirements of the Business;

(b)     **Insurance.**  Maintain insurance consistent with past practices and not take any action to terminate or modify, or permit the lapse or termination of, the present insurance policies and coverages of Sellers;

(c)     **Agreements.**

(i)     Observe and perform all of their post-bankruptcy obligations under the Assigned Contracts;

(ii)     Except as required by any existing contracts or agreements, not enter into any new agreement that would constitute an Assigned Contract or amend, cancel or terminate any Assigned Contract;

(iii)     Promptly notify Buyer of the occurrence of any post-bankruptcy breach or default of any Assigned Contract known to Sellers; and

(iv)     Not encourage or incentivize any employee involved in the Business to leave their current position or alter their responsibilities with Sellers or increase the compensation, incentive arrangements or other benefits of any employee other than in the ordinary course of the Business consistent with past practices;

(d)     **Consents; Compliance with Laws to the Extent Related to the Business.**

(i)     Use reasonable efforts to obtain all consents to assignments of governmental authorities which are customers of the Business, and maintain all other licenses, permits and franchises and rights to operate the Business granted by, governmental authorities;

(ii)     Not take any action which would be expected to result in a violation of or in the noncompliance with any laws or regulations applicable to the Business; and

(iii)     Cooperate with Buyer and render to Buyer such assistance as Buyer may reasonably request, at Buyer's sole expense, in obtaining such governmental consents and approvals;

(e) **Taxes.**  Pay, when due, and prior to the imposition or assessment of any interest, penalties or liens by reason of the nonpayment of, all post-bankruptcy Taxes, due or assessed against them, except for any Taxes being contested in good faith; and

(f) **Representations and Warranties.**  Not take any action that would make any representation and warranty of Sellers inaccurate as of the Closing Date.

**5.3**    **Notification of Certain Matters.**  Sellers shall give prompt notice to Buyer of (i) the occurrence or non-occurrence, to Sellers' Knowledge, of any event the occurrence or non-occurrence of which would cause any representation or warranty of Sellers contained in this Agreement to be untrue or inaccurate in any material respect at or prior to the Closing Date and (ii) any failure to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by Sellers hereunder; provided, however, that the delivery of any notice pursuant to this Section 5.3 shall not limit or otherwise affect the remedies available hereunder to Buyer.

## ARTICLE VI

## OBLIGATIONS SURVIVING THE CLOSING

**6.1**    **Further Assurances.**  Each Party shall execute and deliver after the date hereof such instruments and take such other actions as the other Party may reasonably request in order to carry out the intent of this Agreement or to better evidence or effectuate the transactions contemplated herein.

**6.2**    **Expenses.**  Each Party shall pay all of its respective costs and expenses incurred or to be incurred by it in negotiating and preparing this Agreement and in carrying out and closing the transactions contemplated by this Agreement whether or not this Agreement or the transactions contemplated hereby are ever consummated.

**6.3**    **Taxes.**  Buyer shall pay all Taxes of any kind or nature arising from the sale and transfer of the Purchased Assets to Buyer.  Sellers shall pay all Taxes of any kind or nature arising from the conduct or operation of the Business up to the Closing Date.  If any Taxes required under this Section 6.3 to be borne by Sellers are assessed against Buyer or any of the Purchased Assets, Buyer shall notify Sellers in writing promptly thereafter and Sellers shall be entitled to contest, in good faith, such assessment or charge so long as such assessment does not materially adversely affect Buyer or the Purchased Assets or the Buyer's business.  Notwithstanding the foregoing, Buyer may (but shall not be obligated to) pay any such Taxes assessed against it, its business or any of the Purchased Assets, but which are payable by Sellers pursuant hereto, if the Buyer's failure to do so, in the reasonable judgment of the Buyer, could result in the immediate imposition of an Encumbrance on any of the Purchased Assets or any other assets of the Buyer or if Sellers fail to contest such assessment or charge diligently and in good faith.

## ARTICLE VII

## SURVIVAL OF REPRESENTATIONS AND WARRANTIES

Except as specifically set forth in Article VI above, all of the respective representations and warranties of Sellers and Buyer set forth in this Agreement or in any of such Party's disclosure

schedules, or in any certificates delivered by such Party on the Closing Date, shall terminate effective as of the Closing.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE OBLIGATIONS OF BUYER

The obligation of Buyer to consummate its purchase of the Purchased Assets from Sellers is subject to the fulfillment, or the waiver by Buyer, at or prior to the Closing, of each of the following conditions precedent:

**8.1    Representations and Warranties.**  The representations and warranties made by Sellers in this Agreement shall be true and correct in all material respects, unless modified by materiality in the representation or warranty, in which case they shall be true and correct in all respects, on the date hereof and at and as of the Closing Date, with the same force and effect as if made again at and as of that time.

**8.2    Absence of Stay or Injunction Preventing Sale Closing.**  There shall be no order that has been issued by any court or governmental agency having jurisdiction that restrains or prohibits the consummation of the purchase and sale of the Purchased Assets hereunder.

**8.3    Performance of Obligations.**  Sellers shall have performed and complied, in all material respects, with all of the covenants required by this Agreement to have been performed prior to the Closing.

**8.4    Delivery of Additional Instruments.**  On the Closing Date, Sellers shall deliver, or cause to be delivered to Buyer, the following documents and instruments, in form and substance satisfactory to Buyer and its counsel, unless waived in writing by Buyer:

(a)    The Bill of Sale and Assumption Agreement in substantially the form of Exhibit C hereto, duly executed by Sellers (the "Bill of Sale");

(b)    Evidence of the receipt of all third-party consents necessary, if any, to enable Sellers to consummate the transactions contemplated herein, which consents are identified on Schedule 8.5 except to the extent the Bankruptcy Court enters an order approving of Sellers' assumption and assignment to Buyer of the Assigned Contracts; and

(c)    Such other documents and instruments as Buyer or Buyer's counsel may reasonably request so as better to evidence or effectuate the transactions contemplated hereby.

**8.5    Sale Order.**  The Bankruptcy Court shall have entered the Sale Order in form reasonably acceptable to Buyer, approving the sale or sale of the Purchased Assets on the terms specified in this Agreement.  The Sale Order shall provide that, among other things, the Purchased Assets are sold free and clear of Encumbrances; Buyer shall not be subject to successor liability on account of its purchase of the Purchased Assets.  At the time of the Closing, the Sale Order shall not have been reversed, stayed, modified or amended in any manner materially adverse to Buyer.  The Sale Order becoming a final order is not a condition to Buyer's obligation to effectuate the Closing, and the existence of any pending appeal of the Sale Order shall not constitute a basis for Buyer's failure to consummate the transactions contemplated hereby.

## ARTICLE IX

## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS

The obligation of Sellers to consummate the sale of the Purchased Assets to Buyer is subject to the fulfillment, or the waiver by Sellers, at or prior to the Closing, of each of the following conditions precedent:

**9.1    Representations and Warranties.**  The representations and warranties made by Buyer in this Agreement shall be true and correct in all material respects, unless modified by materiality in the representation or warranty, in which case they shall be true and correct in all respects, on the date hereof and at and as of the Closing Date, with the same force and effect as if made again at and as of that time.

**9.2    Absence of Stay or Injunction Preventing Sale Closing.**  There shall be no order that has been issued by any court or governmental agency having jurisdiction that restrains or prohibits the consummation of the purchase and sale of the Purchased Assets hereunder.

**9.3    Performance of Obligations.**  Buyer shall have performed and complied in all material respects with all of its covenants required by this Agreement to have been performed by it at or prior to the Closing.

**9.4    Delivery of Additional Instruments.**  On the Closing Date, Buyer shall deliver, or cause to be delivered to Sellers, the following documents and instruments, in form and substance satisfactory to Sellers and their counsel, unless waived in writing by Sellers:

(a)    The Bill of Sale duly executed by Buyer; and

(b)    Such other documents and instruments as Sellers or Sellers' counsel may reasonably request so as better to evidence or effectuate the transactions contemplated hereby.

**9.5    Delivery of Consideration.**  At the Closing, Buyer shall deliver to Sellers a cash payment in the remaining amount of the Purchase Price.

## ARTICLE X

## THE CLOSING

The consummation of the transactions contemplated hereby (the "Closing") shall take place at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P. or at such other place as the parties may agree and shall occur no later than _____, 2022, or by such later date and time upon which the Buyer and Sellers mutually agree, subject to the satisfaction or waiver of the closing conditions set forth in Section 8 and Section 9 above (the "Closing Date").

**10.1    Closing Deliveries of Sellers.**  At the Closing, Seller shall deliver, or cause to be delivered to Buyer, the documents and instruments set forth in Section 8 above, in form and substance reasonably satisfactory to Buyer and its counsel.

**10.2     Closing Deliveries of Buyer.**  At the Closing, Buyer shall deliver, or cause to be delivered, the remaining Purchase Price to Sellers and the documents and instruments set forth in Section 9 above, in form and substance reasonably satisfactory to Sellers and their counsel.

## ARTICLE XI

## TERMINATION

**11.1     Termination.**  Notwithstanding anything contained in this Agreement to the contrary, this Agreement may be terminated at any time prior to the Closing Date:

(a)   by mutual written agreement of Buyer and Sellers;

(b)   by Buyer if there has been a material breach by Sellers of their representations, warranties or covenants set forth herein which is not or cannot be cured by Sellers prior to the Closing or if any material condition to the obligation of Buyer under this Agreement to be complied with or performed by Sellers at or before the Closing shall not have been complied with or performed at the time required for such compliance or performance and such noncompliance or nonperformance shall not have been waived by Buyer or cured by Sellers prior to the Closing;

(c)   by either Buyer or Sellers if any judgment, injunction, order or decree of a court or other governmental entity of competent jurisdiction enjoining Buyer or Sellers from consummating the transactions contemplated by this Agreement shall have been entered; or

(d)   by Sellers if there has been a material breach by Buyer of its representations, warranties or covenants set forth herein which is not or cannot be cured by Buyer prior to the Closing or if any material condition to the obligation of Sellers under this Agreement to be complied with or performed by Buyer at or before the Closing shall not have been complied with or performed at the time required for such compliance or performance and such noncompliance or nonperformance shall not have been waived by Seller or cured by Buyer prior to the Closing;

**11.2     Procedure Upon Termination.**  In the event of termination of this Agreement by Buyer or Sellers or by both Buyer and Sellers pursuant to Section 11.1 hereof, the transactions contemplated herein shall be abandoned without further action by Buyer or Sellers.  In addition, if this Agreement is terminated as provided herein:

(a)   Each Party will redeliver all documents, workpapers and other material of any other party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the party furnishing the same.

(b)   All information of a confidential nature received by any party hereto with respect to the business of any other party (other than information which is a matter of public knowledge or which has heretofore been or is hereafter published in any publication for public distribution or filed as public information with any governmental authority) shall continue to be subject to any NDA between Buyer and Sellers.

(c)   Upon any termination of this Agreement pursuant to this Section 11, the respective obligations of the Parties under this Agreement shall terminate and no Party shall have

any liability whatsoever to any other Party by reason of such termination, irrespective of the cause of such termination, except as set forth in this Section.

**11.3    Forfeiture of Deposit as Liquidated Damages**.

As indicated in Section 2.1 above, if Buyer is determined by Sellers to be the winning bidder at the Auction and, subject to the entry of the Sale Order by the Bankruptcy Court, Buyer fails to consummate its purchase by the Outside Closing Date (unless Buyer and Sellers jointly agree to extend the Outside Closing Date), Buyer shall be deemed to have permanently forfeited the Deposit with Sellers as liquidated damages.

# ARTICLE XII

# MISCELLANEOUS

**12.1    Assignment.**  Neither Sellers nor Buyer may assign this Agreement, or assign any of their rights or delegate any of their duties hereunder, without the prior written consent of the other Party.  This Agreement will be binding upon, inure to the benefit of, and be enforceable by the Parties and their respective successors and assigns.

**12.2    Severability.**  Any provision of this Agreement which is illegal, invalid or unenforceable shall be ineffective to the extent of such illegality, invalidity or unenforceability, without affecting in any way the remaining provisions hereof.

**12.3    Governing Law.**  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code, to the extent applicable, and, where state law is implicated, the internal laws of the state of California, without giving effect to any principles of conflicts of law.  Without limiting any Party's right to appeal any Order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this Agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to this Agreement.  The Bankruptcy Court shall have sole jurisdiction over such matters and the parties affected thereby, and Buyer and Sellers each hereby consent and submit to such jurisdiction; provided, however, that if the Bankruptcy Cases have closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the district in which the Bankruptcy Court is located and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 12.8 hereof, unless another address has been designated by such Party in a notice given to the other Party in accordance with the provisions of Section 12.8 hereof.

**12.4    Entire Agreement; Amendment.**  This Agreement and the Exhibits and Schedules hereto, and each additional agreement and document to be executed and delivered pursuant hereto, constitute all of the agreements of the Parties with respect to, and supersede all prior agreements and understandings relating to the subject matter of, this Agreement or the transactions contemplated by this Agreement.  This Agreement may not be modified or amended except by a written instrument specifically referring to this Agreement signed by the Parties.

**12.5    Waiver.**  No waiver by one Party of the other Party's obligations, or of any breach or default hereunder by any other Party, shall be valid or effective, unless such waiver is set forth in writing and is signed by the Party giving such waiver; and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature or any other breach or default by such other Party.

**12.6    Interpretation; Headings.**  This Agreement is the result of arms'-length negotiations between the Parties and no provision hereof, because of any ambiguity found to be contained therein or otherwise, shall be construed against a Party by reason of the fact that such Party or its legal counsel was the draftsman of that provision.  The section, subsection and any paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit or affect, and shall not be considered in connection with, the interpretation of any of the terms or provisions of this Agreement.

**12.7    Counterparts.**  This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement shall become effective when counterparts have been signed by each of the Parties and delivered by facsimile or other means to the other Party.  Signatures transmitted by facsimile or electronically shall be deemed to have the same force and effect as original signatures.

**12.8    Notices.**  Any notice shall be in writing and shall be deemed to have been duly given or made when personally delivered, sent by facsimile or when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed or directed as follows, or as may be furnished hereafter by notice, in writing, to the other Party on at least three (3) business days' prior notice, to the following parties. Any Party may from time to time, by written notice to the other Party, designate a different address, which shall be substituted for the one specified below.  In addition to any other means of deliverance provided, all notices provided hereunder must also be delivered by email.

If to Sellers:

_____
_____
_____
Attn: _____
Email:
Fax: (\_\_\_) \_\_\_-\_\_\_\_

with a copy to (which shall not constitute notice) given in a like manner to:

        Ron Bender, Esq.
        Levene, Neale, Bender, Yoo & Golubchik L.L.P.
        2818 La Cienega Ave.
        Los Angeles, California 90034
        Email: RB@LNBYG.COM
        Fax:  (310) 229-1244

If to Buyer, to:

        _____
        _____
        _____
        Attn: _____
        Email:
        Fax:  (___) ___-____

with a copy to (which shall not constitute notice) given in a like manner to:

        _____
        _____
        _____
        Attn: _____
        Email:
        Fax:  (___) ___-____

    **12.9    Public Announcements.**    Neither Sellers nor Buyer will make any public announcements concerning matters set forth in this Agreement or the negotiation thereof without the prior written consent of the other Party unless such disclosure is required by law or court order or the information is otherwise publicly available, including in any filings with the Bankruptcy Court.  Any such disclosure shall be provided for review to the other Party in advance of public release to the extent reasonably practical.

    **12.10    Attorneys Fees.**    If any action or proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought by a Party against any other Party, the prevailing Party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing Party may be entitled).

**[SIGNATURES ARE CONTAINED ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, each of Sellers and Buyer has caused a duly authorized representative to execute this Asset Purchase Agreement on the date first written above.

**BUYER:**

_____,
a _____ corporation

By: _____

Name: _____
Title: _____

**SELLERS**:

**TRX HOLDCO, LLC,**
a Delaware corporation

By: _____

Name: _____
Title: _____

**FITNESS ANYWHERE LLC, dba**
**TRX AND TRX TRAINING**
a Delaware corporation

By: _____

Name: _____
Title: _____

## **SCHEDULES**

| | |
|---|---|
| Schedule 1.1(a) | Fixed Assets |
| Schedule 1.1(b) | Assigned Contracts |
| Schedule 1.1(d) | Accounts |
| Schedule 1.1(f) | Licenses and Permits |
| Schedule 1.1(g) | Leased Real Property |
| Schedule 1.1(h) | Inventory |
| Schedule 1.1(i) | Intellectual Property Rights |
| Schedule 1.1(l) | Customer Lists |
| Schedule 1.2 | Excluded Assets |
| Schedule 1.3 | Assumed Obligations |
| Schedule 3.3 | Exceptions to Purchased Assets Sold Free/Clear of Encumbrances |
| Schedule 8.5 | Third Party Consents |

## **EXHIBITS**

| | |
|---|---|
| Exhibit A | Definitions |
| Exhibit B | Purchase Price Allocation |
| Exhibit C | Form of Bill of Sale and Assumption Agreement |

**EXHIBIT A**

**Definitions**

For the purposes of this Agreement, unless the context otherwise requires, the following terms shall have the respective meanings set forth below and grammatical variations of such terms shall have corresponding meanings:

"**Auction**" means the auction sale of the Purchased Assets to be held at the law offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P. on _____, 2022, commencing at 10 a.m. PT, with zoom participation permitted, all in accordance with the Bankruptcy Court approved bidding procedures set forth in Docket No. ___.

"**Encumbrance**" means any lien, claim, interest or encumbrance of any nature.

"**Intellectual Property Rights**" means, collectively, all (i) U.S. and foreign, whether registered or unregistered, patents, trademarks, trade names, trade dress, service marks, copyrights, and applications therefor, (ii) computer software programs or applications (in both source code and object code form), (iii) industrial models, inventions, invention disclosures, author's rights, designs, utility models, inventor rights, schematics, technology, (iv) trade secrets, know-how, and other tangible information or material, and (v) confidential information and any other proprietary data or information of any nature or form.

"**Knowledge**" of a party shall mean the actual knowledge of any executive officer and the knowledge that a reasonable person in such capacity would have obtained in the conduct of his or her business under the same circumstances of service.

**EXHIBIT B**

**Purchase Price Allocation**

**EXHIBIT C**

**Form of Bill of Sale and Assumption Agreement**

# EXHIBIT "6"

**KROLL**
CORPORATE FINANCE

# Joshua Benn



**Managing Director**
**Head of Americas M&A Advisory**

Kroll Securities, LLC

New York

+1 212 450 2840

Joshua.Benn@kroll.com

Josh serves as the head of Kroll's New York corporate finance practice, head of Kroll's Americas M&A and distressed special situations advisory practice and leads the firm's global consumer investment banking practice. In addition, he serves on the firm's corporate finance leadership committee and engagement acceptance committee. Josh leverages more than 25 years of investment banking experience.

Prior to joining the firm as a founding partner, Josh served as a founding partner of Stone Ridge Partners LLC, a consumer sector focused M&A advisory boutique and was a senior member of the M&A and consumer sector coverage group at Thomas Weisel Partners and Furman Selz, LLC. In addition, Josh served as director of corporate development for KSL Recreation, a leading hospitality management and development platform backed by KKR.

Josh has managed merger, acquisition, divestiture, recapitalization, restructuring and distressed M&A transactions for a variety of public and privately-owned clients. Some of his notable clients include: Chargriller, Twin Peaks, Legal Seafood, U.S. Fitness, Primanti Brothers, House of Cheatham, Bowl America, Fazoli's, Eureka Restaurants, Weiman Products, Hampshire Pet Products, Rock Bottom Restaurants, Noodles & Company, Tourneau, Marlin Firearms, Traeger Wood Pellet Grills, Osprey Packs, Dover Saddlery, Standard Furniture, HMI, Inc., and Eastern Mountain Sports.

Josh received a B.A. in political science and French from Dartmouth College. He serves on several private company boards of directors and is a FINRA Series 7, 24, and 63 registered representative.

TRX

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF JOSHUA K. BENN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDER (I) ESTABLISHING BIDDING PROCEDURES FOR FREE AND CLEAR SALE OF ASSETS; (II) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING FORMS OF NOTICE; (IV) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (V) SCHEDULING AN AUCTION; (VI) SCHEDULING A SALE HEARING; AND (VII) GRANTING RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___June 23, 2022___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com**
- **Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com**
- **Jonathan Gottlieb    jdg@lnbyg.com**
- **Michael J Hauser    michael.hauser@usdoj.gov**
- **Marsha A Houston    mhouston@reedsmith.com, hvalencia@reedsmith.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **Ali M Mojdehi    amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com;amattingly@btlaw.com**
- **Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com**
- **Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) ___June 23, 2022___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 23, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

☒ Service information **BY OVERNIGHT MAIL** continued on attached page

☒ Service information **BY EMAIL** continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                 **F 9013-3.1.PROOF.SERVICE**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                **F 9013-3.1.PROOF.SERVICE**

In re Fitness Anywhere LLC and TRX
File No. 9745
RSN UST, 20 Largest and Secured
EMAIL LIST

Core Health & Fitness, LLC
Sy Mares
smares@corehandf.com

Office of the U.S. Trustee
Michael J Hauser
Michael.hauser@usdoj.gov

Flexport Inc
alyssa@flexport.com

Dirbos Inc.
jon@dirbos.com
(949) 466-1897

Duane Morris LLP
Michael J. Silverman
mjsilverman@duanemorris.com

NetSuite Inc
Carmina.espinola@oracle.com

ISUPPORT WORLDWIDE LLC
Courtney Bissett
cbissett@isupportworldwide.com

Syzygy Digital Marketing, Inc
finance@syzygy.us
Geanina Scuipici
Geanina.Scuipici@syzygy.co.uk

McCollister's Transportation Group, Inc
sschukraft@mccollisters.com

Sprint FWD, LLC
Bryan Arp
bryanarp@gmail.com

Counsel for Creative Artists Agency
Michael I. Gottfried, Esq.
mgottfied@elkinskalt.com

UDR-Eight 80
rholly@udr.com

Morrison & Foerster LLP
Murray A. Indick
mindick@mofo.com

Woodforest National Bank
mhouston@reedsmith.com
crivas@reedsmith.com

SprintFWD, LLC
Bryan Arp
bryanarp@gmail.com

Comma,8 LLC
Bryan Arp
bryanarp@gmail.com

Counsel for Core Health & Fitness, LLC
Ali M.M. Mojdehi **RSN**
amojdehi@btlaw.com
arego@btlaw.com

Email block:

smares@corehandf.com; Michael.hauser@usdoj.gov; alyssa@flexport.com; jon@dirbos.com; mjsilverman@duanemorris.com; Carmina.espinola@oracle.com; cbissett@isupportworldwide.com; finance@syzygy.us; bryanarp@gmail.com; mgottfied@elkinskalt.com; sschukraft@mccollisters.com; rholly@udr.com; mindick@mofo.com; mhouston@reedsmith.com; crivas@reedsmith.com; bryanarp@gmail.com; amojdehi@btlaw.com; arego@btlaw.com

In re TRX Holdco, LLC
File No. 9745
RSN UST, 20 Largest, Secured
 SERVICE BY OVERNIGHT MAIL

Michael J Hauser
United States Trustee
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593

Baker Tilly US, LLP
10 Terrace Court PO Box 7398
Madison, WI 53707-7398

Cole Schotz P.C.
25 Main Street P.O. Box 800
Hackensack, NJ 07602

Creative Artists Agency
Attn: Jeffrey Freedman
2000 Avenue of the Stars
Los Angeles, CA 90067

JMBM LLP
1900 Avenue of the Stars
Los Angeles, CA 90067

Morrison & Morrison
222 Souther Riverside Plaza
Chicago, IL 60606

Sterling Legal Solutions, Inc.
Attn: Stephanie Sterling
26895 Aliso Creek Rd., B-129
Aliso Viejo, CA 92656

UDR-Eight 80
1590 Adams Avenue
PO Box 2350
Costa Mesa, CA 92628

UDR-Eight 80
Agent for Service of Process
330 N. Brand Blvd., Suite 700
Glendale, CA 91203

Sterling Legal Solutions, Inc.
Agent for Service of Process
720 14th Street
Sacramento, CA 95814

SprintFWD, LLC
Attn: Bryan Arp
703 Pier Avenue, Suite B #632
Hermosa Beach CA 90254-0000

Comma,8 LLC
Attn: Bryan Arp
703 Pier Avenue, Suite B #632
Hermosa Beach CA 90254-0000

In re Fitness Anywhere LLC
File No. 9744
RSN UST, 20 Largest and Secured

SERVICE BY OVERNIGHT MAIL

Counsel for Woodforest National Bank
ReedSmith
Marsha Houston/Christopher Rivas
355 South Grand Avenue, Suite
2900 Los Angeles, CA, 90071

Michael J Hauser
United States Trustee
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593


Committee
Exemplar Design, LLC
Attention: Matt Nelson
4680 Parkway Drive, Suite 300
Mason, OH 45040

Committee
Core Health & Fitness, LLC
Attention:  Sy Mares
4400 NE 77th Avenue, Suite 250
Vancouver, WA 98662

Committee
United Parcel Service, Inc.
Attention: Farah C. Spainhour
55 Glenlake Parkway
Atlanta, GA 30328


Morrison & Foerster LLP
Attn: Murray A. Indick
425 Market Street
San Francisco CA 94105-0000

Core Health & Fitness, LLC
4400 Northeast 77th Avenue
Suite 300
Manufacturer Land America
Vancouver, WA 98662

Stephen Gould Corporation
35 South Jefferson Road
Whippany, NJ 07981


Flexport Inc
P.O. Box 207244
Dallas, TX 75320-7244

UPS Plan 0386NE
55 Glenlake Parkway NE
Atlanta, GA 30328

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196


Buy Box Experts
3020 N Cullen Ct. Pleasant
Grove, UT 84062

MAN Staffing, LLC
550 East Del Amo Boulevard
Carson, CA 90746

Syzygy Digital Marketing, Inc
41 Flatbush Avenue
Brooklyn, NY 11217


Lahlouh Inc
Attn: H. John Lahlouh
1649 Adrian Road
Burlingame, CA 94010

US Customs and Border Protection
PO BOX 979126
St. Louis, MO 63197-9000

McCollister's Transportation Group, Inc
8 Terri Lane
Burlington, NJ 08016


NetSuite Inc
500 Oracle Parkway
Redwood City, CA 94065

Google
P.O. Box 39000
San Francisco, CA 94139

AMEX Corp Card
P.O. Box 0001
Los Angeles, CA 90096


The Trade Desk
42 N Chestnut St.
Ventura, CA 93001

Dirbos Inc.
27758 Santa Margarita Pkwy
Suite 366
Mission Viejo, CA 92691

Redwood Supply Chain Solutions
1765 North Elston Avenue Suite 216
Chicago, IL 60642


USA Global Logistics LLC
255 Madsen Drive
Bloomingdale, IL 60108

ISUPPORT WORLDWIDE LLC
1019 West James St
Kent, WA 98032

Core Health & Fitness, LLC
Agent for Service of Process
330 N. Brand Blvd, Ste 700
Glendale, CA 91203


Stephen Gould Corporation
Agent for Service of Process
2710 Gateway Oaks Drive
Ste 150N
Sacramento, CA 95833

Flexport Inc.
Agent for Service of Process
5716 Corsa Ave.
Ste 110
Westlake Village, CA 91362

United Parcel Service, Inc.
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

McCollister's Transportation
Systems, Inc.
Agent for Service of Process
2710 gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Netsuite Inc.
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Google
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Man Staffing LLC
Attn: Miguel A Navarro
550 E Del Amo Blvd.
Suite C
Carson, CA 90746

Trade Desk
Agent for Service of Process
2710 Gateway Oaks Dr.
Ste 150N
Sacramento, CA 95833

Dirbos
Agent for Service of Process
101 N. Brand Blvd. 11th Floor
Glendale, CA 91203

Redwood Logistics LLC
C/O COGENCY GLOBAL INC.
1325 J STREET STE 1550
SACRAMENTO, CA 95814

Counsel for Creative Artists Agency
Michael I. Gottfried, Esq. **RSN**
Elkins Kalt Weintraub Reuben
Gartside LLP 10345 W. Olympic Blvd.
Los Angeles, CA 90064

Counsel for Core Health & Fitness, LLC
Ali M.M. Mojdehi **RSN**
Barnes & Thornburg LLP
655 West Broadway, Suite 1300
San Diego, CA 92101

Sprint FWD, LLC
Attn: Bryan Arp
703 Pier Avenue
Suite B #632
Hermosa Beach CA 90254-0000