RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>　　　　Debtor and Debtor in Possession.<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>　　　　Debtor and Debtor in Possession.<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br>Chapter 11 Cases<br><br>**DEBTORS' MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (2) APPROVING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS, AND APPROVING REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED; (3) WAIVING THE 14-DAY STAY PERIODS OF BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br>**[Declarations of Brent Leffel, Joshua Benn and Mark Reis Filed Concurrently Herewith]**<br><br>**Date:  August 18, 2022**<br>**Time: 10:00 a.m.**<br>**Place: *Via ZoomGov***<br>　　　Courtroom 5C<br>　　　411 West Fourth Street<br>　　　Santa Ana, CA 92701 |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 10

I. STATEMENT OF JURISDICTION AND VENUE ................................................. 10

II. STATEMENT OF FACTS ................................................................................. 10

    A.    Brief Description Of The Debtors And Their Business. ........................ 10

    B.    Events Leading To Bankruptcies And The Debtors' Chapter 11 Goals. .............. 12

    C.    The Debtors' Primary Assets and Secured Loans. ................................ 14

    D.    The Assets To Be Sold. ........................................................................ 15

    E.    The Asset Sale Process. ........................................................................ 18

III. DISCUSSION ................................................................................................. 19

    A.    The Bankruptcy Court Should Authorize The Debtors To Sell Substantially All Of Their Assets To The Winning Bidder Or The Winning Backup Bidder. ........................................................................ 19

        1.    Sound Business Purpose. .......................................................... 20

        2.    Accurate and Reasonable Notice. ............................................ 23

        3.    Fair and Reasonable Price. ...................................................... 24

        4.    Good Faith. .............................................................................. 25

    B.    Section 363(f) Of The Bankruptcy Code Permits The Debtors' Sale Of The Purchased Assets To Be Free And Clear Of Any And All Liens, Claims, Encumbrances, And Interests. ................................................. 26

        1.    The Debtors' Proposed Sale Is Permissible Pursuant To Section 363(f)(1). ................................................................................. 28

        2.    The Trustee's Proposed Sale is Permissible Pursuant to 11 U.S.C. Section 363(f)(2). .................................................................... 28

        3.    The Debtors Proposed Sale is Projected to be Permissible Pursuant to 11 U.S.C. Section 363(f)(3). ........................................................ 29

        4.    The Debtors' Proposed Sale is Permissible Pursuant to 11 U.S.C. Section 363(f)(4). .................................................................... 29

i

5.    The Debtors' Proposed Sale is Permissible Pursuant to 11 U.S.C.
Section 363(f)(5). ........................................................................ 29

C.    The Bankruptcy Court Should Authorize The Debtors To Assume And
Assign To The Winning Bidder Or The Winning Overbidder All Of The
Assigned Contracts That The Winning Bidder Or The Winning Backup
Bidder, As The Case May Be, Desires. .............................................. 32

D.    The Debtors Request the Court to Waive the Fourteen-Day Waiting
Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d). ............................ 34

IV. CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Abbotts Dairies of Pennsylvania, Inc.*,
    788 F.2d 143 (3d Cir. 1986)......................................................................20, 24, 25

*In re AEG Acquisition Corp.*,
    127 B.R. 34 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P. 1993)...................32

*In re Alpha Industries, Inc.*,
    84 B.R. 703 (Bankr. D. Mont. 1988) ..............................................................25

*In re Apex Oil Co.*,
    92 B.R. 847 (Bankr. E.D. Mo. 1988)..............................................................26

*In re Atlanta Packaging Products, Inc.*,
    99 B.R. 124 (Bankr. N.D. Ga. 1988) ..............................................................24

*In re Bowman*,
    194 B.R. 227 (Bankr. D. Ariz. 1995)..............................................................32

*In re Central Fla. Metal Fabrication, Inc.*,
    190 B.R. 119 (Bankr. N.D. Fla. 1995)..............................................................32

*Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*),
    391 B.R. 25 (9th Cir. B.A.P. 2008)..............................................................30, 31

*Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*,
    63 B.R. 361 (Bankr. N.D. Ohio 1986)..............................................................24

*Comm. of Equity SEC Holders v. Lionel Corp. (In re Lionel Corp.)*,
    722 F.2d 1063 (2d Cir. 1983)..............................................................20, 21

*In re Continental Airlines, Inc.*,
    780 F.2d 1223 (5th Cir. 1986) ..............................................................21

*In re Continental Country Club, Inc.*,
    114 B.R. 763 (Bankr. M.D. Fla. 1990) ..............................................................32

*In re Delaware and Hudson Ry. Co.*,
    124 B.R. 169 (D. Del. 1991)..............................................................20, 23

*In re Eliot*,
    94 B.R. 343 (E.D. Pa. 1988) ..............................................................29

*In re Embers 86th Street. Inc.*,
    184 B.R. 892 (Bankr. S.D.N.Y. 1995)..............................................................33

*In re Filtercorp, Inc.*,
  163 F.3d 570 (9th Cir. 1998) ..................................................................................26

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,
  209 F.3d 252 (3d Cir. 2000) ..................................................................................27

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
  567 B.R. 820 (Bankr. C.D. Cal. 2017) ...................................................................27

*In re Gucci*,
  193 B.R. 411 (S.D.N.Y. 1996) ...............................................................................32

*In re Huntington, Ltd.*,
  654 F.2d 578 (9th Cir. 1981) ..................................................................................20

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*,
  77 B.R. 15 (Bankr. E.D. Pa. 1987) .........................................................................25

*In re Integrated Resources, Inc.*,
  135 B.R. 746 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992) ........24

*In re Jolan, Inc.*,
  403 B.R. 866 (Bankr. W.D. Wash. 2009) ...........................................................30, 31

*In re Karpe*,
  84 B.R. 926 (Bankr. M.D. Pa. 1988) ..................................................................23, 24

*In re Klein Sleep Products, Inc.*,
  78 F.3d 18 (2d. Cir. 1996) ......................................................................................32

*In re M Capital Corp.*,
  290 B.R. 743 (B.A.P. 9th Cir. 2003) .......................................................................26

*In re Martin (Myers v. Martin)*,
  91 F.3d 389 (3d Cir. 1996) .....................................................................................20

*In re Prime Motors Inns*,
  124 B.R. 378 (Bankr. S.D. Fla. 1991) .....................................................................32

*In re Qintex Entertainment, Inc.*,
  950 F.2d 1492 (9th Cir. 1991) ................................................................................20

*In re Rock Indus. Mach. Corp.*,
  572 F.2d 1195 (7th Cir. 1978) ................................................................................25

*In re Schipper (Fulton State Bank v. Schipper)*,
  933 F.2d 513 (7th Cir. 1991) ...............................................................................4, 11

*In re Snyder*,
  74 B.R. 872 (Bankr. E.D. Pa. 1987) .......................................................................24

*In the Matter of Spanish Peaks Holdings II, LLC,* 872
    F.3d 892 (9th Cir. 2017) ..................................................................28

*In re The Seychelles, Partnership and Genius Corp. v. Banyan Corp.,*
    32 B.R. 708 (N.D. Tex. 1983)..........................................................24

*Titusville Country Club v. Pennbank (In re Titusville Country Club),*
    128 B.R. 396 (Bankr. W.D. Pa. 1991) ..............................................20

*In re Walter,*
    83 B.R. 14 (9th Cir. B.A.P. 1988)................................................20, 21

*In re Wilde Horse Enterprises,*
    136 B.R. 830 (Bankr. C.D. Cal. 1991)...........................................24, 25

*Willemain v. Kivitz,*
    764 F.2d 1019 (4th Cir. 1985) ........................................................24

**Federal Statutes**

11 U.S.C.

    §§ 105(a) and 365 ............................................................................8

    § 363 (b)(1) ........................................................................19, 20, 25

    § 363(f)(1)-(5)..................................................................................7

    § 363(f)(2)................................................................................27, 28, 29

    § 363(f)(3)....................................................................................27, 29

    § 363(f)(4)......................................................................................29

    § 363(f)(5)..................................................................................29, 30

    § 365(b)(1) ....................................................................................32

    §§ 105(a) and 363(b), (f), (k), (l) and (m), 365............................10

    § 363..................................................................15, 20, 23, 31

    § 363(b)..........................................................21, 23, 24, 30

    § 363(f)....................................................................26, 27, 28

    § 363(m)..................................................................................7, 26

    § 365(b)(1)(A)..........................................................................3, 8, 33

§ 365(b)(1)(B) ................................................................................................3, 8, 34

§ 365(f)(1) ...........................................................................................................32

§ 365(f)(2) ...........................................................................................................32

28 U.S.C.

§§ 157 and 1334 ................................................................................................10

§ 157(b) (2) (A), (M), (N) and (O)....................................................................10

§§ 1408 and 1409 ..............................................................................................10

**Other State Statutes**

UCC § 9-320 .......................................................................................................31

Uniform Commercial Code § 9-617 .................................................................28

**Other Authorities**

Bankruptcy Rule 6004(h)....................................................................................34

Bankruptcy Rule 6006(d)....................................................................................34

Bankruptcy Rules 6004(a) and (c) .....................................................................24

Bankruptcy Rules 6004(h) and 6006(d)...............................................9, 23, 34, 35

Fed. R. Bankr. P. 6004(a)(c) ..............................................................................24

Federal Rules of Bankruptcy Procedure Rules 2002(a)(2), 2002(c)(1) and (d),
    6004 (a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006, 9007, 9013 and
    9014....................................................................................................................10

Local Bankruptcy Rules 6004-1 and 9013-1 .....................................................10

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE DEBTORS' SECURED CREDITOR WOODFOREST NATIONAL BANK, FITNESS ANYWHERE LLC'S OFFICIAL COMMITTEE OF UNSECURED CREDITORS, TRX HOLDCO, LLC'S TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THESE CASES:**

TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC,  dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases[1], hereby file this motion (the "Motion") seeking the entry of an order of the Court approving the Debtors' sale of substantially all of their assets free and clear of all liens, claims, encumbrances and other interests to the winning bidder and the winning back up bidder at the Auction to be held on August 17, 2022, in accordance with the terms of the Asset Purchase Agreement ("APA") between the Debtors and the winning bidder, and the Debtors and the winning backup bidder.  The Debtors will make every effort to file with the Court prior to the hearing on August 18, 2022, and after the Auction on August 17, 2022, a supplement to this Motion describing the outcome of the Auction, and filing a copy of the APA with the winning bidder and a copy of the APA with the winning backup bidder.

By way of this Motion, the Debtors are also seeking the Court's approval of the Debtors' assumption and assignment to the winning bidder and the winning backup bidder of those unexpired leases and executory contracts, respectively, that the winning bidder and the winning backup bidder, respectively, wish to assume.  Concurrently herewith, the Debtors have filed and served on contracting counterparties that certain *Notice Of: (1) Assumption And Assignment Of Executory Contracts And Unexpired Leases; (2) Establishment Of Cure Amounts In Connection Therewith; (3) Procedures And Deadlines Regarding Oppositions To Assumption And Assignment, And Cure Amounts; And (4) Hearing Thereon* (the "Assumption/Assignment

---

[1] The Court previously entered an order approving the joint administration of these chapter 11

Notice")[2] setting forth a schedule of all of the Debtors' known executory contracts and unexpired leases (the "Contracts and Leases Schedule"), along with the Debtors' belief as to all outstanding cure amounts owing by the Debtors to the other parties to those executory contracts and unexpired leases (the "Cure Amount").

By way of this Motion, the Debtors are seeking the Court's authority to assume and assign to the winning bidder/winning backup bidder all of the Debtors' executory contracts and unexpired leases that the winning bidder/winning backup bidder wants to have assigned to it and to fix the required Cure Amounts that would need to be paid to the other parties to the executory contracts and unexpired leases to enable compliance with the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule unless the other parties to the executory contracts and unexpired leases file a timely objection to the Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule.  By way of this Motion, the Debtors are also seeking a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.

On July 20, 2022, the Bankruptcy Court entered an order (the "Amended Bidding Procedures Order") [Doc 182] approving the Debtors' proposed Amended Bidding Procedures [Doc 181].

On July 20, 2022, the Debtors filed and served on all creditors, equity interest holders and contract counterparties that certain *Notice of Court-Approved Amended Bidding Procedures, Opportunity To Bid On Assets And Auction Schedule* (Doc 181).

As set forth in the record of this case, the Debtors made a determination shortly prior to their bankruptcy filings that proceeding with a free and clear asset sale process was in the best interests of their estate.  While it appears that there is a substantial amount of interest in the

bankruptcy cases.

buying community to acquire the Debtors' business and by many to serve as a stalking horse bid, since the Debtors only commenced their free and clear asset sale process shortly prior to their bankruptcy filings, the Debtors did not have a stalking horse bid lined up when they obtained Bankruptcy Court approval of the Amended Bidding Procedures.  The Debtors concluded that proceeding to the Auction without a stalking horse bid in hand is the best option for these bankruptcy estates, with the Debtors retaining the right to seek an alternative order from the Court if facts and circumstances dictate otherwise.

After extensive consultation with the Debtors' well regarded and experienced investment banker in Kroll Securities, LLC ("Kroll"), and after taking into account the Debtors' financial situation, including the possibility that the Debtors will be provided with post-petition financing from the Debtors' pre-petition secured lender, Woodforest National Bank (the "Bank"), the Debtors established, with the approval of the Bankruptcy Court and the consent of the Bank and the Official Committee of Unsecured Creditors in Product Co's bankruptcy case, the following amended timetable in order to achieve the highest and best price for the Purchased Assets:

**July 27, 2022 at 5:00 p.m. (prevailing Pacific time) – Initial Indication of Interest Deadline –** This is the deadline for all parties who wish to be eligible to participate in the Auction to provide a non-binding written expression of interest in which the prospective bidder identifies (1) which of the Debtors' assets the prospective bidder is interested in acquiring; (2) a preliminary expected range of purchase price within a $3 million range (which will be kept completely confidential by Kroll but shared with the Committee upon request and the Bank); (3) the expected funding source, status and timing of approval of such funding source: (4) the expected business structure of the prospective buyer and the identities of all participants in the prospective bidder; (5) a specific description of remaining due diligence with outstanding questions and requests for information; (6) the identity of any retained counsel and/or financial advisor; and (7) what formal approvals (such as shareholder, board of director, etc.) are still needed for the prospective bidder to be able to submit a binding bid and consummate a sale

---

[2] The form of the Assumption/Assignment Notice was previously approved by the Court.

transaction.  The Bank and Committee shall be provided with a copy of all Initial Indications of Interest by no later than July 28, 2022 at 10:00 a.m. (prevailing Pacific time).

**August 10, 2022 at 5 p.m. (prevailing Pacific time)** – **Initial Bid Deadline** – This is the deadline by when initial bids need to be submitted by parties who wish to participate in the Auction.  In order to participate in the Auction, all prospective bidders must do all of the following:

1.  Submit a redlined version of the template asset purchase agreement (the "Template APA") indicating all changes that are requested to be made to the Template APA, with the Template APA to include their proposed initial bid;

2.  Submit all documents to enable Kroll to determine whether the proposed bidder is financially qualified to participate in the Auction; and

3.  Submit a deposit equal to $2 million, which deposit would be deemed non-refundable if the bidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court.  Bidders will have the right to withdraw their bid at any time up until Noon (prevailing Pacific time) on August 16, 2022, in which case they will receive a return of their deposit and no longer be eligible to participate in the Auction.

**August 17, 2022 commencing at 10 a.m. (prevailing Pacific time)** - Auction to be held at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., which are located at 2818 La Cienega Avenue, Los Angeles, CA, or via zoom with all Qualified Bidders to be provided with particulars in advance of the Auction.

**August 18, 2022 at 10 a.m. (prevailing Pacific time)** - Hearing for the Court to consider approval of the Debtors' proposed sale of the Purchased Assets to the winning bidder at the Auction.

**August 26, 2022** - Outside date by when the winning bidder at the Auction is required to close its purchase of the Purchased Assets unless the winning bidder and the Debtors jointly agree to extend the outside closing date.

The Amended Bidding Procedures approved by the Bankruptcy Court are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets. This is being done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.

Kroll has established an extensive data room and, to date, approximately 54 prospective bidders have signed NDA's who are actively engaged in the data room in connection with the current asset sale process, and Kroll is receiving new and additional inquiries virtually daily – meaning that this is a very active asset sale process. Kroll is also in discussions with numerous prospective buyers who are relatively further along in the due diligence process. The Debtors (after extensive consultation with Kroll) are confident that the Amended Bidding Procedures make the most sense under the circumstances of these cases and will help result in the highest and best price being paid for the Purchased Assets.

For all of the reasons set forth herein and in the accompanying Memorandum of Points and Authorities and concurrently filed Declarations of Brent Leffel and Joshua Benn, the Debtors have concluded that consummating a sale of the Purchased Assets for the most money possible is in the best interests of the Debtors' estates.

The Debtors urge all parties in interest and prospective bidders to read the entire Amended Bidding Procedures document and the Amended Bidding Procedures Order to understand the details of the Auction and sale process. The Debtors have prepared a template Asset Purchase Agreement, the form of which has been approved by the Court, for prospective bidders to use in connection with submitting their bids.

The Debtors respectfully request that the Bankruptcy Court:

1.      Grant this Motion;

2.      Immediately enter an order granting this Motion;

3.      Find that notice of this Motion, the relief requested therein, and the assumption and assignment of and establishment of Cure Amounts for, the executory contracts and unexpired leases to be assumed and assigned, was proper, timely, adequate, appropriate and

sufficient and that no other or further notice of this Motion, the hearing on this Motion, or the assumption and assignment of such executory contracts and unexpired leases is or shall be required;

4.      Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Debtors' sale of the Purchased Assets and assumption and assignment of the contracts/leases to the winning bidder and the winning backup bidder prior to, and outside of, a plan of reorganization;

5.      Find that the APA with the winning bidder and the APA with the winning backup bidder[3] was negotiated, proposed and entered into without collusion, in good faith, and from arm's-length bargaining positions and that the winning bidder and the winning backup bidder is acting as a good faith purchaser and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code;

6.      Find the consideration provided by each of the respective the winning bidder and the winning backup bidder for the Purchased Assets: (i) to be fair and reasonable, (ii) to be the highest or otherwise best offer for the Purchased Assets that was received by the Debtors in accordance with the Amended Bidding Procedures Order, (iii) provides a greater recovery for the Debtors' estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the circumstances of these cases, and find that prospective overbidders were provided an adequate opportunity to participate in the Auction and to submit a higher or otherwise better bid;

7.      Find that one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied for selling the Purchased Assets free and clear of all lien, claims encumbrances and other interests;

8.      find that approval of the APA and the consummation of the Debtors' sale of the Purchased Assets and the Debtors' assumption and assignment of the contracts and leases to the winning bidder or the winning backup bidder are in the best interests of the Debtors' estates;

---

[3] References herein to "APA" shall in each case include the winning bidder's and the winning

9.    authorize the Debtors to sell the Purchased Assets to the winning bidder and the winning backup bidder free and clear of all liens, claims encumbrances and other interests with all liens existing against the Purchased Assets at the time of the closing to attach to the net sale proceeds in the same order of priority, and with the same validity, force and effect, as such liens had against the Purchased Assets immediately before the closing, subject to any rights, claims and defenses of the Debtors and their bankruptcy estates;

10.    determine that (i) with the payment of the Cure Amounts, the Debtors and the winning bidder or the winning backup bidder, as applicable, have cured, or have provided adequate assurance of cure, of any default existing or occurring prior to the closing under any of the assumed and assigned contracts and leases, and the winning bidder or winning backup bidder, as the case may be, has provided adequate assurance of its future performance of and under the assumed and assigned contracts and leases, (ii) the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule have been satisfied unless the other parties to the executory contracts and unexpired leases file a timely objection to this Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule, and (iii) none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.

11.    Determine that the Debtors' assumption and assignment to the winning bidder or the winning backup bidder as the case may be, is approved, and the requirements for assumption and assignment are deemed satisfied and that the Debtors are authorized in accordance with 11 U.S.C. §§ 105(a) and 365;

---

backup bidder's form of asset purchase agreement.

12.     Approve (effective as of the closing date) the Debtors' rejection of all of the Debtors' remaining unexpired leases and executory contracts which are not assumed and assigned;

13.     Waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

14.     Grant such other and further relief as the Court deems just and proper under the circumstances of these cases.

Dated:  July 28, 2022                          TRX HOLDCO, LLC
                                               FITNESS ANYWHERE LLC

                                               By:___ /s/ Krikor J. Meshefejian_____
                                                       RON BENDER
                                                       KRIKOR J. MESHEFEJIAN
                                                       LINDSEY L. SMITH
                                                       LEVENE, NEALE, BENDER,
                                                       YOO & GOLUBCHIK L.L.P.
                                                       Attorneys for Chapter 11 Debtors and
                                                       Debtors in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. **STATEMENT OF JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtors' bankruptcy estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A), (M), (N) and (O). Venue of the Bankruptcy Cases is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are (i) Sections 105(a) and 363(b), (f), (k), (l) and (m), 365 of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002(a)(2), 2002(c)(1) and (d), 6004 (a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006, 9007, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure, and (iii) Local Bankruptcy Rules 6004-1 and 9013-1.

## II. **STATEMENT OF FACTS**[4]

### A. **Brief Description Of The Debtors And Their Business.**

1. The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company. Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.[5] TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities. TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations. TRX also launched in 2021 a purpose-built digital subscription-based

---

[4] The Debtors incorporate herein by this reference the *Declaration of Brent Leffel In Support Of Debtors' Cash Collateral Motion* (Doc 8) filed on June 8, 2022, in support of the facts set forth herein.

[5] Hold Co holds a preferential and controlling interest in Product Co. Hold Co also wholly owns TRXperience, LLC ("Experience Co"). Experience Co has not filed a bankruptcy case. Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

platform - the TRX Training Club® - that offers a library of on-demand video and daily live classes.

2. TRX enjoys a strong origin story (the first version of the Suspension Trainer™ was created in 1997 by Randy Hetrick, the founder of TRX), significant brand recognition and intellectual property protections around its flagship product Suspension Trainer™, which is distributed in over thirty (30) countries through commercial channels (gyms and vertical markets) and consumer markets (including through its direct-to-consumer platform www.TRXtraining.com in the United States and United Kingdom, Amazon, and other retailers).

3. From 2004 through 2013, Mr. Hetrick launched and commercialized TRX, building a loyal community of trainers and market penetration in gyms. From 2014 to 2018, the TRX business matured after receiving a growth capital investment. In late 2018, an investor group led by Equity 38, LLC acquired the business in a highly structured transaction which included a credit facility with Woodforest National Bank (the "Bank") alongside an equity investment and rollover investment from the previous investors, and, in 2019, various operational improvement initiatives were implemented to restructure the business. By the end of 2019, the business required a capital infusion to reset its credit facility with the Bank and also secure operating capital to execute on a strategy which incorporated the pursuit of digital initiatives to broaden the company's revenue opportunities beyond sales of its flagship product.

4. In March 2020, Hold Co was formed and additional equity capital was invested by existing and new investors in a further recapitalization of TRX. A portion of such proceeds were invested in Product Co to repay senior debt and provide working capital financing, and the balance remained at Hold Co to fund growth initiatives such as digital. After giving effect to the March 2020 recapitalization, Hold Co held a preferential and controlling interest in Product Co, and also became a guarantor of the credit facility. Hold Co also owns 100% of the interests of Experience Co, an entity that was formed at the time of the recapitalization for purposes of housing TRX's digital platform services that were beginning to be developed and for its educational services and offerings through which TRX has qualified training professionals on suspension training/functional training techniques and programming. While the different entities

were established to allow for a segregation of the equity investment made in the recapitalization and to limit dilution to legacy shareholders, TRX has operated as one identifiable brand in the market, and through intercompany agreements, including a management services agreement between Hold Co and Product Co wherein Hold Co provides the services of executive management that oversee the entire TRX enterprise, it also effectively operates as a consolidated business.

5.      In 2019, the Debtors generated approximately $51 million in revenue.  In 2020, the Debtors formulated a digital strategy with outside consultants while experiencing COVID-driven revenue growth, to approximately $85 million.  In 2021, the Debtors executed and invested in a number of initiatives focused on digital and marketing, hiring executives in key roles while building a significant inventory position and navigating through a rapidly changing macro environment, and generated approximately $62 million in sales.

**B.**      **Events Leading To Bankruptcies And The Debtors' Chapter 11 Goals.**

6.      Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth.  There have been many reasons for this including competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did not occur in an unpredictable market, and higher than anticipated development costs associated with the Debtors' digital training platform and increased marketing expenses, partially attributable to general increases in paid advertising.  It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.[6]

---

[6] Product Co and the Bank are parties to a Credit Agreement, dated as of December 26, 2018, as amended, pursuant to which Product Co obtained from the Bank a term loan in the principal amount of $10,875,000, a term loan in the principal amount of $1,000,000, and revolving loans in the principal and outstanding amount of $7,500,000, for a total principal balance of $19,375,000, which are secured by substantially all assets of the Debtors, and which are guaranteed by Hold Co, Experience Co and Fitness Anywhere International, LLC.

7.    Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction.  The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

8.    The Debtors believe that timing and macroeconomic considerations both played a role in the Debtors not consummating a pre-petition transaction.  For example, while various parties expressed interest in a transaction with the Debtors, those who signed nondisclosure agreements and engaged in discussions with the Debtors did not ultimately proceed with engaging in a transaction.  The Debtors also explored potential financing arrangements and received various expressions of interest.[7]

9.    The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill.  The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors, including the Bank.[8]

10.    Despite these challenges, the Debtors believes that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect

---

[7] It is possible that the Debtors will require debtor in possession financing if the Debtors' cash on hand and cash generated post-petition are not sufficient to meet all of the Debtors' operational needs during this chapter 11 case.  Additionally, in order for the Debtors to purchase any significant inventory going forward, the Debtors will require additional funding.

[8] The Debtors are in discussions with the Bank regarding the Bank providing the Debtors with post-petition financing, which, if consummated, will be presented to the Court by way of a separate motion.

it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history.  Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

11.    Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale process in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.[9]   The Debtors believe that proceeding in this manner will afford them with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.  The Debtors are optimistic that this free and clear asset sale process will result in a successful sale transaction closing.  Given the high level of interest that has already been expressed by the buying community, the Debtors are hopeful that the sale will result in a purchase price sufficient to pay the Bank in full and provide for a distribution to the rest of the Debtors' creditors.

12.    The Debtors' goal in these bankruptcy cases is to consummate a free and clear asset sale for the most money possible.

**C.    The Debtors' Primary Assets and Secured Loans.**

13.    The Debtors' primary assets are comprised of accounts receivable in the approximate gross amount of $5.1 million as of the Petition Date, inventory with a cost basis of approximately $17.8 million as of the Petition Date, intellectual property and goodwill associated with the Debtors' well-regarded brand, and the Debtors' vast domestic and international customer base.

---

[9] While the Debtors' Budgets reflect that the Debtors are projected to have sufficient cash during the term of the Budgets to fund the expenses in the Budgets, the Budgets do not include substantial additional purchases of inventory.

14. To support the financial needs of their growth and operations, on or about December 26, 2018, the Debtors (with Product Co as borrower and Hold Co ultimately as one of three guarantors[10]) obtained a senior secured credit facility revolving credit facility from the Bank, secured by substantially all of the Debtors' assets and property. The credit facility is evidenced by that certain "Credit Agreement Dated as of December 26, 2018" as amended from time to time, in the original principal amount of $20,000,000. Based on five amendments to the Credit Agreement, the credit facility is currently comprised of a term loan with a principal balance of $10,875,000, a term loan with a principal balance of $1,000,000, and revolving loans up to $8,000,000 with a principal balance of $7,500,000. As of the Petition Date, the total principal balance of the loans made by the Bank to the Debtors is approximately $19,375,000.

15. The Debtors also have a substantial amount of pre-petition unsecured debt.

**D.    The Assets To Be Sold.**

16. The Debtors are selling all of their right, title and interest in and to all of the assets of Debtors used in connection with their business and which are summarized below (the "Purchased Assets"), free and clear of all liens, claims and interests pursuant to Section 363 of the Bankruptcy Code. Subject to the particular terms and conditions of the APA between the Debtors and the Winning Bidder, or the Debtors and the Winning Backup Bidder, the Purchased Assets generally consist of the following:

(a) All of the Debtors' supplies, computers, printers, equipment, furniture, fixtures and other similar assets or tangible personal property owned by Sellers;

(b) All of the Debtors' respective membership interests in TRXperience, LLC, Fitness Anywhere International LLC, and Fitness Anywhere Europe Cooperatief U.A. Netherlands (which owns TRX Training Japan Co., LTD. and Fitness Anywhere UK Limited);

---

[10] The other two guarantors are Experience Co (a wholly owned subsidiary of Hold Co) and Fitness Anywhere International, LLC (a wholly owned subsidiary of Product Co). Hold Co and Experience Co became guarantors in connection with a recapitalization of TRX completed in 2020.

(c)   All of Debtors' rights, title, interest and benefits under the Debtors' agreements, contracts, licenses, instruments, commitments and understandings;

(d)   All advance payments, claims for refunds and deposits, and other prepaid items relating to the Purchased Assets or the obligations assumed by a buyer, existing as of the closing date of a sale;

(e)   All of the Debtors' accounts related to the Debtors' business and all schedules, records and other documentation related to such accounts or notes receivable, unless designated by the Debtors as an Excluded Asset (defined below);

(f)   All of the Debtors' books and records directly related to, or used in connection with, the conduct of the Debtors' business or pertaining to the Purchased Assets, regardless of the medium on which such information is stored or maintained including, without limitation, all customer and employment records, vendor information and contracts, business plans and strategies, financial and operational data and reports, and marketing information and materials;

(g)   To the extent transferable, all of the Debtors' licenses, permits or other authorizations of governmental or regulatory entities that are required under any laws, rules and regulations applicable to or affecting the Business;

(h)   To the extent assignable, all of the Debtors' leased real property, including any leasehold improvements thereon;

(i)   All of the Debtors' inventory;

(j)   All of the Debtors' intellectual property rights and all goodwill associated with such intellectual property rights, including, without limitation, (i) the right to use, copy, modify, exploit, license, assign, convey and pledge the intellectual property rights, (ii) the right to exclude others from using the intellectual property rights, (iii) the right to sue others and collect damages for past, present and future infringement of the intellectual property rights, (iv) the right to create derivatives of the intellectual property and retain full ownership thereof, and (v) the right to file and prosecute applications for registration, now pending or hereinafter initiated, to protect any rights in the intellectual property rights;

16

(k)  All insurance benefits, including rights and proceeds, arising from or relating to the Purchased Assets or the obligations assumed by a buyer prior to the closing date of a sale except to the extent designated by the Debtors as an Excluded Asset;

(l)  All of the Debtors' claims and lawsuit rights (pending or not) against third parties relating to the Purchased Assets, whether choate or inchoate, known or unknown, contingent or non-contingent except for those designated by the Debtors as an Excluded Asset;

(m)  Customer lists and contact information; and

(n)  All goodwill associated with the Debtors' business and the Purchased Assets.

17.  Subject to the terms of the APA, generally speaking, the Debtors shall retain, and are not selling, any of the following assets, properties and rights owned by the Debtors (collectively, the "Excluded Assets"):

(a)  All contracts and leases of the Debtors that are not assigned to a buyer;

(b)  All notes receivable and any other debt instruments providing for money owing to the Debtors;

(c)  All cash and cash equivalents of the Debtors and any other item designated by the Debtors in an asset purchase agreement as an Excluded Asset;

(d)  The corporate seals, minute books, stock books, tax returns and other similar records relating to the Debtors' corporate organizations, and all employee related or employee benefit related files or records other than personnel files of employees hired by a buyer;

(e)  Except as to the Purchased Assets, all insurance recovery rights of the Debtors;

(f)  All tax refunds or credits owing to either of the Debtors, and any and all claims or rights related thereto, including, without limitation, all rights, claims and interests of the Debtors in employee retention credits under the CARES Act;

(g)  All rights to all claims, causes of action, choses in action, rights of recovery and rights of set-off (whether choate or inchoate, known or unknown, contingent or non-contingent) in favor of the Debtors that are not included as a Purchased Asset, and all avoidance causes of action existing under any of sections 544-553, inclusive, of the Bankruptcy Code; and

(h)  All other assets identified in the APA as an Excluded Asset.

**E.    The Asset Sale Process.**

On July 20, 2022, the Bankruptcy Court entered that certain *Order Granting Debtors' Motion For Entry of Order Modifying Bidding Procedures Previously Approved By The Court For Free And Clear Sale Of Assets And granting Related Relief* (the "Amended Bidding Procedures Order") [Doc 182] approving the Debtors' amended bidding procedures ("Amended Bidding Procedures") filed with the Bankruptcy Court as Docket No. 181.

As set forth in the record of this case, the Debtors made a determination shortly prior to their bankruptcy filings that proceeding with a free and clear asset sale process was in the best interests of their estate.  While it appears that there is a substantial amount of interest in the buying community to acquire the Debtors' business and by many to serve as a stalking horse bid, since the Debtors only commenced their free and clear asset sale process shortly prior to their bankruptcy filings, the Debtors did not have a stalking horse bid lined up when they obtained Bankruptcy Court approval of the Amended Bidding Procedures.  The Debtors concluded that proceeding to the Auction without a stalking horse bid in hand is the best option for these bankruptcy estates, with the Debtors retaining the right to seek an alternative order from the Court if facts and circumstances dictate otherwise.

After extensive consultation with the Debtors' well regarded and experienced investment banker in Kroll Securities, LLC ("Kroll"), and after taking into account the Debtors' financial situation, including the possibility that the Debtors will be provided with post-petition financing from the Bank, the Debtors established, with the approval of the Bankruptcy Court and the consent of the Bank and the Official Committee of Unsecured Creditors in Product Co's bankruptcy case, the Amended Bidding Procedures.

The Amended Bidding Procedures approved by the Bankruptcy Court are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets. This is being done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.

The Amended Bidding Procedures explain to prospective bidders how a prospective bidder becomes qualified to participate in the Auction and how the Auction will proceed. In addition, Kroll has established an extensive data room and, to date, approximately 54 prospective bidders have signed NDA's who are actively engaged in the data room in connection with the current asset sale process, and Kroll is receiving new and additional inquiries virtually daily – meaning that this is a very active asset sale process. Kroll is also in discussions with numerous prospective buyers who are relatively further along in the due diligence process. The Debtors (after extensive consultation with Kroll) are confident that the Amended Bidding Procedures make the most sense under the circumstances of these cases and will help result in the highest and best price being paid for the Purchased Assets. To assist in this process, the Debtors obtained Bankruptcy Court approval of a template asset purchase agreement for bidders to use, and Kroll has made the template asset purchase agreement available to prospective bidders.

Initial Indications of Interest under the Amended Bidding Procedures were due on July 27, 2022. Initial Bids under the Amended Bidding Procedures are due on August 10, 2022, and the Auction is scheduled for August 17, 2022. Given the process that was employed by the Debtors and Kroll (*see* concurrently filed Declaration of Joshua Benn), the Debtors are confident that they will obtain the highest and best offer under the circumstances, and are optimistic that they will close a sale of the Purchased Assets in the timeframe set forth in the Amended Bidding Procedures at the highest and best price possible under the circumstances.

### III. **DISCUSSION**

A.    **The Bankruptcy Court Should Authorize The Debtors To Sell Substantially All Of Their Assets To The Winning Bidder Or The Winning Backup Bidder**.

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or

lease, other than in the ordinary course of business, property of the estate….." 11 U.S.C. § 363

(b)(1).  To approve a use, sale or lease of property other than in the ordinary course of business,

the court must find "some articulated business justification." *See, e.g., In re Martin (Myers v.*

*Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) citing *In re Schipper (Fulton State Bank v. Schipper)*,

933 F.2d 513, 515 (7th Cir. 1991); *Comm. of Equity SEC Holders v. Lionel Corp. (In re Lionel*

*Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788

F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp.*

and requiring good faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991)

(concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts*

*Dairies* decision).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best

interest of the estate, and a business justification exists for authorizing the sale.  *In re*

*Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981); *In re Walter*, 83 B.R. 14, 19-20 (9th Cir. B.A.P.

1988).  The Ninth Circuit has also held that section 363 allows the sale of substantially all assets

of a debtor's bankruptcy estate after notice and a hearing.  *In re Qintex Entertainment, Inc.*, 950

F.2d 1492 (9th Cir. 1991).

In determining whether a sale satisfies the business judgment standard, courts have held

that: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the

sale be given to interested persons; (3) the sale yield an adequate price (i.e., one that is fair and

reasonable); and (4) the parties to the sale have acted in good faith.  *Titusville Country Club v.*

*Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *see also,*

*In re Walter*, 83 B.R. at 19-20.

The Debtors submit that their proposed sale of assets pursuant to the terms of the

Amended Bidding Procedures Order clearly comports with each of these four criteria, and

demonstrates that the Debtors' business judgment to proceed with the proposed sale of

substantially all of their assets in accordance with the terms of the Amended Bidding Procedures

Order is sound.

       1.    **<u>Sound Business Purpose</u>.**

There must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy court may order such disposition under Section 363(b). *In re Lionel Corp.,* 722 F.2d at 1070. The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). In *Walter*, the Bankruptcy Appellate Panel, adopting the reasoning of the Fifth Circuit in *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) and the Second Circuit in *In re Lionel Corp.*, *supra*, articulated the standard to be applied under Section 363(b) as follows:

> Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in <u>Lionel</u>, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders, alike. He might, for example, look to such relevant facts as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In Re Walter*, 83 B.R. at 19-20, *citing In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

The facts pertaining to the Debtors' proposed sale of the Purchased Assets clearly substantiate the Debtors' business decision that such contemplated sale serves the best interests of their estates and merits the approval of the Court.

For all of the reasons explained above, despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth. The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can

consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill.  The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors, including the Bank.[11]

Despite these challenges, the Debtors believes that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history.  Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale process in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.[12]   The Debtors believe that proceeding in this manner will afford them with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.

---

[11] The Debtors are in discussions with the Bank regarding the Bank providing the Debtors with post-petition financing, which, if consummated, will be presented to the Court by way of a separate motion.

[12] While the Debtors' Budgets reflect that the Debtors are projected to have sufficient cash during the term of the Budgets to fund the expenses in the Budgets, the Budgets do not include substantial additional purchases of inventory.

The Debtors therefore submit that their proposed sale is justified by sound business purposes, satisfying the first requirement for a sale under Section 363(b) of the Bankruptcy Code.

**2.** **Accurate and Reasonable Notice.**

In connection with a proposed sale under Section 363 of the Bankruptcy Code, "four pieces of information must be presented to the creditors. The notice should: place all parties on notice that the debtor is selling its business; disclose accurately the full terms of the sale; explain the effect of the sale as terminating the debtor's ability to continue in business; and explain why the proposed price is reasonable and why the sale is in the best interest of the estate." *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 180 (D. Del. 1991). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988). The purpose of the notice is to provide an opportunity for objections and hearing before the court if there are objections. *Id.*

First, on July 20, 2022, the Debtors filed and served on all creditors and equity interest holders that certain *Notice of Court-Approved Amended Bidding Procedures, Opportunity To Bid On Assets And Auction Schedule* pursuant to which such parties received notice of the Auction and the Amended Bidding Procedures approved by the Court. Prospective bidders were also provided with the Amended Bidding Procedures and advised of the Court-approved amendments to bidding procedures; and the Amended Bidding Procedures document and above-referenced notice were was uploaded to the virtual data room.

Then, on July 28, 2022, concurrently with filing this Motion, the Debtors served that certain *Notice Of Hearing On Debtors' Motion For An Order: (1) Approving Sale Of Substantially All Of The Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; (2) Approving Of Debtors' Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases And Determining Cure Amounts And Approving Debtors' Rejection Of Executory Contracts And Unexpired Leases Which Are Not Assumed And Assigned; (3) Waiving The 14-Day Stay Periods Set Forth In Bankruptcy Rules 6004(h) And 6006(d); And (4) Granting Related Relief* (the "Sale Notice"), the form of which the Court approved pursuant

to its Amended Bidding Procedures Order.  The Sale Notice was served on all known creditors and equity interest holders of the Debtors.  The Trustee submits that the foregoing satisfies the requirements of the Bankruptcy Rules 6004(a) and (c), which provide as follows:

> "(a) ... Notice of a proposed ... sale ... of property ... not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2),(c)(1),(i) and (k) ...
> (c) ... A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold.  The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession..."

Fed. R. Bankr. P. 6004(a)(c).

### 3.    __Fair and Reasonable Price__.

In order to be approved under Section 363(b) of the Bankruptcy Code, the purchase price must be fair and reasonable.  *Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 368 (Bankr. N.D. Ohio 1986).  Several courts have held that "fair value" is given for property in a bankruptcy sale when at least 75% of the appraised value of such property is paid.  *See In re Karpe*, 84 B.R. at 933; *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986); *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985); *In re Snyder*, 74 B.R. 872, 878 (Bankr. E.D. Pa. 1987); *In re The Seychelles, Partnership and Genius Corp. v. Banyan Corp.*, 32 B.R. 708 (N.D. Tex. 1983).  However, the Trustee also realizes that "[his] main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold."  *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992).  "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988); *see also In re Wilde Horse Enterprises*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold").

The terms of the Amended Bidding Procedures and the marketing and sale process

undertaken by the Debtors and Kroll are designed to insure that the highest price possible is obtained for the Purchased Assets. The post-petition overbid marketing process that the Debtors are undertaking in accordance with the Amended Bidding Procedures approved by the Court insures that under the circumstances the highest and best price is paid for the Purchased Assets and that purchase price will necessarily will be equal to the current fair market value of the Purchased Assets.

### 4. __Good Faith.__

When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies*, 788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of Section 1129, that the Bankruptcy Court independently scrutinizes the debtor's reorganization plan and makes a finding that it has been proposed in good faith. *Id.* at 150.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction. *In re Wilde Horse Enterprises*, 136 B.R. at 842. With respect to a debtor's conduct in conjunction with the sale, the good faith requirement "focuses principally on the element of special treatment of the Debtor's insiders in the sale transaction." *See In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987). Here, the Debtors and Kroll, a highly sophisticated, reputable and talented investment banker, are conducting a sale process pursuant to Amended Bidding Procedures approved by the Court, the Bank and the Committee. Moreover, the Amended Bidding Procedures include various provisions and protections designed to ensure a level playing field for all third parties and foster a competitive bidding scenario where the highest and best offer is deemed to be the winning offer.

With respect to the buyer's conduct, this Court should consider whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies*, 788 F.2d at 147; *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 842; *In re Alpha Industries, Inc.*, 84 B.R. 703, 706 (Bankr. D.

Mont. 1988).   In short, "[l]ack of good faith is generally determined by fraudulent conduct during the sale proceedings." *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988), *citing In re Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983); *see also In re M Capital Corp.*, 290 B.R. 743 (B.A.P. 9th Cir. 2003).

In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the following test for determining whether a buyer is a good faith purchaser:

> A good faith buyer "is one who buys 'in good faith' and 'for value.'" [citations omitted.]   [L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" [citations omitted.]

*Filtercorp*, 163 F.3d at 577.

The Ninth Circuit made clear in *Filtercorp* that this standard for determining good faith is applicable even when the buyer is an insider.   To the extent the Winning Bidder requests or requires a good faith finding under section 363(m) of the Bankruptcy Code (which the Debtors believe will be the case), the Debtors will supplement this Motion either is writing or orally at the hearing on the Motion with additional information regarding the purchaser.   The Debtors are not aware of any fraud, collusion or attempt to take unfair advantage of any bidders. Additionally, the Bid Procedures were intensively negotiated at arm's length in good faith between the Debtors, the Bank and the Committee.   Based on the foregoing, and a declaration to be submitted (or testimony provided) by the winning bidder describing its good-faith conduct throughout the sale process, the Debtors submits that the Court should find that the winning bidder constitutes a good faith purchaser entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

**B.**      **Section 363(f) Of The Bankruptcy Code Permits The Debtors' Sale Of The Purchased Assets To Be Free And Clear Of Any And All Liens, Claims, Encumbrances, And Interests**.

It is the Debtors expectation and hope that the Debtors' marketing and sale efforts will result in the closing of a transaction that will pay in full the Bank's secured claim, in which case,

there is no question that the Bank will consent to the sale under section 363(f)(2) and the sale could be approved under section 363(f)(3).  The Debtors do not believe that there will be a scenario where the Bank does not ultimately consent to the sale of the Purchased Assets, particularly given the Bank's credit bidding rights under the terms of the Amended Bidding Procedures Order.  Therefore, the discussion below focuses primarily on section 363(f)(2) and (3).  However, in order to maintain flexibility in the unlikely event that section 363(f)(2) and (3) are not satisfied, and with respect to any other parties in interest other than the Bank asserting a lien, claim, interest or encumbrance in the Purchased Assets, the Debtors' discussion below includes an analysis of sections 363(f)(1), (4) and (5).

Section 363(f) of the Bankruptcy Code provides, in relevant part, as follows:

The trustee may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; ...
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) Such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive.  Thus, a debtor in possession need only meet the provisions of one of the five subsections of section 363(f) in order for a sale of property to be free and clear of any and all liens, claims, interests, or encumbrances of any nature (defined collectively as "Encumbrances") [13].  The Debtors submit that one or more

---

[13] The Bankruptcy Code does not define the phrase "interest in ... property" for purposes of § 363(f). *See In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 825 (Bankr. C.D. Cal. 2017).  "The Third Circuit has held that the phrase 'interest in ... property' is 'intended to refer to obligations that are connected to, or arise from, the property being sold.' *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259 (3d Cir. 2000).  That conclusion is echoed by *Collier on Bankruptcy*, which observes a trend in caselaw 'in favor of a broader definition [of the phrase] that encompasses other obligations that may flow from ownership of the property.' 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[1] (16th ed. 2017)." *Id.*

of the tests of Bankruptcy Code section 363(f) are satisfied with respect to the Debtors' proposed sale of the Purchased Assets free and clear of Encumbrances.

## 1. The Debtors' Proposed Sale Is Permissible Pursuant To Section 363(f)(1).

Applicable nonbankruptcy law permits the sale of the Purchased Assets free and clear of such interest. *See e.g., In the Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892 (9th Cir. 2017) ("Section 363(f)(1) does not require an actual or anticipated foreclosure sale. It is satisfied if such a sale would be legally permissible") (holding that, under Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent lease on the mortgaged property, and, therefore, the sale free and clear of a lease was permitted under section 363(f)(1)).

For example, under California law, a foreclosure sale of a personal property interest would terminate junior interests if conducted pursuant to the lien of a deed of trust, or an execution sale pursuant to a judgment lien. Specifically, a junior lienholder in California could be compelled to accept a money satisfaction upon a senior secured party's disposition of collateral under the default remedies provided in §9617 of California's Uniform Commercial Code.

Similarly, under New York's Uniform Commercial Code §9-617, "[a] secured party's disposition of collateral after default: (1) transfers to a transferee for value all of the debtor's rights in the collateral; (2) discharges the security interest under which the disposition is made; and (3) discharges any subordinate security interest or other subordinate lien other than liens created under any law of this state that are not to be discharged."

Based on the foregoing, the Debtors submits that applicable non-bankruptcy law permits the sale of the Property free and clear of Encumbrances.

## 2. The Trustee's Proposed Sale is Permissible Pursuant to 11 U.S.C. Section 363(f)(2).

Section 363(f)(2) of the Bankruptcy Code authorizes a sale to be free and clear of an interest if the interest holder consents to the sale. However, the "consent" of an entity asserting an interest in the property sought to be sold, as referenced in section 363(f)(2) of the Bankruptcy

Code, can be implied if such entity fails to make a timely objection to the sale after receiving notice of the sale. *In re Eliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

As discussed above, the Debtors are optimistic that the Bank will consent to the Debtors' sale of the Purchased Assets free and clear of its liens. Moreover, to the extent there are any other lienholders in connection with the Debtors' inventory (such as parties asserting warehouse liens or maritime liens), the Debtors believe that such parties will also consent to the sale of the Purchased Assets, as any such liens will attach to sale proceeds with the same validity, priority and extent. In the event that there any other Encumbrance holders, the Debtors request that the Bankruptcy Court approve the sale of the Purchased Assets free and clear of all Encumbrances of those parties who do not file a timely objection to the sale, by deeming all such parties to have consented to the sale pursuant to section 363(f)(2) of the Bankruptcy Code.

**3.      The Debtors Proposed Sale is Projected to be Permissible Pursuant to 11 U.S.C. Section 363(f)(3).**

Section 363(f)(3) of the Bankruptcy Code authorizes a sale to be free and clear of an interest if such interest is a lien and the price at which the property to be sold is greater than the aggregative value of all liens against the property. Here, the Debtors are optimistic that the sale price for the Purchased Assets will exceed the Bank's secured claim amount (and any other claim secured by a lien against any Purchased Assets).

**4.      The Debtors' Proposed Sale is Permissible Pursuant to 11 U.S.C. Section 363(f)(4).**

Section 363(f)(4) permits a sale free and clear of an interest if such interest is in bona fide dispute. Here, the Debtors are not seeking Bankruptcy Court approval of the sale under section 363(f)(4) as it pertains to the Bank's security interest. However, to the extent any other party in interest asserts an Encumbrance against the Purchased Assets, the Debtors reserve the right to contend that such Encumbrance is in bona fide dispute.

**5.      The Debtors' Proposed Sale is Permissible Pursuant to 11 U.S.C. Section 363(f)(5).**

Section 363(f)(5) of the Bankruptcy Code permits a sale of property free and clear of

1   liens and interests if "such entity could be compelled, in a legal or equitable proceeding, to
2   accept a money satisfaction of such interest."  11 U.S.C. § 363(f)(5).

3        The Bankruptcy Appellate Panel for the Ninth Circuit has scrutinized § 363(f)(5) in the
4   context of the sale of real property.  *See Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW,*
5   *LLC*), 391 B.R. 25 (9th Cir. B.A.P. 2008) ("*Clear Channel*").  In *Clear Channel*, the senior
6   secured creditor attempted to purchase the debtor's real property by way of a credit bid, free and
7   clear of the interest of a nonconsenting junior lienholder outside of a plan of reorganization.
8   The Bankruptcy Court approved the sale to the senior lender under § 363(f)(5), finding that
9   § 363(f)(5) permits a sale free and clear of the creditor's interest in property "whenever a claim
10  can be paid with money."  391 B.R. at 42.

11       In reversing the Bankruptcy Court's decision, the Bankruptcy Appellate Panel found that
12  § 363(f)(5) requires that "(1) a proceeding exists or could be brought, in which (2) the
13  nondebtor could be compelled to accept a money satisfaction of (3) its interest."  *Id*. at 41.
14  Taking up these factors in reverse order, the Bankruptcy Appellate Panel concluded that a lien,
15  such as the lien of a secured lender, constitutes an "interest" for purposes of § 363(f)(5).  With
16  respect to the second factor, the Bankruptcy Appellate Panel ruled that § 363(f)(5) refers to
17  those proceedings in which the creditor "could be compelled to take less than the value of the
18  claim secured by the interest."  *Id*.  In order to approve a sale free and clear under § 363(f)(5),
19  the Court must "make a finding of the existence of … a mechanism [to address extinguishing
20  the lien or interest without paying such interest in full] and the [debtor in possession] must
21  demonstrate how satisfaction of the lien 'could be compelled.'"  *Id*. at 45.  Finally, the
22  Bankruptcy Appellate Panel held that § 363(f)(5) requires that there be, "or that there be the
23  possibility of, some proceeding, either at law or at equity, in which the nondebtor could be
24  forced to accept money in satisfaction of its interest."  *Id.*

25       In *In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009), decided after *Clear*
26  *Channel*, the bankruptcy court held that *Clear Channel* "does not preclude a §363(b) sale free
27  and clear for an amount less than enough to satisfy all liens…." *Id.* at 867.  "The [Bankruptcy
28  Appellate] Panel nowhere addressed non-contractual mechanisms whereby a lienholder might

get less than full payment yet lose the lien.  In fairness, the appellees [in *Clear Channel*] did not even argue that there were any qualifying legal or equitable proceedings beyond cramdown under §1129." *Id.* at 869.[14]

"As in *Clear Channel*, subsection (f)(5) is the only subsection of § 363 which might here permit the trustee's proposed auction if the proceeds do not cover the debts secured by the collateral sold.  But there are legal and equitable proceedings in Washington in which a junior lienholder could be compelled to accept a money satisfaction: a senior secured party's disposition of collateral under the default remedies provided in part VI of Article 9, Secured Transactions of Washington's Uniform Commercial Code, RCW 62A.9A." *Id.*

Other examples provided by the *Jolan* court included: (1) a receiver's sale free and clear of liens under applicable Washington law; (2) the liquidation of a probate estate under applicable Washington law; (3) a personal property tax sale; (4) a federal tax lien sale; and (5) a judicial or nonjudicial foreclosure of real property.

As discussed above in connection with section 363(f)(1), there are legal and equitable proceedings available in California and other jurisdictions that parallel the proceedings discussed by the bankruptcy court in *Jolan*.

Here, all of the factors set forth in *Clear Channel* for a sale free and clear of claimants' interests could be satisfied.  Specifically, any party who asserts an "interest" in the Purchased Assets could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest.  Similarly, any unsecured creditor of the Debtors' estates could undeniably be forced to accept, via court proceedings whereby such creditors could obtain money judgments against the Debtors, money satisfaction of their claims.

Based upon all of the foregoing, all creditors of the Debtors' estates, could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interest.

---

[14] *But see Clear Channel*, footnote 21: "*Collier* seems to indicate that UCC §9-320, which permits a sale free and clear of a consensual security interest if the collateral is sold in the ordinary course of business of the debtor, might satisfy paragraph (5).  We think, however, that such a use is better classified under paragraph (1)."

**C.** **The Bankruptcy Court Should Authorize The Debtors To Assume And Assign To The Winning Bidder Or The Winning Overbidder All Of The Assigned Contracts That The Winning Bidder Or The Winning Backup Bidder, As The Case May Be, Desires.**

Barring exceptions not herein relevant, sections 365(a) and 1107(a) authorizes a debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor." A debtor in possession may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996). In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *In re Continental Country Club, Inc.,* 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *see also In re Gucci*, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice. *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory contracts and unexpired leases, provided the debtor first assumes such executory contracts and unexpired leases in accordance with section 365(b)(1), and provides adequate assurance of future performance by the assignee. Pursuant to section 365(b)(1), assumption of executory contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1); *see also In re Bowman*, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995); *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P. 1993). Pursuant to section 365(f)(1) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease pursuant to section 365(f)(2) of the Bankruptcy Code

32

notwithstanding any provision in such executory contract or unexpired lease that prohibits, restricts or conditions the assignment of such executory contract or unexpired lease.

The assumption and assignment of executory contracts furthers the goals of Chapter 11 of promoting reorganization by balancing the debtor's interest in maximizing the value of its estate against the contracting party's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred. *In re Embers 86th Street. Inc.*, 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

By way of this Motion, the Debtors are also seeking the Court's approval of the Debtors' assumption and assignment to the winning bidder and the winning backup bidder of those unexpired leases and executory contracts, respectively, that the winning bidder and the winning backup bidder, respectively, wish to assume.

Concurrently herewith, the Debtors have filed and served on contracting counterparties that certain *Notice Of: (1) Assumption And Assignment Of Executory Contracts And Unexpired Leases; (2) Establishment Of Cure Amounts In Connection Therewith; (3) Procedures And Deadlines Regarding Oppositions To Assumption And Assignment, And Cure Amounts; And (4) Hearing Thereon* (the "Assumption/Assignment Notice")[15] setting forth a schedule of all of the Debtors' known executory contracts and unexpired leases (the "Contracts and Leases Schedule"), along with the Debtors' belief as to all outstanding cure amounts owing by the Debtors to the other parties to those executory contracts and unexpired leases (the "Cure Amount").

By way of this Motion, the Debtors are seeking the Court's authority to assume and assign to the winning bidder/winning backup bidder all of the Debtors' executory contracts and unexpired leases that the winning bidder/winning backup bidder wants to have assigned to it and to fix the required Cure Amounts that would need to be paid to the other parties to the executory contracts and unexpired leases to enable compliance with the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule

---

[15] The form of the Assumption/Assignment Notice was previously approved by the Court.

unless the other parties to the executory contracts and unexpired leases file a timely objection to the Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule.  By way of this Motion, the Debtors are also seeking a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.

The Debtors submit that none of the other parties to the executory contracts and unexpired leases have suffered any  actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.  The Debtors therefore submit that any party that fails to file a timely objection to this Motion should be deemed to have consented to the Debtors' proposed Cure Amounts and pecuniary loss amounts and be forever barred from challenging the Debtors' proposed Cure Amounts and pecuniary loss amounts.

Pursuant to the Amended Bidding Procedures, an Initial Bid (due August 10, 2022) must identify all of the Debtors' executory contracts and unexpired leases with respect to which a Bidder seeks assignment from the Debtors, with the Winning Bidder having the right to amend such list at any time prior to the commencement of the hearing on this Motion.

Those executory contracts and unexpired leases that will not be assumed and assigned to the Winning Bidder (or the Winning Backup Bidder) at the closing of the sale, will be deemed rejected.  The Debtors propose to file a notice with the Court subsequent to the closing of a sale setting forth a list of those contracts and leases that have been deemed rejected.

**D.    The Debtors Request the Court to Waive the Fourteen-Day Waiting Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d).**

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use, sale or lease of property . . . is stayed until the expiration of fourteen days after entry of the Court order, unless the Court orders otherwise.  Bankruptcy Rule 6006(d) has a similar provision with

respect to an order approving of a debtor's assumption and assignment of unexpired leases and executory contracts.

For all of the reasons set forth above, the Debtors believe that selling the Purchased Assets in accordance with the timeline provided in the Amended Bidding Procedures Order is in the best interests of the Debtors' estates.  Closing the sale of the Purchased Assets as soon as possible will minimize the need for the Debtors to expend further cash for their business operations.  In order to facilitate the most expeditious closing possible, the Debtors request that the order granting this Motion be effective immediately upon entry by providing that the fourteen-day waiting periods of Bankruptcy Rule 6004(h) and 6006(d) are waived.

## IV. <u>CONCLUSION</u>

Based upon all of the foregoing, the Debtors respectfully requests that the Court enter an order granting this Motion in its entirety and all of the relief requested above in this Motion.

Dated:  July 28, 2022                          TRX HOLDCO, LLC
                                               FITNESS ANYWHERE LLC

                                               By:  _/s/ Krikor J. Meshefejian_
                                                    RON BENDER
                                                    KRIKOR J. MESHEFEJIAN
                                                    LINDSEY L. SMITH
                                                    LEVENE, NEALE, BENDER,
                                                    YOO & GOLUBCHIK L.L.P.
                                                    Attorneys for Chapter 11 Debtors and
                                                    Debtors in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (2) APPROVING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS, AND APPROVING REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED; (3) WAIVING THE 14-DAY STAY PERIODS OF BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) *July 28, 2022*, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com**
- **Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com**
- **Jonathan Gottlieb    jdg@lnbyg.com**
- **Michael J Hauser    michael.hauser@usdoj.gov**
- **Marsha A Houston    mhouston@reedsmith.com, hvalencia@reedsmith.com**
- **Ori Katz    okatz@sheppardmullin.com, lsegura@sheppardmullin.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **Ali M Mojdehi    amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com;amattingly@btlaw.com**
- **Jennifer L Nassiri    JNassiri@sheppardmullin.com, bdelacruz@sheppardmullin.com**
- **Paul J Pascuzzi    ppascuzzi@ffwplaw.com, docket@ffwplaw.com**
- **Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com**
- **Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) *July 28, 2022*, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) *July 28, 2022*, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 28, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

Fitness Anywhere LLC &
TRX Holdco
Secured, Committee (Fitness),
Top 20 (TRX), OUST, RSN

United States Trustee
Attn: Michael J. Hauser
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593

_Secured Creditor_
Woodforest National Bank
Attn: CMB Loan Operations
25231 Grogans Mill Road, 6th Floor
The Woodlands, TX 77380

_Secured Creditor_
Woodforest National Bank
Attn: David A. Macdonald
1330 Lake Robbins Drive, Suite 500
The Woodlands, TX 77380

_Counsel for Woodforest National Bank_
ReedSmith
Marsha Houston/Christopher Rivas
355 South Grand Avenue, Suite 2900
Los Angeles, CA, 90071

_Counsel for Woodforest National Bank_
ReedSmith
Marsha Houston/Christopher Rivas
355 South Grand Avenue, Suite 2900
Los Angeles, CA, 90071

_Counsel for Core Health & Fitness_
Ali M.M. Mojdehi
Barnes & Thornburg LLP
655 West Broadway, Suite 1300
San Diego, CA 92101

_Counsel for Creative Artists Agency_
Michael I. Gottfried, Esq.
Elkins Kalt Weintraub Reuben Gartside
LLP 10345 W. Olympic Blvd.
Los Angeles, CA 90064

_Committee_
Exemplar Design, LLC
Attention: Matt Nelson
4680 Parkway Drive, Suite 300
Mason, OH 45040

_Committee_
Core Health & Fitness, LLC
Attention:  Sy Mares
4400 NE 77th Avenue, Suite 250
Vancouver, WA 98662

_Committee_
United Parcel Service, Inc.
Attention: Farah C. Spainhour
55 Glenlake Parkway
Atlanta, GA 30328

_Counsel for TMA Worldwide, Inc._
Paul J. Pascuzzi
Felderstein Fitzgerald, et al.
500 Capitol Mall, Suite 2250
Sacramento, CA 95814

_Top 20_
Baker Tilly US, LLP
10 Terrace Court PO Box 7398
Madison, WI 53707-7398

_Top 20_
Cole Schotz P.C.
25 Main Street P.O. Box 800
Hackensack, NJ 07602

_Top 20_
Creative Artists Agency
Attn: Jeffrey Freedman
2000 Avenue of the Stars
Los Angeles, CA 90067

_Top 20_
JMBM LLP
1900 Avenue of the Stars
Los Angeles, CA 90067

_Top 20_
Morrison & Morrison
222 South Riverside Plaza
Suite 2730
Chicago, IL 60606

_Top 20_
Sterling Legal Solutions, Inc.
Attn: Stephanie Sterling
26895 Aliso Creek Rd., B-129
Aliso Viejo, CA 92656

_Top 20_
UDR-Eight 80
1590 Adams Avenue
PO Box 2350
Costa Mesa, CA 92628

_Top 20_
UDR-Eight 80
Agent for Service of Process
330 N. Brand Blvd., Suite 700
Glendale, CA 91203

_Top 20_
Sterling Legal Solutions, Inc.
Agent for Service of Process
720 14th Street
Sacramento, CA 95814

_Top 20_
SprintFWD, LLC
703 Pier Avenue
Suite B #632
Hermosa Beach CA 90254-0000

_Top 20_
Comma,8 LLC
703 Pier Avenue
Suite B #632
Hermosa Beach CA 90254-0000

_Top 20_
Jurgen Pauquet
1155 S. Grand Ave
Apt 1216
Los Angeles, CA 90015