1 RON BENDER (SBN 143364)
2 KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
3 LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
4 Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
5 Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

6
Attorneys for Chapter 11 Debtors and Debtors in Possession
7

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br>Chapter 11 Cases<br><br>**DEBTORS' STATUS REPORT DATED AUGUST 3, 2022; DECLARATION OF BRENT LEFFEL IN SUPPORT**<br><br>**Date:** August 17, 2022<br>**Time:** 1:30 p.m.<br>**Place: *Via ZoomGov**<br>　　　Courtroom 5C<br>　　　411 West Fourth Street<br>　　　Santa Ana, CA 92701 |

TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases[1], hereby file this Status Report Dated August 3, 2022 in connection with the Court's *Order (1) Setting Scheduling Heading And Case Management Conference And (2) Requiring Status Report* (the "Status Conference Order").

A.    **Brief Description of the Debtors and Overview of these Cases.**

The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company.  Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts.[2]    TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable, compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities.  TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations.  TRX also launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand video and daily live classes.

TRX enjoys a strong origin story (the first version of the Suspension Trainer™ was created in 1997 by Randy Hetrick, the founder of TRX), significant brand recognition and intellectual property protections around its flagship product Suspension Trainer™, which is distributed in over thirty (30) countries through commercial channels (gyms and vertical

---

[1] The Court previously entered an order approving the joint administration of these chapter 11 bankruptcy cases.

[2] Hold Co holds a preferential and controlling interest in Product Co.  Hold Co also wholly owns TRXperience, LLC ("Experience Co").  Experience Co has not filed a bankruptcy case.  Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

markets) and consumer markets (including through its direct-to-consumer platform www.TRXtraining.com in the United States and United Kingdom, Amazon, and other retailers).

From 2004 through 2013, Mr. Hetrick launched and commercialized TRX, building a loyal community of trainers and market penetration in gyms.  From 2014 to 2018, the TRX business matured after receiving a growth capital investment.  In late 2018, an investor group led by Equity 38, LLC acquired the business in a highly structured transaction which included a credit facility with Woodforest National Bank (the "Bank") alongside an equity investment and rollover investment from the previous investors, and, in 2019, various operational improvement initiatives were implemented to restructure the business.  By the end of 2019, the business required a capital infusion to reset its credit facility with the Bank and also secure operating capital to execute on a strategy which incorporated the pursuit of digital initiatives to broaden the company's revenue opportunities beyond sales of its flagship product.

In March 2020, Hold Co was formed and additional equity capital was invested by existing and new investors in a further recapitalization of TRX.  A portion of such proceeds were invested in Product Co to repay senior debt and provide working capital financing, and the balance remained at Hold Co to fund growth initiatives such as digital.  After giving effect to the March 2020 recapitalization, Hold Co held a preferential and controlling interest in Product Co, and also became a guarantor of the credit facility. Hold Co also owns 100% of the interests of Experience Co, an entity that was formed at the time of the recapitalization for purposes of housing TRX's digital platform services that were beginning to be developed and for its educational services and offerings through which TRX has qualified training professionals on suspension training/functional training techniques and programming.  While the different entities were established to allow for a segregation of the equity investment made in the recapitalization and to limit dilution to legacy shareholders, TRX has operated as one identifiable brand in the market, and through intercompany agreements, including a management services agreement between Hold Co and Product Co wherein Hold Co provides the services of executive management that oversee the entire TRX enterprise, it also effectively operates as a consolidated business.

In 2019, the Debtors generated approximately $51 million in revenue.  In 2020, the Debtors formulated a digital strategy with outside consultants while experiencing COVID-driven revenue growth, to approximately $85 million.  In 2021, the Debtors executed and invested in a number of initiatives focused on digital and marketing, hiring executives in key roles while building a significant inventory position and navigating through a rapidly changing macro environment, and generated approximately $62 million in sales.

The Debtors obtained Court approval of amended bidding procedures and are engaged in an asset sale process.  Initial indications of interest were due on July 27, 2022.  Initial bids are due on August 10, 2022.  An auction is scheduled for August 17, 2022.  A hearing for the Court to approve the sale is scheduled for August 18, 2022.

**B.** **Responses to the Court's Questions set forth in the Status Conference Order.**

1.    The events that led up to and caused the filing of these chapter 11 cases:

Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth.  There have been many reasons for this including competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did not occur in an unpredictable market, and higher than anticipated development costs associated with the Debtors' digital training platform and increased marketing expenses, partially attributable to general increases in paid advertising.  It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.[3]

---

[3] Product Co and the Bank are parties to a Credit Agreement, dated as of December 26, 2018, as amended, pursuant to which Product Co obtained from the Bank a term loan in the principal amount of $10,875,000, a term loan in the principal amount of $1,000,000, and revolving loans in the principal and outstanding amount of $7,500,000, for a total principal balance of $19,375,000, which are secured by substantially all assets of the Debtors, and which are guaranteed by Hold Co, Experience Co and Fitness Anywhere International, LLC.

Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction. The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

The Debtors believe that timing and macroeconomic considerations both played a role in the Debtors not consummating a pre-petition transaction. For example, while various parties expressed interest in a transaction with the Debtors, those who signed nondisclosure agreements and engaged in discussions with the Debtors did not ultimately proceed with engaging in a transaction. The Debtors also explored potential financing arrangements and received various expressions of interest.[4]

The Debtors' current financial situation is precarious in that the Debtors estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' goodwill. The Debtors believe that if there was a shutdown of their business with a resulting liquidation, it would be a disastrous result for creditors, including the Bank.[5]

Despite these challenges, the Debtors believes that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it

---

[4] It is possible that the Debtors will require debtor in possession financing if the Debtors' cash on hand and cash generated post-petition are not sufficient to meet all of the Debtors' operational needs during this chapter 11 case. Additionally, in order for the Debtors to purchase any significant inventory going forward, the Debtors will require additional funding.

[5] The Debtors are in discussions with the Bank regarding the Bank providing the Debtors with post-petition financing, which, if consummated, will be presented to the Court by way of a separate motion.

against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history. Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale process in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors' inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.[6]    The Debtors believe that proceeding in this manner will afford them with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest. The Debtors are optimistic that this free and clear asset sale process will result in a successful sale transaction closing. Given the high level of interest that has already been expressed by the buying community, the Debtors are hopeful that the sale will result in a purchase price sufficient to pay the Bank in full and provide for a distribution to the rest of the Debtors' creditors.

The Debtors' goal in these bankruptcy cases is to consummate a free and clear asset sale for the most money possible.

2.    Description of the status of the Debtors' post-petition operations and their major assets and liabilities:

The Debtors are operating their business in the ordinary course of business, pursuant to Court-approved cash collateral budgets, and are engaged in an intensive asset sale process. The Debtors' budgets approved by the Court are attached hereto as Exhibit 1. The Debtors' primary assets are comprised of accounts receivable in the approximate gross amount of $5.1 million as

---

[6] While the Debtors' Budgets reflect that the Debtors are projected to have sufficient cash during the term of the Budgets to fund the expenses in the Budgets, the Budgets do not include substantial additional purchases of inventory.

of the Petition Date, inventory with a cost basis of approximately $17.8 million as of the Petition Date, intellectual property and goodwill associated with the Debtors' well-regarded brand, and the Debtors' vast domestic and international customer base.

To support the financial needs of their growth and operations, on or about December 26, 2018, the Debtors (with Product Co as borrower and Hold Co ultimately as one of three guarantors[7]) obtained a senior secured credit facility revolving credit facility from the Bank, secured by substantially all of the Debtors' assets and property. The credit facility is evidenced by that certain "Credit Agreement Dated as of December 26, 2018" as amended from time to time, in the original principal amount of $20,000,000. Based on five amendments to the Credit Agreement, the credit facility is currently comprised of a term loan with a principal balance of $10,875,000, a term loan with a principal balance of $1,000,000, and revolving loans up to $8,000,000 with a principal balance of $7,500,000. As of the Petition Date, the total principal balance of the loans made by the Bank to the Debtors is approximately $19,375,000.

The Debtors also have a substantial amount of pre-petition unsecured debt.

3.    Description of the status of the Debtors' pre-petition and post-petition litigation:

The Debtors are not engaged in any post-petition litigation. Hold Co is not a party to any pre-petition litigation. Product Co is a party to certain pre-petition litigation, as set forth in Product Co's response to question number 7 of Product Co's Statement of Financial Affairs (Doc 129). All such pre-petition litigation is presently stayed by the automatic stay provisions of the Bankruptcy Code.

4.    Whether the estate has any potential avoidance actions:

The Debtors have been focused upon an intensive auction and sale process, which is expected to conclude in August 2022. A Committee of Unsecured Creditors (the "Committee") was formed in Product Co's case, and the Debtors expect to discuss with the Committee the

---

[7] The other two guarantors are Experience Co (a wholly owned subsidiary of Hold Co) and Fitness Anywhere International, LLC (a wholly owned subsidiary of Product Co). Hold Co and Experience Co became guarantors in connection with a recapitalization of TRX completed in 2020.

manner in which these cases will proceed post-sale.  The Debtors have not yet undertaken an analysis of avoidance actions but expect to coordinate with the Committee the analysis and commencement of any avoidance actions.

   5.    The Retention of Counsel in these Cases:

   The Debtors have employed Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") as their bankruptcy counsel.  The Court has entered an order approving LNBYG's employment in these cases.  The Debtor have also employed, and obtained Court approval of the employment of: (1) the Debtors' special corporate counsel (Law Office of Michael A. Zuercher, Inc.) and (2) the Debtors' special intellectual property counsel (Duane Morris LLP). The Committee has filed an application to employ Sheppard, Mullin, Richter, & Hampton LLP as its bankruptcy counsel, which application is pending.

   6.    The Retention of Other Professionals in these Cases:

   The Debtors have employed, and obtained Court approval of the employment of: (1) Kroll, LLC as the Debtors' financial advisor, (2) Kroll Securities, LLC as the Debtors' investment banker and (3) Baker Tilly US, LLP as the Debtors' accountant.   Product Co anticipates seeking Court approval of the employment of Cooper Savas LLC as accountant for the specific purpose of auditing the financial statements of Product Co's 401(k) plan, which will allow Product Co to comply with its annual reporting obligation under the Employee Retirement Income Security Act of 1974 (ERISA).

   7.    Compliance with the Debtors' Duties and all Applicable Guidelines of the United
         States Trustee.

   The Debtors believe that they are in compliance with their duties and obligations.  The Debtors have submitted their seven-day administrative compliance packages to the Unites States Trustee.  The Debtors attended their initial debtor interview.  The Debtors timely filed their Schedules of Assets and Liabilities and Statements of Financial Affairs and other required reports.  The Debtor attended the concluded their section 341(a) meetings of creditors.  The Debtors are coordinating with Woodforest National Bank the establishment and usage of the cash management system set forth in the Debtors' cash management motion which was approved

by the Court.  The Debtors are proceeding toward an auction and sale of substantially all of their assets as set forth in the Debtors' sale motion filed as Docket No. 205.

8.    <u>Whether these are Small Business Cases</u>.

These cases are not small business cases.

9.    <u>Whether these Cases are Single Asset Real Estate Cases</u>:

These cases are not single asset real estate cases.

10.    <u>Whether the Court should establish a Deadline for filing and serving a Disclosure Statement and Plan of Reorganization</u>:

The Debtors do not believe that the Court should establish a deadline for filing and serving a disclosure statement and plan of reorganization at this time, prior to completion of the auction and sale process and the closing of a sale.

11.    <u>Proposed deadline for filings proofs of claim</u>:

The Debtors propose that the Court establish a deadline of October 7, 2022 for filing proofs of claim in these cases.

12.    <u>Whether the Court should set a Deadline for Filing Objections to Claims</u>:

The Debtors submit that it is premature to set a claim objection deadline and that such a deadline should not be set prior to learning the total extent of filed claims in these cases.

13.    <u>Whether the Court should set a Deadline for Filing any Avoidance Actions</u>:

The Debtors submit that it is premature to set such a deadline at this time.

Dated:  August 3, 2022

TRX HOLDCO, LLC
FITNESS ANYWHERE LLC

By:    <u>/s/ Krikor J. Meshefejian</u>
        RON BENDER
        KRIKOR J. MESHEFEJIAN
        LINDSEY L. SMITH
        LEVENE, NEALE, BENDER,
        YOO & GOLUBCHIK L.L.P.
        Attorneys for Chapter 11 Debtors and
        Debtors in Possession

## DECLARATION OF BRENT LEFFEL

I, Brent Leffel, hereby declare under penalty of perjury as follows:

1.      I am the Chairman of the Board of Managers of TRX Holdco, LLC ("Hold Co") and the Chairman of the Board of Managers of Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases.  I am also the co-manager of Equity 38, LLC which is the manager of Equity 38 Investment Platform I, LLC. Equity 38 Investment Platform I, LLC is the manager of E38-TRX, LLC and E38-TRX Holdco Investments, LLC which collectively own and control Hold Co.

2.      Hold Co holds a preferential and controlling interest in Product Co.  Hold Co also wholly owns TRXperience, LLC ("Experience Co").  Experience Co has not filed a bankruptcy case.  Product Co wholly owns Fitness Anywhere International LLC (100% by Product Co) and Fitness Anywhere Europe Cooperatief U.A. Netherlands (99% by Product Co and 1% by Fitness Anywhere International LLC), none of which have filed a bankruptcy case.

3.      I served as the Co-Chairman of Product Co from approximately December 2018 through October 2020, after which I became the sole Chairman of Product Co.  I have been the Chairman of Hold Co since Hold Co's formation in approximately March 2020.  I also served as Chief Executive Officer from approximately April 2021 through the end of January 2022.

4.      In my capacity as Chairman, I am involved with policy and strategic decisions on behalf of the Debtors.  The Chief Executive Officer of the Debtors reports to me and he implements the directives and policies of the Debtors as established by the Debtors' respective Board of Managers (which I chair).  I have personal knowledge of the facts set forth in this Declaration and if called as a witness, could and would testify competently with respect thereof.

5.      The Debtors and their respective subsidiaries (collectively referred to herein as "TRX") comprise a world leading functional fitness company.  Since being founded in 2004, TRX has evolved into a digitally-enabled, vertically integrated, omni-channel fitness lifestyle brand with global reach powered by a large community of consumer and trainer enthusiasts. TRX's flagship and patented product - Suspension Trainer™ - is a highly versatile, portable,

compact and affordable fitness and training device/workout tool with broad reach across demographic groups and fitness levels, which can be utilized effectively across fitness modalities. TRX offers a full line of functional training tools and accessories to complement the Suspension Trainer™ to serve all types of functional needs, from at-home essentials to complete gym installations. TRX also launched in 2021 a purpose-built digital subscription-based platform - the TRX Training Club® - that offers a library of on-demand videos and daily live classes. Additional information regarding TRX's origin story and history are included in my June 8, 2022 Declaration.

6.     Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations has been insufficient to support their current business operations as well as their continued growth. There have been many reasons for this including competition, macroeconomic conditions, purchases of inventory in anticipation of demand that did not occur in an unpredictable market, and higher than anticipated development costs associated with the Debtors' digital training platform and increased marketing expenses, partially attributable to general increases in paid advertising. It became apparent in late 2021 that the Debtors would require additional cash and investment to fund the Debtors' long-term operations and growth, and satisfy the Debtors' secured debt obligations owed to the Bank of more than $19 million.

7.     Pre-petition, the Debtors hired Kroll Securities, LLC ("Kroll") and Integrity Square LLC to, among other things, identify prospective investors and seek to obtain additional investments in the Debtors' business to further capitalize the Debtors and meet the Debtors' operational and growth needs, or engage in a sale transaction. The Debtors' pre-petition efforts to raise capital to pay down debt or engage in a strategic merger/acquisition with/by a buyer or investor did not result in a consummated transaction.

8.     Timing and macroeconomic considerations both played a role in the Debtors not consummating a pre-petition transaction. For example, while various parties expressed interest in a transaction with the Debtors, those who signed nondisclosure agreements and engaged in discussions with the Debtors did not ultimately proceed with engaging in a transaction. The

Debtors also explored potential financing arrangements and received various expressions of interest.

9.    The Debtors' current financial situation is precarious in that we estimate that unless they can consummate a transaction or obtain additional financing, the Debtors will not have sufficient liquidity to replenish inventory, impairing future customer sales and thereafter negatively impacting the Debtors' good will.  I believe that if there was a shutdown of the Debtors' business with a resulting liquidation, it would be a disastrous result for creditors, including the Bank.

10.    Despite these challenges, I believe that (i) the TRX brand is well-regarded and its products and services have significant demand; (ii) TRX has a compelling business model with significant growth opportunities; (iii) TRX is well-positioned to capitalize on growth in the fitness industry; and (iv) the Debtors' business is extremely valuable especially when considering its substantial intellectual property portfolio that enables the Debtors to protect it against imitators of its famous Suspension Trainer™ product and the significant goodwill it has amassed with its consumers and qualified TRX trainers throughout its history.  Moreover, the pre-petition marketing process undertaken by Kroll and Integrity Square was designed to result in a recapitalization of the Debtors' business and was not marketed as a distressed free and clear asset sale.

11.    Based on the foregoing, the Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to conduct an expedited free and clear asset sale in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtors inventory falls below required operational levels and the Debtors run out of sufficient liquidity to sustain operations.  I believe that proceeding in this manner will afford the Debtors with the best opportunity to achieve the maximum price possible for their assets for the benefit of their creditors and other parties in interest.

12.    The Debtors goal in these bankruptcy cases is to consummate a free and clear asset sale for the most money possible.  The Debtors are selling all of their right, title and interest

in and to all of the assets of Debtors used in connection with their business free and clear of all liens, claims and interests pursuant to Section 363 of the Bankruptcy Code.

13.    The Debtors obtained Court approval of amended bidding procedures and are engaged in an asset sale process.  Initial indications of interest were due on July 27, 2022.  Initial bids are due on August 10, 2022.  An auction is scheduled for August 17, 2022.  A hearing for the Court to approve the sale is scheduled for August 18, 2022.

14.    The Debtors are operating their business in the ordinary course of business, pursuant to Court-approved cash collateral budgets, and are engaged in an intensive asset sale process.  The Debtors' budgets approved by the Court are attached hereto as Exhibit 1.  The Debtors' primary assets are comprised of accounts receivable in the approximate gross amount of $5.1 million as of the Petition Date, inventory with a cost basis of approximately $17.8 million as of the Petition Date, intellectual property and goodwill associated with the Debtors' well-regarded brand, and the Debtors' vast domestic and international customer base.

15.    To support the financial needs of their growth and operations, on or about December 26, 2018, the Debtors (with Product Co as borrower and Hold Co ultimately as one of three guarantors[8]) obtained a senior secured credit facility revolving credit facility from the Bank, secured by substantially all of the Debtors' assets and property.  The credit facility is evidenced by that certain "Credit Agreement Dated as of December 26, 2018" as amended from time to time, in the original principal amount of $20,000,000.  Based on five amendments to the Credit Agreement, the credit facility is currently comprised of a term loan with a principal balance of $10,875,000, a term loan with a principal balance of $1,000,000, and revolving loans up to $8,000,000 with a principal balance of $7,500,000. As of the Petition Date, the total principal balance of the loans made by the Bank to the Debtors is approximately $19,375,000.

16.    The Debtors also have a substantial amount of pre-petition unsecured debt.

---

[8] The other two guarantors are Experience Co (a wholly owned subsidiary of Hold Co) and Fitness Anywhere International, LLC (a wholly owned subsidiary of Product Co).  Hold Co and Experience Co became guarantors in connection with a recapitalization of TRX completed in 2020.

17.    The Debtors are not engaged in any post-petition litigation.  Hold Co is not a party to any pre-petition litigation.  Product Co is a party to certain pre-petition litigation, as set forth in Product Co's response to question number 7 of Product Co's Statement of Financial Affairs (Doc 129).  All such pre-petition litigation is presently stayed by the automatic stay provisions of the Bankruptcy Code.

18.    The Debtors have been focused upon an intensive auction and sale process, which is expected to conclude in August 2022.  A Committee of Unsecured Creditors (the "Committee") was formed in Product Co's case, and the Debtors expect to discuss with the Committee the manner in which these cases will proceed post-sale.  The Debtors have not yet undertaken an analysis of avoidance actions but expect to coordinate with the Committee the analysis and commencement of any avoidance actions.

19.    The Debtors have employed Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") as their bankruptcy counsel.  The Court has entered an order approving LNBYG's employment in these cases.  The Debtor have also employed, and obtained Court approval of the employment of: (1) the Debtors' special corporate counsel (Law Office of Michael A. Zuercher, Inc.) and (2) the Debtors' special intellectual property counsel (Duane Morris LLP). The Committee has filed an application to employ Sheppard, Mullin, Richter, & Hampton LLP as its bankruptcy counsel, which application is pending.

20.    The Debtors have employed, and obtained Court approval of the employment of: (1) Kroll, LLC as the Debtors' financial advisor, (2) Kroll Securities, LLC as the Debtors' investment banker and (3) Baker Tilly US, LLP as the Debtors' accountant.  Product Co anticipates seeking Court approval of the employment of Cooper Savas LLC as accountant for the specific purpose of auditing the financial statements of Product Co's 401(k) plan, which will allow Product Co to comply with its annual reporting obligation under the Employee Retirement Income Security Act of 1974 (ERISA).

21.    The Debtors believe that they are in compliance with their duties and obligations. The Debtors have submitted their seven-day administrative compliance packages to the Unites States Trustee.  The Debtors attended their initial debtor interview.  The Debtors timely filed

their Schedules of Assets and Liabilities and Statements of Financial Affairs and other required reports.  The Debtor attended the concluded their section 341(a) meetings of creditors.  The Debtors are coordinating with Woodforest National Bank the establishment and usage of the cash management system set forth in the Debtors' cash management motion which was approved by the Court.  The Debtors are proceeding toward an auction and sale of substantially all of their assets as set forth in the Debtors' sale motion filed as Docket No. 205.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 3rd day of August, 2022, at Newport Beach, California.

_____

BRENT LEFFEL

# EXHIBIT "1"

1  RON BENDER (SBN 143364)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LINDSEY L. SMITH (SBN 265401)
3  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
4  Los Angeles, California 90034
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
5  Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

6
   Proposed Attorneys for Chapter 11 Debtors
7  and Debtors in Possession

8           **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
9                 **SANTA ANA DIVISION**

10  In re:                                      Lead Case No.: 8:22-bk-10948-SC

11  TRX HOLDCO, LLC, a Delaware limited         Jointly administered with:
    liability company,                          8:22-bk-10949-SC
12
                                                Chapter 11 Cases
13          Debtor and Debtor in Possession.
    _____   **ORDER GRANTING, ON AN**
14  In re:                                      **INTERIM BASIS, DEBTORS'**
                                                **EMERGENCY MOTION FOR ENTRY**
15  FITNESS ANYWHERE LLC, a Delaware            **OF AN ORDER AUTHORIZING THE**
    limited liability company, dba TRX and TRX  **DEBTORS TO USE CASH**
16  Training,                                   **COLLATERAL PURSUANT TO 11**
                                                **U.S.C. §§ 361, 362 AND 363 AND**
17          Debtor and Debtor in Possession.    **GRANTING ADEQUATE**
    _____   **PROTECTION AND RELATED**
18                                              **RELIEF**
19
20  ☒ Affects both Debtors                      DATE:   June 10, 2022
                                                TIME:   10:00 a.m.
21  ☐ Affects TRX Holdco, LLC only              PLACE:  *Via ZoomGov
                                                        Courtroom 5C
22  ☐ Affects Fitness Anywhere, LLC only                411 West Fourth Street
                                                        Santa Ana, CA 92701
23

24

25

26

27

28

                                    1

On June 10, 2022, at 10:00 a.m. (Pacific Time) (the "Interim Hearing"), a hearing was held for the Court to consider approval of the motion ("Motion") (Doc 7), filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and, together with Hold Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered, Chapter 11 bankruptcy cases, for the entry of an interim order:

(1)     authorizing the Debtors' to use cash collateral, as such term is defined in 11 U.S.C. § 363(a): (a) to pay quarterly fees to the United States Trustee and any required court costs; (b) to pay, in the ordinary course of business, certain of the expenses set forth in the Debtors' respective thirteen (13) week cash flow forecasts and cash collateral budgets setting forth all projected cash receipts and cash disbursements and the projected impacts on accounts receivables and inventory following the Petition Date (each, a "Budget", and together, the "Budgets"), attached as **Exhibits 2, 3 and 4** to the Declaration of James S. Feltman (Doc 9) filed in support of the Motion; (c) to purchase inventory as needed to ensure that the Debtors do not suffer immediate and irreparable harm; and (d) in accordance with the terms and conditions set forth in the Motion;

(2)     granting adequate protection to Woodforest National Bank (the "Bank") on account of the Bank's interest in the Debtors' cash collateral, on account of the Debtors' use of cash collateral as defined in 11 U.S.C. § 363(a), in the form of (a) a replacement lien against the Debtors' post-petition assets (excluding any avoidance causes of action), to the extent of any post-petition diminution in the value of the Bank's collateral as a result of the Debtors' post-petition use of cash collateral; and (b) a super priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any post-petition diminution in the value of the Bank's prepetition collateral as a result of the Debtors' post-petition use of cash collateral;

(3)     the scheduling of a final hearing (the "Final Hearing") on the Motion to consider entry of a final order granting the relief requested in the Motion on a final basis; and

(4)     waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order.

Appearances were as stated on the Court's record.

The Court, having read and considered the Motion, the Feltman Declaration, the Declaration of Brent Leffel (Doc 8) filed in support of the Motion, the Declaration of Krikor J. Meshefejian filed in support of the Motion (Doc 10), the Declaration of Joshua Benn filed in support of the Motion (Doc 12), and all other pleadings and papers filed in support of the Motion; the limited objection filed by the Bank (Doc 28); notice of the Interim Hearing on the Motion having been given in accordance with all applicable rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors' bankruptcy estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors' bankruptcy estates and is essential for the Debtors' ability to continue to operate and preserve the value of their respective assets; and after due deliberation and consideration, and good and sufficient cause appearing, hereby orders as follows:

1.      The Motion is granted on an interim basis for the period set forth in the Debtors' Budgets through June 30, 2022.

2.      The Debtors are authorized to use their cash collateral on an interim basis in order to: (a) pay quarterly fees to the United States Trustee and any required Court costs; (b) pay, in the ordinary course of business, the expenses set forth in the Debtors' Budgets through June 30, 2022; and (c) pay up to $300,000 for the purchase of new inventory.  The Debtors may not pay any professional fees or expenses absent a further order of the Court.  Notwithstanding the foregoing, the Debtors may only pay the major expenses provided for during the fourth week of the Budgets (i.e., the week starting with June 27, 2022) with the prior written approval of the Bank or further order of the Court.

3.      Subject to the last sentence of this paragraph, the Debtors are authorized to deviate from the Budgets, without the need for any further Court order, by up to 15% by line item and 15% in the aggregate (meaning the Debtors have the authority to deviate by more than 15% per any particular line items provided they don't exceed 15% in the aggregate) without the

need for any further Court order, and the Debtors are authorized to deviate further from the Budgets without the need for any further Court order provided the Debtors obtain the prior written consent of the Bank, provided further that the Debtors shall provide the Bank with no less than five (5) business days' notice of any request for additional variance.  In the event of an unforeseen urgency which requires shorter notice than provided herein, the Debtors shall provide such shorter notice to the Bank with a requested turnaround time and a brief explanation of the nature of the unforeseen urgency, and both parties shall work together in good faith to address such issues.  In addition to the foregoing deviations, the Debtors have the authority to increase their budgeted expense amounts to pay for any proportional increase in post-petition commissions owing as a result of any increase in sales beyond the projected sales amounts, e.g., AMZN commissions (meaning the more the Debtors sell the higher their commissions will be). Notwithstanding the foregoing, the Debtors may not spend more than $300,000 for the purchase of new inventory during the period covered by this Interim Order without the prior consent of the Bank or order of the Court.

4.    The Debtors will continue to provide the Bank with financial reporting on not less than a weekly basis in the same format as the Debtors were providing the Bank pre-petition, and the Debtors and the Bank will work in good faith in an effort to accommodate the Bank's request for any additional or different financial reporting.  By Wednesday of each week, the Debtors will provide the Bank with a variance report that compares the Debtors' financial performance for the prior week compared to the Debtors' projected performance for the prior week.  The reporting format for the variance reports will be the in the same format as summarized in the Budgets.

5.    The Bank is hereby granted, on account of the Bank's interest in the Debtors' cash collateral, on account of the Debtors' post-petition use of cash collateral, adequate protection in the form of (a) a replacement lien against the Debtors' post-petition assets (excluding any avoidance causes of action), to the extent of any post-petition diminution in the value of the Bank's collateral as a result of the Debtors' post-petition use of cash collateral; and (b) a super priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any post-petition diminution in the value of the Bank's prepetition collateral as a

result of the Debtors' post-petition use of cash collateral.  All replacement liens granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest; provided, however, that upon request of the Bank, the Debtors shall execute such security and perfection documentation as may be reasonably required to create or perfect such liens under applicable non-bankruptcy law.   For the avoidance of doubt, the Bank shall not be required to seek relief from the automatic stay to create or perfect such liens.

6.     Nothing herein shall constitute a waiver, release or modification of the rights of the Bank to assert a claim under §§ 364(c) or 507(b).

7.     This Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates.

8.     Nothing contained in this Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank or the Debtors under the Loan Documents (subject to applicable bankruptcy law and the imposition of the automatic stay), or the Bankruptcy Code, and nothing contained in this Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank to seek additional or different adequate protection of its interests under the Loan Documents, to take any other action in this bankruptcy case, including, but not limited to, seeking relief from the automatic stay or dismissal or conversion of this case at any time, all without prejudice to the rights of the Debtors or any other party in interest to oppose any such relief sought or requested by the Bank.

9.     A Final Hearing on the Motion shall be held on June 30, 2022, at 10:00 a.m.

10.     The Debtors shall provide notice of the Final Hearing on all creditors entitled to such notice by no later than June 10, 2022.

11.     The Debtors shall file any desired supplement to the Motion, including any proposed modifications to the Budgets, by no later than June 15, 2022.

12.     Any opposition to entry of an order granting the Motion on a final basis shall be filed and served on proposed counsel to the Debtors by no later than June 28, 2022.

13.     Any reply to an opposition may be asserted orally at the Final Hearing.

14.     This Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

15.     This Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral prior to the Final Hearing, and is without prejudice to the rights of any other party in interest, including the Bank, to oppose any such request of the Debtors.

# # #

Date: June 10, 2022

Scott C. Clarkson
United States Bankruptcy Judge

6

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

**FILED & ENTERED**

**JUL 05 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>       Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>☒  Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**SECOND INTERIM ORDER AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND GRANTING ADEQUATE PROTECTION AND RELATED RELIEF**<br><br>DATE:      June 30, 2022<br>TIME:      10:00 a.m.<br>PLACE:    *Via ZoomGov<br>            Courtroom 5C<br>            411 West Fourth Street<br>            Santa Ana, CA 92701 |

At a hearing held on June 10, 2022, at 10:00 a.m. (Pacific Time) (the "Interim Hearing"), the Court granted the emergency motion (the "Motion") (Doc 7), filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC,  dba TRX and TRX Training ("Product Co" and, together with Hold Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered, Chapter 11 bankruptcy cases, for the entry of an interim order that, among other things:

(1)     authorized the Debtors to use cash collateral for the purposes set forth in the Motion; and

(2)     granted adequate protection to secured creditor Woodforest National Bank (the "Bank").

With the Bank's consent, the Court entered an interim order (the "Interim Order") granting the Motion on an interim basis, as modified by the Interim Order (Doc 38), and the Court scheduled a further hearing on the Motion to be held on June 30, 2022, at 10:00 a.m. (the "Second Interim Hearing").

On June 17, 2022 (Doc 75), the Debtors filed a supplement to the Motion (the "Supplement") to which the Debtors attached revised proposed budgets as Exhibit "1" to the Supplement (the "Updated Budgets").    On June 29, 2022 (Doc 102), the Bank filed a limited objection to the Supplement (the "Bank Objection").  On June 30, 2022 (Doc 104), the Official Committee of Unsecured Creditors filed a limited objection to the Supplement (the "Committee Objection").

Appearances were made at the Interim Hearing as stated on the Court's record.

The Court, having read and considered the Motion and the Supplement and all of the pleadings filed by the Debtors in support of the Motion and the Supplement, and all pleadings filed by the Bank in response to the Motion and the Bank Objection; the Committee Objection;

notice of the Second Interim Hearing having been given in accordance with all applicable rules; and the Second Interim Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion as modified by the Supplement having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the Motion as modified by the Supplement is in the best interests of the Debtors' bankruptcy estates; and after due deliberation and consideration, and good and sufficient cause appearing, hereby orders as follows:

1.      The Motion, as supplemented by the Supplement, is granted on a further interim basis for the period set forth in and in accordance with the Debtors' Budgets, attached hereto as Exhibit "1" (the "Updated Budgets"), through the week ending July 10, 2022 (the "Outside Date").

2.      The Debtors are authorized to use their cash collateral on an interim basis through the Outside Date in order to: (a) pay quarterly fees to the United States Trustee and any required Court costs; (b) pay, in the ordinary course of business, the expenses set forth in the Updated Budgets; and (c) pay up to $304,000 for the purchase of new inventory, which figure is inclusive of the $300,000 inventory figure contained in the Interim Order.  The Debtors may not pay any professional fees or expenses that are not otherwise provided for in previously approved insider compensation forms absent a further order of the Court, including any order of the Court granting a professional employment application that authorizes any such payments.

3.      Subject to the last sentence of this paragraph, the Debtors are authorized to deviate from the Updated Budgets, without the need for any further Court order, by up to 15% by line item and 15% in the aggregate (meaning the Debtors have the authority to deviate by more than 15% per any particular line items provided they don't exceed 15% in the aggregate) without the need for any further Court order, and the Debtors are authorized to deviate further from the

Updated Budgets without the need for any further Court order, including for the purchase of additional new inventory, provided the Debtors obtain the prior written consent of the Bank, provided further that the Debtors shall provide the Bank with no less than five (5) business days' notice of any request for additional variance.  In the event of an unforeseen urgency which requires shorter notice than provided herein, the Debtors shall provide such shorter notice to the Bank with a requested turnaround time and a brief explanation of the nature of the unforeseen urgency, and both parties shall work together in good faith to address such issues.  In addition to the foregoing deviations, the Debtors have the authority to increase their budgeted expense amounts to pay for any proportional increase in post-petition commissions owing as a result of any increase in sales beyond the projected sales amounts, e.g., AMZN commissions (meaning the more the Debtors sell the higher their commissions will be).  Notwithstanding the foregoing, the Debtors may not spend more than $304,000 (inclusive of the $300,000 inventory figure contained in the Interim Order) through the Outside Date for the purchase of additional new inventory without the prior consent of the Bank or order of the Court.

4.    The Debtors will continue to provide the Bank with financial reporting on not less than a weekly basis in the same format as the Debtors were providing the Bank pre-petition, and the Debtors and the Bank will work in good faith in an effort to accommodate the Bank's request for any additional or different financial reporting.  By Wednesday of each week, the Debtors will provide the Bank with a variance report that compares the Debtors' financial performance for the prior week compared to the Debtors' projected performance for the prior week.  The reporting format for the variance reports will be the in the same format as summarized in the Updated Budgets.

5.    The Bank is hereby granted, on account of the Bank's interest in the Debtors' cash collateral, on account of the Debtors' post-petition use of cash collateral, adequate

4

protection in the form of (a) a replacement lien against the Debtors' post-petition assets (excluding any avoidance causes of action), to the extent of any post-petition diminution in the value of the Bank's collateral as a result of the Debtors' post-petition use of cash collateral; and (b) a super priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any post-petition diminution in the value of the Bank's prepetition collateral as a result of the Debtors' post-petition use of cash collateral.  All replacement liens granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest; provided, however, that upon request of the Bank, the Debtors shall execute such security and perfection documentation as may be reasonably required to create or perfect such liens under applicable non-bankruptcy law.   For the avoidance of doubt, the Bank shall not be required to seek relief from the automatic stay to create or perfect such liens.

6.      Nothing herein shall constitute a waiver, release or modification of the rights of the Bank to assert a claim under §§ 364(c) or 507(b).

7.      This Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates.

8.      Nothing contained in this Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank or the Debtors under the Loan Documents (subject to applicable bankruptcy law and the imposition of the automatic stay), or the Bankruptcy Code, and nothing contained in this Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank to seek additional or different adequate protection of its interests under the Loan Documents, to take any other action in these bankruptcy cases, including, but not limited to, seeking relief from the automatic stay or dismissal or conversion of this case at any

time, all without prejudice to the rights of the Debtors or any other party in interest to oppose any such relief sought or requested by the Bank.

9.      As a result of the foregoing carve out amounts, all surcharge rights in favor of the Debtors and their professionals are permanently waived.

10.     A further cash collateral hearing will be held on July 7, 2022, at 9:30 a.m.

11.     The Debtors are not required to provide any further notice of the further cash collateral hearing.

12.     The Debtors shall file any desired supplement to the Motion and any further revised proposed budgets by no later than July 5, 2022.

13.     Any opposition to any such revised proposed budgets or to the Debtors' continued use of cash collateral must be filed and served on proposed counsel to the Debtors by no later than July 6, 2022.

14.     Any reply to an opposition may be asserted orally at the Final Hearing.

15.     This Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

16.     This Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral at a subsequent Court hearing, and is without prejudice to the rights of any other party in interest, including the Bank, to oppose any such request of the Debtors.

#

Date: July 5, 2022

Scott C. Clarkson
United States Bankruptcy Judge

6

# EXHIBIT "1"

**Fitness Anywhere, LLC (known as "ProductCo") & TRX HoldCo, LLC (known as "HoldCo")**
Debtors Cash Collateral Budget
As of June 30, 2022

*$USD*

| | Week 1 | Week 2 | Current |
|---|---|---|---|
| **Week -->** | | | **Rolling 2** |
| **From -->** | 6/27/2022 | 7/4/2022 | **Weeks** |
| **Week-Ending -->** | 7/3/2022 | 7/10/2022 | |
| **CONSOLIDATED** | | | |
| **Beginning TOTAL Cash Balance** | $ 1,460,732 | $ 1,232,160 | $ 1,460,732 |
| | | | |
| Ecommerce NA & UK - ProductCo | $ 108,835 | $ 108,835 | $ 217,670 |
| Amazon FBA International - ProductCo | - | 24,989 | 24,989 |
| Amazon FBA NA - ProductCo | 436,970 | - | 436,970 |
| Transfers from Non-Debtor Affiliate (Japan) | - | | |
| Accounts Receivables Collections - ProductCo | 479,037 | 526,556 | 1,005,593 |
| Education/CORE - ExperienceCo | 50,000 | 50,000 | 100,000 |
| Apple Subscriptions - ExperienceCo | 40,000 | - | 40,000 |
| Management Payroll - InterCo Transfer from ProductCo | 91,464 | - | 91,464 |
| Other | 10,295 | - | 10,295 |
| **TOTAL SOURCES** | **$ 1,216,602** | **$ 710,381** | **$ 1,926,982** |
| | | | |
| Payroll, Payroll Tax & Benefits | $ - | $ 270,000 | $ 270,000 |
| Commission | 30,000 | - | 30,000 |
| Inventory Purchases | - | 304,000 | 304,000 |
| Contractors | 158,470 | 58,000 | 216,470 |
| Key Consultants | 21,389 | - | 21,389 |
| Rent | 61,287 | - | 61,287 |
| Marketing | 657,680 | 17,500 | 675,180 |
| Insurance | 31,642 | 16,068 | 47,710 |
| Logistics | 125,899 | 125,899 | 251,797 |
| Professionals | 56,851 | 50,000 | 106,851 |
| Technology | 24,283 | 90,000 | 114,283 |
| Utilities | 508 | - | 508 |
| Payments to UK Affiliate[1] | 30,000 | - | 30,000 |
| Sales Tax | - | 100,000 | 100,000 |
| Other Expenses, Vendors | 85,000 | 75,000 | 160,000 |
| Growth Initiative | 31,450 | - | 31,450 |
| Miscellaneous, Other | 12,500 | 12,500 | 25,000 |
| Management Payroll - Transfer to HoldCo | 91,464 | - | 91,464 |
| Cross-Border Vendors | 26,750 | 16,750 | 43,500 |
| BK Professional Fees[2] | - | - | - |
| US Trustee Fees | - | - | - |
| **TOTAL DISBURSEMENTS** | **$ 1,445,173** | **$ 1,135,717** | **$ 2,580,890** |
| | | | |
| *Net Cash* | $ (228,572) | $ (425,336) | $ (653,908) |
| **TOTAL - CASH ROLLFORWARD** | | | |
| Beginning TOTAL Cash Balance | $ 1,460,732 | $ 1,232,160 | $ 1,460,732 |
| (+) Total Receipts | 1,216,602 | 710,381 | 1,926,982 |
| (-) Total Disbursements | (1,445,173) | (1,135,717) | (2,580,890) |
| **Ending TOTAL Cash Balance** | **$ 1,232,160** | **$ 806,824** | **$ 806,824** |
| | | | |
| ***Inventory Rollforward*** | | | |
| Beginning Inventory | $ 17,561,604 | $ 16,991,278 | $ 17,561,604 |
| (+) Purchases (Value, not disbursements) | - | 1,281,498 | 1,281,498 |
| (-) Cost of Goods | (570,326) | (319,845) | (890,172) |
| = Ending Inventory | $ 16,991,278 | $ 17,952,931 | $ 17,952,931 |
| | | | |
| ***Accounts Receivable Rollforward*** [3] | | | |
| Beginning AR | $ 4,594,863 | $ 4,642,043 | $ 4,594,863 |
| (+) Sales (Domestic Commercial, Retail, Government, Intl. Dist.) | 526,218 | 525,877 | 1,052,095 |
| (-) Collections (Domestic Commercial, Retail, Government, Intl. Dist.) | (479,037) | (526,556) | (1,005,593) |
| = Ending AR | $ 4,642,043 | $ 4,641,364 | $ 4,641,364 |

**Notes**
(1) Current payroll and current VAT / other taxes. There is approximately an additional 80,000 GBP outstanding related to VAT.
(2) There are no bankruptcy professional payments in this forecast.
(3) The AR Rollforward does not include sales and collections activity relating to Ecommerce and Amazon. Ecommerce and Amazon revenue and collections are recorded contemporaneously.
- This budget does not reflect the proceeds or use of any DIP financing nor carve-outs arising thereof.
- Information has been sourced from management and the Company's books and records. This information has not been audited or independently verified.

**Fitness Anywhere, LLC (known as "ProductCo") & TRX HoldCo, LLC (known as "HoldCo")**
Debtors Cash Collateral Budget
As of June 30, 2022

*$USD*

| Week --> | Week 1 | Week 2 | Current Rolling 2 Weeks |
|---|---|---|---|
| From --> | 6/27/2022 | 7/4/2022 | |
| Week-Ending --> | 7/3/2022 | 7/10/2022 | |

**PRODUCTCO**

**Beginning ProductCo Cash Balance** | $ 1,432,402 | $ 1,096,316 | $ 1,432,402

| | | | |
|---|---|---|---|
| Ecommerce NA & UK | $ 108,835 | $ 108,835 | $ 217,670 |
| Amazon FBA International | - | 24,989 | 24,989 |
| Amazon FBA NA | 436,970 | - | 436,970 |
| Transfers from Non-Debtor Affiliate (Japan) | - | - | - |
| Accounts Receivables Collections | 479,037 | 526,556 | 1,005,593 |
| Other - ProductCo | 10,295 | - | 10,295 |
| **TOTAL PRODUCTCO SOURCES** | **$ 1,035,137** | **$ 660,381** | **$ 1,695,518** |
| Payroll, Payroll Tax & Benefits - ProductCo | $ - | $ 180,000 | $ 180,000 |
| Commission - ProductCo | 30,000 | - | 30,000 |
| Inventory Purchases - ProductCo | - | 304,000 | 304,000 |
| Contractors - ProductCo | 144,970 | 44,500 | 189,470 |
| Key Consultants - ProductCo | 8,889 | - | 8,889 |
| Rent - ProductCo | 58,287 | - | 58,287 |
| Marketing - ProductCo | 657,680 | - | 657,680 |
| Insurance - ProductCo | 31,642 | 16,068 | 47,710 |
| Logistics - ProductCo | 125,899 | 125,899 | 251,797 |
| Professionals - ProductCo | 56,851 | 50,000 | 106,851 |
| Technology - ProductCo | 23,283 | 90,000 | 113,283 |
| Utilities - ProductCo | 508 | - | 508 |
| Other Expenses, Vendors - ProductCo | 85,000 | 75,000 | 160,000 |
| Sales tax - ProductCo | - | 100,000 | 100,000 |
| Payments to UK Affiliate[1] - ProductCo | 30,000 | - | 30,000 |
| Management Payroll - Transfer to HoldCo - ProductCo | 91,464 | - | 91,464 |
| Cross-Border Vendors - ProductCo | 26,750 | 16,750 | 43,500 |
| BK Professional Fees[2] - ProductCo | - | - | - |
| US Trustee Fees - ProductCo | - | - | - |
| **TOTAL PRODUCTCO DISBURSEMENTS** | **$ 1,371,223** | **$ 1,002,217** | **$ 2,373,440** |

**PRODUCTCO - CASH ROLLFORWARD**

| | | | |
|---|---|---|---|
| Beginning PRODUCTCO Cash Balance | $ 1,432,402 | $ 1,096,316 | $ 1,432,402 |
| (+) ProductCo Receipts | 1,035,137 | 660,381 | 1,695,518 |
| (-) ProductCo Disbursements | (1,371,223) | (1,002,217) | (2,373,440) |
| **Ending ProductCo Cash Balance** | **$ 1,096,316** | **$ 754,480** | **$ 754,480** |
| *Change in ProductCo Cash from Previous Week* | $ (336,086) | $ (341,836) | |

**_Inventory Rollforward_**

| | | | |
|---|---|---|---|
| Beginning Inventory | $ 17,561,604 | $ 16,991,278 | $ 17,561,604 |
| (+) Purchases (Value, not disbursements) | - | 1,281,498 | 1,281,498 |
| (-) Cost of Goods | (570,326) | (319,845) | (890,172) |
| = Ending Inventory | $ 16,991,278 | $ 17,952,931 | $ 17,952,931 |

**_Accounts Receivable Rollforward_** [3]

| | | | |
|---|---|---|---|
| Beginning AR | $ 4,594,863 | $ 4,642,043 | $ 4,594,863 |
| (+) Sales (Domestic Commercial, Retail, Government, Intl. Dist.) | 526,218 | 525,877 | 1,052,095 |
| (-) Collections (Domestic Commercial, Retail, Government, Intl. Dist.) | (479,037) | (526,556) | (1,005,593) |
| = Ending AR | $ 4,642,043 | $ 4,641,364 | $ 4,641,364 |

**Notes**
(1) Current payroll and current VAT / other taxes. There is approximately an additional 80,000 GBP outstanding related to VAT.

(2) There are no bankruptcy professional payments in this forecast.

(3) The AR Rollforward does not include sales and collections activity relating to Ecommerce and Amazon. Ecommerce and Amazon revenue and collections are recorded contemporaneously.

- This budget does not reflect the proceeds or use of any DIP financing nor carve-outs arising thereof.

- Information has been sourced from management and the Company's books and records. This information has not been audited or independently verified.

**Fitness Anywhere, LLC (known as "ProductCo") & TRX HoldCo, LLC (known as "HoldCo")**
Debtors Cash Collateral Budget
As of June 30, 2022

*$USD*

| Week --> | | Week 1 | Week 2 | Current |
|---|---|---|---|---|
| From --> | | 6/27/2022 | 7/4/2022 | Rolling 2 |
| Week-Ending --> | | 7/3/2022 | 7/10/2022 | Weeks |

**HOLDCO**

| | | | | |
|---|---|---|---|---|
| **Beginning HoldCo Cash Balance** | $ | 28,329 | $ 135,844 | $ 28,329 |
| | | | | |
| Education/CORE - ExperienceCo | $ | 50,000 | $ 50,000 | $ 100,000 |
| Apple Subscriptions - ExperienceCo | | 40,000 | - | 40,000 |
| Management Payroll - InterCo Transfer from ProductCo | | 91,464 | - | 91,464 |
| Other - HoldCo | | - | - | - |
| | | | | |
| **TOTAL HOLDCO SOURCES** | $ | 181,464 | $ 50,000 | $ 231,464 |
| | | | | |
| Payroll, Payroll Tax & Benefits- HoldCo | $ | - | $ 90,000 | $ 90,000 |
| Contractors - HoldCo | | 13,500 | 13,500 | 27,000 |
| Key Consultants - HoldCo | | 12,500 | - | 12,500 |
| UK Studio Rent - HoldCo | | 3,000 | - | 3,000 |
| Marketing - HoldCo | | - | 17,500 | 17,500 |
| Technology - HoldCo | | 1,000 | - | 1,000 |
| Other Expenses - HoldCo | | 12,500 | 12,500 | 25,000 |
| Growth Initiative - HoldCo | | 31,450 | - | 31,450 |
| | | | | |
| **TOTAL HOLDCO DISBURSEMENTS** | $ | 73,950 | $ 133,500 | $ 207,450 |
| | | | | |
| **HOLDCO - CASH ROLLFORWARD** | | | | |
| Beginning HOLDCO Cash Balance | $ | 28,329 | $ 135,844 | $ 28,329 |
| (+) HoldCo Receipts | | 181,464 | 50,000 | 231,464 |
| (-) HoldCo Disbursements | | (73,950) | (133,500) | (207,450) |
| **Ending HoldCo Cash Balance** | $ | 135,844 | $ 52,344 | $ 52,344 |
| | | | | |
| *Change in HoldCo Cash from Previous Week* | $ | 107,514 | $ (83,500) | |

**Notes**
(1) Current payroll and current VAT / other taxes. There is approximately an additional 80,000 GBP outstanding related to VAT.

(2) There are no bankruptcy professional payments in this forecast.

(3) The AR Rollforward does not include sales and collections activity relating to Ecommerce and Amazon. Ecommerce and Amazon revenue and collections are recorded contemporaneously.

- This budget does not reflect the proceeds or use of any DIP financing nor carve-outs arising thereof.

- Information has been sourced from management and the Company's books and records. This information has not been audited or independently verified.

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: rb@lnbyg.com; kjm@lnbyg.com; lls@lnbyg.com

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

FILED & ENTERED

JUL 07 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>       Debtor and Debtor in Possession.<br>_____ | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases |
| In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | **THIRD INTERIM ORDER AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND GRANTING ADEQUATE PROTECTION AND RELATED RELIEF**<br><br>DATE:    July 7, 2022<br>TIME:    9:30 a.m.<br>PLACE:  *Via ZoomGov<br>          Courtroom 5C<br>          411 West Fourth Street<br>          Santa Ana, CA 92701 |

1

At a hearing held on June 10, 2022, at 10:00 a.m. (Pacific Time) (the "First Hearing"), the Court granted the emergency motion (the "Motion") (Doc 7), filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC,  dba TRX and TRX Training ("Product Co" and, together with Hold Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered, Chapter 11 bankruptcy cases, for the entry of an interim order that, among other things:

(1)     authorized the Debtors to use cash collateral for the purposes set forth in the Motion; and

(2)     granted adequate protection to secured creditor Woodforest National Bank (the "Bank").

With the Bank's consent, following the conclusion of the First Hearing, the Court entered an interim order (the "First Interim Order") granting the Motion on an interim basis, as modified by the First Interim Order (Doc 38), and the Court scheduled a continued cash collateral hearing on the Motion to be held on June 30, 2022, at 10 a.m. (the "Second Hearing").

On June 17, 2022 (Doc 75), the Debtors filed a supplement to the Motion (the "First Supplement") to which the Debtors attached revised proposed budgets as Exhibit "1" to the First Supplement (the "First Updated Budgets").

Subsequent to the Debtors' filing of the First Supplement and the First Updated Budgets, an Official Committee of Unsecured Creditors (the "Committee") was formed and retained counsel.  Both the Bank and the Committee filed limited objections to the Motion in connection with the Second Hearing.

With the consent of the Bank and the Committee, following the conclusion of the Second Hearing, the Court entered a second interim order (the "Second Interim Order") (Doc 115) granting the Motion on a further interim basis, as modified by the First Interim Order and the Second Interim Order, and the Court scheduled a continued cash collateral hearing on the Motion to be held on July 7, 2022, at 9:30 a.m. (the "Third Hearing").

On July 7, 2022 (Doc 133), the Debtors filed a further updated cash collateral budget (the "Second Updated Budgets") that had been approved by the Bank and the Committee.

1    The Debtors, the Bank and the Committee have all reached an agreement on the terms of
2    this Third Interim Order with the hope of reaching an agreement on a longer-term cash collateral
3    budget that are designed to help facilitate the Debtors' pending asset sale process and enable the
4    Debtors to operate their business through the closing of an asset sale.

5    Appearances were made at the Third Hearing as stated on the Court's record.

6    The Court, having read and considered the Motion and all of the pleadings filed by the
7    Debtors in support of the Motion and all pleadings filed in response thereto; the Third Hearing
8    having been held and concluded; and all objections, if any, to the relief requested in the Motion
9    as modified having been withdrawn, resolved or overruled by the Court; and it appearing that
10   approval of the relief requested in the Motion as modified is in the best interests of the Debtors'
11   bankruptcy estates; and after due deliberation and consideration, including the statements,
12   arguments and representations of counsel made at the Third Hearing, and good and sufficient
13   cause appearing, hereby orders as follows:

14   1.    The Motion as modified by the terms of this Third Interim Order is granted on a
15   further interim basis for the period through the week ending July 17, 2022 (the "Outside Date").

16   2.    The Debtors are authorized to use their cash collateral on a further interim basis
17   through the Outside Date in order to: (a) pay quarterly fees to the United States Trustee and any
18   required Court costs; (b) pay, in the ordinary course of business, the expenses set forth in the
19   Second Updated Budgets; and (c) pay up to $100,000 for the purchase of new inventory, which
20   figure is inclusive of the $300,000 inventory figure contained in the First Interim Order and the
21   $304,000 inventory figure contained in the Second Order.  The Debtors may not pay any
22   professional fees or expenses pursuant to any professional employment application absent a
23   further order of the Court.

24   3.    Subject to the last sentence of this paragraph, the Debtors are authorized to
25   deviate from the Second Updated Budgets, without the need for any further Court order, by up to
26   15% by line item and 15% in the aggregate (meaning the Debtors have the authority to deviate
27   by more than 15% per any particular line items provided they don't exceed 15% in the
28   aggregate) without the need for any further Court order, and the Debtors are authorized to

deviate further from the Second Updated Budgets without the need for any further Court order, including for the purchase of additional new inventory, provided the Debtors obtain the prior written consent of the Bank, provided further that the Debtors shall provide the Bank with no less than five (5) business days' notice of any request for additional variance.  In the event of an unforeseen urgency which requires shorter notice than provided herein, the Debtors shall provide such shorter notice to the Bank with a requested turnaround time and a brief explanation of the nature of the unforeseen urgency, and both parties shall work together in good faith to address such issues, and for the avoidance of doubt, the Debtors may not use cash collateral other than as provided for in this Third Interim Order absent written consent by the Bank or an order of the Court.  In addition to the foregoing deviations, the Debtors have the authority to increase their budgeted expense amounts to pay for any proportional increase in post-petition commissions owing as a result of any increase in sales beyond the projected sales amounts, e.g., AMZN commissions (meaning the more the Debtors sell the higher their commissions will be).  Notwithstanding the foregoing, the Debtors may not spend more than $100,000 for the purchase of new inventory (inclusive of the $300,000 inventory figure contained in the First Interim Order and the $304,000 inventory figure contained in the Second Order) through the Outside without the prior consent of the Bank or order of the Court.

4.      The Debtors will continue to provide the Bank with financial reporting on not less than a weekly basis in the same format as the Debtors were providing the Bank pre-petition, and the Debtors and the Bank will work in good faith in an effort to accommodate the Bank's request for any additional or different financial reporting.  By Wednesday of each week, the Debtors will provide the Bank with a variance report that compares the Debtors' financial performance for the prior week compared to the Debtors' projected performance for the prior week.  The reporting format for the variance reports will be the in the same format as summarized in the Second Updated Budgets.  The Debtors will provide the Committee with copies of the same reporting the Debtors provide to the Bank concurrently with providing such reporting to the Bank.

5.      The Bank is hereby granted, on account of the Bank's interest in the Debtors' cash collateral, on account of the Debtors' post-petition use of cash collateral, adequate

protection in the form of (a) a replacement lien against the Debtors' post-petition assets (excluding any avoidance causes of action), to the extent of any post-petition diminution in the value of the Bank's collateral as a result of the Debtors' post-petition use of cash collateral; and (b) a super priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any post-petition diminution in the value of the Bank's prepetition collateral as a result of the Debtors' post-petition use of cash collateral.  All replacement liens granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest; provided, however, that upon request of the Bank, the Debtors shall execute such security and perfection documentation as may be reasonably required to create or perfect such liens under applicable non-bankruptcy law.   For the avoidance of doubt, the Bank shall not be required to seek relief from the automatic stay to create or perfect such liens.

6.      Nothing herein shall constitute a waiver, release or modification of the rights of the Bank to assert a claim under §§ 364(c) or 507(b).

7.      This Third Interim Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates.

8.      Nothing contained in this Third Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank or the Debtors under the Loan Documents (subject to applicable bankruptcy law and the imposition of the automatic stay), or the Bankruptcy Code, and nothing contained in this Third Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank to seek additional or different adequate protection of its interests under the Loan Documents, to take any other action in these bankruptcy cases, including, but not limited to, seeking relief from the automatic stay or dismissal or conversion of this case at any time, all without prejudice to the rights of the Debtors or any other party in interest to oppose any such relief sought or requested by the Bank.

9.      This Third Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Third Interim Order.

10.     This Third Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral at a subsequent Court hearing, and is without prejudice to the rights of any other party in interest, including the Bank and the Committee, to oppose any such request of the Debtors.

11.     The Debtors' rights to use cash collateral pursuant to this Third Interim Order shall automatically and immediately terminate upon the occurrence of the following:  (i) the Debtors use of cash collateral other than as provided for in this Third Interim Order, (ii) any party other than the Committee bringing any Challenge against the Bank (unless actively opposed by the Debtors); (iii) either or both of these bankruptcy cases are converted to cases under chapter 7 of the Bankruptcy Code or the Debtors file a motion to convert the either or both of the bankruptcy cases to a case under chapter 7 of the Bankruptcy Code; (iii) the appointment of a trustee under chapter 7 or 11 of the Bankruptcy Code; (iv) any event of default as defined under a debtor in possession loan facility by and between the Debtors and the Bank; (v) the Debtors shall contract or agree to sell any of their property or assets, outside of the ordinary course of business, without the prior consent of the Bank or order of the Court; or (vi) the Debtors shall have furnished any materially false or inaccurate budgets, reconciliations, or other financial information to the Bank.

12.     A fourth interim hearing on the Motion shall be held on July 13, 2022, at 1:30 p.m. (the "Continued Hearing").  The Debtors shall have the right to treat the Continued Hearing as a final hearing if both the Bank and the Committee consent.

13.     The Debtors shall file any desired supplement to the Motion, including any proposed modified budgets, by no later than July 11, 2022.

14.     Any opposition to entry of an order granting the Motion on a further interim or final basis, including any opposition to any modified budgets submitted by the Debtors, shall be filed and served on proposed counsel to the Debtors by no later than July 12, 2022.

15.     Any reply to any such opposition may be asserted orally at the Continued Hearing.

16.     This Third Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Third Interim Order.

17.     This Third Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral prior to the Continued Hearing, and is without prejudice to the rights of any other party in interest, including the Bank, to oppose any such request of the Debtors.

# # #

Date: July 7, 2022

Scott C. Clarkson
United States Bankruptcy Judge

1  RON BENDER (SBN 143364)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LINDSEY L. SMITH (SBN 265401)
3  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
4  Los Angeles, California 90034
   Telephone: (310) 229-1234; Facsimile: (310) 229-1244
5  Email: rb@lnbyg.com; kjm@lnbyg.com; lls@lnbyg.com

6
   Proposed Attorneys for Chapter 11 Debtors
7  and Debtors in Possession

   **FILED & ENTERED**

   **JUL 12 2022**

   CLERK U.S. BANKRUPTCY COURT
   Central District of California
   BY bolte        DEPUTY CLERK

   **CHANGES MADE BY COURT**

8            UNITED STATES BANKRUPTCY COURT
             CENTRAL DISTRICT OF CALIFORNIA
9                 SANTA ANA DIVISION

10 In re:                                      Lead Case No.: 8:22-bk-10948-SC

11 TRX HOLDCO, LLC, a Delaware limited         Jointly administered with:
   liability company,                          8:22-bk-10949-SC
12
                                               Chapter 11 Cases
13         Debtor and Debtor in Possession.
                                               **FOURTH      INTERIM      ORDER**
14 In re:                                      **AUTHORIZING THE DEBTORS TO**
                                               **USE      CASH      COLLATERAL**
15 FITNESS ANYWHERE LLC, a Delaware            **PURSUANT TO 11 U.S.C. §§ 361, 362**
   limited liability company, dba TRX and TRX  **AND      363      AND      GRANTING**
16 Training,                                   **ADEQUATE    PROTECTION    AND**
                                               **RELATED RELIEF**
17         Debtor and Debtor in Possession.
                                               DATE:       July 13, 2022
18                                             TIME:       1:30 p.m.
                                               PLACE:      *Via ZoomGov
19                                                          Courtroom 5C
   ☒ Affects both Debtors                                   411 West Fourth Street
20                                                          Santa Ana, CA 92701
   ☐ Affects TRX Holdco, LLC only
21
   ☐ Affects Fitness Anywhere, LLC only
22

23

24

25

26

27

28

                                    1

At a hearing held on June 10, 2022, at 10:00 a.m. (Pacific Time) (the "First Hearing"), the Court granted the emergency motion (the "Motion") (Doc 7), filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC,  dba TRX and TRX Training ("Product Co" and, together with Hold Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered, Chapter 11 bankruptcy cases, for the entry of an interim order that, among other things:

(1)     authorized the Debtors to use cash collateral for the purposes set forth in the Motion; and

(2)     granted adequate protection to secured creditor Woodforest National Bank (the "Bank").

With the Bank's consent, following the conclusion of the First Hearing, the Court entered an interim order (the "First Interim Order") granting the Motion on an interim basis, as modified by the First Interim Order (Doc 38), and the Court scheduled a continued cash collateral hearing on the Motion to be held on June 30, 2022, at 10 a.m. (the "Second Hearing").

On June 17, 2022 (Doc 75), the Debtors filed a supplement to the Motion (the "First Supplement") to which the Debtors attached revised proposed budgets as Exhibit "1" to the First Supplement (the "First Updated Budgets").

Subsequent to the Debtors' filing of the First Supplement and the First Updated Budgets, an Official Committee of Unsecured Creditors (the "Committee") was formed and retained counsel.  Both the Bank and the Committee filed limited objections to the Motion in connection with the Second Hearing.

With the consent of the Bank and the Committee, following the conclusion of the Second Hearing, the Court entered a second interim order (the "Second Interim Order") (Doc 115) granting the Motion on a further interim basis, as modified by the First Interim Order and the Second Interim Order, and the Court scheduled a continued cash collateral hearing on the Motion to be held on July 7, 2022, at 9:30 a.m. (the "Third Hearing").

On July 7, 2022 (Doc 133), the Debtors filed a further updated cash collateral budget (the "Second Updated Budgets") that had been approved by the Bank and the Committee.

With the consent of the Bank and the Committee, following the conclusion of the Third Hearing, the Court entered a third interim order (the "Third Interim Order") (Doc 142) granting the Motion on a further interim basis, as modified by the First Interim Order, the Second Interim Order and the Third Interim Order, and the Court scheduled a continued cash collateral hearing on the Motion to be held on July 13, 2022, at 1:30 p.m. (the "Fourth Hearing").

On July 11, 2022 (Doc 154), the Debtors filed a further updated cash collateral budget (the "Third Updated Budgets") that has been approved by the Bank and the Committee. As indicated by the signatures attached hereto, the Debtors, the Bank and the Committee have all reached an agreement on the terms of this Fourth Interim Order with the hope of reaching an agreement on a longer-term cash collateral budget that are designed to help facilitate the Debtors' pending asset sale process and enable the Debtors to operate their business through the closing of an asset sale. As a result of the Debtors, the Bank and the Committee all having reached an agreement on the terms of this Fourth Interim Order, pursuant to their request contained in the Third Updated Budgets regarding a waiver of appearances upon agreement by the parties, the Court hereby waives appearances at the Fourth Hearing, which is VACATED.

The Court, having read and considered the Motion and all of the pleadings filed by the Debtors in support of the Motion and all pleadings filed in response thereto; and all objections, if any, to the relief requested in the Motion as modified having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the Motion as modified is in the best interests of the Debtors' bankruptcy estates; and after due deliberation and consideration and good and sufficient cause appearing, hereby orders as follows:

1.    The Motion as modified by the terms of this Fourth Interim Order is granted on a further interim basis for the period through the week ending July 24, 2022 (the "Outside Date").

2.    The Debtors are authorized to use their cash collateral on a further interim basis through the Outside Date in order to: (a) pay quarterly fees to the United States Trustee and any required Court costs; (b) pay, in the ordinary course of business, the expenses set forth in the Third Updated Budgets; and (c) pay up to $355,000 for the purchase of new inventory, which figure is inclusive of the inventory figures contained in the First Interim Order, the Second

3

Interim Order and the Third Interim Order.  The Debtors may not pay any professional fees or expenses pursuant to any professional employment application absent a further order of the Court.  Moreover, the Debtors may not spend more for "Cross-Border Vendors" than the $43,500 that was previously approved as part of the Second Updated Budgets without the prior written consent of the Bank or order of the Court.

3.    Subject to the last sentence of this paragraph, the Debtors are authorized to deviate from the Second Updated Budgets, without the need for any further Court order, by up to 15% by line item and 15% in the aggregate (meaning the Debtors have the authority to deviate by more than 15% per any particular line items provided they don't exceed 15% in the aggregate) without the need for any further Court order, and the Debtors are authorized to deviate further from the Third Updated Budgets without the need for any further Court order, including for the purchase of additional new inventory, provided the Debtors obtain the prior written consent of the Bank, provided further that the Debtors shall provide the Bank with no less than five (5) business days' notice of any request for additional variance.  In the event of an unforeseen urgency which requires shorter notice than provided herein, the Debtors shall provide such shorter notice to the Bank with a requested turnaround time and a brief explanation of the nature of the unforeseen urgency, and both parties shall work together in good faith to address such issues, and for the avoidance of doubt, the Debtors may not use cash collateral other than as provided for in this Fourth Interim Order absent written consent by the Bank or an order of the Court.  In addition to the foregoing deviations, the Debtors have the authority to increase their budgeted expense amounts to pay for any proportional increase in post-petition commissions owing as a result of any increase in sales beyond the projected sales amounts, e.g., AMZN commissions (meaning the more the Debtors sell the higher their commissions will be).  Notwithstanding the foregoing, the Debtors may not spend more than $355,000 for the purchase of new inventory (inclusive of the inventory figures contained in the First Interim Order, the Second Interim Order and the Third Interim Order) through the Outside without the prior consent of the Bank or order of the Court.

4.     The Debtors will continue to provide the Bank with financial reporting on not less than a weekly basis in the same format as the Debtors were providing the Bank pre-petition, and the Debtors and the Bank will work in good faith in an effort to accommodate the Bank's request for any additional or different financial reporting.  By Wednesday of each week, the Debtors will provide the Bank with a variance report that compares the Debtors' financial performance for the prior week compared to the Debtors' projected performance for the prior week.  The reporting format for the variance reports will be the in the same format as summarized in the Second Updated Budgets.  The Debtors will provide the Committee with copies of the same reporting the Debtors provide to the Bank concurrently with providing such reporting to the Bank.

5.     The Bank is hereby granted, on account of the Bank's interest in the Debtors' cash collateral, on account of the Debtors' post-petition use of cash collateral, adequate protection in the form of (a) a replacement lien against the Debtors' post-petition assets (excluding any avoidance causes of action), to the extent of any post-petition diminution in the value of the Bank's collateral as a result of the Debtors' post-petition use of cash collateral; and (b) a super priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any post-petition diminution in the value of the Bank's prepetition collateral as a result of the Debtors' post-petition use of cash collateral.  All replacement liens granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest; provided, however, that upon request of the Bank, the Debtors shall execute such security and perfection documentation as may be reasonably required to create or perfect such liens under applicable non-bankruptcy law.   For the avoidance of doubt, the Bank shall not be required to seek relief from the automatic stay to create or perfect such liens.

6.     Nothing herein shall constitute a waiver, release or modification of the rights of the Bank to assert a claim under §§ 364(c) or 507(b).

7.     This Fourth Interim Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates.

8.      Nothing contained in this Fourth Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank or the Debtors under the Loan Documents (subject to applicable bankruptcy law and the imposition of the automatic stay), or the Bankruptcy Code, and nothing contained in this Fourth Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank to seek additional or different adequate protection of its interests under the Loan Documents, to take any other action in these bankruptcy cases, including, but not limited to, seeking relief from the automatic stay or dismissal or conversion of this case at any time, all without prejudice to the rights of the Debtors or any other party in interest to oppose any such relief sought or requested by the Bank.

9.      This Fourth Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Fourth Interim Order.

10.     This Fourth Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral at a subsequent Court hearing, and is without prejudice to the rights of any other party in interest, including the Bank and the Committee, to oppose any such request of the Debtors.

11.     The Debtors' rights to use cash collateral pursuant to this Fourth Interim Order shall automatically and immediately terminate upon the occurrence of the following:  (i) the Debtors use of cash collateral other than as provided for in this Fourth Interim Order, (ii) any party other than the Committee bringing any Challenge against the Bank (unless actively opposed by the Debtors); (iii) either or both of these bankruptcy cases are converted to cases under chapter 7 of the Bankruptcy Code or the Debtors file a motion to convert the either or both of the bankruptcy cases to a case under chapter 7 of the Bankruptcy Code; (iii) the appointment of a trustee under chapter 7 or 11 of the Bankruptcy Code; (iv) any event of default as defined under a debtor in possession loan facility by and between the Debtors and the Bank; (v) the Debtors shall contract or agree to sell any of their property or assets, outside of the ordinary course of business, without the prior consent of the Bank or order of the Court; or (vi) the Debtors shall have furnished any materially false or inaccurate budgets, reconciliations, or other financial information to the Bank.

12.     A fifth interim hearing on the Motion shall be held on July 27, 2022, at 1:30 p.m. (the "Continued Hearing").  The Debtors shall have the right to treat the Continued Hearing as a final hearing if both the Bank and the Committee consent.

13.     The Debtors shall file any desired supplement to the Motion, including any proposed modified budgets, by no later than **three** days prior to the Continued Hearing.

14.     Any opposition to entry of an order granting the Motion on a further interim or final basis, including any opposition to any modified budgets submitted by the Debtors, shall be filed and served on proposed counsel to the Debtors by no later than **two** days prior to the Continued Hearing.

15.     Any reply to any such opposition may be asserted orally at the Continued Hearing.

16.     This Fourth Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Fourth Interim Order.

17.     This Fourth Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral prior to the Continued Hearing, and is without prejudice to the rights of any other party in interest, including the Bank, to oppose any such request of the Debtors.

18.     The Fourth Hearing is hereby VACATED.

# # #


*[Signature Pages Contained On The Following Page]*


Date: July 12, 2022

Scott C. Clarkson
United States Bankruptcy Judge

7

1

2

3

4  <u>Agreed</u>:

5  Dated:  July 12, 2022                    TRX HOLDCO, LLC
6                                            FITNESS ANYWHERE LLC

7

8                                            By:_____
9                                                RON BENDER
                                                 KRIKOR J. MESHEFEJIAN
10                                               LINDSEY L. SMITH
                                                 LEVENE, NEALE, BENDER,
11                                               YOO & GOLUBCHIK L.L.P.
                                                 Proposed Attorneys for Chapter 11 Debtors
12                                               and Debtors in Possession

13 <u>Agreed</u>:

14 Dated:  July 12, 2022                    WOODFOREST NATIONAL BANK
15
                                            By :_____
16                                               CHRISTOPHER O. RIVAS
17                                               MARSHA A. HOUSTON
                                                 REED SMITH LLP
18                                               Attorneys for Woodforest National Bank

19 <u>Agreed</u>:

20 Dated:  July 12, 2022                    OFFICIAL COMMITTEE OF UNSECURED
21                                          CREDITORS

22                                          By :_____
                                                 ORI KATZ
23                                               JENNIFER L. NASSIRI
                                                 SHEPPARD MULLIN
24                                               Attorneys for Official Committee of
25                                               Unsecured Creditors

26

27

28

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: rb@lnbyg.com; kjm@lnbyg.com; lls@lnbyg.com

Attorneys for Chapter 11 Debtors
and Debtors in Possession

**FILED & ENTERED**

**JUL 28 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>       Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects both Debtors<br><br>☐ Affects TRX Holdco, LLC only<br><br>☐ Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br><br>Chapter 11 Cases<br><br>**FIFTH INTERIM ORDER AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND GRANTING ADEQUATE PROTECTION AND RELATED RELIEF**<br><br>DATE:    July 27, 2022<br>TIME:    1:30 p.m.<br>PLACE:  *Via ZoomGov<br>          Courtroom 5C<br>          411 West Fourth Street<br>          Santa Ana, CA 92701 |

1

At a hearing held on June 10, 2022, at 10:00 a.m. (Pacific Time) (the "First Hearing"), the Court granted the emergency motion (the "Motion") (Doc 7), filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and, together with Hold Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered, Chapter 11 bankruptcy cases, for the entry of an interim order that, among other things:

(1)        authorized the Debtors to use cash collateral for the purposes set forth in the Motion; and

(2)        granted adequate protection to secured creditor Woodforest National Bank (the "Bank").

With the Bank's consent, following the conclusion of the First Hearing, the Court entered an interim order (the "First Interim Order") granting the Motion on an interim basis, as modified by the First Interim Order (Doc 38), and the Court scheduled a continued cash collateral hearing on the Motion to be held on June 30, 2022, at 10 a.m. (the "Second Hearing").

On June 17, 2022 (Doc 75), the Debtors filed a supplement to the Motion (the "First Supplement") to which the Debtors attached revised proposed budgets as Exhibit "1" to the First Supplement (the "First Updated Budgets").

Subsequent to the Debtors' filing of the First Supplement and the First Updated Budgets, an Official Committee of Unsecured Creditors (the "Committee") was formed and retained counsel. Both the Bank and the Committee filed limited objections to the Motion in connection with the Second Hearing.

With the consent of the Bank and the Committee, following the conclusion of the Second Hearing, the Court entered a second interim order (the "Second Interim Order") (Doc 115) granting the Motion on a further interim basis, as modified by the First Interim Order and the Second Interim Order, and the Court scheduled a continued cash collateral hearing on the Motion to be held on July 7, 2022, at 9:30 a.m. (the "Third Hearing").

On July 7, 2022 (Doc 133), the Debtors filed a further updated cash collateral budget (the "Second Updated Budgets") that had been approved by the Bank and the Committee.

1    With the consent of the Bank and the Committee, following the conclusion of the Third

2  Hearing, the Court entered a third interim order (the "Third Interim Order") (Doc 142) granting

3  the Motion on a further interim basis, as modified by the First Interim Order, the Second Interim

4  Order and the Third Interim Order, and the Court scheduled a continued cash collateral hearing

5  on the Motion to be held on July 13, 2022, at 1:30 p.m. (the "Fourth Hearing").

6    On July 11, 2022 (Doc 154), the Debtors filed a further updated cash collateral budget

7  (the "Third Updated Budgets") that had been approved by the Bank and the Committee.  On July

8  12, 2022, the Court entered a fourth interim order (the "Fourth Interim Order") (Doc 156)

9  granting the Motion on a further interim basis, as modified by the First Interim Order, the Second

10  Interim Order, the Third Interim Order and the Fourth Interim Order.  The Court vacated the

11  Fourth Hearing, and the Court scheduled a continued cash collateral hearing on the Motion to be

12  held on July 27, 2022, at 1:30 p.m. (the "Fifth Hearing").

13    On July 22, 2022, the Debtors filed a submission (Doc 189) that had attached to it a

14  proposed longer term budget.  The Bank filed a limited opposition to that submission pending the

15  outcome of negotiations between the Debtor and the Bank.  The Debtor and the Bank ultimately

16  reached an agreement on a two-week budget (the "Fourth Updated Budgets") that the Debtor

17  attached to a submission that the Debtor filed with the Court on July 27, 2022 (Doc 194).

18    The Debtors, the Bank and the Committee have all reached an agreement on the terms of

19  this Fifth Interim Order and the Fourth Updated Budgets that are designed to help facilitate the

20  Debtors' pending asset sale process and enable the Debtors to operate their business through the

21  closing of an asset sale.  Appearances at the Fifth Hearing on July 27, 2022 were as set forth on

22  the record of the Court.

23    The Court, having read and considered the Motion and all of the pleadings filed by the

24  Debtors in support of the Motion and all pleadings filed in response thereto; and all objections, if

25  any, to the relief requested in the Motion as modified having been withdrawn, resolved or

26  overruled by the Court; and it appearing that approval of the relief requested in the Motion as

27  modified is in the best interests of the Debtors' bankruptcy estates; and after due deliberation and

28  consideration and good and sufficient cause appearing, hereby orders as follows:

1.     The Motion as modified by the terms of this Fifth Interim Order is granted on a further interim basis for the period through the week ending August 7, 2022 (the "Outside Date").

2.     The Debtors are authorized to use their cash collateral on a further interim basis through the Outside Date in order to: (a) pay quarterly fees to the United States Trustee and any required Court costs; (b) pay, in the ordinary course of business, the expenses set forth in the Fourth Updated Budgets; and (c) pay up to $200,000 for the purchase of new inventory, which figure is inclusive of the inventory figures contained in the First Interim Order, the Second Interim Order, the Third Interim Order and the Fourth Interim Order.  The Debtors may not pay any professional fees or expenses pursuant to any professional employment application absent a further order of the Court.

3.     Subject to the last sentence of this paragraph, the Debtors are authorized to deviate from the Second Updated Budgets, without the need for any further Court order, by up to 15% by line item and 15% in the aggregate (meaning the Debtors have the authority to deviate by more than 15% per any particular line items provided they don't exceed 15% in the aggregate) without the need for any further Court order, and the Debtors are authorized to deviate further from the Fourth Updated Budgets without the need for any further Court order, including for the purchase of additional new inventory, provided the Debtors obtain the prior written consent of the Bank, provided further that the Debtors shall provide the Bank with no less than five (5) business days' notice of any request for additional variance.  In the event of an unforeseen urgency which requires shorter notice than provided herein, the Debtors shall provide such shorter notice to the Bank with a requested turnaround time and a brief explanation of the nature of the unforeseen urgency, and both parties shall work together in good faith to address such issues, and for the avoidance of doubt, the Debtors may not use cash collateral other than as provided for in this Fifth Interim Order absent written consent by the Bank or an order of the Court.  In addition to the foregoing deviations, the Debtors have the authority to increase their budgeted expense amounts to pay for any proportional increase in post-petition commissions owing as a result of any increase in sales beyond the projected sales amounts, e.g., AMZN

commissions (meaning the more the Debtors sell the higher their commissions will be). Notwithstanding the foregoing, the Debtors may not spend more than $200,000 for the purchase of new inventory (inclusive of the inventory figures contained in the First Interim Order, the Second Interim Order and the Third Interim Order) through the Outside without the prior consent of the Bank or order of the Court.

4.    The Debtors will continue to provide the Bank with financial reporting on not less than a weekly basis in the same format as the Debtors were providing the Bank pre-petition, and the Debtors and the Bank will work in good faith in an effort to accommodate the Bank's request for any additional or different financial reporting.  By Wednesday of each week, the Debtors will provide the Bank with a variance report that compares the Debtors' financial performance for the prior week compared to the Debtors' projected performance for the prior week.  The reporting format for the variance reports will be the in the same format as summarized in the Second Updated Budgets.  The Debtors will provide the Committee with copies of the same reporting the Debtors provide to the Bank concurrently with providing such reporting to the Bank.

5.    The Bank is hereby granted, on account of the Bank's interest in the Debtors' cash collateral, on account of the Debtors' post-petition use of cash collateral, adequate protection in the form of (a) a replacement lien against the Debtors' post-petition assets (excluding any avoidance causes of action), to the extent of any post-petition diminution in the value of the Bank's collateral as a result of the Debtors' post-petition use of cash collateral; and (b) a super priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any post-petition diminution in the value of the Bank's prepetition collateral as a result of the Debtors' post-petition use of cash collateral.  All replacement liens granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest; provided, however, that upon request of the Bank, the Debtors shall execute such security and perfection documentation as may be reasonably required to create or perfect such liens under applicable non-bankruptcy law.   For the avoidance of doubt, the Bank shall not be required to seek relief from the automatic stay to create or perfect such liens.

6.     Nothing herein shall constitute a waiver, release or modification of the rights of the Bank to assert a claim under §§ 364(c) or 507(b).

7.     This Fifth Interim Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee that may be appointed or elected on behalf of the Debtors' estates.

8.     Nothing contained in this Fifth Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank or the Debtors under the Loan Documents (subject to applicable bankruptcy law and the imposition of the automatic stay), or the Bankruptcy Code, and nothing contained in this Fifth Interim Order shall be deemed or construed to waive, reduce or otherwise diminish the rights of the Bank to seek additional or different adequate protection of its interests under the Loan Documents, to take any other action in these bankruptcy cases, including, but not limited to, seeking relief from the automatic stay or dismissal or conversion of this case at any time, all without prejudice to the rights of the Debtors or any other party in interest to oppose any such relief sought or requested by the Bank.

9.     This Fifth Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Fifth Interim Order.

10.    This Fifth Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral at a subsequent Court hearing, and is without prejudice to the rights of any other party in interest, including the Bank and the Committee, to oppose any such request of the Debtors.

11.    The Debtors' rights to use cash collateral pursuant to this Fifth Interim Order shall automatically and immediately terminate upon the occurrence of the following:  (i) the Debtors use of cash collateral other than as provided for in this Fifth Interim Order, (ii) any party other than the Committee bringing any Challenge against the Bank (unless actively opposed by the Debtors); (iii) either or both of these bankruptcy cases are converted to cases under chapter 7 of the Bankruptcy Code or the Debtors file a motion to convert the either or both of the bankruptcy cases to a case under chapter 7 of the Bankruptcy Code; (iii) the appointment of a trustee under chapter 7 or 11 of the Bankruptcy Code; (iv) any event of default as defined under a debtor in

possession loan facility by and between the Debtors and the Bank; (v) the Debtors shall contract or agree to sell any of their property or assets, outside of the ordinary course of business, without the prior consent of the Bank or order of the Court; or (vi) the Debtors shall have furnished any materially false or inaccurate budgets, reconciliations, or other financial information to the Bank.

12.     A sixth interim hearing on the Motion shall be held on August 4, 2022, at 1:30 p.m. (the "Continued Hearing").  The Debtors shall have the right to treat the Continued Hearing as a final hearing if both the Bank and the Committee consent.

13.     The Debtors shall file any desired supplement to the Motion, including any proposed modified budgets, by no later than August 1, 2022.

14.     Any opposition to entry of an order granting the Motion on a further interim or final basis, including any opposition to any modified budgets submitted by the Debtors, shall be filed and served on proposed counsel to the Debtors by no later August 2, 2022.

15.     Any reply to any such opposition may be asserted orally at the Continued Hearing.

16.     This Fifth Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Fifth Interim Order.

17.     This Fifth Interim Order is without prejudice to the rights of the Debtors to seek further or different use of cash collateral prior to the Continued Hearing, and is without prejudice to the rights of any other party in interest, including the Bank, to oppose any such request of the Debtors.

# # #

Date: July 28, 2022

Scott C. Clarkson
United States Bankruptcy Judge

Agreed:

Dated:  July 28, 2022                    TRX HOLDCO, LLC
                                          FITNESS ANYWHERE LLC


                                          By:_____
                                              RON BENDER
                                              KRIKOR J. MESHEFEJIAN
                                              LINDSEY L. SMITH
                                              LEVENE, NEALE, BENDER,
                                              YOO & GOLUBCHIK L.L.P.
                                              Attorneys for Chapter 11 Debtors and
                                              Debtors in Possession

Agreed:

Dated:  July 28, 2022                    WOODFOREST NATIONAL BANK

                                          By :_____
                                              CHRISTOPHER O. RIVAS
                                              MARSHA A. HOUSTON
                                              REED SMITH LLP
                                              Attorneys for Woodforest National Bank

Agreed:

Dated:  July 28, 2022                    OFFICIAL COMMITTEE OF UNSECURED
                                          CREDITORS

                                          By :_____
                                              ORI KATZ
                                              JENNIFER L. NASSIRI
                                              SHEPPARD MULLIN
                                              Attorneys for Official Committee of
                                              Unsecured Creditors

Agreed:

Dated:  July 28, 2022                          TRX HOLDCO, LLC
                                               FITNESS ANYWHERE LLC


                                               By:_____
                                                     RON BENDER
                                                     KRIKOR J. MESHEFEJIAN
                                                     LINDSEY L. SMITH
                                                     LEVENE, NEALE, BENDER,
                                                     YOO & GOLUBCHIK L.L.P.
                                                     Attorneys for Chapter 11 Debtors and
                                                     Debtors in Possession

Agreed:

Dated:  July 28, 2022                          WOODFOREST NATIONAL BANK

                                               By :_____
                                                     CHRISTOPHER O. RIVAS
                                                     MARSHA A. HOUSTON
                                                     REED SMITH LLP
                                                     Attorneys for Woodforest National Bank

Agreed:

Dated:  July 28, 2022                          OFFICIAL COMMITTEE OF UNSECURED
                                               CREDITORS


                                               By :_____
                                                     ORI KATZ
                                                     JENNIFER L. NASSIRI
                                                     SHEPPARD MULLIN
                                                     Attorneys for Official Committee of
                                                     Unsecured Creditors

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' STATUS REPORT DATED AUGUST 3, 2022; DECLARATION OF BRENT LEFFEL IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ***August 3, 2022***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com**
- **Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com**
- **Jonathan Gottlieb    jdg@lnbyg.com**
- **Michael J Hauser    michael.hauser@usdoj.gov**
- **Marsha A Houston    mhouston@reedsmith.com, hvalencia@reedsmith.com**
- **Ori Katz    okatz@sheppardmullin.com, lsegura@sheppardmullin.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **Ali M Mojdehi    amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com;amattingly@btlaw.com**
- **Jennifer L Nassiri    JNassiri@sheppardmullin.com, bdelacruz@sheppardmullin.com**
- **Paul J Pascuzzi    ppascuzzi@ffwplaw.com, docket@ffwplaw.com**
- **Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com**
- **Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) ***August 3, 2022***, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ***August 3, 2022***, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL**
Honorable Scott C. Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 3, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re Fitness Anywhere LLC
File No. 9744

Michael J Hauser
United States Trustee
411 W Fourth St Suite 7160
Santa Ana, CA 92701-4593

Committee
Exemplar Design, LLC
Attention: Matt Nelson
4680 Parkway Drive, Suite 300
Mason, OH 45040

Committee
Core Health & Fitness, LLC
Attention: Sy Mares
4400 NE 77th Avenue, Suite 250
Vancouver, WA 98662

Committee
United Parcel Service, Inc.
Attention: Farah C. Spainhour
55 Glenlake Parkway
Atlanta, GA 30328