RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM; LLS@LNBYG.COM

**FILED & ENTERED**

**AUG 25 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte         DEPUTY CLERK

Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRX HOLDCO, LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor in Possession.<br><br>In re:<br><br>FITNESS ANYWHERE LLC, a Delaware limited liability company, dba TRX and TRX Training,<br><br>    Debtor and Debtor in Possession.<br><br>☒  Affects both Debtors<br><br>☐  Affects TRX Holdco, LLC only<br><br>☐  Affects Fitness Anywhere, LLC only | Lead Case No.: 8:22-bk-10948-SC<br><br>Jointly administered with:<br>8:22-bk-10949-SC<br>Chapter 11 Cases<br><br>**ORDER GRANTING DEBTORS' MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF CERTAIN LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (2) APPROVING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS, AND APPROVING REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED; (3) WAIVING THE 14-DAY STAY PERIODS OF BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:** August 18, 2022<br>**Time:** 10:00 a.m.<br>**Place:** *Via ZoomGov<br>       Courtroom 5C<br>       411 West Fourth Street<br>       Santa Ana, CA 92701 |

1

On August 18, 2022, at 10:00 a.m., the Court held a hearing (the "Sale Hearing") to consider approval of the motion ("Sale Motion") (Doc 205) filed by TRX Holdco, LLC ("Hold Co") and Fitness Anywhere LLC, dba TRX and TRX Training ("Product Co" and together with Hold Co and Product Co, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly-administered Chapter 11 bankruptcy cases, seeking the entry of an order of the Court approving the Debtors' sale of substantially all of their right, title and interest in and to the assets designated as purchased assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances and other interests ("Encumbrances") other than as expressly set forth herein to the winning bidder and the winning back up bidder at the auction held on August 17, 2022 ("Auction"), in accordance with the terms of an Asset Purchase Agreement ("APA") to be negotiated and executed between the Debtors and the winning bidder (and between the Debtors and the winning backup bidder if the winning bidder fails to consummate its purchase of the Purchased Assets).

At a hearing held on July 20, 2022, the Court granted the Debtors' amended bid procedures motion by entry of that certain *Order Granting Debtors' Motion For Entry Of Order Modifying Bidding Procedures Previously Approved By The Court For Free And Clear Sale Of Assets And Granting Related Relief* (the "Bid Procedures Order") (Doc 182) entered on July 20, 2022. The Bid Procedures Order was consented to by the Debtors, Woodforest National Bank ("WNB") and the Official Committee of Unsecured Creditors ("Committee"). The Bid Procedures Order set forth procedures with respect to how a prospective bidder could become qualified to participate in the Auction and how the Auction would proceed in the event there was more than one qualified bidder.

In accordance with the Bid Procedures Order, the Debtors conducted the Auction on August 17, 2022. Three qualified bidders besides WNB participated in the Auction, and WNB participated in the Auction as a qualified bidder with credit bidding rights as set forth in the Bid Procedures Order. JFXD Capital LLC, a Florida limited liability company (the "Winning Bidder"), was the winning bidder at the Auction with a cash purchase price of Eight Million Four Hundred Thousand Dollars ($8,400,000.00) (the "Purchase Price") to be funded in the manner

set forth in this Order. The Debtors, in consultation with WNB and the Committee, determined that the Purchase Price submitted by the Winning Bidder was the highest and best bid submitted at the Auction and should be approved by this Court.

The Debtors determined, in consultation with WNB and the Committee that Thor-TRX, LLC, a Delaware limited liability company (the "Winning Back-Up Bidder"), which submitted a cash offer in the amount of Eight Million Three Hundred Thousand Dollars ($8,300,000.00) submitted the second highest and best bid at the Auction and was designated the Winning Back-Up Bidder in accordance with the terms of the Bid Procedures Order.

The Court, having considered the: (1) Sale Motion; (2) *Declaration Of Brent Leffel* (Doc 206) filed in support of the Sale Motion; (3) *Declaration Of Joshua K. Benn* (Doc 207) filed in support of the Sale Motion, (4) *Declaration of Mark Reis* (Doc 211) filed in support of the Sale Motion, (5) *Notice of Hearing* ("Sale Notice") (Doc 209) on the Sale Motion; (6) *Notice of Sale Of Estate Property* (Doc 208), (7) *Notice Of: (1) Assumption And Assignment Of Executory Contracts And Unexpired Leases; (2) Establishment Of Cure Amount In Connection Therewith; (3) Procedures And Deadlines Regarding Oppositions To Assumption And Assignment, And Cure Amounts; And (4) Hearing Thereon* (the "Assumption/Assignment And Cure Notice") (Doc 213), (8) all other pleadings and papers filed in support of the Sale Motion, (9) *Limited Opposition To Debtors' Motion To Approve Sale Of Substantially All Assets* (Doc 238), *Limited Opposition* (Doc 239) to the Assumption/Assignment And Cure Notice, and *Supplemental Declaration Of Brian Ausmus* (Doc 262) (collectively, the "TMA Opposition") filed by TMA Worldwide, Inc. ("TMA"); (10) the *Limited Objection And Reservation Of Rights* (the "Oracle Opposition") (Doc 242) filed by Oracle America, Inc. ("Oracle"); and (11) *Omnibus Reply* (Doc 257) filed by the Debtors to the TMA Opposition and Oracle Opposition; and the statements, arguments and representations of the parties made at the Sale Hearing; and the entire record of these cases; and the Court, having determined that the relief sought in the Sale Motion is in the best interests of the Debtors and their estates, and that the legal and factual bases set forth in the Sale Motion and presented at the Sale Hearing establish just cause for the relief granted herein; and all objections to the Sale Motion, if any, having been withdrawn or overruled; and after due

deliberation and sufficient good cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

A. <u>Findings and Conclusions</u>. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. <u>Jurisdiction and Venue</u>. The Bankruptcy Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtors' bankruptcy estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A), (M), (N) and (O). Venue of these cases is proper in this District and in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Statutory Predicates</u>. The statutory predicates for the relief requested in the Sale Motion are (i) Sections 105(a) and 363(b), (f), (k), (l) and (m), 365 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (ii) Rules 2002(a)(2), 2002(c)(1) and (d), 6004 (a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006, 9007, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and (iii) Local Bankruptcy Local Rules 6004-1 and 9013-1.

D. <u>Notice</u>. The Debtors have provided good and sufficient notice with respect to the following: (i) the Sale Motion and the relief sought therein, including the entry of this Order and the transfer and purchase of the Purchased Assets; (ii) the Auction and the Sale Hearing; (iii) the selection of the Winning Bidder and the Winning Back-up Bidder; (iv) the assumption and assignment of executory contracts and unexpired leases and proposed cure amounts owing under such executory contracts and unexpired leases ("<u>Cure Amounts</u>"). No further notice of the Sale Motion, the relief requested therein or the Sale Hearing is required. The *Notice Of Court-Approved Amended Bidding Procedures, Opportunity To Bid On Assets And Auction Schedule* (the "<u>Bidding Procedures And Auction Notice</u>") (Doc 181), the Sale Notice, the Assumption/Assignment And Cure Notice, and the notice provided by the Debtors of the Cure Costs, the Auction, and the hearing to approve the sale of the Purchased Assets were in accordance with the Bid Procedures Order, and were appropriate and reasonable and calculated

to provide all interested parties with timely and proper notice and no other or further notice is required.  Such notice was proper under the Bankruptcy Code, Bankruptcy Rules and Local Rules.  A reasonable opportunity to object and to be heard regarding the relief provided herein has been afforded to all parties-in-interest.

E. **Compliance with the Bid Procedures Order**.  The sale process and Auction were conducted in accordance with and otherwise in compliance with the Bid Procedures Order and were fair, proper and reasonably calculated to result in the best value received for the Purchased Assets.  The Auction process afforded a full, fair and reasonable opportunity for any party to become a qualified bidder and to participate in the Auction.  As demonstrated on the record at the Sale Hearing, the Debtors have conducted the Auction process in good faith, without collusion and in accordance with the Bid Procedures Order.

F. **Highest and Best Bid**.  The bid of the Winning Bidder constitutes the highest or otherwise best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Winning Bidder made the highest or otherwise best offer for the Purchased Assets constitutes a reasonable, valid and sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors and their estates. The consideration to be paid by the Winning Bidder for the Purchased Assets is fair and reasonable, is the highest or otherwise best offer therefor, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the laws of the United States.  The Winning Back-Up Bidder made the second highest and best offer for the Purchased Assets.[1]

G. **Arm's Length Transaction**.  The sale of the Purchased Assets to the Winning Bidder (the "Transaction") [substantially in conformance with the terms of the APA filed as Docket No. 277] and the consummation thereof were negotiated and entered into by the Debtors and the Winning Bidder without collusion, in good faith and through an arms' length bargaining

---

[1] This Order may be appropriately revised by subsequent order if the back-up bidder is the ultimate buyer pursuant to the terms of the Back-Up APA.

process. None of the Debtors, the Winning Bidder, or their respective representatives engaged in any conduct that would cause or permit the Transaction to be avoided under section 363(n) of the Bankruptcy Code, or have acted in any improper or collusive manner. The terms and conditions of the Transaction, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against the Winning Bidder or any other party, as set forth in section 363(n) of the Bankruptcy Code.

H. <u>Good Faith Purchaser</u>. The Winning Bidder has proceeded in good faith and without collusion in all respects in connection with the sale process, and is therefore entitled to all of the benefits and protections provided to a good-faith purchaser under section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction or the Winning Bidder's status as a "good faith" purchaser.

I. <u>No Successor Liability</u>. The Winning Bidder is not a successor to the Debtors or their bankruptcy estates nor shall be deemed to be a mere continuation of any of the Debtors' operations by any reason or theory of law or equity, and the Winning Bidder shall not be subject to successor liability for any assets sold or claims that arose or could have been asserted prior to the closing of the Transaction (the "<u>Closing</u>").

J. <u>Authority to Consummate the Sale of the Purchased Assets</u>. The Debtors have full corporate power and authority to execute the APA (including all ancillary documents executed in connection therewith), and the sale of the Purchased Assets have been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the sale of the Purchased Assets to the Winning Bidder. No consents or approvals, other than as may be expressly provided for in the APA, are required by the Debtors to consummate such sale of the Purchased Assets.

K. <u>Justification for Relief</u>. Good and sufficient reasons for approval of the Transaction have been articulated to the Bankruptcy Court in the Sale Motion and at the Sale Hearing, and the relief requested in the Sale Motion and set forth in this Order is in the best

interests of the Debtors and their estates. The Debtors have demonstrated through the Sale Motion and other evidence submitted by the Debtors both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the transfer and sale of the Purchased Assets outside the ordinary course of business, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

L.  Free and Clear. In accordance with sections 363(b) and 363(f) of the Bankruptcy Code, the consummation of the Transaction pursuant to the Transaction Documents will be a legal, valid, and effective transfer and sale of the Purchased Assets and will vest in the Winning Bidder, all of the Debtors' right, title, and interest in and to the Purchased Assets, free and clear of all Encumbrances, subject to the provisions of Paragraph 6 below. The Debtors have demonstrated that one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. As set forth in Paragraph 6 below, the Purchased Assets shall be transferred to the Winning Bidder at the Closing subject to all valid, perfected and enforceable possessory liens ("Possessory Liens"), with the ones being held by TMA Worldwide, Flexport, Sunrise Nationwide, McCollister's, USA - FH Fitness Anywhere (USA Global Logistics LLC) constituting the only Possessory Liens that the Debtors are aware of (collectively, the "Possessory Lienholders").

M.  Prompt Consummation. The Debtors have demonstrated good and sufficient cause to waive the stay requirement under Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in consummating the Transaction, and it is in the best interests of the Debtors and their estates to consummate the Transaction within the timeline set forth in the Sale Motion and the Bid Procedures Order, which provide for the Closing to occur by August 26, 2022 unless the Winning Bidder and the Debtors mutually agree to an extension of that date.

N.  Assumption of Executory Contracts and Unexpired Leases. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign, subject to the provisions hereof, to the Winning Bidder those executory contracts and unexpired leases designated by the Winning Bidder either prior to the Closing or during the Designation

Case 8:22-bk-10948-SC    Doc 280    Filed 08/25/22    Entered 08/25/22 10:59:18    Desc
Main Document    Page 8 of 20

Rights Period (as defined in Paragraph 18 below) (the "Assigned Contracts") in connection with the consummation of the Transaction, and the Debtors' assumption and assignment to the Winning Bidder of the Assigned Contracts is in the best interests of the Debtors and their estates.

O.   Cure/Adequate Assurance. Through the payments to be made by the Winning Bidder at the Closing or prior to the expiration of the Designation Rights Period (as defined in Paragraph 18 below), as the case may be, the Winning Bidder will have cured, or will have provided adequate assurance of cure, of any default existing under any of the Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts and in the manner set forth below.  The Winning Bidder has provided or will provide adequate assurance of future performance of and under the Assigned Contracts within the meaning of 11 U.S.C. § 365(b)(1)(C). Pursuant to 11 U.S.C. § 365(f), the Assigned Contracts to be assumed by the Debtors and assigned to the Winning Bidder under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Winning Bidder notwithstanding any provision in any such Assigned Contract prohibiting their assignment or transfer. The Debtors have demonstrated that no other parties to any of the Assigned Contracts have incurred any actual pecuniary loss resulting from a default prior to the Closing under any of the Assigned Contracts within the meaning of 11 U.S.C. § 365(b)(1)(B).  Pursuant to 11 U.S.C. § 365(f), the Assigned Contracts to be assumed by the Debtors and assigned to the Winning Bidder shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Winning Bidder notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.  Notwithstanding the foregoing, any executory contracts or unexpired leases of Oracle or TMA shall not be deemed Assigned Contracts absent the consent of Oracle or TMA, respectively, or a further order of this Court.

P.   Rejection of Executory Contracts and Unexpired Leases. The Debtors have demonstrated that it is an exercise of their sound business judgment to reject all of their executory contracts and unexpired leases which are not part of the Assigned Contracts effective as of the Closing, subject only to that set forth in Paragraphs 18 and 19 below.

Q. <u>Legal and Factual Basis</u>. The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

R. <u>Findings and Conclusions</u>. To the extent any of the foregoing findings of fact constitute conclusions of law, they are adopted as such.

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Sale Motion is **GRANTED** as set forth herein. The sale of the Purchased Assets to the Winning Bidder is approved upon the terms and conditions described at the Auction and on the Court's record at the Sale Hearing and as set forth in the APA.

2. The Debtors are authorized to enter into the APA and to consummate the sale of the Purchased Assets to the Winning Bidder in accordance with this Order. The final version of the APA is subject to the approval of the Debtors, the Winning Bidder and the Bank, with the Bankruptcy Court to be the arbiter to resolve any outstanding disputes.

3. All objections and responses to the Sale Motion that have not previously been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied, provided, however that the TMA Opposition and the Oracle Opposition are deemed resolved as otherwise set forth in this Order.

4. The Winning Bidder's offer for the Purchased Assets is the highest and best offer for the Purchaser Assets and is hereby approved.

5. Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Transaction, including the transfer and sale of the Purchased Assets to the Winning Bidder is approved in all respects, and the Debtors are authorized and directed to consummate the Transaction and enter into the APA, including, without limitation, by executing any Transaction Documents and taking all actions necessary and appropriate to effectuate and consummate the Transaction (including the transfer and sale of the Purchased Assets) in consideration of the Purchase Price, including, without limitation, providing to the Winning Bidder the Designation Rights Assets (as defined in the APA) and assuming and assigning to the Winning Bidder the Assigned Contracts. The Debtors and the Winning Bidder shall have the right to make any mutually agreeable, non-material changes to the APA which shall be in writing signed by both parties without further order of the Court.

6. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, provided, however, that any holders of Possessory Liens against any of the Purchased Assets by the Possessory Lienholders shall retain such Possessory Liens with such Possessory Liens having the same validity (or invalidity), priority and extent as such Possessory Liens had as of the date of the Closing, and, subject to Paragraph 18 below, the Debtors' sale of any Purchased Assets which are encumbered by any such Possessory Liens shall be subject to all such Possessory Liens. For the avoidance of doubt, any possessory liens of TMA shall remain in full force and effect. Notwithstanding anything to the contrary contained herein, in the event that the Winning Bidder cannot obtain a satisfactory release of the Possessory Liens, the Winning Bidder shall not be obligated to take title to the Purchased Assets subject to such Possessory Liens and shall have no obligation, responsibility or liability associated with such assets.

7. Pursuant to sections 105, 363(b), 363(f) and 363(m) of the Bankruptcy Code, and subject to Paragraph 6 of this Order, the Purchased Assets shall be sold and transferred free and clear of all Encumbrances, except as otherwise provided in the APA, with any and all such Encumbrances to attach to proceeds of the sale with the same validity (or invalidity), priority, force and effect such Encumbrances had on the Purchased Assets immediately prior to the Closing and subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to any such asserted Encumbrances.

8. As of the Closing, (i) the Transaction shall effect a legal, valid, enforceable and effective transfer and sale of the Purchased Assets to the Winning Bidder free and clear of all Encumbrances except for Possessory Liens, as set forth in the APA and Paragraph 6 of this Order; and (ii) the APA, the Transaction and the other Transaction Documents shall be enforceable against and binding upon, and not subject to rejection or avoidance by, any successor thereto including a trustee or estate representative appointed in these cases, and all other persons and entities.

9. For the avoidance of doubt, the Purchased Assets do not include any avoidance actions under chapter 5 of the Bankruptcy Code or any claims, causes of action, choses of action, rights of recovery (whether choate or inchoate, known or unknown, contingent or non-contingent), either direct or derivative, including those that would expressly inure to the benefit of the creditors in these

bankruptcy cases, including claims made against any former or current insiders, affiliates, officers or directors, and to the extent applicable, insurance recoveries related in any way to such claims.

10. This Order shall, as of the Closing, be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of sale transferring all of the Debtors' rights, title and interest in and to the Purchased Assets to the Winning Bidder. Consistent with, but not in limitation of the foregoing, each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and approved in this Order.

11. The Winning Bidder shall not be deemed, as a result of any action taken in connection with, or as a result of the Transaction (including the transfer and sale of the Purchased Assets), to: (i) be a successor, continuation or alter ego (or other such similarly situated party) to the Debtors or their estates by reason of any theory of law or equity, including, without limitation, any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability; or (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation, alter ego, or substantial continuation of the Debtors, and other than as expressly set forth in the APA, the Winning Bidder shall have no liability whatsoever for any conduct, action or inaction of the Debtors or with respect to the Purchased Assets that arose prior to the Closing.

12. This Order (i) shall be effective as a determination that, except as expressly set forth in this Order or the APA, effective as of the Closing, all Encumbrances existing against the Purchased Assets before the Closing (with the exception of Possessory Liens as set forth in Paragraph 6 hereof) have been unconditionally released, discharged and terminated, and that the transfers and conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all persons and entities. If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances against the Purchased Assets (with the exception of Possessory Liens as set forth in Paragraph 6) shall not have delivered to the Debtors before the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances which the person or entity has with respect to

the Purchased Assets, then the Winning Bidder is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets.

13. The sale of the Purchased Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy Code and the Buyer shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

14. Subject to Paragraph 6, all entities that are presently, or on the Closing may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Buyer pursuant to this Sale Order and the APA are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

15. The Winning Bidder shall fund the payment of the Purchase Price at the Closing by (i) transferring to WNB pursuant to payment instructions provided by WNB to the Winning Bidder the cash amount of Six Million Four Hundred Thousand Dollars ($6,400,000.00) (the "WNB Payment") which WNB Payment shall be applied by WNB to WNB's claims against the Debtors; and (ii) by title to the Two Million Dollar ($2,000,000.00) deposit that the Winning Bidder previously provided to the Debtors' bankruptcy counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P. (the "Winning Bidder Deposit"), transferring to the Debtors, which cash remains subject to WNB's valid and perfected liens subject only to the Carve Outs set forth below. Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") shall distribute the Winning Bidder Deposit in the manner set forth in Paragraph 16 below.

16. Pursuant to and in accordance with the terms of that certain *Stipulation Regarding (1) Professional Fee And Creditor Carve Outs And (2) Lien Validations, Releases And Surcharge Waivers* (the "Carve Out Stipulation") (Doc 195) approved by order of this Court entered on August 8, 2022 (Doc 253):

    a. LNBYG is hereby authorized and directed to continue to maintain $400,000 of the Winning Bidder Deposit in a trust account maintained by LNBYG as the initial Carve Out for the sole benefit of LNBYG, Kroll, LLC and Michael Zuercher/Law Office of Michael A.

Zuercher, Inc., with such professionals to be authorized to be paid their respective portion of this $400,000 only after such professionals have had their fees and expenses approved by the Court following notice and a hearing;

b. LNBYG is hereby authorized and directed to pay to Kroll Securities, LLC from the Winning Bidder Deposit the sum of $336,000 as Kroll Securities, LLC's allowed and earned investment banking fee;

c. LNBYG is hereby authorized and directed to pay to Duane Morris LLP ("DM") from the Winning Bidder Deposit the sum of $65,000, which Carve Out shall be paid to DM for the sole benefit of DM into a trust account maintained by DM and may be paid to DM only after DM has had its fees and expenses approved by the Court following notice and a hearing;

d. LNBYG is hereby authorized and directed to pay to Sheppard Mullin LLP ("SM") from the Winning Bidder Deposit the initial Carve Out in the sum of $100,000 (the "SM Carve Out Amount"), which shall be used solely to pay the allowed fees and expenses of SM and which shall be paid directly into a trust account maintained by SM for the sole benefit of SM, but no portion of the SM Carve Out Amount may be paid to SM until SM has had its fees and expenses approved by the Court following notice and a hearing; and

e. LNBYG is hereby authorized and directed to immediately pay the $1,099,000 balance of the Winning Bidder Deposit to WNB in the manner directed by WNB in writing to LNBYG.

17. Nothing set forth in this Order shall impact the rights of the parties to the Carve Out Stipulation, all of which are expressly reserved, and neither this Order nor the Purchase Price amount set forth in this Order shall limit or expand the rights of the parties to the Carve Out Stipulation.

18. Subject to the provisions hereof, all executory contracts and unexpired leases designated by the Winning Bidder prior to the Closing to be assumed and assigned by the Debtors to the Winning Bidder shall be deemed assumed by the Debtors and assigned to the Winning Bidder effective as of the date of the Closing (the "Closing Date"). All executory

13

contracts and unexpired leases designated by the Winning Bidder prior to the Closing to be rejected by the Debtors shall be deemed rejected by the Debtors effective as of the Closing Date. The Winning Bidder shall have the right, by written notice to the Debtors no later than one (1) day prior to the Closing Date, to specify that any executory contract and/or unexpired lease that is not an Excluded Asset (other than with respect to any employment contract which must be assumed and assigned to the Winning Bidder or rejected by the Debtors effective as of the Closing Date), under the APA is not to be assumed or rejected as of the Closing Date (the "<u>Designated Contracts</u>"), in which case the Winning Bidder shall be entitled to make its determination as to whether it wants to take an assignment of any such Designated Contracts for a period commenced with the day after the Closing Date and continuing until September 27, 2022 (the "<u>Designation Rights Period</u>").  The Winning Bidder shall be financially responsible for, and shall timely pay for, all costs, expenses and obligations arising under the Designated Contracts during the Designation Rights Period until such time that the Court enters an order providing for the Debtors' assumption and assignment to the Winning Bidder or the Debtors' rejection of such Designated Contracts in accordance with the procedure set forth in Paragraph 19 below.  The Winning Bidder shall have the right to determine that any asset that is the subject to any Possessory Lien shall be part of the Excluded Assets, rather than be part of the Purchased Assets subject to such Possessory Lien.

19. The Winning Bidder has the right to provide LNBYG with written notice at any time during the Designation Rights Period of the Winning Bidder's determination to take an assignment of or to effectuate a rejection of any Designated Contracts.  Following LNBYG's receipt of any such written notice from the Winning Bidder, LNBYG shall file with the Court and serve on the affected counter party a summary notice of the Winning Bidder's determination together with a proposed order providing for such assumption and assignment or rejection effective as of the Closing Date.  Subject to the provisions hereof, the Designated Contracts shall be deemed to have been assumed and assigned to the Winning Bidder or be deemed rejected, as the case may be, effective as of the Closing Date.  All Designated Contracts for which the Winning Bidder has not provided written notice to LNBYG during the Designation Rights

Period shall be automatically deemed rejected effective as of the Closing Date. All of the Debtors' executory contracts and unexpired leases that have not previously been rejected and that are not assumed and assigned by the Debtors to the Winning Bidder prior to the expiration of the Designation Rights Period will be automatically deemed rejected effective as of the Closing Date without the need for any further order of the Court.

20. The Winning Bidder's designation of any executory contract or unexpired lease prior to or at the Closing, or during the Designation Rights Period in the manner set forth herein, as an Assigned Contract shall be deemed to constitute an assumption and assignment of such Assigned Contract to the Winning Bidder without further order of this Court provided that the Winning Bidder pays (which payment(s) shall be in addition to the Purchase Price) in connection with such assumption and assignment the Cure Amount for such Assigned Contract, and the Winning Bidder shall have assumed all obligations owing under all such Assigned Contracts following the Closing Date. The payment of the Cure Amounts in the amounts set forth in the Assumption/Assignment and Cure Notice in connection with the assumption and assignment of the Assigned Contracts is hereby deemed the necessary and sufficient amounts to "cure" all "defaults" with respect to all such Assigned Contracts under section 365(b) of the Bankruptcy Code. The payment by the Winning Bidder of such Cure Amounts to the corresponding counterparties to such Assigned Contracts shall (i) effect a cure of all defaults existing under all such Assigned Contracts, and (ii) compensate all such counterparties to the Assigned Contracts for any actual pecuniary loss resulting from any such default. With the payment by the Winning Bidder of the Cure Amounts set forth in the Assumption/Assignment And Cure Notice: (i) the Debtors and the Winning Bidder are hereby deemed to have cured, or have provided adequate assurance of cure, of any default existing or occurring prior to the Closing under any of the assumed and assigned contracts and leases, and the Winning Bidder has provided adequate assurance of its future performance of and under the assumed and assigned contracts and leases, (ii) the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Assumption/Assignment And Cure Notice are hereby deemed satisfied, and (iii) it is hereby deemed that none of the other parties to the executory contracts and unexpired leases have

suffered any actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.  The Debtors shall then have assumed and assigned to the Winning Bidder all of the Assigned Contracts, and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of all such Assigned Contracts to the Winning Bidder shall not be a default thereunder.  After the payment of the Cure Amounts by the Winning Bidder to the counterparties to the Assigned Contracts, neither the Debtors nor the Winning Bidder shall have any further liabilities to any counterparties to the Assigned Contracts other than the Winning Bidder's obligations under the Assigned Contracts that accrue and become due and payable on or after the Closing Date.  In addition, adequate assurance of future performance has been demonstrated by or on behalf of the Winning Bidder with respect to all of the Assigned Contracts within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.  Notwithstanding any of the foregoing, any executory contracts or unexpired leases of Oracle or TMA shall not be deemed Assigned Contracts and the respective Cure Amounts for Oracle or TMA set forth in the Assumption/Assignment and Cure Notice shall not be deemed to bind Oracle or TMA under this Order, except by mutual agreement between the Winning Bidder and Oracle and/or TMA, respectively, or further order of the Court.

21. All of the counterparties to the Assigned Contracts are forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Winning Bidder, or any of their property, any assignment fee, acceleration, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the Closing, or arising by reason of the consummation of the Transaction, including, without limitation, the Transaction and the assumption and assignment of the Assigned Contracts, including any asserted breach relating to or arising out of the change-in-control provisions in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts.

22. Any provisions in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contract or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition

upon the assignment of such Assigned Contract constitutes unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Assigned Contract to the Winning Bidder.

23. In connection with the Debtors' assumption and assignment to the Winning Bidder of Assigned Contracts on the Closing Date, the Winning Bidder shall pay all Cure Amounts on or before the Closing Date. With respect to each of the Assigned Contracts assigned to the Winning Bidder during the Designation Rights Period, the Winning Bidder shall pay all Cure Amounts concurrently with providing the Winning Bidder Assumption Notice.

24. The Winning Back-Up bidder is hereby approved as the back-up bidder with a back-up bid of Eight Million Three Hundred Thousand Dollars ($8,300,000.00) (the "Back-Up Purchase Price"). If the Winning Bidder is obligated to close the Transaction under the terms of the APA but fails to close the Transaction in accordance with the terms and timing of the APA, the Winning Bidder shall be deemed to have forfeited the Winning Bidder Deposit to the Debtors' bankruptcy estates as liquidated damages, with the Court to resolve any dispute in this regard between the Debtors and the Winning Bidder. LNBYG shall continue to hold the Two Million Dollar deposit provided to LNBYG by the Winning Back-Up Bidder (the "Winning Back-Up Bidder Deposit"). Only if the Winning Bidder fails to close the Transaction in accordance with the terms and timing of the APA, the sale of the Purchased Assets to the Winning Back-Up Bidder (the "Back-Up Transaction") pursuant to the terms of an asset purchase agreement between the Debtors and the Winning Back-Up Bidder (the "Back-Up APA") shall be deemed authorized and approved by this Order. The Debtors shall forthwith provide written notice to the Winning Back-Up Bidder (by email to the Winning Back-Up Bidder and its counsel) of such failure to close by the Winning Bidder (the "Back-Up Bidder Notice"). The Back-Up Transaction contemplated by the Back-Up APA and other Back-Up Transaction Documents between the Debtors and the Winning Back-Up Bidder are deemed by the Court to have been undertaken without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. The Back-Up Bidder is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section

363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Back-Up Transaction shall not affect the validity of the sale of the Purchased Assets to the Winning Back-Up Bidder. Only in the event that the Winning Bidder fails to close the Transaction in accordance with the terms and timing of the APA, all findings and terms of this Order that apply to the Winning Bidder shall be deemed to apply to the Winning Back-Up Bidder, and all findings and terms of this Order that apply to the APA or to the Transaction shall be deemed to apply to the Back-Up APA and the Back-Up Transaction respectively, without the need for any further order of the Court. LNBYG will refund the Back-Up Deposit to the Winning Back-Up within three (3) business days following the Closing with the Winning Bidder. Upon the Debtors' delivery of the Back-Up Bidder Notice to the Winning Back-Up Bidder, the Back-Up Deposit shall be applied to the Back-Up Purchase Price to be paid by the Winning Back-Up Bidder, or forfeited to the Debtors as liquidated damages in the event that the Winning Back-Up Bidder fails to close the Back-Up Transaction in accordance with the terms and timing of the Back-Up APA. All protections and rights afforded to the Winning Bidder in and throughout this Order shall apply equally to the Winning Back Up Bidder in the event the Winning Back Up Bidder is authorized to close. In such instance the Debtors and the Winning Back Up Bidder shall file an amended Sale Order reflecting the Winning Back Up Bidder as the purchaser.

25. Within three (3) business days of the entry of this Order, LNBYG shall return to bidders other than the Winning Bidder and the Winning Back-Up Bidder (the "Withdrawn Bidders") the deposits provided by such Withdrawn Bidders to LNBYG.

26. The terms and provisions of this Order, as well as the rights granted under the Transaction Documents, shall continue in full force and effect and are binding upon any successor to the Debtors, or chapter 7 or chapter 11 trustee applicable to the Debtors, notwithstanding any such conversion, dismissal or order entry. Nothing contained in any chapter 11 plan confirmed in these cases or in any order confirming such a plan, nor any order dismissing these cases or converting these cases to a case under chapter 7 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA, any documents or instruments executed in connection therewith, or the terms

of this Order. The provisions of this Order and any actions taken pursuant hereto shall survive any conversion or dismissal of these cases and the entry of any other order that may be entered in these cases, including any order (i) confirming any plan of reorganization; (ii) converting these cases from chapter 11 to chapter 7; (iii) appointing a trustee or examiner in the cases; including for the avoidance of doubt a liquidating trustee appointed for the purpose of administering any remaining estate assets for the benefit of the estates' creditors; or (iv) dismissing these cases.

27. The Transaction and other Transaction Documents are undertaken without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. The Winning Bidder is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to the Winning Bidder.

28. The failure to specifically include any particular provision of the APA or the other Transaction Documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Transaction, the APA and the other Transaction Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

29. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, if applicable, or any other Local Bankruptcy Rule or otherwise, this Order shall not be stayed for 14-days after the entry hereof, but shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 6004(h) and 6006(d). Time is of the essence in approving the Transaction (including the transfer and the sale of the Purchased Assets).

30. The automatic stay pursuant to section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, for the Debtors and the Winning Bidder to take any and all actions permitted under the APA and the Transaction Documents in accordance with the terms and conditions thereof.

31. After the Closing, the Winning Bidder specifically agrees that the Debtors and any trustee or successor in interest appointed in these cases shall have continuing reasonable access to the Debtors' books and records as set forth in Section 6.1 of the APA.

32. Unless otherwise provided in this Order, to the extent any inconsistency exists between the provisions of the APA and this Order, the provisions contained in this Order shall govern.

33. This Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the APA and this Order in all respects, and further, including, without limitation, to (i) hear and determine all disputes between the Debtors and/or the Winning Bidder, as the case may be, and any other non-Debtor party to, among other things, the Assigned Contracts concerning, among other things, assignment thereof by the Debtors to the Winning Bidder and any dispute between the Winning Bidder and the Debtors as to their respective obligations with respect to any asset, liability, or claim arising hereunder; (ii) compel delivery of the Purchased Assets to the Winning Bidder free and clear of Encumbrances except for the Possessory Liens; (iii) compel the delivery of the Purchase Price or performance of other obligations owed to the Debtors; and (iv) interpret, implement, and enforce the provisions of this Order.

IT IS SO ORDERED.

# # #

Date: August 25, 2022

Scott C. Clarkson
United States Bankruptcy Judge